**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-542-SLR |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| APPLE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT APPLE INC.'S ANSWER TO
COMPLAINT FOR PATENT INFRINGEMENT AND COUNTERCLAIMS**

Defendant Apple Inc. ("Apple" or "Defendant") hereby answers the Complaint for Patent

Infringement of Plaintiff Evolved Wireless, LLC ("Evolved" or "Plaintiff"):

**RESPONSES TO SPECIFIC ALLEGATIONS OF THE COMPLAINT**

**NATURE OF THE ACTION AND PARTIES**

1.      Apple is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 1.

2.      Apple admits the allegations of paragraph 2.

**JURISDICTION**

3.      Apple admits that this Court has subject matter jurisdiction under 28 U.S.C.

§§ 1331 and 1338(a), and that this action purports to arise under the federal Patent Act, 35

U.S.C. § 1 *et seq*.

4.      Apple denies the allegations of paragraph 4, but does not assert lack of personal

jurisdiction as a defense to this action.

## VENUE

5.        Apple admits, for this action only, that venue is proper in this district, but denies that this district is the most convenient forum for this case.  Apple denies the remaining allegations of paragraph 5.

6.        Apple admits, for this action only, that venue is proper in this district, but denies that this district is the most convenient forum for this case.  Apple is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 6, and therefore denies them.

## BACKGROUND

7.        Apple admits that certain Apple and LG entities are and have been members of the European Telecommunications Standards Institute ("ETSI"), that ETSI and other standards development organizations ("SDOs") around the world are members of the Third Generation Partnership Project ("3GPP"), and that 3GPP and/or national SDOs are involved in the development of standards for commercial cellular systems.  Apple denies the remaining allegations of paragraph 7.

8.        Apple denies the allegations of paragraph 8.

9.        Apple admits that 3GPP issues Releases for cellular wireless communications standards and that the Long Term Evolution ("LTE") standard was introduced in 3GPP Release 8.  Apple denies the remaining allegations of paragraph 9.

10.        Apple admits that each 3GPP Release includes a series of Technical Specifications ("TS") and that 3GPP Release 8 TS 36 relates to the LTE standard.  Apple denies the remaining allegations of paragraph 10.

11.	Apple denies the allegations of paragraph 11, except that it admits that developing standards is an iterative process, and that member companies may participate in 3GPP Working Groups to select the technologies that comprise a particular standard.

12.	Apple admits that 3GPP participants are required to abide by the intellectual property rights policies of the Organizational Partners to which they belong.  To the extent that the allegations of paragraph 12 purport to describe or quote one or more documents, Apple avers that those documents are the best source of their full content and context.  Apple denies the allegations to the extent they do not accurately represent the documents' full content and context.  Apple denies the remaining allegations of paragraph 12.

13.	Apple admits that 3GPP participants are required to disclose intellectual property (including patents and patent applications) owned by them which they believe are or are likely to become essential to the LTE standard.  Apple admits that members of 3GPP are required to license applicable intellectual property on terms that are fair, reasonable, and non-discriminatory ("FRAND"), and that this requirement binds all successors-in-interest.  Apple denies the remaining allegations of paragraph 13.

## EVOLVED WIRELESS

14.	Apple incorporates by reference its responses to Paragraphs 1-13 of this Answer as if fully set forth herein.

15.	Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations with respect to Evolved Wireless' ownership of U.S. Patent Nos. 7,809,373, 7,746,916, 7,768,965, 8,218,481, or 7,881,236, and therefore denies them.  Apple denies the remaining allegations of paragraph 15.

16.     Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations with respect to the extent of LG's participation in 3GPP Working Group meetings and LG's submission of proposals, and therefore denies them.  Apple denies the remaining allegations of paragraph 16.

17.     Apple denies the allegations of paragraph 17.

## OVERVIEW OF MOBILE TELECOMMUNICATIONS

18.     Apple admits that certain mobile devices allow users to make or receive telephone calls and transmit and receive data wirelessly, among many other functions such devices provide. Apple denies the remaining allegations of paragraph 18.

19.     Apple admits that 1G mobile phones used analog modulation techniques.  Apple denies the remaining allegations of paragraph 19.

20.     Apple admits that 2G phones used digital technology.  Apple denies the remaining allegations of paragraph 20.

21.     Apple denies the allegations of paragraph 21.

22.     Apple denies the allegations of paragraph 22.

23.     Apple denies the allegations of paragraph 23.

## EVOLVED WIRELESS'S STANDARD-ESSENTIAL LTE PATENT PORTFOLIO

24.     Apple denies the allegations of paragraph 24.

25.     Apple denies the allegations of paragraph 25.

## UNITED STATES PATENT NO. 7,746,916 ("THE '916 PATENT")

26.     Apple admits that United States Patent No. 7,746,916 ("the '916 patent") is entitled "Method and Apparatus for Generating and Transmitting Code Sequence in a Wireless Communication System," and that the '916 patent indicates that it was issued by the United

States Patent and Trademark Office ("USPTO") on June 29, 2010.  Apple lacks knowledge or information sufficient to form a belief as to whether Evolved is the current owner and assignee of the '916 patent.

27.       Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27, and therefore denies them.

28.       Apple denies the allegations of paragraph 28.

29.       Apple denies the allegations of paragraph 29.

30.       To the extent that the allegations of paragraph 30 purport to describe or quote one or more documents, Apple avers that those documents are the best source of their full content and context.  Apple denies the allegations to the extent they do not accurately represent the documents' full content and context.  Apple denies the remaining allegations of paragraph 30.

31.       To the extent that the allegations of paragraph 31 purport to describe or quote one or more documents, Apple avers that those documents are the best source of their full content and context.  Apple denies the allegations to the extent they do not accurately represent the documents' full content and context.  Apple denies the remaining allegations of paragraph 31.

32.       To the extent that the allegations of paragraph 32 purport to describe or quote one or more documents, Apple avers that those documents are the best source of their full content and context.  Apple denies the allegations to the extent they do not accurately represent the documents' full content and context. Apple denies the remaining allegations of paragraph 32.

**UNITED STATES PATENT NO. 7,768,965 ("THE '965 PATENT")**

33.       Apple admits that United States Patent No. 7,768,965 ("the '965 patent") is entitled "Method for Transmitting and Receiving Signals Based on Segmented Access Scheme and Method for Allocating Sequence for the Same," and that the '965 patent indicates that it was

issued by the USPTO on August 3, 2010.  Apple lacks knowledge or information sufficient to form a belief as to whether Evolved is the current owner and assignee of the '965 patent.

34.     Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34, and therefore denies them.

35.     Apple denies the allegations of paragraph 35.

36.     To the extent that the allegations of paragraph 36 purport to describe or quote one or more documents, Apple avers that those documents are the best source of their full content and context.  Apple denies the allegations to the extent they do not accurately represent the documents' full content and context.   Apple denies the remaining allegations of paragraph 36.

37.     Apple denies the allegations of paragraph 37.

38.     To the extent that the allegations of paragraph 38 purport to describe or quote one or more documents, Apple avers that those documents are the best source of their full content and context.  Apple denies the allegations to the extent they do not accurately represent the documents' full content and context.  Apple denies the remaining allegations of paragraph 38.

39.     To the extent that the allegations of paragraph 39 purport to describe or quote one or more documents, Apple avers that those documents are the best source of their full content and context.  Apple denies the allegations to the extent they do not accurately represent the documents' full content and context.   Apple denies the remaining allegations of paragraph 39.

**UNITED STATES PATENT NO. 7,809,373 ("THE '373 PATENT")**

40.     Apple admits that United States Patent No. 7,809,373 ("the '373 patent") is entitled "Method of Transmitting and Receiving Radio Access Information in a Wireless Mobile Communications System," and that the '373 patent indicates that it was issued by the USPTO on

October 5, 2010.  Apple lacks knowledge or information sufficient to form a belief as to whether Evolved is the current owner and assignee of the '373 patent.

41.        Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 41, and therefore denies them.

42.        Apple denies the allegations of paragraph 42.

43.        Apple denies the allegations of paragraph 43.

44.        Apple denies the allegations of paragraph 44.

45.        To the extent that the allegations of paragraph 45 purport to describe or quote one or more documents, Apple avers that those documents are the best source of their full content and context.  Apple denies the allegations to the extent they do not accurately represent the documents' full content and context.  Apple denies the remaining allegations of paragraph 45.

46.        To the extent that the allegations of paragraph 46 purport to describe or quote one or more documents, Apple avers that those documents are the best source of their full content and context.  Apple denies the allegations to the extent they do not accurately represent the documents' full content and context.  Apple denies the remaining allegations of paragraph 46.

### UNITED STATES PATENT NO. 7,881,236 ("THE '236 PATENT")

47.        Apple admits that United States Patent No. 7,881,236 ("the '236 patent") is entitled "Data Transmission Method and User Equipment for the Same," and that the '236 patent indicates that it was issued by the USPTO on February 1, 2011.  Apple lacks knowledge or information sufficient to form a belief as to whether Evolved is the current owner and assignee of the '236 patent.

48.        Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 48, and therefore denies them.

49.      To the extent that the allegations of paragraph 49 purport to describe or quote one or more documents, Apple avers that those documents are the best source of their full content and context.  Apple denies the allegations to the extent they do not accurately represent the documents' full content and context.   Apple denies the remaining allegations of paragraph 49.

50.      To the extent that the allegations of paragraph 50 purport to describe or quote one or more documents, Apple avers that those documents are the best source of their full content and context.  Apple denies the allegations to the extent they do not accurately represent the documents' full content and context.   Apple denies the remaining allegations of paragraph 50.

**UNITED STATES PATENT NO. 8,218,481 ("THE '481 PATENT")**

51.      Apple admits that United States Patent No. 8,218,481 ("the '481 patent") is entitled "Method of Transmitting Data in a Mobile Communication System," and that the '481 patent indicates that it was issued by the USPTO on July 10, 2012.  Apple lacks knowledge or information sufficient to form a belief as to whether Evolved is the current owner and assignee of the '481 patent.

52.      Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 52, and therefore denies them.

53.      To the extent that the allegations of paragraph 53 purport to describe or quote one or more documents, Apple avers that those documents are the best source of their full content and context.  Apple denies the allegations to the extent they do not accurately represent the documents' full content and context.  Apple denies the remaining allegations of paragraph 53.

54.      To the extent that the allegations of paragraph 54 purport to describe or quote one or more documents, Apple avers that those documents are the best source of their full content

and context.  Apple denies the allegations to the extent they do not accurately represent the documents' full content and context.  Apple denies the remaining allegations of paragraph 54.

55.      To the extent that the allegations of paragraph 55 purport to describe or quote one or more documents, Apple avers that those documents are the best source of their full content and context.  Apple denies the allegations to the extent they do not accurately represent the documents' full content and context.  Apple denies the remaining allegations of paragraph 55.

56.      To the extent that the allegations of paragraph 56 purport to describe or quote one or more documents, Apple avers that those documents are the best source of their full content and context.  Apple denies the allegations to the extent they do not accurately represent the documents' full content and context.  Apple denies the remaining allegations of paragraph 56.

57.      To the extent that the allegations of paragraph 57 purport to describe or quote one or more documents, Apple avers that those documents are the best source of their full content and context.  Apple denies the allegations to the extent they do not accurately represent the documents' full content and context.  Apple denies the remaining allegations of paragraph 57.

58.      To the extent that the allegations of paragraph 58 purport to describe or quote one or more documents, Apple avers that those documents are the best source of their full content and context.  Apple denies the allegations to the extent they do not accurately represent the documents' full content and context.  Apple denies the remaining allegations of paragraph 58.

59.      To the extent that the allegations of paragraph 59 purport to describe or quote one or more documents, Apple avers that those documents are the best source of their full content and context.  Apple denies the allegations to the extent they do not accurately represent the documents' full content and context.  Apple denies remaining the allegations of paragraph 59.

60.     To the extent that the allegations of paragraph 60 purport to describe or quote one or more documents, Apple avers that those documents are the best source of their full content and context.  Apple denies the allegations to the extent they do not accurately represent the documents' full content and context.  Apple denies the remaining allegations of paragraph 60.

## APPLE

61.     Apple admits that it sells or has sold, among other things, smartphones, tablets, and other wireless devices, including but not limited to the devices listed in Appendix A.

62.     Apple admits that it sells certain devices that are capable of functioning on certain LTE networks.  Apple also admits that it provides materials to its customers, such as the iPhone User Guide cited in paragraph 62, that inform customers that certain of its devices are capable of functioning on certain LTE networks.  Apple denies the remaining allegations of paragraph 62.

63.     Apple admits that certain Apple entities are members of ETSI.  Apple is without knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 63.

64.     Apple denies the allegations of paragraph 64.

## LICENSING EFFORTS

65.     Apple admits that on November 4, 2014, Evolved sent Jayna Whitt a letter concerning Evolved's alleged patent portfolio. Apple also admits that Evolved sent e-mails to Jayna Whitt on November 4 and November 13, 2014, and that Jayna Whitt responded on November 13, 2014, identifying Heather Mewes as the person to whom future correspondence should be addressed.  Apple denies the remaining allegations of paragraph 65.

66.     Apple admits that it has not entered into an express license agreement with Evolved concerning the Patents-in-Suit, but denies that it is not licensed to use the claimed technology.

## COUNT I

### INFRINGEMENT OF U.S. PATENT NO. 7,746,916

67.     Apple incorporates by reference each its responses set forth above as if fully set forth herein.

68.     Apple denies the allegations of paragraph 68.

69.     Apple denies the allegations of paragraph 69.

70.     Apple denies the allegations of paragraph 70.

71.     Apple denies the allegations of paragraph 71.

72.     Apple admits that as of the service of Evolved's Complaint, Apple had notice of the '916 patent.  Apple denies the remaining allegations of paragraph 72.

73.     Apple denies the allegations of paragraph 73.

74.     Apple denies the allegations of paragraph 74.

75.     Apple denies the allegations of paragraph 75.

76.     Apple denies the allegations of paragraph 76.

77.     Apple denies the allegations of paragraph 77.

## COUNT II

### INFRINGEMENT OF U.S. PATENT NO. 7,768,965

78.     Apple incorporates by reference each its responses set forth above as if fully set forth herein.

79.     Apple denies the allegations of paragraph 79.

80.     Apple denies the allegations of paragraph 80.

81.     Apple denies the allegations of paragraph 81.

82.     Apple denies the allegations of paragraph 82.

83.     Apple admits that as of the service of Evolved's Complaint, Apple had notice of the '965 patent.  Apple denies the remaining allegations of paragraph 83.

84.     Apple denies the allegations of paragraph 84.

85.     Apple denies the allegations of paragraph 85.

86.     Apple denies the allegations of paragraph 86.

87.     Apple denies the allegations of paragraph 87.

88.     Apple denies the allegations of paragraph 88.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 7,809,373

89.     Apple incorporates by reference each its responses set forth above as if fully set forth herein.

90.     Apple denies the allegations of paragraph 90.

91.     Apple denies the allegations of paragraph 91.

92.     Apple denies the allegations of paragraph 92.

93.     Apple denies the allegations of paragraph 93.

94.     Apple admits that as of the service of Evolved's Complaint, Apple had notice of the '373 patent.  Apple denies the remaining allegations of paragraph 94.

95.     Apple denies the allegations of paragraph 95.

96.     Apple denies the allegations of paragraph 96.

97.     Apple denies the allegations of paragraph 97.

98.         Apple denies the allegations of paragraph 98.

99.         Apple denies the allegations of paragraph 99.

## COUNT IV

## INFRINGEMENT OF U.S. PATENT NO. 7,881,236

100.        Apple incorporates by reference each its responses set forth above as if fully set

forth herein.

101.        Apple denies the allegations of paragraph 101.

102.        Apple denies the allegations of paragraph 102.

103.        Apple denies the allegations of paragraph 103.

104.        Apple denies the allegations of paragraph 104.

105.        Apple admits that as of the service of Evolved's Complaint, Apple had notice of

the '236 patent.  Apple denies the remaining allegations of paragraph 105.

106.        Apple denies the allegations of paragraph 106.

107.        Apple denies the allegations of paragraph 107.

108.        Apple denies the allegations of paragraph 108.

109.        Apple denies the allegations of paragraph 109.

110.        Apple denies the allegations of paragraph 110.

## COUNT V

## INFRINGEMENT OF U.S. PATENT NO. 8,218,481

111.        Apple incorporates by reference each its responses set forth above as if fully set

forth herein.

112.        Apple denies the allegations of paragraph 112.

113.        Apple denies the allegations of paragraph 113.

114.        Apple denies the allegations of paragraph 114.

115.        Apple denies the allegations of paragraph 115.

116.        Apple admits that as of the service of Evolved's Complaint, Apple had notice of

the '481 patent.  Apple denies the remaining allegations of paragraph 116.

117.        Apple denies the allegations of paragraph 117.

118.        Apple denies the allegations of paragraph 118.

119.        Apple denies the allegations of paragraph 119.

120.        Apple denies the allegations of paragraph 120.

121.        Apple denies the allegations of paragraph 121.

## JURY DEMAND

122.        Apple respectfully demands a trial by jury on all issues so triable.

## RESPONSE TO PRAYER FOR RELIEF

123.        Apple denies that Plaintiff is entitled to the relief requested or any other relief.

## APPLE'S DEFENSES TO THE COMPLAINT

Pursuant to Federal Rule of Civil Procedure 8(c), Apple, without waiver, limitation, or

prejudice, hereby asserts the following defenses:

## FIRST DEFENSE

### (Failure to State a Claim)

Evolved's Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

### (Non-Infringement)

Evolved is not entitled to any relief against Apple because Apple has not directly or indirectly infringed any valid and enforceable claim of the'916 patent, the '965 patent, the '373 patent, the '236 patent, or the '481 patent (collectively, the "Patents-in-Suit").

## THIRD DEFENSE

### (Invalidity)

Each claim of the Patents-in-Suit is invalid for failure to comply with one or more of the requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

## FOURTH DEFENSE

### (Breach of FRAND Obligation)

Each of the Patents-in-Suit has been declared as essential to compliance with certain telecommunications standards promulgated by the European Telecommunications Standards Institute ("ETSI").  In particular, each of the Patents-in-Suit was declared by LG Electronics, Inc. ("LGE") to be essential to compliance with certain technical specifications applicable to the LTE standard.  Pursuant to ETSI's Intellectual Property Rights ("IPR") Policy, LGE further declared to ETSI and its members that it will agree to grant irrevocable licenses to the Patents-in-Suit on terms that are fair, reasonable, and non-discriminatory ("FRAND").  These FRAND commitments imposed ongoing contractual obligations on the Patents-in-Suit that are binding on LGE's successors-in-interest to the Patents-in-Suit, including Evolved.

In breach of its FRAND obligations, Evolved failed to offer Apple a license to the Patents-in-Suit on FRAND terms.  Instead, Evolved offered to license the Patents-in-Suit only on

terms that were manifestly unreasonable, including a proposed royalty rate that was wholly disproportionate to the royalty rate that its patents should command under any reasonable calculus.  Moreover, on information and belief, Evolved failed to offer a license (on FRAND terms or otherwise) to one or more manufacturers or suppliers of the components in which the Patents-in-Suit, if infringed at all (which they are not), are embodied.

Evolved's failure to comply with its contractual licensing obligations constitute a breach of contract, which Apple has standing to assert as an intended third-party beneficiary.  Further, Evolved's failure to comply with its FRAND obligations estops Evolved from enforcing the Patents-in-Suit against Apple.  Additionally, Evolved's failure to comply with its FRAND obligations constitutes patent misuse and unclean hands, which preclude Evolved from obtaining relief in this action.

## FIFTH DEFENSE

### (Waiver Through Untimely Disclosure to ETSI)

Upon information and belief, LGE failed to timely disclose the Patents-in-Suit (or patents or patent applications within the same families) in accordance with the requirements of the ETSI IPR Policy.  Clause 4.1 of the ETSI IPR Policy required, at all relevant times, that "each MEMBER shall use its reasonable endeavours, in particular during the development of a STANDARD or TECHNICAL SPECIFICATION where it participates, to inform ETSI of ESSENTIAL IPRs in a timely fashion.  In particular, a MEMBER submitting a technical proposal for a STANDARD or TECHNICAL SPECIFICATION shall, on a bona fide basis, draw the attention of ETSI to any of that MEMBER's IPR which might be ESSENTIAL if that proposal is adopted."

Upon information and belief, LGE violated that disclosure requirement and breached its obligations to ETSI and its members by failing timely to disclose the existence of its claimed IPR during the development of the LTE standard, while advocating for the adoption of technologies into the LTE standard that it apparently believed were covered by the Patents-in-Suit.  LGE's standards-setting misconduct constitutes at a waiver of LGE's rights—as well as the rights of LGE's successors-in-interest to the Patents-in-Suit—to enforce any declared-essential patents against any entity practicing the standard.  Thus, this waiver renders the Patents-in-Suit unenforceable against Apple.

## SIXTH DEFENSE

### (Unenforceability)

One or more of the Patents-in-Suit are unenforceable against Apple because of the doctrines of estoppel, laches, unclean hands, patent exhaustion, implied license, and/or other equitable doctrines.  Evolved has engaged in standards-setting misconduct, including without limitation Evolved's breach of its commitments to license declared-essential patents on FRAND terms.

## SEVENTH DEFENSE

### (License)

To the extent that the Patents-in-Suit are essential to any ETSI or 3GPP standard, and to the extent that any of the alleged inventions described in and allegedly covered by the Patents-in-Suit are used, manufactured, or sold by or for Apple, its suppliers, and/or its customers, Apple has a license to the Patents-in-Suit pursuant to Evolved's contractual obligation to license it the Patents-in-Suit on FRAND terms; or, in the alternative, Apple has the irrevocable right to a license on FRAND terms to the Patents-in-Suit.  Additionally, in the alternative, on information

and belief, one or more of the manufacturers or suppliers of any such component or sub-system
allegedly embodying the claimed inventions of the Patents-in-Suit are licensed to practice the
claimed inventions, and therefore Evolved's claims are barred under the doctrine of patent
exhaustion.

## EIGHTH DEFENSE

### (No Injunctive Relief)

Evolved's remedies at law are adequate, and its alleged injury is not immediate or
irreparable, such that equitable relief would be inappropriate for any determined infringement of
the Patents-in-Suit.  Moreover, by virtue of not having offered Apple a license on FRAND terms,
Evolved has no legal right to injunctive relief.

## NINTH DEFENSE

### (Prosecution History Estoppel and Disclaimer)

Evolved's claims are barred in whole or in part by the doctrines of prosecution history
estoppel and/or prosecution disclaimer.

## TENTH DEFENSE

### (Limitation of Damages)

Evolved's right to seek damages is limited, including without limitation by 35 U.S.C. §§
286 and 287.

## COUNTERCLAIMS

Counterclaim Plaintiff Apple, on personal knowledge as to its own acts, and on
information and belief as to all others based on its attorneys' investigation, alleges Counterclaims
against Evolved as follows:

## NATURE OF ACTION

1.      This Counterclaim arises from Evolved's baseless allegations of infringement of United States Patent Nos. 7,746,916 ("the '916 patent"), 7,768,965 ("the '965 patent"), 7,809,373 ("the '373 patent"), 7,881,236 ("the '236 patent"), and 8,218,481 ("the '481 patent") (collectively, the "Patents-in-Suit"), and its assertion of those patents in violation of its contractual obligations to license them on Fair, Reasonable and Non-Discriminatory ("FRAND") terms.

2.      Upon information and belief, Evolved alleges that it is the owner of all rights, title, and interest in the Patents-in-Suit.

3.      Upon information and belief, Evolved acquired any rights it purports to have in the Patents-in-Suit—directly or through an intermediary—from LG Electronics, Inc. ("LGE"). LGE is a member of the European Telecommunications Standards Institute ("ETSI"), a standard-setting organization that produces globally applicable standards for information and communications technologies.  In accordance with ETSI's Intellectual Property Rights ("IPR") Policy, LGE made binding and enforceable promises to ETSI and its members—including Apple entities—to license the Patents-in-Suit on FRAND terms to companies supporting the Long Term Evolution ("LTE") standard.  Those FRAND commitments are binding on LGE's successors-in-interest to the Patents-in-Suit, including Evolved.

4.      Despite and in breach of its binding contractual commitments obligating Evolved to license the Patents-in-Suit on FRAND terms, Evolved demanded from Apple royalty payments that are wholly disproportionate to the royalty rate that its patents should command under any reasonable calculus.

5.      In further breach of its FRAND obligations, Evolved initiated this action against Apple on June 25, 2015, seeking to harm irreparably Apple's business by enjoining it from making, using, selling, or importing products compliant with the LTE standard.

6.      An actual case or controversy exists between the parties concerning the infringement, validity, and enforceability of one or more claims of the Patents-in-Suit.

## PARTIES

7.      Counterclaim Plaintiff Apple is a corporation organized under the law of the State of California and its principal place of business is in Cupertino, California.

8.      Upon information and belief, counterclaim Defendant Evolved is a limited liability company organized and existing under the laws of Delaware with its principal place of business at 805 Las Cimas Parkway, Suite 240, Austin, Texas 78746.

9.      Evolved claims to be the owner and assignee of the Patents-in-Suit.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over the Counterclaim pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), 1367, and 2201.

11.      Apple seeks, *inter alia*, declaratory relief pursuant to 28 U.S.C. §§ 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure.

12.      Evolved is a resident of the State of Delaware and, by filing this action, has submitted to this Court's exercise of personal jurisdiction.

13.      Although this District is not the most convenient forum for this case, Apple has brought these counterclaims in this District in response to Evolved's claims of infringement.

## FACTS

### *Standards Setting Organizations in the Wireless Communications Industry*

14.      To facilitate interoperability among cellular networks and various cellular mobile devices ("handsets"), key players in the wireless communications industry—including mobile carriers, handset manufacturers (*e.g.*, Apple), and chipset manufacturers—collaborate in the development of technical standards that establish specifications for that technology.  This collaborative development of standards is accomplished principally through participation in standard-setting organizations.

15.      The 3rd Generation Partnership Project ("3GPP") is an association of seven regional telecommunications standard-setting organizations, known as Organizational Partners, from Asia, Europe, and North America.  Individual members—including companies such as Apple and LGE—participate in the 3GPP standardization process through their membership in one of the Organizational Partners, such as ETSI.  3GPP was founded initially to develop a third-generation internet protocol system specification but, having met that goal, it now participates in the development of successor specifications, including LTE.  The LTE standard was first specified in the 36 series Technical Specifications of 3GPP Release 8, which was released in December 2008.

16.      Participants in the 3GPP standardization process are required to follow the Intellectual Property Rights ("IPR") Policy of the Organizational Partner to which they belong.  These IPR Policies require participants claiming to own essential IPR to commit to license those IPR on FRAND terms to any implementer of the standard.  Participants in standards development rely on these contractual undertakings to, *inter alia*, ensure that the widespread

adoption of the standard will not be hindered by IPR holders seeking to extract unreasonable or discriminatory royalties and terms from those implementing the standard.

17.      Breaching FRAND commitments, as Evolved has done here, undermines the safeguards that standard-setting organizations put in place to guard against abuse.  By seeking unfairly to exploit a patent's actual or purported incorporation into a standard, the patentee violates the very commitment that led to incorporation of that technology, and the exclusion of competing technologies, in the first place.  Accordingly, violation of FRAND commitments fundamentally disrupts and threatens industry standard-setting, which is tolerated under the antitrust laws only to the extent it is accompanied by safeguards that ensure that the elimination of inter-technology competition is outweighed by the benefits of having a single standard not beholden to or held up by proprietary interests.

### LGE's FRAND Commitments

18.      As a member of ETSI, LGE was and is required to comply with ETSI's IPR Policy, set forth in Annex 6 of its Rules of Procedure.  As LGE's purported successor-in-interest (as described below), Evolved is also required to comply with that policy.

19.      Clause 4 of ETSI's IPR Policy requires, among other things, that members timely disclose to ETSI any IPR they own that may be essential to standards that have been developed or are being developed.  This provision requires disclosure of all IPR that a member believes might be essential to standards under consideration and, in particular, requires a member submitting a technical proposal for a standard or a technical specification to alert the organization to any of that member's IPR which might be essential if that proposal is adopted. Under ETSI's IPR Policy, IPR is defined to include both patent applications and issued patents.

Members of ETSI participating at 3GPP self-declare patents as essential to a particular standard; ETSI does not independently verify whether such patents are actually essential.

20.     Clause 6 of ETSI's IPR Policy requires that standard-setting participants claiming to own essential intellectual property rights commit to license on FRAND terms declared-essential IPR to any party supporting the standard.  In relevant part, Clause 6.1 of the ETSI IPR Policy states:

> When an ESSENTIAL IPR relating to a particular STANDARD or TECHNICAL SPECIFICATION is brought to the attention of ETSI, the Director-General of ETSI shall immediately request the owner give within three months an irrevocable undertaking in writing that is prepared to grant irrevocable licenses on fair, reasonable and non-discriminatory ("FRAND") terms and conditions under such IPR to at least the following extent:
>
> - MANUFACTURE, including the right to make or have made customized components and sub-systems to the licensee's own design for use in MANUFACTURE;
>
> - sell, lease or otherwise dispose of EQUIPMENT so MANUFACTURED;
>
> - repair, use, or operate EQUIPMENT; and
>
> - use METHODS.
>
> The above undertaking may be made subject to the condition that those who seek licenses agree to reciprocate.

21.     In accordance with Clause 6.1 of ETSI's IPR Policy, LGE submitted declarations to ETSI declaring the Patents-in-Suit as essential to the LTE standard, and committing to irrevocably license the those patents on FRAND terms.

22.     As an example, on October 13, 2012, LGE submitted an IPR Information Statement and Licensing Declaration to ETSI, in which it committed that it was "prepared to grant irrevocable licenses under [the IPRs identified in the declaration] on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy."  Among other IPR, the

declaration identified three of the Patents-in-Suit—the '373 patent, the '481 patent, and the '965 patent—as essential to one or more of 3GPP Release 8 Technical Specifications 36.211, 36.321, 36.331, and 36.423.  These Technical Specifications are part of the 36 Series of 3GPP Technical Specifications, which pertain to the LTE standard.

23.      LGE's FRAND declarations relating to the Patents-in-Suit constituted a promise to offer licenses to the claimed standards-essential patents to all interested parties on FRAND terms, foreclosing LGE from claiming infringement of its patents or, in the absence of having offered to license such patents on FRAND terms, seeking to obtain an injunction to prohibit an implementer from practicing the standard.  Those declarations are binding contractual commitments with ETSI, ETSI's members (including Apple entities), and suppliers of sub-systems, components, and products (sold to end users and otherwise) that support the standard. Those commitments imposed ongoing, continuing contractual obligations on the Patents-in-Suit, which traveled with the patents when they were transferred.  Thus, LGE's FRAND commitments are binding on LGE's successors-in-interest to the Patents-in-Suit, including Evolved.

### *Evolved's Acquisition of the Patents-in-Suit*

24.      Each of the Patents-in-Suit was assigned by their respective inventors to LGE while the applications for the Patents-in-Suit were stilling pending at the USPTO.

25.      Upon information and belief, in early 2014, right, title, and interest in each of the Patents-in-Suit were assigned by LGE to TQ Lambda LLC.

26.      Upon information and belief, in late 2014, right, title, and interest in each of the Patents-in-Suit were assigned by TQ Lambda LLC to Evolved.

***Evolved's Attempt to Extract an Unreasonable Royalty from Apple***

27.        On November 4, 2014, Matt DelGiorno, counsel for Evolved, sent an e-mail to Jayna Whitt, in-house counsel for Apple, attaching a letter concerning a portfolio of patents purportedly owned by Evolved.  In that letter, Mr. DelGiorno claimed that "[t]he use of one or more patent claims in the portfolio is required to practice or otherwise comply with LTE standards or technical specifications."  Further, Mr. DelGiorno claimed that, "Evolved Wireless is willing to offer Apple a license on fair, reasonable, and non-discriminatory ("FRAND") terms to any such obligated standards essential technology."  Attached to the e-mail was a document that described Evolved's patent portfolio in general terms, without identifying any particular patents in its portfolio.

28.        On November 13, 2014, Heather Mewes, in-house counsel Apple, responded to Mr. DelGiorno's letter, stating that "Apple respects the valid intellectual property rights of third parties, and we are open to discussions with Evolved Wireless."  Additionally, she requested that Evolved identify specifically the patents it believed Apple was required to license.

29.        On February 4, 2015, Evolved provided Apple with a document identifying the five Patents-in-Suit as patents allegedly essential to the LTE standard, and proposing a royalty rate of "25 cents per end user device."  This proposed royalty was many times higher than its patents should command under any reasonable calculus, including based on the misleading benchmarks that Evolved cited.  Accordingly, Evolved's proposal was not an offer to license the Patents-in-Suit on FRAND terms, but was a breach of Evolved's FRAND obligations.

30.        Moreover, whereas it was apparent from Evolved's summary that the claimed inventions of the Patents-in-Suit were, if infringed at all (which Apple denies), embodied in *components* or *sub-systems* of LTE-compliant end-user devices, it was implicit in Evolved's

summary that it had not licensed or offered to license any manufacturer or supplier of any such component or sub-system.  For this reason, on information and belief, Evolved breached its contractual obligation to license the Patents-in-Suit on FRAND terms for the manufacture of components and sub-systems of LTE-compliant products.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### (Declaratory Judgment of Non-Infringement of the '916 Patent)

31.      Apple repeats and realleges the allegations of the preceding counterclaim paragraphs 1-30 as if fully set forth herein.

32.      Apple has not infringed and does not infringe any valid and enforceable claim of the '916 patent, directly, indirectly, contributorily, by inducement, or in any other manner.

33.      To resolve the legal and factual questions raised by Evolved and to afford relief from the uncertainty and controversy that Evolved's allegations have created, Apple is entitled to declaratory judgment that it has not infringed and is not infringing any valid, enforceable claim of the '916 patent.

## SECOND CAUSE OF ACTION

### (Declaratory Judgment of Non-Infringement of the '965 Patent)

34.      Apple repeats and realleges the allegations of the preceding counterclaim paragraphs 1-34 as if fully set forth herein.

35.      Apple has not infringed and does not infringe any valid and enforceable claim of the '965 patent, directly, indirectly, contributorily, by inducement, or in any other manner.

36.      To resolve the legal and factual questions raised by Evolved and to afford relief from the uncertainty and controversy that Evolved's allegations have created, Apple is entitled to

declaratory judgment that it has not infringed and is not infringing any valid, enforceable claim of the '965 patent.

## THIRD CAUSE OF ACTION

### (Declaratory Judgment of Non-Infringement of the '373 Patent)

37.     Apple repeats and realleges the allegations of the preceding counterclaim paragraphs 1-36 as if fully set forth herein.

38.     Apple has not infringed and does not infringe any valid and enforceable claim of the '373 patent, directly, indirectly, contributorily, by inducement, or in any other manner.

39.     To resolve the legal and factual questions raised by Evolved and to afford relief from the uncertainty and controversy that Evolved's allegations have created, Apple is entitled to declaratory judgment that it has not infringed and is not infringing any valid, enforceable claim of the '373 patent.

## FOURTH CAUSE OF ACTION

### (Declaratory Judgment of Non-Infringement of the '236 Patent)

40.     Apple repeats and realleges the allegations of the preceding counterclaim paragraphs 1-39 as if fully set forth herein.

41.     Apple has not infringed and does not infringe any valid and enforceable claim of the '236 patent, directly, indirectly, contributorily, by inducement, or in any other manner.

42.     To resolve the legal and factual questions raised by Evolved and to afford relief from the uncertainty and controversy that Evolved's allegations have created, Apple is entitled to declaratory judgment that it has not infringed and is not infringing any valid, enforceable claim of the '236 patent.

## FIFTH CAUSE OF ACTION

### (Declaratory Judgment of Non-Infringement of the '481 Patent)

43.     Apple repeats and realleges the allegations of the preceding counterclaim paragraphs 1-42 as if fully set forth herein.

44.     Apple has not infringed and does not infringe any valid and enforceable claim of the '481 patent, directly, indirectly, contributorily, by inducement, or in any other manner.

45.     To resolve the legal and factual questions raised by Evolved and to afford relief from the uncertainty and controversy that Evolved's allegations have created, Apple is entitled to declaratory judgment that it has not infringed and is not infringing any valid, enforceable claim of the '481 patent.

## SIXTH CAUSE OF ACTION

### (Declaratory Judgment of Invalidity of the '916 Patent)

46.     Apple repeats and realleges the allegations of the preceding counterclaim paragraphs 1-45 as if fully set forth herein.

47.     One or more claims of the '916 patent are invalid for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation, §§ 101, 102, 103, and/or 112.

48.     To resolve the legal and factual questions raised by Evolved and to afford relief from the uncertainty and controversy that Evolved's allegations have created, Apple is entitled to declaratory judgment that it has not infringed and is not infringing any valid, enforceable claim of the '916 patent.

## SEVENTH CAUSE OF ACTION

### (Declaratory Judgment of Invalidity of the '965 Patent)

49.     Apple repeats and realleges the allegations of the preceding counterclaim paragraphs 1-48 as if fully set forth herein.

50.     One or more claims of the '965 patent are invalid for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation, §§ 101, 102, 103, and/or 112.

51.     To resolve the legal and factual questions raised by Evolved and to afford relief from the uncertainty and controversy that Evolved's allegations have created, Apple is entitled to declaratory judgment that it has not infringed and is not infringing any valid, enforceable claim of the '965 patent.

## EIGHTH CAUSE OF ACTION

### (Declaratory Judgment of Invalidity of the '373 Patent)

52.     Apple repeats and realleges the allegations of the preceding counterclaim paragraphs 1-51 as if fully set forth herein.

53.     One or more claims of the '373 patent are invalid for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation, §§ 101, 102, 103, and/or 112.

54.     To resolve the legal and factual questions raised by Evolved and to afford relief from the uncertainty and controversy that Evolved's allegations have created, Apple is entitled to declaratory judgment that it has not infringed and is not infringing any valid, enforceable claim of the '373 patent.

## NINTH CAUSE OF ACTION

### (Declaratory Judgment of Invalidity of the '236 Patent)

55.     Apple repeats and realleges the allegations of the preceding counterclaim paragraphs 1-54 as if fully set forth herein.

56.     One or more claims of the '236 patent are invalid for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation, §§ 101, 102, 103, and/or 112.

57.     To resolve the legal and factual questions raised by Evolved and to afford relief from the uncertainty and controversy that Evolved's allegations have created, Apple is entitled to declaratory judgment that it has not infringed and is not infringing any valid, enforceable claim of the '236 patent.

## TENTH CAUSE OF ACTION

### (Declaratory Judgment of Invalidity of the '481 Patent)

58.     Apple repeats and realleges the allegations of the preceding counterclaim paragraphs 1-58 as if fully set forth herein.

59.     One or more claims of the '481 patent are invalid for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation, §§ 101, 102, 103, and/or 112.

60.     To resolve the legal and factual questions raised by Evolved and to afford relief from the uncertainty and controversy that Evolved's allegations have created, Apple is entitled to declaratory judgment that it has not infringed and is not infringing any valid, enforceable claim of the ' 481 patent.

## ELEVENTH CAUSE OF ACTION

### (Breach of Contract)

61.     Apple repeats and realleges the allegations of the preceding counterclaim paragraphs 1-60 as if fully set forth herein.

62.     As alleged above, by committing to license its declared-essential patents on FRAND terms to all parties supporting the LTE standard, LGE entered into contractual commitments with ETSI, ETSI's members (including Apple entities), and suppliers of products that support the standard.  These commitments imposed ongoing, continuing contractual obligations on the Patents-in-Suit.  These commitments traveled with the patents when transferred, and are therefore binding on LGE's successors-in-interest to the Patents-in-Suit, including Evolved.

63.     Each party with products supporting the LTE standard is also an intended third-party beneficiary and obtains the benefits of these contractual commitments.  Apple is therefore an intended third-party beneficiary of Evolved's FRAND commitments.

64.     By failing to provide Apple with FRAND license terms for each of the Patents-in-Suit—and instead offering only a license on manifestly unreasonable terms and then initiating this action—Evolved has breached its FRAND commitments for each of the Patents-in-Suit.

65.     By failing to offer manufacturers or suppliers  of components and sub-systems of Apple LTE-compliant devices licenses on FRAND terms, Evolved has breached its FRAND commitments for each of the Patents-in-Suit.

66.     Each of Evolved's breaches has harmed Apple because they have forced Apple to defend this baseless infringement, and to incur substantial expense in doing so.

## PRAYER FOR RELIEF

WHEREFORE, Apple requests that the Court:

(a)        Dismiss the Complaint in its entirety and with prejudice;

(b)        Enter judgment in favor of Apple against Evolved;

(c)        Declare that Apple has not infringed, and is not infringing, each of the Patents-in-Suit;

(d)        Declare that one or more of the claims of each of the Patents-in-Suit are invalid, void and/or unenforceable against Apple;

(e)        Award Apple damages for Evolved's breaches of its FRAND obligations on the Patents-in-Suit;

(f)        Grant Apple all reasonable attorneys' fees, experts' fees, and costs; and

(g)        Grant such further relief as the Court deems proper and just.

**DEMAND FOR JURY TRIAL**

Counterclaim Plaintiff Apple hereby demand trial by jury on all issues so trial raised by

Evolved's Complaint or by Apple's Answer and Counterclaims.

Respectfully submitted,

OF COUNSEL:                                POTTER ANDERSON & CORROON LLP

Michael D. Jay
Bill Ward, Ph.D.                           By:    _/s/ Bindu A. Palapura_____
Nandan R. Padmanabhan                             David E. Moore (#3983)
Joseph E. Lasher                                  Bindu A. Palapura (#5370)
BOIES, SCHILLER & FLEXNER LLP                     Stephanie E. O'Byrne (#4446)
401 Wilshire Blvd., Suite 850                     Hercules Plaza, 6th Floor
Santa Monica, CA 90401                            1313 N. Market Street
Tel:  (310) 752-2400                              Wilmington, DE  19801
                                                  Tel:  (302) 984-6000
Steven Holtzman                                   dmoore@potteranderson.com
BOIES, SCHILLER & FLEXNER LLP                     bpalapura@potteranderson.com
1999 Harrison Street, Suite 900                   sobyrne@potteranderson.com
Oakland, CA 94612
Tel:  (510) 874 1000                       *Attorneys for Defendant Apple, Inc.*

Dated:  September 15, 2015
1203935 / 42622

33