# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-542-SLR-SRF |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| APPLE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## APPLE INC.'S ANSWERING BRIEF IN OPPOSITION TO EVOLVED WIRELESS, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c) AND MOTION TO STRIKE PURSUANT TO FED. R. CIV. P. 12(f)

OF COUNSEL:

Michael D. Jay
Bill Ward, Ph.D.
Joseph E. Lasher
Nandan R. Padmanabhan
BOIES, SCHILLER & FLEXNER LLP
401 Wilshire Blvd., Suite 850
Santa Monica, CA 90401
Tel:  (310) 752-2400

Steven Holtzman
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Tel:  (510) 874 1000

Dated:  April 4, 2016
1220447 / 42622

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant Apple, Inc.*

# **TABLE OF CONTENTS**

I. NATURE AND STAGE OF PROCEEDINGS ............................................................. 1

II. SUMMARY OF ARGUMENT ....................................................................... 1

III. COUNTERSTATEMENT OF FACTS ................................................................ 3

   A. Evolved Has a Contractual Obligation to Offer a License to the Patents-in-Suit on FRAND Terms. ................................................................................. 3

   B. Evolved Breached its Contractual Obligation by Failing to Offer Apple a License to the Patents-in-Suit on FRAND Terms. ...................................................... 5

IV. ARGUMENT .................................................................................. 6

   A. Apple's Counterclaim for Breach of Contract is Properly Pleaded. ...................... 6

      1. Apple's Factual Allegations Are Sufficient to State a Claim for Breach of Contract Based on Evolved's Breach of its FRAND Obligations. ....................... 7

   B. Apple's Affirmative Defenses Based on Evolved's Breach of its FRAND Obligations Are Properly Pleaded. .................................................................... 9

      1. Apple's Fourth Affirmative Defense Arising from Evolved's Breach of its FRAND Obligations is Well-Pleaded. ................................................ 10

      2. Apple's Fifth Affirmative Defense of Waiver is Well-Pleaded. ....................... 14

      3. Apple's Sixth Affirmative Defense of Unenforceability is Well-Pleaded. ............. 15

      4. Apple's Seventh Affirmative Defense of License is Well-Pleaded. ..................... 15

      5. Evolved's Motion to Strike Should be Denied Because Evolved Has Not Shown that it Will be Prejudiced if Apple's Affirmative Defenses Remain in the Case. ........................................................................ 17

V. CONCLUSION ................................................................................ 18

## TABLE OF AUTHORITIES

**CASES**

*Apple Inc. v. Samsung Elecs. Co.*
    No. 11-cv-01846, 2012 U.S. Dist. LEXIS 67102 (N.D. Cal. May 14, 2012)................. 7, 9

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)..................................................................................................... *passim*

*Barnes & Noble, Inc. v. LSI Corp.*
    849 F. Supp. 2d 925 (N.D. Cal. 2012) ........................................................................ 14, 17

*Belden Techs. Inc. v. Superior Essex Communs. LP*
    733 F. Supp. 2d 517 (D. Del. 2009)................................................................................... 11

*Bell Atl. Corp. v. Twombly*
    500 U.S. 544 (2007)............................................................................................... 6, 7, 9, 10

*Boykin v. KeyCorp*
    521 F.3d 202 (2d Cir. 2008) ............................................................................................ 6-7

*Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*
    72 F.3d 872 (Fed. Cir. 1995) ...................................................................................... 11, 12

*De Forest Radio Tel. Co. v. U.S.*
    273 U.S. 236 (1927).......................................................................................... 10, 12, 16

*Erickson v. Pardus*
    551 U.S. 89 (2007)............................................................................................................... 6

*Hynix Semiconductor Inc. v. Rambus Inc.*
    645 F.3d 1336 (Fed. Cir. 2011) ........................................................................................ 14

*In re Innovatio IP Ventures, LLC*
    No. 11-C-9308, 2013 U.S. Dist. LEXIS 144061 (N.D. Ill. Sept. 27, 2013) ........................ 8

*In re Loestrin 24 Fe Antitrust Litig.*
    No. 14-2071, 2016 WL 698077 (1st Cir. Feb. 11, 2016) .................................................... 9

*In re Park West Galleries, Inc., Markg. and Sales Practices Litig.*
    No. 09-2076, 2010 WL 2640254 (W.D. Wash. June 25, 2010) ......................................... 9

*Internet Media Corp. v. Hearst Newspapers, LLC*
    C.A. No. 10-690, 2012 U.S. Dist. LEXIS 126788 (D. Del. Sept. 6, 2012) ....................... 10

*Masimo Corp. v. Philips Elec. N. Am. Corp.*
    C.A. No. 09-80-LPS, 2015 U.S. Dist. LEXIS 64462 (D. Del. May 18, 2015)................... 12

*McCoy v. Mitsuboshi Cutlery, Inc.*
    67 F.3d 917 (Fed. Cir. 1995) ................................................................................. 10-11, 12

*Microsoft Corp. v. Motorola, Inc.*
　　No. C10-1823 JLR, 2011 WL 11480223 (W.D. Wash. June 1, 2011)........................7-8, 9

*Microsoft Corp. v. Motorola, Inc.*
　　No. C10-1823 JLR, 2013 U.S. Dist. LEXIS 60233 (W.D. Wash. Apr. 25, 2013) .............. 9

*Microsoft Corp. v. Motorola, Inc.*
　　795 F.3d 1024 (9th Cir. 2015) ........................................................................ 11, 12, 14, 15

*MultimediaPatent Trust v. Apple Inc.*
　　10-cv-2618, 2012 U.S. Dist. LEXIS 167479 (S.D. Cal. Nov. 9, 2012)...................... 12, 13

*Novo Transforma Techs., LLC v. Sprint Spectrum L.P.*
　　C.A. No. 14-612-RGA, 2015 U.S. Dist. LEXIS 116647 (D. Del. Sept. 2, 2015) ............... 6

*Qualcomm Inc. v. Broadcom Corp.*
　　548 F.3d 1004 (Fed. Cir. 2008) ....................................................................................... 14

*Quanta Computer, Inc. v. LG Elecs., Inc.*
　　553 U.S. 617 (2008)......................................................................................................... 16

*Research in Motion Ltd. v. Motorola, Inc.*
　　644 F. Supp. 2d 788 (N.D. Tex. 2008) .......................................................................... 7, 9

*Revell v. Port Auth.*
　　598 F.3d 128 (3d Cir. 2010) .............................................................................................. 6

*Sun Microsystems, Inc. v. Versata Enters., Inc.*
　　630 F. Supp. 2d 395 (D. Del. 2009)................................................................................. 10

*Symbol Techs., Inc. v. Aruba Networks, Inc.*
　　609 F. Supp. 2d 353 (D. Del. 2009)......................................................................13-14, 17

*UTStarcom, Inc. v. Starent Networks, Corp.*
　　No. 07-cv-2582, 2008 U.S. Dist. LEXIS 98498 (N.D. Ill. Dec. 5, 2008) ......................... 13

*Vurimindi v. Fuqua Sch. of Bus.*
　　No. 10-234, 2011 U.S. Dist. LEXIS 96496 (E.D. Pa. Aug. 25, 2011) .............................. 18

*Wang Lab. Inc. v. Mitsubishi Elec. Am., Inc.*
　　103 F.3d 1571 (Fed. Cir. 1997) .................................................................................. 15, 16

## STATUTES

28 U.S.C. § 1295...................................................................................................................... 11

Apple Inc. ("Apple") respectfully submits this answering brief in opposition to Evolved Wireless, LLC's ("Evolved") Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) and Motion to Strike Pursuant to Fed. R. Civ. P. 12(f) (the "Motion").

## I. NATURE AND STAGE OF PROCEEDINGS

On June 25, 2015, Evolved filed its Complaint against Apple, asserting patent infringement claims on five patents (the "Patents-in-Suit") allegedly declared essential to the LTE standard. D.I. 1. Apple answered Evolved's Complaint on September 15, 2015, denying that it has infringed any of the Patents-in-Suit and asserting numerous affirmative defenses and counterclaims. D.I. 9. Three weeks later, on October 6, 2015, Evolved filed its Answer to Apple's counterclaims. D.I. 14.

On November 11, 2015, the parties exchanged initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) and Paragraph 3 of the District of Delaware Default Standard for Discovery. Then, on November 13, 2015, Evolved served its Disclosure of Asserted Patents, Accused Products, and Initial Damages Model, and a month later, on December 14, 2015, Evolved served its Disclosure of the Asserted Patent Claims the Accused Products Infringe. Following that, on January 14, 2016, Apple produced core technical documents. The following month, on February 12, 2016, Evolved served its initial infringement contentions, and then, on March 14, 2016, Apple served its initial invalidity contentions. In addition, the parties have each served interrogatories and requests for production of documents.

## II. SUMMARY OF ARGUMENT

Through its Motion, Evolved seeks to avoid the consequences of its repeated breaches of its contractual commitments by asking the Court to dismiss Apple's counterclaim and affirmative

defests, which are largely based on Evolved's breach of its obligation to offer a license to the Patents-in-Suit on fair, reasonable, and non-discriminatory ("FRAND") terms.

1.      With respect to Apple's counterclaim for breach of contract, Evolved seeks to impose on Apple a pleading standard under Rule 8 that no court has ever enforced, and which is fundamentally inconsistent with Supreme Court precedent holding that a claim need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is *plausible* on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In particular, Evolved contends that Apple's counterclaim is deficient merely because Apple has failed to allege precisely what a FRAND royalty rate would be—an issue that will be the subject of extensive fact and expert discovery.  Neither Rule 8 nor any decision interpreting it requires Apple to provide precise figures and calculations at the pleading stage.  Accordingly, Evolved's motion to dismiss should be denied.

2.      With respect to Apple's fourth through seventh affirmative defenses, which similarly arise out of Evolved's breach of its FRAND obligation, among other standard-setting misconduct, Evolved contends that the defenses are defective and should be stricken from Apple's Answer because they sound in contract, rather than substantive patent law.  In other words, Evolved contends that no defense premised on a party's contractual rights or obligations is an effective affirmative defense against a claim of patent infringement.  That is simply incorrect as a matter of law.  It is well-established that defenses sounding in contract—*e.g.*, the existence of an express or implied license—are appropriately asserted against claims of patent infringement.

3.      Each of Apple's FRAND-based affirmative defenses has been held to be properly asserted against claims of patent infringement.  For example, with respect to Apple's fourth

affirmative defense, Apple alleges that Evolved's actions constitute patent misuse, unclean hands, and estoppel, each of which has been held to apply to the kinds of standard setting misconduct alleged in this case. Similarly, with respect to Apple's fifth affirmative defense of waiver and sixth affirmative defense of unenforceability, Federal Circuit precedent is clear that a member of a standard-setting organization may forfeit its right to assert infringement claims against allegedly standards-compliant products through its conduct, including by failing to make timely disclosures of essential patents during the development of a standard. That is precisely what Apple alleges Evolved's predecessor-in-interest did here. Finally, with respect to Apple's seventh affirmative defense of license, a long line of cases establish that the existence of an implied license is an affirmative defense to patent infringement. Accordingly, Evolved's motion to strike apple's FRAND-based affirmative defenses should be denied.

      4.      Evolved's motion to strike should also be denied because Evolved has failed to make any showing that it would be prejudiced by the continuing presence of Apple's FRAND-based defenses in the litigation. Indeed, Evolved cannot make such a showing because each of the challenged defenses arises from the same set of facts—concerning Evolved's breach of its FRAND obligation—that will necessarily be part of this case, as they relate to both Apple's counterclaim for breach of contract and to the parties' contentions related to damages.

## III.    COUNTERSTATEMENT OF FACTS

      Apple's counterclaim and affirmative defenses at issue in Evolved's Motion stem from Evolved's failure to offer Apple a license to the Patents-in-Suit on FRAND terms.

### A.    Evolved Has a Contractual Obligation to Offer a License to the Patents-in-Suit on FRAND Terms.

      The 3rd Generation Partnership Project ("3GPP") is an association of seven regional telecommunications standard-setting organizations ("SSO"), known as Organizational Partners,

from Asia, Europe, and North America. D.I. 9 at 21, ¶ 15. Individual members—including companies such as Apple and LG Electronics ("LGE")—participate in the 3GPP standardization process through their membership in one of the Organizational Partners, such as the European Telecommunications Standards Institute ("ETSI"). *Id.* 3GPP was founded initially to develop a third generation internet protocol system specification but, having met that goal, it now participates in the development of successor specifications, including the long term evolution ("LTE") specification. *Id.* The LTE standard was first specified in the 36 series Technical Specifications of 3GPP Release 8, which was released in December 2008. *Id.*

Participants in the 3GPP standardization process are required to follow the Intellectual Property Rights ("IPR") Policy of the Organizational Partner to which they belong. *Id.* at 21, ¶ 16. If participants claim to own IPR essential to the standard, these IPR Policies require participants to commit to license those IPR on FRAND terms to any implementer of the standard. *Id.* Participants in standards development rely on these contractual undertakings to ensure that the widespread adoption of the standard will not be hindered by IPR holders seeking to extract unreasonable or discriminatory royalties and terms from those implementing the standard. *Id.*

As a member of ETSI, LGE was and is required to comply with ETSI's IPR Policy, set forth in Annex 6 of its Rules of Procedure. *Id.* at 22, ¶ 18. Clause 4 of ETSI's IPR Policy requires, among other things, that members timely disclose to ETSI any IPR they own that may be essential to standards that have been developed or are being developed. *Id.* at 22, ¶ 19. Under ETSI's IPR Policy, IPR is defined to include both patent applications and issued patents. *Id.* Members of ETSI participating at 3GPP self-declare patents as essential to a particular standard; ETSI does not independently verify whether such patents are actually essential. *Id.*

Furthermore, Clause 6 of ETSI's IPR Policy requires that standard-setting participants claiming to own essential IPR commit to license, on FRAND terms, declared-essential IPR to any party supporting the standard. *Id*. at 23, ¶ 20. In accordance with Clause 6.1 of ETSI's IPR Policy, LGE submitted declarations to ETSI declaring the Patents-in-Suit as essential to the LTE standard, and committed to irrevocably license those patents on FRAND terms. *Id*. at 23, ¶ 21. Those commitments imposed ongoing, continuing contractual obligations on the Patents-in-Suit, which traveled with the patents when they were transferred. *Id*. at 24, ¶ 23. As LGE's purported successor-in-interest, Evolved is also required to comply with ETSI's IPR policy. *Id*. at 22, ¶ 18.

**B.**   **Evolved Breached its Contractual Obligation by Failing to Offer Apple a License to the Patents-in-Suit on FRAND Terms.**

Evolved failed to offer a license for the Patents-in-Suit to Apple on FRAND terms, breaching its obligations to comply with ETSI's policy. On November 4, 2014, Matt DelGiorno, counsel for Evolved, sent an e-mail to Jayna Whitt, in-house counsel for Apple, attaching a letter concerning a portfolio of patents purportedly owned by Evolved. *Id*. at 25, ¶ 27. In that letter, Mr. DelGiorno claimed that "[t]he use of one or more patent claims in the portfolio is required to practice or otherwise comply with LTE standards or technical specifications." *Id*. Further, Mr. DelGiorno claimed that, "Evolved Wireless is willing to offer Apple a license on fair, reasonable, and non-discriminatory ('FRAND') terms to any such obligated standards essential technology." *Id*. Attached to the e-mail was a document that described Evolved's patent portfolio in general terms, without identifying any particular patents in its portfolio. *Id*.

On November 13, 2014, Heather Mewes, in-house counsel Apple, responded to Mr. DelGiorno's letter, stating that "Apple respects the valid intellectual property rights of third parties, and we are open to discussions with Evolved Wireless." *Id.* at 25, ¶ 28. Additionally, she requested that Evolved identify specifically the patents it believed Apple was required to

license.  *Id.*  On February 4, 2015, Evolved provided Apple with a document identifying the five

Patents-in-Suit as patents allegedly essential to the LTE standard, and proposing a royalty rate of

"25 cents per end user device."  *Id.* at ¶ 29.  This proposed royalty was many times higher than

its patents should command under any reasonable calculus, including based on the misleading

benchmarks that Evolved cited.  *Id.*  Accordingly, Evolved's proposal was not an offer to license

the Patents-in-Suit on FRAND terms, but was a breach of Evolved's FRAND obligations.  *Id.*

## IV.  ARGUMENT

### A.  Apple's Counterclaim for Breach of Contract is Properly Pleaded.

A Rule 12(c) motion for judgment on the pleadings for failure to state a claim is reviewed

under the same standards that apply to a motion pursuant to Rule 12(b)(6).  *See Novo*

*Transforma Techs., LLC v. Sprint Spectrum L.P.*, C.A. No. 14-612-RGA, 2015 U.S. Dist. LEXIS

116647, at *4 (D. Del. Sept. 2, 2015) (citing *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir.

2010).)  Thus, the court must accept as true all factual allegations in the complaint and draw all

reasonable inferences in the light most favorable to the claimant.  *Iqbal*, 556 U.S. at 678-79

(2009) ("When there are well-pleaded factual allegations, a court should assume their veracity

and then determine whether they plausibly give rise to an entitlement to relief").  Further, the

court must "draw on its judicial experience and common sense" to make the determination.  *Id.*

To survive a motion to dismiss, the factual allegations in the complaint need only be

sufficient "to raise a right to relief above the speculative level . . . on the assumption that all of

the allegations are true."  *Bell Atl. Corp. v. Twombly*, 500 U.S. 544, 555 (2007).  "Specific facts

are not necessary"; rather, the complaint need only "give the defendant fair notice of what the . . .

claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing

*Twombly*, 500 U.S. at 555 (internal quotations omitted)); *see also Boykin v. KeyCorp*, 521 F.3d

202, 215 (2d Cir. 2008) ("[B]oth *Twombly* and *Erickson* explicitly disavow that Rule 8(a) requires any plaintiff . . . to plead 'specific facts'").  In other words, the complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is *plausible* on its face."  *Iqbal*, 556 U.S. at 678 (internal quotations omitted) (emphasis added).

### 1. Apple's Factual Allegations Are Sufficient to State a Claim for Breach of Contract Based on Evolved's Breach of its FRAND Obligations.

Apple has pleaded facts that far exceed what is required to state a plausible claim for breach of contract based on Evolved's violation of its FRAND obligations.  In particular, Apple has pleaded that:  (i) Evolved's predecessor in interest, LGE, made a contractual commitment to ETSI to license the Patents-in-Suit on FRAND terms; (ii) such a commitment is binding on Evolved; and (iii) the proposed royalty rate of 25 cents per user device that Evolved offered prior to instituting this lawsuit was "many times higher than its patents should command under any reasonable calculus, including based on the misleading benchmarks that Evolved cited."  D.I. 9 at 22-25, ¶¶ 18-29.  Other courts have refused to dismiss similar FRAND-based breach of contract claim in which the party had made allegations similar to that which Apple has made here.  *See Research in Motion Ltd. v. Motorola, Inc*., 644 F. Supp. 2d 788, 797 (N.D. Tex. 2008) ("RIM's complaint alleges that Motorola 'has refused to extend FRAND . . . licensing terms to RIM for any of Motorola's purportedly essential patents . . . and has instead demanded of RIM terms that are unfair, unreasonable, and, on information and belief, discriminatory.'"); *Apple Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846, 2012 U.S. Dist. LEXIS 67102, at *44 (N.D. Cal. May 14, 2012) (denying motion to dismiss Apple's breach of contract counterclaim where Apple alleged that Samsung offered terms that were "not fair, reasonable, and non-discriminatory"); *Microsoft Corp. v. Motorola, Inc*., No. C10-1823 JLR, 2011 WL 11480223, at *2-4 (W.D. Wash.

June 1, 2011) (allegations of failure to offer [F]RAND terms sufficient to state a claim for breach of contract).

Evolved does not dispute that Apple has properly pleaded that LGE entered into a binding contract with ETSI to license its declared standard-essential patents, including the Patents-in-Suit, on FRAND terms. *See* Pl.'s Br., D.I. 31 at 5-7. Nor does Evolved dispute that Apple has properly pleaded that, as the successor-in-interest to the Patents-in-Suit, Evolved is bound by that commitment. *Id.* In fact, Evolved has expressly admitted that "LGE made commitments to ETSI to offer licenses to the Patent-in-Suit on FRAND terms and that these commitments are binding on Evolved." *See* D.I. 14 at 11-12, ¶ 62.

Rather, Evolved contends that Apple's counterclaim fails to satisfy the pleading standard of *Iqbal* merely because "Apple fails to allege what a reasonable rate would be."[1] Pl.'s Br., D.I. 31 at 6. But there is nothing in *Iqbal* that would require Apple to plead an actual amount that would constitute a FRAND royalty rate, a determination that will be the subject of extensive fact and expert discovery.[2] Significantly, Evolved does not cite a single case—nor is Apple aware of any such case—that stands for the proposition that Apple is required at the pleading stage to identify precisely what it contends would be a FRAND royalty rate. *See id.* at 4-7.

---

[1] Evolved also contends that Apple's breach of contract counterclaim is unsupported by Apple's allegations concerning Evolved's failure to offer FRAND terms to any manufacturer or supplier of the components or sub-systems incorporated into Apple's products. Pl.'s Br., D.I. 31 at 6-7; *see also* D.I. 9 at 25-26, ¶ 30. These allegations need not constitute or serve as an independent basis for Apple's counterclaim, but are additional background evidence of Apple's breach of contact claim. *See, e.g.*, *Microsoft Corp. v. Motorola, Inc.*, C.A. No. C10-1823 JLR, Order at 19-20 (W.D. Wash., Sept. 24, 2013) (attached hereto as Ex. A).

[2] Determination of the precise contours of what a FRAND demand would be clearly requires expert analysis and need not be specially or specifically pleaded. *See, e.g.*, *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823 JLR, 2013 U.S. Dist. LEXIS 60233, at *42-53 (W.D. Wash. Apr. 25, 2013) (relying on expert analysis to determine a FRAND royalty rate); *In re Innovatio IP Ventures, LLC*, No. 11-C-9308, 2013 U.S. Dist. LEXIS 144061 (N.D. Ill. Sept. 27, 2013) (same).

Contrary to Evolved's unsupported position, the few courts to address dismissal of FRAND-based breach of contract claims have found that far less is required to state a claim for breach of a patent holder's obligation to license standard-essential patents on FRAND terms. *See, e.g.*, *Research in Motion Ltd.*, 644 F. Supp. 2d at 797 (holding that it was sufficient under *Twombly* to allege only that the defendant had demanded "terms that are unfair, unreasonable, and, on information and belief, discriminatory"); *Apple Inc.*, 2012 U.S. Dist. LEXIS 67102, at *44 (denying motion to dismiss Apple's breach of contract counterclaim where Apple alleged that Samsung offered terms that were "not fair, reasonable, and non-discriminatory"); *Microsoft*, 2011 WL 11480223, at *3 (denying motion to dismiss claim for breach of a [F]RAND obligation where terms offered were alleged to be "unreasonable and discriminatory"). Similarly, courts applying the *Twombly* and *Iqbal* standards to damages in other contexts have specifically found that a plaintiff is *not* required to "provide precise figures and calculations at the pleading stage," especially where such calculations would require significant expert analysis. *In re Loestrin 24 Fe Antitrust Litig.*, No. 14-2071, 2016 WL 698077, at *11 (1st Cir. Feb. 22, 2016) (noting that Twombly "declined to require heightened fact pleading of specifics"); *see also In re Park West Galleries, Inc., Mktg. and Sales Practices Litig.,* No. 09-2076, 2010 WL 2640254, at *3 (W.D. Wash. June 25, 2010) ("Plaintiff does not, however, have to plead detailed factual allegations regarding the investigation he performed, nor is he required at the pleading stage to produce an expert in support of his damage allegations.") As these decisions demonstrate, Apple has pleaded facts that are more than sufficient under the pleading standards of *Twombly* and *Iqbal*.

**B.  Apple's Affirmative Defenses Based on Evolved's Breach of its FRAND Obligations Are Properly Pleaded.**

"Motions to strike are generally disfavored and ordinarily are denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the

parties." *Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 402 (D. Del.

2009) (internal citations omitted). When ruling on such a motion, "the [c]ourt must construe all

facts in favor of the nonmoving party and deny the motion if the defense is sufficient under the

law." *Id.* Further, as Evolved plainly acknowledges, the pleading standards of *Twombly* and

*Iqbal* do not apply to affirmative defenses, which "need not be plausible to survive." *Internet

Media Corp. v. Hearst Newspapers, LLC*, No. 10-690, 2012 U.S. Dist. LEXIS 126788, at *7 (D.

Del. Sept. 6, 2012) (citations omitted); Pl.'s Br. D.I. 31 at 8. Thus, affirmative defenses "must

merely provide fair notice of the issue involved." *Internet Media Corp.*, 2012 U.S. Dist. LEXIS

126788, at *7.

### 1. Apple's Fourth Affirmative Defense Arising from Evolved's Breach of its FRAND Obligations is Well-Pleaded.

Evolved contends that Apple's affirmative defenses relating to Evolved's breach of its

FRAND obligations are not "valid and legal affirmative defenses" to Evolved's claims for patent

infringement because each of the FRAND-based defenses arises out of contract, rather than

patent law, and "contract law and patent law do not merge." Pl.'s Br., D.I. 31 at 7-9. In other

words, Evolved contends that no defense premised on a party's contractual rights or obligations

is an effective affirmative defense against a claim of patent infringement. That is simply

incorrect as a matter of law.

The Supreme Court and Federal Circuit have made clear that contract-based defenses,

such as the existence of an express or implied license agreement, are "valid" affirmative defenses

to patent infringement. *See, e.g.*, *De Forest Radio Tel. Co. v. U.S.,* 273 U.S. 236, 241, (1927)

(holding that an implied license is a defense to an action in tort for patent infringement);

*Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 878 (Fed. Cir. 1995)

("an implied license, like an express license, is a defense to patent infringement."); *McCoy v.*

*Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995) ("In most instances under contract law, a patent or trademark owner intentionally creates an express license. A licensee, of course, has an affirmative defense to a claim of patent infringement."); *see also Belden Techs. Inc. v. Superior Essex Commc'ns. LP*, 733 F. Supp. 2d 517, 540 (D. Del. 2009) ("A patent license, express or implied, is a defense to patent infringement.") (citations omitted)

Unable to cite to any decisions on point, Evolved relies on *Microsoft v. Motorola*, a Ninth Circuit decision that is wholly inapposite to the question of whether an accused infringer may raise contract-based affirmative defenses to patent infringement claims. *See Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1034-35 (9th Cir. 2015). The portion of *Microsoft v. Motorola* on which Evolved relies does not concern affirmative defenses; rather, it involves only the purely procedural question of the scope of the Federal Circuit's exclusive jurisdiction under 28 U.S.C. § 1295(a). *Id.* The underlying action in *Microsoft v. Motorola* was "a straight breach of contract action" based on Microsoft's claim that Motorola "had breached its RAND commitments to the IEEE and ITU."[3] *Id.* at 1032, 1037. The case did not involve any questions of patent infringement or patent validity.[4] *Id.* Following a bench trial, Motorola appealed to the Federal Circuit. *Id.* at 1034. The Federal Circuit, however, transferred the appeal to the Ninth Circuit based on the Ninth Circuit's earlier ruling that the Ninth Circuit had jurisdiction over the action because it was a breach of contract action, not one arising under patent law. *Id.* at 1032, 1037.

---

[3] Evolved asserts incorrectly that the case concerned "Microsoft's breach of FRAND counterclaim." Pl.'s Br., D.I. 31 at 8-9. The breach of contract/FRAND claim was an affirmative claim in Microsoft's complaint, not a counterclaim. *Microsoft Corp.*, 795 F.3d at 1031-32.

[4] Motorola had filed a patent infringement action in the same district following Microsoft's breach of contract action. Although the two matters were consolidated for coordination purposes, both the Federal Circuit and the Ninth Circuit concluded that the two suits had not been merged into a single action. *Microsoft Corp.*, 795 F.3d at 1035.

After the appeal was transferred from the Federal Circuit to the Ninth Circuit, Motorola again

raised the jurisdictional issue with the Ninth Circuit, and the Ninth Circuit merely affirmed its

earlier jurisdictional ruling. *See id.* at 795 F.3d 1037.

At best, the relevant portion of *Microsoft v. Motorola* stands for the fairly unremarkable

proposition that a breach of contract claim pertaining to FRAND commitments does not arise

under patent law such that the Federal Circuit has jurisdiction over an appeal of an action

involving only that claim. But simply because a FRAND-related breach of contract claim does

not by itself confer jurisdiction on the Federal Circuit does not mean that an accused infringer is

precluded from raising contract-based affirmative defenses. As described above, courts have

held the opposite. *See De Forest Radio Tel. Co.*, 273 U.S. at 241; *Carborundum Co.*, 72 F.3d at

878; *McCoy*, 67 F.3d at 920.

In addition to incorrectly arguing that a contract-based defense is not a valid affirmative

defense to patent infringement, Evolved also incorrectly argues that Apple's assertions of patent

misuse and unclean hands "are not based in law or fact." Pl.'s Br., D.I. 31 at 10. Evolved

contends, for instance, that patent misuse does not apply here because it is limited to "licensing

activities [that] extend the scope or term of the Patents-in-Suit."[5] That is simply not true. Both

---

[5] Evolved relies on *Masimo Corp. v. Philips Elec. N. Am. Corp.,* C.A. No. 09-80-LPS, 2015 U.S. Dist. LEXIS 64462 (D. Del. May 18, 2015)—a decision in which the court denied a motion to strike a patent misuse affirmative defense—because the patent misuse allegations in that case involve a "stereotypical 'tying' arrangement." Pl. Br., D.I. 31 at 10-11. Although Evolved is correct that *Masimo* involves allegations of a tying arrangement—*i.e.*, where the patentee improperly attempts to expand the scope of its patent grant by conditioning the license of any rights in the patent-in-suit on the acquisition of a license to rights in another patent or product—nothing in that decision precludes the defense of patent misuse on the facts Apple alleges in its Answer. *See, e.g.*, *MultimediaPatent Trust*, 2012 U.S. Dist. LEXIS 167479, at *79 (noting that "several courts have held that a patentee's violation of its RAND obligations may in certain circumstances constitute patent misuse.")

patent misuse and unclean hands apply in cases of standard-setting misconduct, precisely as Apple alleges here. *See, e.g.*, *UTStarcom, Inc. v. Starent Networks, Corp.*, No. 07-cv-2582, 2008 U.S. Dist. LEXIS 98498, at *5-6 (N.D. Ill. Dec. 5, 2008) (denying motion to strike defendant's counterclaim for patent misuse based on the plaintiff's failure to properly disclose these patents to the relevant standards bodies and/or failing to offer a license to these patents on FRAND terms before filing the lawsuit); *MultimediaPatent Trust v. Apple Inc*., No. 10-cv-2618, 2012 U.S. Dist. LEXIS 167479, at *78-81 (S.D. Cal. Nov. 9, 2012) (denying motion for summary judgment on affirmative defenses of patent misuse, unclean hands, and standard-setting organization estoppel based on the plaintiff's violations of its FRAND obligations). As such, patent misuse and unclean hands are valid defenses to patent infringement and apply on precisely the facts alleged in Apple's fourth affirmative defense pertaining to Evolved's failure to comply with its FRAND obligations. Evolved has not presented any authority to the contrary.

Additionally, with respect to estoppel, Evolved argues that "Apple provides no support for its allegation that an alleged contract violation results in estoppel." Pl.'s Br., D.I. 31 at 9. Again, Evolved is wrong. Apple clearly alleges that Evolved's predecessor-in-interest, LGE, misled ETSI and its members by failing to timely disclose the applications corresponding to the Patents-in-Suit during the standards setting process.[6] D.I. 9 at 16-17. These allegations are more than sufficient to provide Evolved with fair notice of the issues involved and therefore withstand a motion to strike. *See Symbol Techs., Inc. v. Aruba Networks, Inc*., 609 F. Supp. 2d 353, 357

---

[6] Evolved asserts—falsely—that "Apple refused to negotiate a license from Evolved Wireless on any terms." D.I. 9. To the contrary, Apple repeatedly indicated that it was open to licensing discussions with Evolved and, in fact, engaged in such discussions. Regardless, this assertion is not a proper basis on which to strike Apple's fourth affirmative defense, as it goes beyond the pleadings.

(D. Del. 2009) (denying motion to strike equitable estoppel defense, despite a sparse factual record, because the insufficiency of the defense was not "clearly apparent").

### 2. Apple's Fifth Affirmative Defense of Waiver is Well-Pleaded.

Evolved contends—without citation or support—that Apple's defense of waiver based on LGE's untimely disclosure of the Patents-in-Suit to ETSI should be stricken because it "is not a valid defense to patent infringement." Pl.'s Br., D.I. 31 at 11-12. To the extent that this argument is based on the same misguided interpretation of the Ninth Circuit's opinion *Microsoft v. Motorola* as is discussed above, it is incorrect as a matter of law. *See supra*, pp. 11-12. Further, Evolved's argument is contradicted by clear Federal Circuit precedent, which holds that "[a] member of an open standard setting organization may be equitably estopped or may have impliedly waived its right to assert infringement claims against standard-compliant products." *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1347-48 (Fed. Cir. 2011); *see also Qualcomm Inc. v. Broadcom Corp.,* 548 F.3d 1004, 1021 (Fed. Cir. 2008) (affirming a finding that Qualcomm waived its right to assert the patents-in-suit against standards-compliant products because it failed to make a timely disclosure to a standard-setting organization in which it had participated).

In support of its waiver defense, Apple alleges that Evolved's predecessor-in-interest LGE had a duty to disclose essential patents during the development of the LTE standards, and that "LGE violated that disclosure requirement . . . by failing to timely disclose the existence of its [intellectual property rights] during the development of the standard." D.I. 9 at 16-17. These allegations plainly support the requirements of the defense, *Barnes & Noble, Inc. v. LSI Corp.*, 849 F. Supp. 2d 925, 942 (N.D. Cal. 2012) (citing *Hynix*, 645 F.3d at 1348), and are more than sufficient to provide Evolved with fair notice of the issues involved. The affirmative defense

therefore should withstand a motion to strike. *See id.* at 942 (denying motion to strike implied waiver defense).

### 3. Apple's Sixth Affirmative Defense of Unenforceability is Well-Pleaded.

As with Apple's other FRAND-based affirmative defenses, Evolved contends that Apple's defense of unenforceability is "not properly pled as an affirmative defense" because it "is based in contract law." Pl.'s Br., D.I. 31 at 12-13. As discussed above, this argument requires that the court accept an unreasonably narrow definition of "affirmative defense" that is based on misreading of the Ninth Circuit's opinion in *Microsoft v. Motorola*. *See supra*, pp. 11-12.

Further, it is disingenuous for Evolved to assert that Apple's sixth affirmative defense does not include sufficient allegations to provide it with fair notice of the issue involved. As Apple clearly states in its Answer, the defense is based on Evolved's and LGE's standard-setting misconduct—*i.e.*, the same FRAND-based misconduct discussed above with respect to Apple's other defenses. D.I. 9 at 17.

### 4. Apple's Seventh Affirmative Defense of License is Well-Pleaded.

Evolved contends—without citation or support—that Apple's defense of license fails as an affirmative defense to patent infringement merely because it sounds in contract. Pl.'s Br., D.I. 31 at 13. This argument fails as a matter of law because it is well-established that the existence of an express or implied license is a defense to patent infringement, even though the rights conferred by a license are contractual in nature. *See Wang Labs. Inc. v. Mitsubishi Elec. Am., Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997) (noting that a license "signifies a patentee's waiver of the statutory right to exclude others from making, using, or selling the patented invention."). "In the words of the Supreme Court: 'No formal granting of a license is necessary in order to give it

effect.  Any language used by the owner of the patent, or any conduct on his part exhibited to another from which that other may properly infer the owner consents to his use of the patent . . . *constitutes a license and a defense to an action in tort*.'"  *Id.* (quoting *De Forest Radio Tel. Co.*, 273 U.S. at 241 (1927)) (emphasis added).

Evolved also argues—again, without citation or support—that Apple's seventh affirmative defense has no basis in law or fact.  Pl.'s Br., D.I. 31 at 13.  This argument is simply wrong.  In its affirmative defense, Apple asserts that, "on information and belief, one or more of the manufacturers or suppliers of any such component or sub-system allegedly embodying the claimed inventions of the Patents-in-Suit are licensed to practice the claimed inventions . . . ."  D.I. 9 at 18.  This assertion is more than enough to support Apple's license defense.  *See, e.g.*, *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 630-37 (2008) (ruling that the patent exhaustion doctrine was a complete defense to patent infringement claims where the accused infringer's supplier of component microprocessors and chipsets that substantially embodied the claimed inventions was licensed to practice the patents-in-suit).

And contrary to Evolved's unsupported argument, a license defense is not only a valid defense to patent infringement, but one that is particularly important in the context of standard essential patents.  *See Wang Labs.*, 103 F.3d at 1582.  For example, a court may find an implied license exists as a consequence of a patentee's misconduct before a standard-setting organization, such as advocating for the adoption of the patented technology into a standard without timely disclosing its pending patent applications.  *Id.* at 1575-76, 1582 (finding an implied license based on patentee's course of conduct).

In support of its license defense, Apple alleges that, to the extent the Patents-in-Suit are essential to any 3GPP or ETSI standard and are used by Apple, "Apple has the irrevocable right

to a license on FRAND terms to the Patents-in-Suit." D.I. 9 at 17-18. This allegation is more

than sufficient to provide Evolved with fair notice of the issues involved with respect to Apple's

license defense, and therefore withstand a motion to strike. *See Barnes & Noble*, 849 F. Supp.

2d at 944-45 n. 15 (denying motion to strike license defense where Barnes and Noble alleged

only that, "to the extent any of the [a]sserted [p]atents are essential to an IEEE, 3GPP, [T1],

ETSI, or [ATIS] standard," it had "an irrevocable right to a license under such patents").

> **5.  Evolved's Motion to Strike Should be Denied Because Evolved Has Not Shown that it Will be Prejudiced if Apple's Affirmative Defenses Remain in the Case.**

Entirely absent from Evolved's opening brief is any showing that Evolved will be

prejudiced by the continuing presence of Apple's FRAND-based defenses in the litigation. Pl.'s

Br., D.I. 31. This is fatal to Evolved's motion to strike. *See, e.g.*, *See Symbol,* 609 F. Supp. 2d at

359 ("[E]ven where the challenged material is redundant, immaterial, impertinent, or scandalous,

a motion to strike should not be granted unless the presence of the surplusage will prejudice the

adverse party.") (internal citations omitted); *Vurimindi v. Fuqua Sch. of Bus*., No. 10-234, 2011

U.S. Dist. LEXIS 96496, at *9 (E.D. Pa. Aug. 25, 2011) (denying motion to strike where the

plaintiff failed to show "that declining to strike this defense [would] prejudice him in any way").

Indeed, Evolved cannot possibly make such a showing, because each of the challenged defenses

arises from the same set of facts—concerning Evolved's breach of its obligation to license the

Patents-in-Suit on FRAND terms—that will necessarily be part of this case regardless of Apple's

affirmative defense. In particular, these defenses are premised on the same facts as Apple's

counterclaim for breach of contract, which, as explained above, is properly pleaded. Further,

even if the Court were to dismiss Apple's counterclaim, the FRAND-related issues are the

subject of allegations in Evolved's Complaint and would therefore be the subject of fact and

expert discovery related to damages.  *See, e.g.*, D.I. 1 at ¶¶ 13 (discussing FRAND obligations), 65 (discussing failed licensing discussions between Evolved and Apple).

## V.     CONCLUSION

For the foregoing reasons, Apple respectfully requests that this Court deny Evolved's motion in full.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Michael D. Jay
Bill Ward, Ph.D.
Joseph E. Lasher
Nandan R. Padmanabhan
BOIES, SCHILLER & FLEXNER LLP
401 Wilshire Blvd., Suite 850
Santa Monica, CA 90401
Tel:  (310) 752-2400

Steven Holtzman
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Tel:  (510) 874 1000

Dated:  April 4, 2016
1220447 / 42622

By:    */s/ Stephanie E. O'Byrne*
         David E. Moore (#3983)
         Bindu A. Palapura (#5370)
         Stephanie E. O'Byrne (#4446)
         Hercules Plaza, 6th Floor
         1313 N. Market Street
         Wilmington, DE  19801
         Tel:  (302) 984-6000
         dmoore@potteranderson.com
         bpalapura@potteranderson.com
         sobyrne@potteranderson.com

*Attorneys for Defendant Apple, Inc.*