# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CALLWAVE COMMUNICATIONS LLC,   :

                :

        Plaintiff,        :

                :       Civil Action No. 12-1701-RGA

        v.            :

                :

AT&T MOBILITY LLC, et al.,     :

                :

        Defendants.    :

## ORDER

Google objects (D.I. 556) to the scope of source code discovery.   Google says it will respond to most of the ordered itemized requests (*id.* at p.10 – "Google . . . will comply with the Special Master's rulings on Items Nos. 3-6, 20, and 22-24."), but also asks that I vacate the rulings on those items.  That request makes little sense, and I deny it.  On item 7, which seems to be the actual point of dispute, review is for abuse of discretion.  It involves a "scope of discovery" issue.  (*See* D.I. 593 at 3).  It appears to me that the discovery sought is relevant,[1] and, while the efforts involved in responding are by no means insignificant, the effort is also not disproportional to the needs of the case, *see* Fed. R. Civ. P. 26(b)(1), and therefore the Special Master's ruling is not an abuse of discretion.   The Sabolish declaration (D.I. 557) sets forth some burden to respond to item 7, but it does not persuade me that there is any abuse of discretion in ordering Google to comply.  Google's objections are therefore **OVERRULED**.  The various procedural issues raised by Google (D.I. 556 at p.10) are not a basis to vacate the Special

---

[1] At the hearing on the matter, Google did not very clearly, if at all, raise either relevance or burden as an objection to CallWave's request.  (D.I. 544, pp. 124-32).

Master's ruling.  Google does not cite to anywhere in the record before the Special Master where it raised the truly procedural issues (*i.e.*, "no conferral," "no briefing,"[2] "unwieldy number of disputes").

Google is **ORDERED** to produce the source code responsive to requests 3-7, 20, and 22-24.

IT IS SO ORDERED this *30* day of June 2016.

Richard G. Andrews

United States District Judge

---

[2] The March 23rd hearing started off with CallWave describing that, "[W]e would proceed without additional briefing." (D.I. 544, p.3).  That suggests to me that Google did not object to the lack of briefing.

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL INC. | ) | |
| and HONEYWELL INTELLECTUAL | ) | |
| PROPERTIES INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No. 04-1337- JJF |
| v. | ) | (Consolidated) |
| | ) | |
| APPLE COMPUTER, INC., et al., | ) | DM-10 |
| | ) | |
| Defendants. | ) | |

**SPECIAL MASTER'S AMENDED  REPORT AND RECOMMENDATION
ON HONEYWELL'S MOTION COMPELLING COMMERCIAL SUCCESS
DISCOVERY FROM CUSTOMER DEFENDANTS (DM-10)[1]**

This is a patent infringement case brought by Honeywell International Inc. and

Honeywell Intellectual Properties Inc. ("Honeywell") alleging infringement of United States

Patent No. 5,280,371 (the "'371 Patent" or the "Patent") that relates to a liquid crystal display

("LCD") screen which reduces the appearance of an undesirable interference pattern called the

"moire effect" on the screen.  These LCDs screens are associated with products such as laptop

computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players,

portable televisions, and/or portable game systems.  Currently before the Special Master is

---

[1]  On February 4, 2009, the Special Master issued a Provisional Report and Recommendation on DM-10.  (D.I. 555).  The Report and Recommendation was provisional and would only become effective if the Report and Recommendation on Manufacturer Defendants' Motion *in Limine* Regarding Admissibility of Honeywell License Agreements DM-10a (D.I. 527 in C.A. No. 04-1337) became a final order of the Court.  By Memorandum Order dated March 4, 2009, the Court overruled Honeywell's objection to DM-10a (D.I. 549) and adopted same.  (D.I. 610). During the time between the issuance of the Provisional Report on DM-10 and the Court's Memorandum Order adopting the Report and Recommendation on DM-10a, Honeywell requested that the Special Master clarify the scope of discovery.  (D.I. 571).  In this regard the Special Master considered the response of certain dismissed customer defendants.  (D.I. 594). The Special Master's conclusions in this regard are found at pages 11-12 herein.

Honeywell's motion to compel commercial success discovery from the Customer Defendants. (D.I. 724).

## BACKGROUND

As the Special Master has already set forth a through review of the background of the case in the Report and Recommendation on DM-1 (D.I. 141 in C.A. No. 04-1337),[2] the Special Master focuses on critical events related to the matter *sub judice*.

Honeywell filed two cases in 2004, mainly against Customer Defendants, alleging infringement of the '371 Patent.  On October 7, 2005, Judge Jordan memorialized a September 9, 2005 conference in an Order, which required, *inter alia,* that within 21 days the Customer Defendants shall "provide to Honeywell the identity of the manufacturers of LCDs incorporated into that Defendant's products and product lines which have been identified by Honeywell with specificity (e.g., by make and model number)." (D.I. 237 at 5, ¶1).  Once the conditions set forth in the above Order were satisfied, the suits against the Customer Defendants were stayed.  (D.I. 237 at 6, ¶ 4).  Judge Jordan noted that "[t]he stay shall be without prejudice to Honeywell seeking an order for further discovery from the Non-Manufacturer defendants." (D.I. 237 at 6, ¶ 4).  Based on the information gathered in this limited discovery, on November 7, 2005, Honeywell amended its complaint to add approximately another 25 Manufacturing Defendants.  On March 16, 2006, Judge Jordan told the parties, in a teleconference, that the trial against the Manufacturing Defendants was to be tried first.  (03/16/2006 Tr. at 33:22-23 and 32:14-15).

Subsequent to Judge Jordan's appointment to the United States Court of Appeals for the Third Circuit, the case was assigned to Magistrate Judge Thynge on December 15, 2006, for all

---

[2] Although the case is consolidated in C.A. No. 04-1337, many docketed entries were filed only in C.A. No. 04-1338.  For simplicity's sake, references to docket numbers are from C.A. No. 04-1338 unless otherwise noted.

pretrial proceedings pursuant to 28 U.S.C. § 636 (b).  Magistrate Judge Thynge requested the

parties' input on strategies for the efficient handling of the cases and conducted a teleconference

on February 22, 2007 regarding the same.  During that hearing, Honeywell set forth its request to

seek discovery from the Customer Defendants regarding commercial success.  Mr. Woods,

counsel for Honeywell, stated that the issue is "whether or not Honeywell should be entitled to

get some . . . limited discovery from the customer defendants with regard to the issue of

commercial success."  (2/22/2007 Tr. at 11:6-9).

On March 2, 2007, Honeywell followed up with its letter brief in support of its request

for commercial success.  (D.I. 724).  Honeywell argued it was entitled to the discovery because

secondary considerations, such as commercial success, can be advanced as indicia of non-

obviousness. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18, 35-36 (1966).  *See also Uniform*

*Jury Instructions for Patent Cases In the United States District Court for the District of*

Delaware, 4.84 OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS (SECONDARY

CONSIDERATIONS (March 1993)).  Honeywell also asserted that its requested discovery is

narrowly tailored.[3]

Both the Customer Defendants and the Manufacturer Defendants filed responses on

March 12, 2007.  (D.I. 732  and D.I. 733, respectively).  The Customer Defendants argue that

they "possess little or no information that is truly relevant to 'commercial success' that is not

already in the possession of the Manufacturer Defendants."  (D.I. 732 at 1).  Additionally, the

Customer Defendants assert that the requested discovery is overbroad, especially because the

'371 Patent covers only the LCD module, not the combination of the LCD module with the

Customer Defendants' end-products.  (*Id.* at 1).  Finally, the Customer Defendants argue that

---

[3]  The Special Master will spell out the discovery as requested at the December 10, 2008 hearing
*infra.*

Honeywell must prove a nexus between commercial success and the invention at issue – that is the module itself and not the end-product.

The Manufacturer Defendants also argue that the claimed invention, the LCD module, is a component of an end-product, and therefore, no nexus can be shown from the commercial success of the Customer Defendants' end-products. Additionally, because Honeywell's requested discovery focuses on features found in the prior art, Honeywell cannot demonstrate a nexus between Claim 3 and the Customer Defendants' end-products. (D.I. 733 at 2-6).

On March 26, 2007, Magistrate Judge Thynge held a subsequent teleconference where additional argument on Honeywell's request for commercial success discovery was considered but not decided. Magistrate Judge Thynge stated:

> Likewise, on the issue of the argument that was made on commercial success by the customer defendants may very well, depending upon how I decide it now, may haunt them later on because I do think commercial success as to the manufacturers may be a different bird than it is against the customer defendants, or a different issue. I should, say, as it is against the customer defendants.
>
> So, I'm not foreclosing what discovery can be taken in the future or what approach can be taken.

(3/26/2007 Tr. at 35:22-36:5).

On February 1, 2008, Judge Farnan was assigned to the cases. During an April 2, 2008 status conference held by Judge Farnan, Honeywell raised the pendency of its commercial success discovery motion. (4/2/2008 Tr. at 13:3-6). After appointing the Special Master to establish a mechanism to permit licensed Customer Defendants to be dismissed from the case, Judge Farnan deferred the commercial success motion:

> If you don't agree on some mechanism to get [the customer defendants'] discovery post their dismissal, then you'll come to me and I will talk with them and see what we can work out... I

4

understand your strategy problem. I'll take that up later, either from you or from them.[4]

(4/2/2008 Tr. at 17:1-7).

After Judge Farnan referred all pending case management issues to the Special Master (Aug. 1, 2008 Oral Order), Honeywell filed a letter on August 5, 2008 (D.I. 1126) again raising the commercial success discovery issue. On August 7, 2008, several Manufacturer Defendants, FUJIFILM Corporation, FUJIFILM U.S.A., Inc., and Optrex America, Inc., and Customer Defendant Apple Computer, Inc. filed responses essentially summarizing arguments previously presented and attaching letters previously submitted to the Court. (D.I. 1128, 1130 and 1131).

On October 17, 2008, Honeywell submitted a letter to the Special Master suggesting an "alternative approach," namely if the Manufacturer Defendants would stipulate to the admissibility of Honeywell's licenses with a number of LCD suppliers ("Honeywell Licenses"), or if the Honeywell Licenses were deemed admissible, Honeywell would agree to withdraw its commercial success discovery request and agree not to seek additional commercial success discovery. (D.I. 390 in C.A. No. 04-1337). On October 21, 2008, the Manufacturer Defendants declined to accept Honeywell's proposal and instead argued as to the inadmissibility of the Honeywell Licenses under Fed. R. Evid. 403 and 408. (D.I. 399 in C.A. No. 04-1337).

During the October 22, 2008 telephonic hearing, after agreeing to a briefing schedule on a Motion in Limine addressing the issue of admissibility of the Honeywell Licenses, the parties then presented arguments regarding Honeywell's request for commercial success discovery. At the request of the Special Master, Honeywell specifically described the requested discovery related to the accused end-products namely: (1) summary sales information; (2) advertising

---

[4] While the Special Master is mindful that Judge Farnan did not rule on the merits of the requested discovery, the Special Master reads Judge Farnan's comments to mean how the discovery was to be secured not if it was to be allowed.

5

literature focusing on features and functionality of the invention; and (3) customer or marketing surveys. (10/22/2008 Tr. at 45-46). Honeywell also requested Fed. R. Civ. P. 30(b)(6) depositions, three hours per each Customer Defendant, 45 hours total, to "authenticate the documents and 'contextualize' them." (10/22/2008 Tr. at 47:1-14). Ultimately, the parties agreed that it would be important to await the issuance of the preliminary *Markman* decision to better frame the context of any permitted commercial success discovery. (10/22/2008 Tr. at 57-59).

On December 9, 2008, Judge Farnan issued a preliminary *Markman* decision (D.I. 500 in C.A. No. 04-1337). On January 21, 2009, the Special Master issued a Report and Recommendation on Manufacturer Defendants' Motion in Limine Regarding Admissibility of Honeywell Agreements granting Manufacturer Defendants' Motion in Limine finding the Licenses inadmissible as evidence of either commercial success or reasonable royalty. (D.I. 527 in C.A. No. 04-1337).

## DISCUSSION AND CONCLUSIONS

The question before the Special Master is whether Honeywell is entitled to the requested commercial success discovery from the Customer Defendants. The Special Master concludes that the answer is yes.[5]

### 1.    The Customer's Commercial Success Evidence Is Relevant

Fed. R. Civ. P. 26(b)(1) provides, in part, that: "Parties may obtain discovery regarding any non-privileged matter that "is relevant to any party's claim or defense . . . relevant information need not be admissible at the trial if discovery appears reasonably calculated to lead

---

[5]  The Special Master believes that Judge Jordan (D.I. 237 at 6, ¶4), Magistrate Judge Thynge (03/26/2007 Tr. at 35:22-36:5) and Judge Farnan (04/22/2008 Tr. at 17:1-7) each contemplated permitting the discovery at issue here.

to the discovery of admissible evidence." Fed. R. Evid. 401 defines relevant evidence as anything "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Because "Rule 401 provides a 'rather liberal standard'" of relevancy, 22 Wright and Miller §5165 at 49, "the threshold for relevance is low." *Thomas v. Dragovich*, 142 Fed. Appx. 33, 37 (3d Cir. 2005). *See also* 22 Wright and Miller, §5165 (the standard for relevance is "low").

There can be no question that evidence of the commercial success of the claimed invention is relevant to resolving the issue of non-obviousness. Indeed, the Supreme Court stressed the importance of this kind of evidence in *Graham v. John Deere Co.*:

> Under § 103 [the test for obviousness], the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy.

383 U.S. 1, 18-19 (1966). Many courts have considered relevant commercial success evidence to include, among other things, volume of sales, evidence of share in the market place, growth in market share, replacing earlier units sold by others, dollar amounts, nexus between sales and the merits of the invention, evidence that the applicant has been able to license the invention, and evidence that licensees have been able to sell the product, as relevant to the issue of commercial success. *See, e.g., Chubb Integrated Sys. Ltd. v. Natl. Bank of Washington*, 103 F.R.D. 52, 57 (D.D.C. 1984) (citing *Kansas Jack Inc. v. Kuhn*, 719 F.2d 1144, 1151 (Fed. Cir. 1983)); *Tec Air, Inc. v. Denso Mfg. Mich. Inc.*, 192 F.3d 1353, 1360-61 (Fed. Cir. 1999) (stating that "based on

7

sales evidence, the jury reasonably could have found that the invention enjoyed commercial success.."); *Rogers v. DESA, Int'l, Inc.*, 166 F. Supp. 2d 1202, 1211-12 (E.D. Mich. 2002) (stating that the alleged infringer's sales "undeniably indicat[ed] the commercial success of the accused product"); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1579 (Fed. Cir. 1997).

The Special Master notes that the Customer Defendants sell the end-products containing the accused modules.  As such, the Customer Defendants may have information in the form of sales, marketing and customer survey's that could provide a link between the claimed technical features of the modules and the benefits those features bring as a component of the end-product. That link could assist Honeywell in carrying its burden to prove the necessary nexus to Claim 3 of the '371 Patent.

The Special Master is mindful that Honeywell has already received commercial success discovery from the Manufacturer Defendants regarding the modules themselves.  Such discovery from the Manufacturer Defendants, however, does not, in the Special Master's view, foreclose additional discovery from the Customer Defendants.  First, the Manufacturer Defendants do not assemble, manufacturer or sell the end-products accused of infringement, and therefore, they have no firsthand information regarding a consumer's purchasing decision, particularly whether the customer was influenced by a moiré-free or cleaner display.  Second, simply because one defendant has produced its commercial success information does not prohibit discovery from other defendants of potentially relevant commercial success information.  Third, although the Special Master is not suggesting either that the discovery from the Manufacturing Defendants is more or less relevant than discovery from the Customer Defendants, or whether that discovery is sufficient to show commercial success, sales of the modules themselves are certainly not

8

indicative of the sales of the end-products.  Fourth, module sales occurred outside the United States, while the end-products were ultimately sold within the United States.  To the extent that any Manufacturer Defendants may claim that their foreign sales are outside the territorial scope of the U.S. Patent laws, Honeywell should not be foreclosed from obtaining discovery on the relevant sales occurring within the United States.  Finally, to the extent that any Manufacturer Defendant failed to provide commercial success information, Honeywell would have no alternative for obtaining commercial success information related to that Manufacturer Defendant's module and its end-product.

Defendants also argue that Honeywell has not established that a nexus exists between the requested commercial success discovery and the claimed invention.  Proof of commercial success requires a showing of a sufficient relationship or "nexus" between the commercial success and the patented invention.  *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988).  The patentee bears the burden of proof to show a *prima facie* case of nexus.  *Id.*

> A *prima facie* case of nexus is generally made out when the patentee shows both that there is commercial success, and that the thing (product or method) that is commercially successful is the invention disclosed and claimed in the patent.

*Imperial Chem. Indus., PLC v. Danbury Pharmacal, Inc.*, 745 F. Supp. 998, 1012 n.57 (D. Del. 1990)(quoting *Demaco*, 851 F.2d at 1392).  Moreover, the Special Master is keenly mindful of the Court's caution in *Demaco* namely, "[w]hen the thing that is commercially successful is not coextensive with the patented invention -- for example, if the patented invention is only a component of a commercially successful machine or process -- the patentee must show prima facie a legally sufficient relationship between that which is patented and that which is sold."

062038.00618/35926490v.1

*Demaco*, 851 F.2d at 1392. Once the patentee has presented a *prima facie* case of nexus, the burden shifts to the challenger to provide rebuttal evidence. *Demaco*, 851 F.2d at 1393.

The question at this point, however, is whether the information sought meets the discoverability test of Fed. R. Civ. P 26(b)(1). Any question about whether Honeywell can meet its burden of either a *prima facie* or an ultimate showing of a legally sufficient relationship between that which is patented and that which is sold must necessarily await later consideration by the Court in appropriate motion practice and ultimately, if submitted, by the jury.

Defendants' further argue that any benefits of these LCD modules are attributable to the prior art, and thus are irrelevant to a commercial success consideration. The Special Master acknowledges that prior art features are not relevant to a nexus determination. ("Commercial success is only probative of nonobviousness if it is the result of the incentive features claimed, as opposed to other factors . . . . Any degree of commercial success . . . could have resulted from the prior art feature disclosed by [prior art references].") *Lamont v. Bergner*, 7 USPQ2d 1580, 1582 (Bd. Pat. App. & Int'f (1988). This is, however, necessarily a contest for another day either before the Court or, if ultimately submitted, before the jury.) The question of the day is discoverability.

### 2.    Honeywell's Requested Discovery Must Be Narrowly Tailored

The Special Master is further mindful of the preliminary *Markman* decision which issued December 9, 2008 and acknowledges that discovery should be limited to the scope of Claim 3 of the '371 Patent, as defined by *Markman*. Recognizing the construction of all 6 terms addressed in the Markman decision impact the nexus showing, the Special Master believes the construction of the term "slight misalignment" is most important to the matter *sub judice* in that the Court ruled that the invention of Claim 3 eliminates or "reduce[s] moiré interference effects." (D.I. 500

at 22, 25 in C.A. No. 04-1337).  In addition, the Court's Markman decision also recognizes that the '371 Patent relates to an LCD with "enhanced brightness while at the same time reducing undesirable 'moiré' interference effects." D.I. 500 at 1.  The Court explains that "the patent teaches that, in addition to providing additional luminance tailoring, two lens arrays may be employed to reduce the moiré interference effects …" D.I. 500 at 1.

The Special Master concludes, therefore, that Honeywell is entitled to discovery from the Customer Defendants related to the Claim 3 elements as outlined in the *Markman* decision: tailored variation of luminance with viewing angle (i.e. brightness and energy efficiency) and a slight misalignment of lens arrays (i.e. lack of moiré).

The Special Master also concludes that the commercial success discovery shall only relate to those accused end-products.  To conclude otherwise would require the Customer Defendants to conduct a burdensome investigation into products not specifically in this case.

**WHEREFORE,** for the foregoing reasons, it is **RECOMMENDED** that:

1.     Honeywell's motion for commercial success discovery from the Customer Defendants (D.I. 724) be **GRANTED.**

2.     The Customer Defendants shall produce to Honeywell documents and information regarding the following:

(a)     summary sales information regarding the accused end-products;

(b)     advertising materials regarding the accused end-products and the advantages of the features related to Claim 3 of the '371 Patent as discussed *supra*; and

(c)     customer and marketing surveys related to the advantages of the features related to Claim 3 of the '371 Patent as discussed *supra*.

11

3.      Honeywell may conduct 3 hours of Fed. R. Civ. P. 30(b)(6) deposition per Customer Defendant, not to exceed a total of 45 hours, to authentic produced documents.

4.      The total time period for Honeywell to conduct discovery shall not exceed 45 days.

5.      Honeywell and the Customer Defendants shall meet and confer to establish a plan for the discovery permitted and shall submit same to the Special Master not later than 5 days after the Special Master's Report and Recommendation becomes a final Order of the Court.

THE SPECIAL MASTER'S REPORT WILL BECOME A FINAL ORDER OF THE COURT, UNLESS OBJECTION IS TAKEN IN ACCORDANCE WITH THE ANTICIPATED ORDER BY THE COURT WHICH SETS AND SHORTENS THE TIME WITHIN WHICH AN APPLICATION MAY BE FILED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 53(f).

ENTERED this 5th day of March, 2009.

_____
Vincent J. Poppiti, Esq. (DE ID # 100614)
Special Master

12

# Evolved Wireless

# Case No. 15-542

# EXHIBIT C

# (REDACTED)

# Evolved Wireless
# Case No. 15-543
# EXHIBIT C

# (REDACTED)

# Evolved Wireless

# Case No. 15-544

# EXHIBIT C

# (REDACTED)

# Evolved Wireless

# Case No. 15-545

# EXHIBIT C

# (REDACTED)

# Evolved Wireless

# Case No. 15-546

# EXHIBIT C

# (REDACTED)