IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-542-JFB-SRF |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| APPLE, INC., | ) | |
| | ) | ████████████ |
| Defendant. | ) | **REDACTED** |
| | ) | **PUBLIC VERSION** |
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-543-JFB-SRF |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| HTC CORPORATION, and | ) | |
| HTC AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-544-JFB-SRF |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| LENOVO GROUP LTD., LENOVO (UNITED | ) | |
| STATES) INC., and MOTOROLA MOBILITY | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

| | |
|---|---|
| EVOLVED WIRELESS, LLC, | ) |
| | ) |
| Plaintiff, | ) C.A. No. 15-545-JFB-SRF |
| | ) |
| v. | ) **JURY TRIAL DEMANDED** |
| | ) |
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| EVOLVED WIRELESS, LLC, | ) |
| | ) |
| Plaintiff, | ) C.A. No. 15-546-JFB-SRF |
| | ) |
| v. | ) **JURY TRIAL DEMANDED** |
| | ) |
| ZTE (USA) INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| EVOLVED WIRELESS, LLC, | ) |
| | ) |
| Plaintiff, | ) C.A. No. 15-547-JFB-SRF |
| | ) |
| v. | ) **JURY TRIAL DEMANDED** |
| | ) |
| MICROSOFT CORPORATION, MICROSOFT MOBILE OY and NOKIA INC., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

OF COUNSEL:
Stephen S. Korniczky
Martin R. Bader
Ericka J. Schulz
Kayla Page
SHEPPARD, MULLIN, RICHTER &
    HAMPTON, LLP
12275 El Camino Real, Suite 200
San Diego, CA 92130
(858) 720-8900


OF COUNSEL:
Mitchell G. Stockwell
Richard W. Goldstucker
KILPATRICK TOWNSEND AND
    STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
(404) 815-6500


Taylor H. Ludlam
KILPATRICK TOWNSEND AND
    STOCKTON LLP
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
(919) 420-1700


Akarsh P. Belagodu
KILPATRICK TOWNSEND AND
    STOCKTON LLP
607 14th Street, NW, Suite 900
Washington, DC 20005
(202) 508-5800

Philip A. Rovner (No. 3215)
Jonathan A. Choa (No. 5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com
*Attorneys for Defendants HTC Corporation and HTC America, Inc.*

David E. Moore (No. 3983)
Bindu A. Palapura (No. 5370)
Stephanie E. O'Byrne (No. 4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com
*Attorneys for Defendants Lenovo Group Ltd., Lenovo (United States) Inc., and Motorola Mobility LLC*

OF COUNSEL:
Michael D. Jay
Bill Ward, Ph.D.
Nandan R. Padmanabhan
Micol Small
Martin Ellison
BOIES, SCHILLER & FLEXNER LLP
401 Wilshire Blvd., Suite 850
Santa Monica, CA 90401
(310) 752-2400

Steven Holtzman
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
(510) 874-1000

David E. Moore (No. 3983)
Bindu A. Palapura (No. 5370)
Stephanie E. O'Byrne (No. 4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com
*Attorneys for Defendant Apple, Inc.*

OF COUNSEL:
Kevin P.B. Johnson
Victoria F. Maroulis
Todd M. Briggs
Charles M. Stiernberg
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5100

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
*Attorneys for Defendants Samsung Electronics Co.,
Ltd. and Samsung Electronics America, Inc.*

OF COUNSEL:
Jay H. Reiziss
Natalie A. Bennett
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, DC 20001
(202) 756-8000

Charles M. McMahon
Hersh H. Mehta
MCDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, IL 60606
(312) 372-2000

Kelly E. Farnan (No. 4395)
Travis S. Hunter (No. 5350)
RICHARDS, LAYTON & FINGER, P.A.
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
hunter@rlf.com
*Attorneys for Defendant ZTE (USA) Inc.*

OF COUNSEL:                                       Rodger D. Smith II (No. 3778)
Richard A. Cederoth                               Jeremy A. Tigan (No. 5239)
SIDLEY AUSTIN LLP                                 MORRIS, NICHOLS, ARSHT & TUNNELL LLP
One South Dearborn Street                         1201 North Market Street
Chicago, IL 60603                                 P.O. Box 1347
(312) 853-7000                                    Wilmington, DE 19801
                                                  (302) 658-9200
                                                  rsmith@mnat.com
Ellen S. Robbins                                  jtigan@mnat.com
SIDLEY AUSTIN LLP                                 *Attorneys for Defendants Microsoft Corporation,*
555 West Fifth Street                             *Microsoft Mobile Oy, and Microsoft Mobile Inc.*
Los Angeles, CA 90013                             *(f/k/a Nokia Inc.)*
(213) 896-6000

Joseph A. Micallef
Anna M. Weinberg
Wonjoo Suh
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000

Dated: October 6, 2017

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     NATURE AND STAGE OF THE PROCEEDINGS ............................................1

III.    SUMMARY OF THE ARGUMENT .....................................................................1

     A.      Defendants do Not Infringe the Asserted Claims of the '373 Patent..................1

     B.      Defendants do Not Infringe the Asserted Claims of the '236 Patent..................2

IV.     STATEMENT OF FACTS .....................................................................................2

     A.      The '373 Patent...................................................................................................2

        1.      Overview of the '373 Patent ......................................................................3

        2.      To Overcome the Prior Art, Patentee Amended the Asserted Claims of the '373 Patent During Prosecution to Require Transmitting a "dedicated preamble used only for a specific terminal" from a Base Station to a Terminal ....................................5

        3.      In a Related but Unasserted Child Patent, Patentee Separately Claimed Transmitting "an index of the dedicated *preamble*" ...................6

        4.      ███████████████████████████████ ..............................7

        5.      ███████████████████████████ ..............................8

        6.      Evolved Did Not Assert a Doctrine of Equivalents Theory in its Infringement Contentions ........................................................................9

     B.      The '236 Patent.................................................................................................10

        1.      Overview of the '236 Patent ...................................................................10

        2.      The Asserted Claims of the '236 Patent ..................................................12

        3.      Petitions for *Inter Partes Review* of the '236 Patent.............................12

        4.      Evolved Argued before the Patent Office that the Claims of the '236 Patent Transmit Msg3 Data "only if" or "only when" the UL Grant is Received on the Random Access Response Message..................13

        5.      Evolved's Expert Dr. Cooklev also Opines that the Claims of the '236 Patent Transmit Msg3 Data "only if" or "only when" the UL Grant is Received on the Random Access Response Message..................13

        6.      The LTE Standard Specifies the Transmission of Msg3 Data if the Uplink Grant is Received on Messages other than the Random Access Response███████████████████████ ..........14

V.      ARGUMENT.......................................................................................................15

A.    Legal Standard ...........................................................................................15

B.    Defendants Do Not Infringe Any Asserted Claim of the '373 Patent ..................17

    1.    No Accused Product Meets the "dedicated preamble" Limitation in the Asserted Claims of the '373 Patent.....................................................18

        (a)    No Accused Product Literally Meets the "dedicated preamble" Limitation ................................................................18

        (b)    Evolved is Barred from Asserting an Infringement Theory Under the Doctrine of Equivalents ..............................................21

            (i)    Evolved Waived Its Doctrine of Equivalents Infringement Theory By Untimely Disclosure ..................21

            (ii)    Prosecution History Estoppel Bars Evolved from Asserting Equivalent Infringement ....................................22

        (c)    Nevertheless, No Accused Product Meets the "dedicated preamble" Limitation Under the Doctrine of Equivalents.............24

        (d)    Evolved's Attempt to Stretch the Meaning of "dedicated preamble" is Incorrect as a Matter of Law.................................25

    2.    No Accused Product Meets the "used only for a specific terminal" Limitation of the Asserted Claims of the '373 Patent.............................27

C.    Defendants Do Not Infringe Any Asserted Claim of the '236 Patent ..................29

    1.    Evolved's Clear and Unmistakable Statements to the Patent Office Constitute a Disavowal of Claim Scope ................................................29

    2.    ███████████████████████████████████████ ...................31

VI.    CONCLUSION...........................................................................................34

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*,
  811 F.3d 1334 (Fed. Cir. 2016)............................................................................ 17

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)............................................................................................ 15

*Applied Med. Res. Corp. v. Tyco Healthcare Grp. LP*,
  534 F. App'x 972 (Fed. Cir. 2013) ................................................................ 17, 24

*Aylus Networks, Inc. v. Apple Inc.*,\
  856 F.3d 1353 (Fed. Cir. 2017)........................................................................... 29

*Bayer AG v. Elan Pharm. Research Cor*p.,
  212 F.3d 1241 (Fed. Cir. 2000)........................................................................... 16

*Celotex Corp. v. Cattrett*,
  477 U.S. 317 (1986)............................................................................................ 15

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*,
  438 F.3d 1374 (Fed. Cir. 2006)........................................................................... 26

*EMD Millipore Corp. v. AllPure Techs., Inc.*,
  768 F.3d 1196 (Fed. Cir. 2014)........................................................................... 23

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*,
  149 F.3d 1309 (Fed. Cir. 1998)..................................................................... 17, 24

*Fairchild Semiconductor Corp. v. Power Integrations Inc.*,
  C.A. No. 12-540-LPS (D. Del. Oct. 22, 2014) ................................................... 22

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
  535 U.S. 722 (2002)...................................................................................... 23, 24

*Freedman Seating Co. v. Am. Seating Co.*,
  420 F.3d 1350 (Fed. Cir. 2005)........................................................................... 25

*Home Semiconductor Corp. v. Samsung Elecs. Co.*,
  No. 2016-2215, 2017 WL 3142331 (Fed. Cir. July 25, 2017)............................. 16

*Huawei Tech. Co. Ltd. v. T-Mobile US, Inc.*,
  No. 2:16-cv-00052, D.I. 379 (E.D. Tex. Sept. 9, 2017)..................................... 29

*In re Garrido*,
  646 F. App'x 942 (Fed. Cir. 2016) ..................................................................... 26

*Kahn v. Gen. Motors Corp.*,
  135 F.3d 1472 (Fed. Cir. 1998)........................................................................... 16

iii

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996) ............................... 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ........................................................................................................ 15

*NTP, Inc. v. Research In Motion, Ltd.*,
418 F.3d 1282 (Fed. Cir. 2005) ...................................................................................... 26

*Omega Eng'g, Inc, v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003) ...................................................................................... 25

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ...................................................................................... 16

*Podobnik v. U.S. Postal Serv.*,
409 F.3d 584 (3d Cir. 2005) ........................................................................................... 15

*Reckitt Benckiser Inc. v. Watson Labs., Inc.*,
430 F. App'x 871 (Fed. Cir. 2011) ................................................................................. 23

*Schindler Elevator Corp. v. Otis Elevator Co.*,
593 F.3d 1275 (Fed. Cir. 2010) ...................................................................................... 25

*SightSound Techs., LLC v. Apple Inc.*,
809 F.3d 1307 (Fed. Cir. 2015) ................................................................................. 26, 27

*SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*,
859 F.2d 878 (Fed. Cir. 1988) ........................................................................................ 16

*Spectrum Int'l v. Sterilite Corp.*,
164 F.3d 1372 (Fed. Cir. 1988) ...................................................................................... 29

*Springs Window Fashions LP v. Novo Indus., L.P.*,
323 F.3d 989 (Fed. Cir. 2003) ........................................................................................ 29

*St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.*,
No. CA 04-1436-LPS, 2012 WL 1015993 (D. Del. Mar. 26, 2012), *aff'd*, 522 F. App'x 915 (Fed. Cir. 2013) ............................................................................................. 22

*Teashot LLC v. Green Mountain Coffee Roasters, Inc.*,
595 F. App'x. 983 (Fed. Cir. 2015) ................................................................................ 22

*Thorner v. Sony Computer Entm't Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012) ...................................................................................... 16

*Voda v. Cordis Corp.*,
536 F.3d 1311 (Fed. Cir. 2008) ...................................................................................... 23

*Wahpeton Canvas Co. v. Frontier, Inc.*,
870 F.2d 1546 (Fed. Cir. 1989) ...................................................................................... 16

*Walker Digital, LLC v. Google, Inc.*,
2013 WL 2949109 (D. Del. June 14, 2013) ................................................................... 22

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997)........................................................................................................ 17, 24

**Statutes**

35 U.S.C. § 271.................................................................................................................. 16

Fed. R. Civ. P. 56............................................................................................................... 15

**NOTE ON CITATIONS**

- "Defendants" refers collectively to Apple Inc. ("Apple"), HTC Corporation, HTC America, Inc. (collectively "HTC"), Lenovo (United States) Inc., Motorola Mobility LLC (collectively "Motorola"), Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. (collectively "Samsung"), ZTE (USA) Inc. ("ZTE"), Microsoft Corporation, Microsoft Mobile Oy, and Microsoft Mobile Inc. (f/k/a Nokia Inc.) (collectively "Microsoft") in the above-captioned matters.

- "Evolved" refers to plaintiff Evolved Wireless, LLC in the above-captioned matters.

- Unless otherwise noted, docket entries (D.I.) cited herein refer to Case No. 15-cv-545.

- Unless otherwise noted, all exhibits cited herein are attached to the Declaration of Todd M. Briggs in support of Defendants' Opening Brief ("Briggs Decl."), or the Declaration of Michael D. Jay in support of Defendants' Opening Brief ("Jay Decl."), both filed concurrently herewith.

- The patents-in-suit, U.S. Patent. Nos. 7,809,373 ("the '373 Patent") and 7,881,236 ("the '236 Patent") are attached as Exhibits A and B, respectively, to the Briggs Decl.  Additionally, U.S. Patent No. 8,219,097 ("the '097 Patent")—which shares a specification that claims priority to the same filing as the '373 Patent—is attached as Exhibit C to the Briggs Decl.

- References to the patents-in-suit are indicated by column and line number, or by claim number.  A reference to "'373 at 2:40-3:34" therefore means column 2, line 40 through column 3, line 34 of Exhibit A, U.S. Patent No. 7,809,373.

- Portions of the file histories of the '373 Patent and the '097 Patent are attached as Exhibits D and E to the Briggs Decl., respectively, and are referenced by appendix page number.  A reference to "Ex. D at A-0057" therefore means appendix page A-0057 of the '373 Patent file

vi

history (EVOLVED-0000132).

- Plaintiff's technical expert, Dr. Todor Cooklev, was deposed twice in these matters.  Dr. Cooklev's first deposition was taken August 21-23, 2017 by all Defendants collectively ("Cooklev I").  Dr. Cooklev's second deposition was taken the afternoon of August 23, 2017 by Samsung only ("Cooklev II").

- Deposition transcripts are referenced by the name of the deponent.  A reference to "Cooklev I Tr., 333:15-18" therefore means page 333, lines 15-18 of the Cooklev I deposition transcript, excerpts of which are attached as Exhibit F to the Briggs Decl.  Similarly, "Cooklev II Tr." refers to the Cooklev II deposition transcript, excerpts of which are attached as Exhibit G, and "Kakaes Tr." refers to the August 18-19, 2017 deposition of Dr. Apostolos Kakaes, a technical expert retained on behalf of some of the Defendants, excerpts of which are attached as Exhibit H to the Briggs Decl.  "Bims Tr." refers to the August 11, 2017 deposition of Dr. Harry Bims, a technical expert retained on behalf of Apple, excerpts of which are attached as Exhibit AA to the Jay Decl.

- Evolved served substantially identical opening infringement experts reports in all six cases against Defendants.  Citations to Dr. Cooklev's opening infringement report herein refer to the report served in the Samsung matter (15-cv-545), which for purposes of the instant motion is representative of Dr. Cooklev's opening infringement reports served in the other five matters.  (*See, e.g.*, Cooklev I Tr. 326:16-327:3).

- References to expert reports are indicated by the name of the expert witness and paragraph number.  A reference to "Cooklev Op. ¶¶ 364-367" therefore means paragraphs 364 through 367 of Dr. Cooklev's opening infringement report, served on May 22, 2017, excerpts of which are attached as Exhibit I to the Briggs Decl.  "Cooklev Reb." refers to the June 26,

vii

Case 1:15-cv-00545-JFB-SRF    Document 253    Filed 10/13/17    Page 13 of 50 PageID #: 12250

2017 corrected rebuttal report of Dr. Cooklev, served in the matters against HTC, Motorola, Samsung, ZTE, and Microsoft, excerpts of which are attached as Exhibit J to the Briggs Decl.  Similarly, "Kakaes Reb." refers to the June 26, 2017 rebuttal report of Dr. Apostolos K. Kakaes, which is attached to his declaration filed herewith, and "Goldberg Reb." refers to the June 26, 2017 rebuttal report of Dr. Benjamin Goldberg, a technical expert retained on behalf of some of the Defendants, which is attached to his declaration filed herewith.  "Bims Op." refers to the May 22, 2017 opening report of Dr. Harry V. Bims, excerpts of which are attached as Ex. 1 to his declaration filed herewith ("Bims Decl.") "Bims Reb." refers to the June 26, 2017 rebuttal report of Dr. Bims, excerpts of which are attached as Ex. 2 to the Bims Decl., and "Bims Supp." Refers to the October 4, 2017 supplemental non-infringement report of Dr. Bims, excerpts of which are attached as Ex. 3 to the Bims Decl.

- Evolved served substantially identical infringement contentions in all six cases against Defendants.  Citations to Evolved's infringement contentions herein refer to the contentions served in the Samsung matter (15-cv-545), which for purposes of the instant motion are representative of Evolved's infringement contentions served in the other five matters. Excerpts of Evolved's February 12, 2016 Initial Infringement Contentions are attached as Exhibit L, and excerpts of Evolved's January 27, 2017 Final Infringement Contentions are attached as Exhibit M to the Briggs Decl.

- All other exhibits referenced by a single letter are attached the Briggs Decl., and all other exhibits referenced by double letters are attached to the Jay Decl.

## I.     INTRODUCTION

Defendants move for summary judgment of non-infringement with respect to all asserted claims of the '373 and '236 Patents.  There is no dispute over the operation of the accused products, and Evolved's infringement theories fail as a matter of law.

## II.     NATURE AND STAGE OF THE PROCEEDINGS

Defendants refer the Court to their Opening Brief in Support of Motion for Summary Judgement of Covenant not to Sue for an overview of the proceedings thus far. (D.I. 224).

## III.     SUMMARY OF THE ARGUMENT

### A.     Defendants Do Not Infringe the Asserted Claims of the '373 Patent

Defendants do not infringe any asserted claim of the '373 Patent for two independent reasons. ████████████████████████████████████████ Every asserted claim requires the transmission of a "dedicated **preamble**" from a base station to a terminal.  It is undisputed that: ███████████████████████████████████████████████

███████████████████████████████████████████ Patentee has conceded that a dedicated preamble and an index are distinct by claiming them separately in a child patent of the '373 patent. ████████████████████████████████

████████████████████████████████████████ As a matter of law, prosecution history estoppel and waiver bar Evolved from asserting equivalents of the "preamble" requirement. ███████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████

Separately, Defendants do not infringe any asserted claim of the '373 Patent because no Accused Product meets the claim limitation that the "dedicated preamble" be "used **only** for a

**specific** terminal." The undisputed facts demonstrate that ███████████████████

████████████████████████████████████████████████████████████████████

███████████████    For these two independent reasons, no Defendant infringes the '373 Patent.

> **B.**    **Defendants Do Not Infringe the Asserted Claims of the '236 Patent**

Defendants do not infringe any asserted claim of the '236 Patent ████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████    Evolved has made consistent and repeated

statements before the U.S. Patent Office and in this litigation that the term "if" in the asserted

independent claims of the '236 Patent should be interpreted as "only if" or "only when."

Evolved's statements constitute prosecution disclaimer, and thus are a disavowal of claim scope.

Given Evolved's disclaimer of claim scope, the Accused Products do not infringe any asserted

claim of the '236 Patent ████████████████████████████████████████

████████████████████████████████████████████████████

> **IV.    STATEMENT OF FACTS**

> **A.    The '373 Patent**

Evolved is asserting claims 15-21 and 23-25 of the '373 Patent against all Defendants'

mobile terminal products, *e.g.*, cellphones ("Accused Terminals"). Evolved is also asserting

claims 1-10 and 12-13 against Samsung's base station products, *e.g.*, cell towers ("Accused Base

Stations"). The Accused Terminals and Accused Base Stations are collectively referred to herein

as the "Accused Products." ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████    Evolved's infringement expert, Dr. Todor Cooklev, opines

that infringement, at least with respect to the method claims, can be established by analyzing the

Long Term Evolution ("LTE") Standard itself.  (Cooklev I Tr. 511:3-12).  ██████████

██████████████████████████████████████████████

██████████████████████████████  ██████████████

### 1.    Overview of the '373 Patent

The '373 Patent relates to methods and an apparatus for performing a handover[2] of a mobile terminal from a source base station to a target base station.[3]  ('373 at 5:51-63, Fig. 1).  A handover occurs when a terminal moves from an area (cell) covered by a first (source) base station to an area (cell) covered by a second (target) base station—for example, a cell phone in a moving car may be handed over from a source base station to a new, target base station.  In order for the mobile terminal to establish a connection to the target base station, it must transmit an initial message—called a "preamble"—on the "(Physical) Random Access Channel" (commonly abbreviated as (P)RACH).  (*Id.* at 2:48-49, 2:64-66, 4:66-5:1).  This process is called a "random access procedure."  Among other things, a preamble consists of a signature—*i.e.*, a sequence of numbers—that differentiates it from other preambles transmitted by other terminals.  If two terminals transmit the same preamble at the same time, a RACH "collision" can occur, leading to handover processing delays.  (*Id.* at 5:4-7, 5:51-57).  This is generally referred to as a

---

[1]  ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

[2]   The Court previously construed the term "handover" to mean "Transfer of a terminal's connection with a source base station to a target base station."  (D.I. 128 at 7).

[3]   The specification alternately uses the terms "user equipment" or "UE" for mobile terminals and the terms "eNodeB" or "eNB" for base stations.  (*See, e.g.,* '373 at 3:42-44; 6:3-4; Cooklev I Tr. 161:22-162:1; 320:8-19).

"contention-based" random access procedure. (Cooklev I Tr. 333:15-18; Ex. D at A-0203).

The '373 Patent purports to solve the problem of RACH collisions by pre-allocating a preamble for the terminal to use during a handover—thereby resulting in a "contention-free" random access procedure. ('373 at 5:11-17; 7:31-32; Ex. D at A-0134). For example, in the exemplary embodiment of Figure 9, a terminal (10) first transmits a measurement report (S10) to a source base station (12), from which the source base station determines (S11) whether to perform a handover of the terminal from the source base station to a target base station (14).[4] ('373 at 6:9-23). The source base station then transmits a handover request message (S12) to the target base station. (*Id.* at 6:25-27). The target base station, in turn, pre-allocates a dedicated preamble for the terminal to use and sends a message (S13) confirming the handover request to the source base station. (*Id.* at 6:30-33). The source base station then transmits a Handover Command message (S14) to the terminal, which includes the dedicated preamble necessary for establishing a connection to the target base station. (*Id.* at 6:66-7:7). To avoid a RACH collision, the specification explains that the terminal should transmit the

**Fig 9**

_____

[4]   The Court previously construed "target base station" to mean "The source base station determines that the mobile terminal will be transferred to the target base station." (D.I. 128 at 8).

4

dedicated preamble (S15) to the target base station.  (*Id.* at 6:50-54; 7:8-13; 7:30-33).

**2.     To Overcome the Prior Art, Patentee Amended the Asserted Claims of the '373 Patent During Prosecution to Require Transmitting a "dedicated preamble used only for a specific terminal" from a Base Station to a Terminal**

On October 27, 2006, the application (11/553,939) that issued as the '373 Patent was filed with the U.S. Patent & Trademark Office.  (Ex. D. at A-0092).  The application as filed had 34 claims, none of which originally include the phrase "dedicated preamble used only for a specific terminal."  (*Id.* at 132, 152-157).

On June 15, 2009, the patent examiner rejected the pending claims based on two prior art references: Koo (US 2007003225 A1) in view of Benedittis (US 20030076812 A1).  (*Id.* at 404).  On September 25, 2009, to overcome the cited prior art, the applicant amended the claims to include, among other additions, the limitation "**wherein the preamble information is a dedicated preamble used only for a specific terminal**."  (*Id.* at 457) (emphasis added).

---

1. (Currently amended) A method of transmitting access information in a mobile communications system, the method comprising:

deciding to perform a handover for a terminal to a cell of a target base station;

transmitting, from a source base station to the target base station, a handover request for performing a handover of the terminal from the source base station to the target base station; station; and

receiving, at the source base station, access information from the target base station that received the handover request, wherein the receiving of the access information occurs after the transmitting of the handover request; and

transmitting, from the source base station to the terminal, the access information being configured to permit the terminal to access the target base station;

request, wherein the access information is then transmitted to the terminal to access the target base station,

wherein the access information comprises random access information used in a random access procedure, and

wherein the access information includes at least one of signature information and preamble information for a random the random access procedure,

wherein the preamble information is a dedicated preamble used only for a specific terminal, and

wherein the dedicated preamble is determined by the target base station.

---

5

(*Id.* at 457) (emphasis added).  Every independent claim includes the same added limitation.  (*Id.* at 457-462).  The applicant also argued to the examiner (*Id.* at 464):

> **"Dedicated preamble"**
>
> As an initial point, Applicant notes that claim 1 recites "the preamble information is a dedicated preamble used only for a specific terminal."  As discussed during the interview, many existing systems are contention-based such that they utilize a non-specific preamble that is meant for any terminal within receiving range.  That is, in such contention-based systems, a terminal receives the same preamble, not a dedicated preamble as required by claim 1.

On December 28, 2009, the examiner issued another set of claim rejections based on certain prior art references, including the Li reference (US 2003/0026324 A1).  (*Id.* at 475-489).  Applicant did not amend the claims.  (*Id.* at 621).  Rather, on February 10, 2010, the applicant responded to the claim rejections, distinguishing Li based on the same limitation "dedicated preamble used only for a specific terminal."  (*Id.* at 619).

On May 28, 2010, the examiner accepted applicant's arguments over the Li reference and allowed the pending claims (as amended on September 25, 2009).  (*Id.* at 652).

### 3. In a Related but Unasserted Child Patent, Patentee Separately Claimed Transmitting "an index of the dedicated *preamble*"

On August 27, 2010, Applicant filed a continuation application (12/870,747) claiming priority to the '373 Patent.  (Ex. E at A-0247, A-0290).  In response to an April 19, 2011 rejection based on the same Li reference (*id.* at 33081), on July 1, 2011, Applicant cancelled all pending claims and added new pending claim 45, which included the limitation "**wherein the received preamble information is *either* a dedicated preamble *or* an index of the dedicated preamble**."  (*Id.* at 33103) (emphasis added).  Applicant also argued: "the features of 'the received preamble information is either a dedicated preamble or an index of the dedicated preamble' and the 'dedicated preamble is used for a specific terminal' recited in claims 45 and 54 are not disclosed in Li."  (*Id.* at 33107).  Pending claim 45 ultimately issued as claim 1 of

U.S. Patent No. 8,219,097 ("the '097 Patent") with the above-cited limitation.  (*Id.* at 33791).

**4.**  ████████████████████████████████████████

Each of the asserted independent claims (1, 8, 15, and 24) requires that: (a) a target base station transmit a dedicated preamble to a source base station; and (b) the source base station transmits the dedicated preamble to a terminal.  Dependent Claim 18 additionally requires the terminal to transmit the dedicated preamble to the target base station.  The parties agree that:

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████

A preamble and a preamble index are very different things.  ████████████████████

████████████████████████████████████████████

████████████████████████████████████

```
RACH-ConfigDedicated information element

-- ASN1START

RACH-ConfigDedicated ::=          SEQUENCE {
    ra-PreambleIndex                    INTEGER (1..64),
    ra-PRACH-MaskIndex                  INTEGER (0..15)
}

-- ASN1STOP
```

(Ex. N at A-0931) (cited in Cooklev Op. ¶¶ 983, 1053, 1122, 1291).

By contrast, a preamble is a long sequence of complex numbers including two parts, a "cyclic prefix" and a "preamble sequence." (Cooklev I Tr. 177:23-178:9).[5]  In the LTE Standard, "[t]he physical layer random access preamble, illustrated in Figure 5.7.1-1, consists of a cyclic prefix of length $T_{CP}$ and a sequence part of length $T_{SEQ}$.":



**Figure 5.7.1-1: Random access preamble format.**

(Ex. O at A-0943) (cited in Cooklev Op. ¶ 702).

5.

_____

[5]  A complex number has a real part and an imaginary part. (Cooklev I Tr. 178:10-11).

[6]  ██████████████████████████████████████████████████████

[REDACTED]

### 6. Evolved Did Not Assert a Doctrine of Equivalents Theory in its Infringement Contentions

The Scheduling Order required Evolved to serve initial and final infringement



contentions on February 12, 2016 and January 27, 2017, respectively.  (D.I. 20, 127).  In its initial infringement contentions, Evolved stated merely that Defendants infringe "by literal infringement or infringement under the doctrine of equivalents."  (Ex. L at A-0871).  But beyond that boilerplate language, the initial infringement contentions never again referenced the doctrine of equivalents.  Following nearly a year of fact discovery, including review of source code for the Accused Products, Evolved included only the same boilerplate statement in its final infringement contentions.  (Ex. M at A-0875).  Even in these **final** contentions, Evolved provided no explanation whatsoever of any infringement theory under the doctrine of equivalents during fact discovery.

It was not until after the close of fact discovery, after Defendants had served their final invalidity contentions and prepared their opening invalidity reports, that Evolved for the first time provided any information about an infringement theory under the doctrine of equivalents, in Dr. Cooklev's opening expert report served on May 22, 2017.  (Cooklev Op. ¶¶ 986-990, 1056-1060, 1132-1136, 1301-1305).  ███████████████████████

███████████████████████████████

### B.    The '236 Patent

#### 1.    Overview of the '236 Patent

The '236 Patent relates to "a data transmission method and a user equipment for the same" related to a random access procedure between a terminal ("user equipment" or "UE") and a base station.  ('236 at 3:42-59; 4:42-43).  Figure 5 illustrates an example of such a procedure, comprising the following steps:  (i) the terminal transmits a random access preamble ("message 1") to the base station; (ii) the terminal then receives a Random Access Response ("message 2") from the base station "in correspondence with the transmitted random access preamble;" (iii) the terminal then transmits an uplink message ("message 3") to the base station "using the

information received by the random access message response"; and (iv) the terminal then receives a message ("message 4" or "contention resolution" message) that corresponds to the uplink message from the base station." (*Id.* at 4:4-16; Fig. 5). The '236 Patent explains that messages from the base station, such as the Random Access Response (message 2) and the contention resolution



FIG. 5

message (message 4), can include "uplink (UL) grant signals" that indicate "information about uplink radio resources which may be used when the terminal transmits a signal to the" base station. (*Id.* at 4:22-24). In this random access procedure, "the UE stores data to be transmitted via the message 3 in a message 3 (Msg3) buffer and transmits the data stored in the Msg3 buffer in correspondence with the reception of an Uplink (UL) Grant signal." (*Id.* at 4:18-21).

The claimed inventions of the '236 Patent purport to address "problems" that may occur when data stored in a Msg3 buffer "is transmitted regardless of the reception mode of the UL Grant signal." (*Id.* at 18-34). According to the specification, such problems could include loss of information to be transmitted through the message 3, or the terminal not receiving a "message 4 for completing a proper contention resolution procedure . . . with respect to the ongoing random access procedure." (*Id.* at 13:5-21). The '236 Patent explains that "[i]n a preferred embodiment of the invention for solving the above-described problem, the data stored in the Msg3 buffer is restrictively transmitted only in the case where the UL Grant signal received from the eNode B is received on the Random Access Response message, but not in all cases where the

11

UL Grant signal is received from the eNode B." (*Id.* at 13:22-27). In other words, the '236 Patent is concerned with the potential problem of a mobile terminal transmitting message 3 under the wrong circumstances and claims to solve this problem by limiting the circumstances under which message 3 is transmitted.

### 2.    The Asserted Claims of the '236 Patent

Evolved alleges that Defendants' Accused Products infringe claims 1-10 and 12-13 of the '236 Patent. (Ex. M at A-0881). Claims 1 and 7, the only independent claims, attempt to capture the alleged invention of the '236 Patent: transmitting the data stored in the Msg3 buffer when the uplink grant signal received from the base station is received on the Random Access Response message. In pertinent part, claim 1 includes the limitation "transmitting the data stored in the Msg3 buffer to the base station using the UL Grant signal received on the specific message, **if** there is data stored in the Msg3 buffer when receiving the UL Grant signal on the specific message **and** the specific message is the random access response message," referred to herein as the "1E" limitation. (*Id*. at Claim 1). Claim 7 is an apparatus claim closely mirroring the language of claim 1, and includes the limitations "acquiring the data stored in the Msg3 buffer **if** there is data stored in the Msg3 buffer when the reception module receives the UL Grant signal **and** the specific message is the random access response message," and "controlling the transmission module to transmit the data stored in the Msg3 buffer to the base station using the UL Grant signal received by the reception module on the specific message." (*Id*. at Claim 7).

### 3.    Petitions for *Inter Partes Review* of the '236 Patent

In parallel proceedings to this litigation, several Defendants petitioned for *Inter Partes Review* ("IPR") by the U.S. Patent Office of each of the claims of the '236 Patent Evolved has asserted against Defendants. *See* IPR2016-01228, Paper 2 (filed by Apple and Microsoft on June

20, 2016); IPR2016-01229, Paper 2 (filed by Apple and Microsoft on June 20, 2016); IPR2016-0757, Paper 3 (filed by ZTE and HTC on May 31, 2016); IPR2016-01345, Paper 1 (filed by Samsung on July 1, 2016). The Patent Office instituted proceedings on all of Defendants' petitions (collectively, "'236 IPR Proceedings"). *See* IPR2016-01228, Paper 8; IPR2016-01229, Paper 8; IPR2016-00757, Paper 11; IPR2016-01345, Paper 8.

> **4.    Evolved Argued before the Patent Office that the Claims of the '236 Patent Transmit Msg3 Data "only if" or "only when" the UL Grant is Received on the Random Access Response Message**

In every '236 IPR Proceeding, Evolved, as patent owner, responded to the petitions and set forth a construction for claims 1 and 7 wherein Msg3 data is transmitted "**only if**" or "**only when**" the uplink grant signal is received on the Random Access Response message. (*See, e.g.,* Ex. BB at 10-32). Evolved has made similar statements during oral argument in front of the Patent Office, as well. (*See, e.g.,* Ex. CC at 41-42). Evolved attempted to distinguish the prior art on the grounds that it allegedly does not teach transmitting Msg3 data "only if" or "only when" the uplink grant signal is received on the Random Access Response message. Instead, Evolved argued, the prior art teaches transmitting Msg3 buffer data on uplink grants that are **not** the Random Access Response. (*See, e.g.*, Ex. BB at 42).

> **5.    Evolved's Expert Dr. Cooklev also Opines that the Claims of the '236 Patent Transmit Msg3 Data "only if" or "only when" the UL Grant is Received on the Random Access Response Message**

Evolved's expert, Dr. Todor Cooklev, submitted a declaration in the '236 IPR Proceedings setting forth his expert opinion that a person of ordinary skill in the art would understand the "if" statements in claims 1 and 7 to mean "only if" or "only when." (*See, e.g.,* Ex BB., Ex. DD at 33-40). Consistent with his IPR declarations, Dr. Cooklev's expert reports in this litigation reiterate his opinion that "the ['236] specification's description of the invention requires that data stored in the Msg3 buffer is transmitted **only if** there is data stored in the Msg3

13

buffer and the UL grant was received in a random access response." (Cooklev Reb. ¶ 93 (emphasis added)). Dr. Cooklev opines that this conclusion is true for both Claims 1 and 7 of the '236 Patent. (*Id.*).

### 6. The LTE Standard Specifies the Transmission of Msg3 Data if the Uplink Grant is Received on Messages other than the Random Access Response ████████████████████████

The Third Generation Partnership Project ("3GPP") sets forth Technical Specifications ("TS") defining certain standards for LTE networks. (Bims Op. at ¶ 22). Evolved contends that the claims of the '236 Patent are essential to, *inter alia*, 3GPP TS 36.321 § 5.4.2.1. (Ex. M at A-0889). Evolved asserts that TS 36.321 § 5.4.2.1 closely mirrors the language of claims 1 and 7 of the '236 Patent, and that compatibility with an LTE network necessarily requires practicing the claims. (*Id.*). But TS 36.321, in sections 5.4.2.1 and 5.4.2.2, sets forth specifications for a mobile terminal to transmit Msg3 data in scenarios in which the uplink grant is received on the Random Access Response message **and also** scenarios in which the uplink grant is received on a message **other than** the Random Access Response. (*See* Ex. K at A-0865-68 (§§ 5.4.2.1, 5.4.2.2); Cooklev I Tr. 337:6-15).

In TS 36.321, the LTE standard specifies that a mobile terminal may obtain data to transmit from the Msg3 buffer in the situation where there is data in the Msg3 buffer and the uplink grant was received in a Random Access Response. (Ex. K at A-0865 (§ 5.4.2.1); Kakaes Reb. ¶¶ 218-219). The standard describes that in this situation, the mobile terminal may store the data to a HARQ buffer and then trigger a new transmission using the data and the uplink grant. (*Id.*). If the cellular base station, however, is unable to decode the transmission from the mobile terminal, the base station may request that the mobile terminal generate an adaptive retransmission. (Ex. K at A-0865-68 (§§ 5.4.2.1, 5.4.2.2); Kakaes Reb. ¶¶ 218-219; Cooklev I Tr. 354:2-8, 355:9-15). Specifically, the base station may transmit an uplink grant on the

14

Physical Downlink Control Channel ("PDCCH") requesting the adaptive retransmission. (*Id.*). The uplink grant received on the PDCCH is not an uplink grant received in a Random Access Response message. (Kakaes Reb. ¶ 219). Section 5.4.2.2 sets forth steps by which a mobile device performs the retransmission of Msg3 data "obtained from the Msg3 buffer" for the uplink grant received on the PDCCH. (Ex. K at A-0866 (§ 5.4.2.2)).

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

## V.    ARGUMENT

### A.    Legal Standard

Summary judgment is appropriate if there is no genuine issue of material fact, and no reasonable factfinder could return a verdict for the non-moving party. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(a). To avoid summary judgment, the non-moving party must present significantly probative evidence that there is a genuine issue for trial. *Anderson*, 477 U.S. at 249-250. Although evidentiary inferences must be drawn in favor of the non-moving party, Evolved must do more than "show that there is some metaphysical doubt as to the material facts," or offer unsupported speculation. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005).

A patent is infringed when a person "without authority makes, uses, offers to sell, or sells

---

9 ████████████████████████████████████████████████
████████████████████████████████████████

any patented invention, within the United States . . . during the term of the patent . . . ." 35 U.S.C. § 271(a). A two-step analysis is employed in making an infringement determination. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). First, the Court must construe the asserted claims to ascertain their meaning and scope. *See id.* Second, the properly construed claims must be compared with the accused infringing product. *See id.* The patent owner has the burden of proving infringement by a preponderance of the evidence. *See SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988).

The words of a claim are given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). "There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Claim constructions that do not give meaning to all of a claim's terms or render other parts of the claim superfluous are disfavored. *Home Semiconductor Corp. v. Samsung Elecs. Co.*, No. 2016-2215, 2017 WL 3142331, at *4 (Fed. Cir. July 25, 2017).

"Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device." *Kahn v. Gen. Motors Corp.*, 135 F.3d 1472, 1477 (Fed. Cir. 1998). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharm. Research Cor*p., 212 F.3d 1241, 1247 (Fed. Cir. 2000). If an accused product does not infringe an independent claim, it does not infringe any claim depending thereon. *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989).

16

"[A] product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997). However, summary judgment of no infringement is proper "[w]here the evidence is such that no reasonable jury could determine two elements to be equivalent." *Warner–Jenkinson*, 520 U.S. at 39 n. 8. The doctrine of equivalents is unavailable where there is a "clear, substantial difference or difference in kind" between a claim limitation and the accused instrumentality. *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1321 (Fed. Cir. 1998). Moreover, "if a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgement should be rendered by the court." *Warner–Jenkinson*, 520 U.S. at 39 n. 8. "[A] finding of infringement under the doctrine of equivalents vitiates a claim limitation when the aspect of the accused device that allegedly meets that limitation represents a difference in kind from what is claimed in the limitation." *Applied Med. Res. Corp. v. Tyco Healthcare Grp. LP*, 534 F. App'x 972, 979 (Fed. Cir. 2013) (citing *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1321 (Fed. Cir. 1998)). "Under the doctrine of equivalents, an infringement theory thus fails if it renders a claim limitation inconsequential or ineffective." *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1342 (Fed. Cir. 2016).

## B.    Defendants Do Not Infringe Any Asserted Claim of the '373 Patent

Defendants do not infringe any asserted claim of the '373 Patent, either literally or under the doctrine of equivalents, for two independent reasons. First, no Accused Product meets the "dedicated preamble" limitation, a requirement of every asserted claim. Second, no Accused Product meets the "used only for a specific terminal" limitation, a separate requirement of every

17

asserted claim.

**1.    No Accused Product Meets the "dedicated preamble" Limitation in the Asserted Claims of the '373 Patent**

Defendants cannot literally infringe the "dedicated preamble" limitation, ███████



As discussed in subsection (b) below, Evolved is barred from asserting a doctrine of equivalents theory for the "dedicated preamble" limitation for two independent reasons: (i) Evolved waived its equivalents theory by failing to disclose it in its infringement contentions; and (ii) the doctrine of prosecution history estoppel bars such a theory.

Even assuming Evolved could assert a doctrine of equivalents theory, ██████

As discussed in subsection (d) below, there is no basis for such a definition. The intrinsic record expressly distinguishes an index from a preamble. Moreover, patentee disclaimed an index during prosecution through the narrowing amendments and arguments it made to overcome the prior art.

**(a)    No Accused Product Literally Meets the "dedicated preamble" Limitation**

███████████████████████████████████████████████████████████

As discussed above (§ IV.A), the claims require a "dedicated preamble" to be sent from a base

station to a mobile terminal. ██████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

The LTE standard specifically defines a preamble as a cyclic prefix followed by a

sequence of at least 839 complex numbers, as shown below:



**Figure 5.7.1-1: Random access preamble format.**

(Ex. O at A-0943 ("The physical layer random access preamble, illustrated in Figure 5.7.1-1,

consists of a cyclic prefix of length $T_{CP}$ and a sequence part of length $T_{SEQ}$."), cited in Cooklev

Op. ¶ 702; Cooklev I Tr. 177:23-178:11; *see also* Kakaes Reb. ¶¶ 142-145; Ex. P at 436 ("The

preamble consists of two parts: preamble sequence [and] cyclic prefix.")).  It is undisputed that:

███████████████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

In fact, the LTE Standard and LTE treatises explicitly distinguish a preamble from an index. For example, the LTE Standard acknowledges that the index and the preamble are different by specifying that the base station transmits the index and the terminal transmits the preamble. (Kakaes Reb. ¶ 146; Ex. K at A-0858 (§ 5.1.3); Cooklev Tr. I 173:1-21). A treatise on LTE draws the same distinction, explaining that a mobile terminal **receives** an index and **transmits** a preamble. (Ex. Q at A-0988; Kakaes Reb. ¶ 147). ████████████

████████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████



Thus, no accused product literally meets the "dedicated preamble" claim limitation.

### (b) Evolved is Barred from Asserting an Infringement Theory Under the Doctrine of Equivalents

In the alternative, Evolved asserts that the accused products meet the "dedicated preamble" limitation under the doctrine of equivalents. As explained below, however, Evolved (1) waived this argument by failing to disclose it in its final infringement contentions, and (2) is estopped from asserting it based on the prosecution history.

### (i) Evolved Waived Its Doctrine of Equivalents Infringement Theory By Untimely Disclosure

As explained above, despite fifteen months of fact discovery, and two rounds of infringement contentions, Evolved did not articulate a theory under the doctrine of equivalents for the "dedicated preamble" limitation until serving Dr. Cooklev's opening infringement report on May 22, 2017—the same day Defendants served their opening invalidity reports. This was more than a month after the close of fact discovery and nearly three months after Defendants had served their final invalidity contentions. Throughout this time, Evolved had full access to source code for the Qualcomm and Samsung baseband processors in the Accused Products, and included citations to such source code in its final infringement contentions. (Ex. M). Dr. Cooklev relied on those contentions in forming his infringement opinions. (*See, e.g.*, Cooklev Op. ¶¶ 983, 1053, 1122, 1291). Yet, Evolved provided no more than a token, conclusory, boilerplate statement regarding the doctrine of equivalents in the cover pleading for its final

---

infringement contentions: "Evolved Wireless alleges that [Defendants] directly infringe[] claims . . . of [the '373 Patent] by making, using, offering for sale, selling or importing into the United States the Accused Products identified in Exhibits A-1 and A-2, either by literal infringement or infringement under the doctrine of equivalents." (Ex. M at A-0874-75). As such, Defendants did not have an opportunity to explore Evolved's doctrine of equivalents theory during fact discovery, and Defendants' experts did not have an opportunity to consider it when forming their invalidity opinions.  (Kakaes Reb. ¶ 176).

Evolved therefore waived its equivalents theory by failing to timely disclose it pursuant to the Scheduling Order.  *See, e.g.*, *Teashot LLC v. Green Mountain Coffee Roasters, Inc.*, 595 F. App'x. 983, 987 (Fed. Cir. 2015) (affirming district court's finding that party waived doctrine of equivalents theory by failing to disclose it in infringement contentions); *St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.*, No. CA 04-1436-LPS, 2012 WL 1015993, at *5-8 (D. Del. Mar. 26, 2012), *aff'd*, 522 F. App'x 915 (Fed. Cir. 2013) (denying motion to supplement infringement expert report with new theories where they could have been presented before the deadline for submitting infringement contentions); *Fairchild Semiconductor Corp. v. Power Integrations Inc.*, C.A. No. 12-540-LPS, D.I. 162 (D. Del. Oct. 22, 2014) (oral order granting motion to strike infringement contentions first disclosed in expert's report); *Walker Digital, LLC v. Google, Inc.*, 2013 WL 2949109, *2 (D. Del. June 14, 2013) (striking late disclosed infringement theories where underlying facts were previously available).

### (ii)    Prosecution History Estoppel Bars Evolved from Asserting Equivalent Infringement

Apart from being waived, Evolved's equivalents theory is barred under the doctrine of prosecution history estoppel based on amendments made during prosecution of the '373 Patent. As explained above, to overcome the Koo and Benedittis references that the examiner cited, the

22

patent applicant amended the independent claims to narrow the previously claimed "preamble information" by adding, among other limitations, "wherein the preamble information is a dedicated preamble used only for a specific terminal." (Ex. D at A-0150, A-0196). In so doing, applicant presumptively disclaimed anything between the broader "preamble information" and the narrower "dedicated preamble" limitations from the scope of the claims. *See Voda v. Cordis Corp.*, 536 F.3d 1311, 1325 (Fed. Cir. 2008) ("Under amendment-based estoppel, '[a] patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim.'") (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 740–41 (2002)); *Reckitt Benckiser Inc. v. Watson Labs., Inc.*, 430 F. App'x 871, 878 (Fed. Cir. 2011) ("When, in response to an examiner's rejection, a patent applicant submits an amended claim set, the applicant's 'decision to forgo an appeal and submit an amended claim is taken as a concession that the invention as patented does not reach as far as the original claim.'") (quoting *Festo*, 535 U.S. at 722).[11]

A preamble index is not a preamble. ███████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ █████████████████████████ a preamble index falls squarely within the scope of the applicant's prosecution history disclaimer, ████████████████████████████████

---

[11] The presumption of surrender is rebuttable, but the burden of doing so rests on the patentee. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 741 (2002). Evolved cannot carry that burden here ███████████████████████ ████████████████████████

████████████████████ [12] *See EMD Millipore Corp. v. AllPure Techs., Inc.*, 768 F.3d 1196, 1203 (Fed. Cir. 2014) ("There is a presumption that prosecution history estoppel applies when a patentee has filed an amendment seeking to narrow the scope of a claim, and 'the reason for that amendment was a substantial one relating to patentability.'") (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366 (Fed. Cir. 2003) (en banc)).

**(c)    Nevertheless, No Accused Product Meets the "dedicated preamble" Limitation Under the Doctrine of Equivalents**

Should the Court hold that there is no waiver and that prosecution history estoppel does not apply with respect to Evolved's doctrine of equivalents theory, Defendants nonetheless do not infringe the asserted claims of the '373 Patent ████████████████████

████████████████████████████████████

██████████████████ *Ethicon*, 149 F.3d at 1321. █████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████████████████████████

████████████████████████████████

██████████████████████████████

████████████████████████████ *Applied*, 534

---

[12]  Notably, Dr. Cooklev did not even consider the prosecution history of the '373 Patent, or the doctrine of prosecution history estoppel, in his doctrine of equivalents analysis. (Cooklev I Tr. 285:25-286:9).

F. App'x at 979 (affirming judgement of non-infringement under the doctrine of equivalents because accused seal assembly that rotates in place is a different "kind" of assembly than claimed assembly that moves free laterally) (citing *Ethicon*, 149 F.3d at 1321). ██████████ would vitiate the "dedicated preamble" claim limitation. *See Warner–Jenkinson*, 520 U.S. at 39 n. 8; *see also Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1361 (Fed. Cir. 2005) (application of the doctrine of equivalents to "rotatably mounted" accused product would vitiate "slidably mounted" claim limitation).[13]

Accordingly, Defendants respectfully submit that summary judgment of no infringement under the doctrine of equivalents is warranted.

### (d)    Evolved's Attempt to Stretch the Meaning of "dedicated preamble" is Incorrect as a Matter of Law

The Court has never construed the term "dedicated preamble" and Evolved has not asked the Court to do so. As discussed above, ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████ Dr. Cooklev stretched the meaning of the claim term "preamble" to cover an index. (Cooklev I Tr. 238:19-22). This position is incorrect as a matter of law.

First, having added the "dedicated preamble" limitation by amendment to distinguish the prior art, Evolved may not now reinterpret or stretch the word "preamble" to cover a preamble

---

[13]  Evolved attempts to side-step these differences by arguing ████████████



This is a false equivalence.

**index**.  Evolved simply cannot recapture through claim interpretation a broader meaning of "dedicated preamble" disclaimed during prosecution.  *See Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003); *see also Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1285 (Fed. Cir. 2010) ("[A]n amendment that clearly narrows the scope of a claim, such as by the addition of a new claim limitation, constitutes a disclaimer of any claim interpretation that would effectively eliminate the limitation or that would otherwise recapture the claim's original scope.").

Second, the intrinsic record expressly distinguishes an index from a preamble.  The term "dedicated preamble" in the '373 Patent must be construed consistent with its use in the '097 child patent, which separately claims "an index of the dedicated preamble."  *See SightSound Techs., LLC v. Apple Inc*., 809 F.3d 1307, 1316 (Fed. Cir. 2015) ("Where multiple patents 'derive from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents.'") (quoting *NTP, Inc. v. Research In Motion, Ltd*., 418 F.3d 1282, 1293 (Fed. Cir. 2005)); *see also In re Garrido*, 646 F. App'x 942, 945–46 (Fed. Cir. 2016) (adopting claim construction for identical claim term from child patent for use in parent patent).[14]  As noted above, patentee claimed "wherein the preamble information is a dedicated preamble" in the '373 Patent ('373 at 10:15-16), but separately claimed "wherein the received preamble information is *either* a dedicated preamble *or* an index of the dedicated preamble" in the '097 Patent ('097 at 9:57-58) (emphasis added).  The '373 and '097 Patents share identical specifications, similar claims, and identical claim terms, including "dedicated preamble."  (Cooklev I Tr. 222:12-223:3).  Accordingly, under a straight-forward application of

---

[14]   Notably, Dr. Cooklev failed to take note of this canon of claim construction in his analysis. (Cooklev I Tr. 217:14-23).

the doctrine of claim differentiation, "dedicated preamble" cannot mean a "preamble index," because such a construction would render the remaining "index of the dedicated preamble" language in the '097 Patent superfluous. *See Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1381 (Fed. Cir. 2006) ("[W]hen applied to two independent claims . . . claim differentiation takes on relevance in the context of a claim construction that would render additional, or different, language in another independent claim superfluous."); *see also SightSound Techs., LLC v. Apple Inc.*, 809 F.3d 1307, 1318 (Fed. Cir. 2015) (applying claim differentiation to avoid rendering claim language redundant when construing claim term consistently across related patents).[15]

In sum, no accused product meets the "dedicated preamble" limitation, and there is no basis for stretching the term's meaning to alter this result.

### 2. No Accused Product Meets the "used only for a specific terminal" Limitation of the Asserted Claims of the '373 Patent

Apart from the Accused Products not meeting the "dedicated preamble" limitation, either literally or under the doctrine of equivalents, the Accused Products do not meet the "used only for a specific terminal" limitation, which is also found in all asserted claims.[16] This provides an independent basis for summary judgment of non-infringement of the '373 Patent.

Even assuming, *arguendo*,

—which Defendants dispute (*see supra* § V.B.1)—Evolved has no evidence

---

[15]   Re-interpreting "dedicated preamble" to cover an index also renders dependent Claim 6 nonsensical.  Claim 6 recites "wherein the preamble information includes frequency information and time information." ('373 at 10:29-30).  The parties agree that a preamble index is a single, integer value.  (Cooklev I Tr. 168:2-7;  Kakaes Reb. ¶84; Bims Reb. ¶ 229).  Yet, plainly, a single integer value cannot include both frequency information and time information.  Tellingly, Dr. Cooklev omitted Claim 6 from his infringement report, though Evolved had previously included it in its final infringement contentions.  (Ex. M at A-0874; Cooklev Op. ¶ 934).

[16]   Evolved does not assert a doctrine of equivalents theory for this limitation.



████████████████████████████████████████████████████████

████████ For this additional reason, Defendants respectfully submit that summary judgment of no infringement of the '373 Patent is warranted.

### C.     Defendants Do Not Infringe Any Asserted Claim of the '236 Patent

Evolved's consistent and repeated statements that the asserted claims of the '236 Patent should be construed such that "if" means "only if" or "only when" constitute a disavowal of claim scope. ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████

### 1.     Evolved's Clear and Unmistakable Statements to the Patent Office Constitute a Disavowal of Claim Scope

To distinguish the prior art Defendants asserted in the '236 IPR Proceedings, Evolved has repeatedly told the Patent Office that the asserted claims of the '236 Patent require transmitting Msg3 data "**only if**" the UL Grant is received on a Random Access Response message. (*See, e.g.*, Ex. BB at 15; Ex. CC at 41-42). Evolved's statements, expressly made in an attempt to distinguish the prior art, fall squarely within the doctrine of prosecution disclaimer. *See, e.g., Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378-79 (Fed. Cir. 1988) ("[B]y distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover."); *see also Huawei Tech. Co. Ltd. v. T-Mobile US, Inc.*, No. 2:16-cv-00052, D.I. 379 (E.D. Tex. Sept. 9, 2017) at 5 (granting summary judgment on the basis of prosecution disclaimer for statements made in response to a petition for IPR) (citing *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1361 (Fed. Cir. 2017)); *Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995-996 (Fed. Cir. 2003) (affirming grant of summary judgment of non-

29

infringement based on prosecution disclaimer).  "Regardless of whether an examiner or panel agreed with the patentee's statement, the statement itself may result in disclaimer because it constitutes a representation to the public about the scope of the patent."  *Huawei*, 2:16-cv-00052, D.I. 379 at 5.

Indeed, at an oral hearing in one of the *inter partes* reviews, Evolved confirmed its intent to disclaim devices that transmit Msg3 data when **either** of the two claimed conditions is not true.  During oral argument, counsel for Evolved referenced the "1E" claim element: "transmitting the data stored in the Msg3 buffer to the base station using the UL Grant signal received on the specific message, **if [condition 1]** there is data stored in the Msg3 buffer when receiving the UL Grant signal on the specific message **and [condition 2]** the specific message is the random access response message."  Evolved's counsel unambiguously stated:  "I think it's crystal clear in 1E, Your Honor. It says right here the two conditions that have to be true to transmit data stored in the message three buffer.  If either one are false, you're not doing that step. … **If the accused product sends message three data when one of the two conditions in 1E is false, that would not infringe. Simple**."  (Ex. CC at 41-42 (emphasis added)).[18]   Not only is this statement a clear disavowal of claim scope, counsel for Evolved confirmed that such a device would not infringe claim 1 of the '236 Patent.  This includes all of the accused products, which undisputedly transmit message 3 data when condition 2 is **not** satisfied.

Consistent with these statements, Evolved's expert, Dr. Cooklev, expressed the same opinions in his IPR declaration and in his expert reports in this litigation.  Dr. Cooklev opined that a person of ordinary skill in the art would "read… the associated claim [1] to require that

---

[18] Evolved made the same point in other equally clear and unequivocal statements to the Patent Office.  (Ex. BB at 10, 14-15).  In some of these statements, Evolved referred to conditions 1 and 2 collectively as "Condition X."

message 3 buffer data be transmitted '**only when**' (or '**only if**')" the condition that "there [is] data stored in the Msg3 buffer when receiving the UL Grant signal on the specific message" is true. (Ex. DD at 39-40) (emphasis added). Likewise, he states "Claim 7 has the same conditions for transmitting the two types of data," and should be interpreted like claim 1. (*Id.* at 33).[19]

Based on Evolved's and Dr. Cooklev's consistent and repeated statements, any device that can transmit Msg3 data on an uplink grant received on a message **other than** the Random Access Response message does not infringe the '236 Patent.

**2.**    ████████████████████████

Given Evolved's clear disclaimer of devices that transmit Msg3 data other than "only when" the uplink grant is received on the Random Access Response message, summary judgment of non-infringement as to the asserted claims of the '236 Patent is warranted. ██

████████████████████████████████

████████████████████████████

████████

Evolved bases its theories of infringement on the Accused Products' compatibility with LTE cellular networks. (Ex. M at A-0882-83 ("[B]ecause the asserted claims read on portions of the LTE standard that are required to be performed by any LTE compliant device," Evolved Wireless contends Exhibits A and B are sufficient to show infringement of the accused products.")). In particular, Evolved alleges infringement based on, *inter alia*, 3GPP TS 36.321 § 5.4.2.1. (Ex. M at A-0889). Yet that portion of the LTE standard requires a mobile terminal to

---

[19] Dr. Cooklev also made similar statements in his rebuttal expert reports and deposition testimony, sometimes using the same "Condition X" terminology that Evolved used at the Patent Office. (Cooklev Reb. ¶¶ 56, 89, 95-109; *see also* Cooklev I Tr. at 116:4-19; 347:2-14; 423:12-424:4)

31

transmit Msg3 data even where the uplink grant is **not** received on the Random Access Response message—contrary to Evolved's "only if" construction.  (Ex. K at A-0865-68 (§§ 5.4.2.1; 5.4.2.2); Kakaes Reb.  ¶¶ 217-220; Bims Reb. ¶¶ 130-132; Cooklev I Tr. at 353:15-354:1; 354:25-355:15).

Specifically, in a retransmission scenario, the base station may transmit an uplink grant to the mobile terminal on the PDCCH, requesting the mobile terminal to perform an adaptive retransmission.  (*Id.*).  The uplink grant received on the PDCCH is **not** an uplink grant received in a Random Access Response message.  (*Id.*).  Section 5.4.2.2 sets forth steps by which a mobile device performs the retransmission of Msg3 data "obtained from the Msg3 buffer" for the uplink grant **received on the PDCCH** (***not*** in a Random Access Response message).  (*Id.*).  In other words, the LTE standard describes steps that are contradictory to the claims of the '236 Patent, as Evolved defines them.  Accordingly, ███████████████████████ the LTE standard does not set forth an operation of user devices that infringes the '236 Patent.



As counsel for Evolved stated, "[i]f the accused product sends message three data when one of the two conditions in 1E is false, that would not infringe. Simple." (Ex. CC at 41-42).

Because claims 2-6, 8-10, and 12-13 all depend upon claims 1 and 7, the Accused Products also do not infringe the asserted dependent claims of the '236 Patent.

33

## VI.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that their motion for summary judgement of non-infringement be granted.

Respectfully submitted,

/s/ Philip A. Rovner

OF COUNSEL:
Stephen S. Korniczky
Martin R. Bader
Ericka J. Schulz
Kayla Page
SHEPPARD, MULLIN, RICHTER &
   HAMPTON, LLP
12275 El Camino Real, Suite 200
San Diego, CA 92130
(858) 720-8900

Philip A. Rovner (No. 3215)
Jonathan A. Choa (No. 5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com
*Attorneys for Defendants HTC Corporation and HTC America, Inc.*

/s/ Bindu A. Palapura

OF COUNSEL:
Mitchell G. Stockwell
Richard W. Goldstucker
KILPATRICK TOWNSEND AND
   STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
(404) 815-6500

Taylor H. Ludlam
KILPATRICK TOWNSEND AND
   STOCKTON LLP
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
(919) 420-1700

Akarsh P. Belagodu
KILPATRICK TOWNSEND AND
   STOCKTON LLP
607 14th Street, NW, Suite 900
Washington, DC 20005
(202) 508-5800

David E. Moore (No. 3983)
Bindu A. Palapura (No. 5370)
Stephanie E. O'Byrne (No. 4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com
*Attorneys for Defendants Lenovo Group Ltd., Lenovo (United States) Inc., and Motorola Mobility LLC*

34

OF COUNSEL:
Michael D. Jay
Bill Ward, Ph.D.
Nandan R. Padmanabhan
Micol Small
Martin Ellison
BOIES, SCHILLER & FLEXNER LLP
401 Wilshire Blvd., Suite 850
Santa Monica, CA 90401
(310) 752-2400

Steven Holtzman
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
(510) 874-1000

/s/ Bindu A. Palapura
David E. Moore (No. 3983)
Bindu A. Palapura (No. 5370)
Stephanie E. O'Byrne (No. 4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com
*Attorneys for Defendant Apple, Inc.*

OF COUNSEL:
Kevin P.B. Johnson
Victoria F. Maroulis
Todd M. Briggs
Charles M. Stiernberg
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5100

/s/ Andrew E. Russell
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
*Attorneys for Defendants Samsung Electronics Co.,
Ltd. and Samsung Electronics America, Inc.*

35

*/s/ Kelly E. Farnan*

OF COUNSEL:

Jay H. Reiziss

Natalie A. Bennett

MCDERMOTT WILL & EMERY LLP

500 North Capitol Street, N.W.

Washington, DC 20001

(202) 756-8000


Charles M. McMahon

Hersh H. Mehta

MCDERMOTT WILL & EMERY LLP

227 West Monroe Street

Chicago, IL 60606

(312) 372-2000

Kelly E. Farnan (No. 4395)

Travis S. Hunter (No. 5350)

RICHARDS, LAYTON & FINGER, P.A.

920 N. King Street

Wilmington, DE 19801

(302) 651-7700

farnan@rlf.com

hunter@rlf.com

*Attorneys for Defendant ZTE (USA) Inc.*


*/s/ Rodger D. Smith II*

OF COUNSEL:

Richard A. Cederoth

SIDLEY AUSTIN LLP

One South Dearborn Street

Chicago, IL 60603

(312) 853-7000


Ellen S. Robbins

SIDLEY AUSTIN LLP

555 West Fifth Street

Los Angeles, CA 90013

(213) 896-6000

Rodger D. Smith II (No. 3778)

Jeremy A. Tigan (No. 5239)

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 North Market Street

P.O. Box 1347

Wilmington, DE 19801

(302) 658-9200

rsmith@mnat.com

jtigan@mnat.com

*Attorneys for Defendants Microsoft Corporation, Microsoft Mobile Oy, and Microsoft Mobile Inc. (f/k/a Nokia Inc.)*


Joseph A. Micallef

Anna M. Weinberg

Wonjoo Suh

SIDLEY AUSTIN LLP

1501 K Street, N.W.

Washington, DC 20005

(202) 736-8000


Dated: October 6, 2017

36

## CERTIFICATE OF SERVICE

I, Andrew E. Russell, hereby certify that on October 6, 2017, this document was served

on the persons listed below in the manner indicated:

**BY EMAIL**

Brian E. Farnan
Michael J. Farnan
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Andrea L. Gothing
ROBINS KAPLAN LLP
2440 W. El Camino Real, Suite 100
Mountain View, CA 94040
(650) 784-4040
agothing@robinskaplan.com

Annie Huang
ROBINS KAPLAN LLP
601 Lexington Avenue, Suite 3400
New York, NY 10022
(212) 980-7438
ahuang@robinskaplan.com

Christopher K. Larus
Ryan M. Schultz
Benjamen C. Linden
Andrew D. Hedden
Anthony F. Schlehuber
Marla R. Butler
Ryan E. Dornberger
Rajin S. Olson
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
(612) 349-8500
clarus@robinskaplan.com
rschultz@robinskaplan.com
blinden@robinskaplan.com
ahedden@robinskaplan.com
ashlehuber@robinskaplan.com
rdornberger@robinskaplan.com
mbutler@robinskaplan.com
rolson@robinskaplan.com

*/s/ Andrew E . Russell*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
*Attorneys for Defendants*