## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-542-JFB-SRF |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| APPLE, INC., | ) | **PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-545-JFB-SRF |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| SAMSUNG ELECTRONICS CO., LTD. and | ) | ·**PUBLIC VERSION** |
| SAMSUNG ELECTRONICS AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPENING BRIEF IN SUPPORT OF DEFENDANTS APPLE INC.'S, SAMSUNG ELECTRONICS CO., LTD.'S AND SAMSUNG ELECTRONICS AMERICA, INC.'S JOINT MOTIONS *IN LIMINE*

John W. Shaw (#3362)
Karen E. Keller (#4489)
Andrew E. Russell (#5382)
David M. Fry (#5486)
Nathan R. Hoeschen (#6232)
SHAW KELLER LLP
I.M. Pei Building
1105 N. Market Street, 12th Floor
Wilmington, DE 19801
Tel: (302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
dfry@shawkeller.com
nhoeschen@shawkeller.com

*Counsel for Defendants Samsung Electronics
Co., Ltd. and Samsung Electronics America, Inc.*

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant Apple, Inc.*

Dated: August 30, 2018
Public Version Dated: September 6, 2018

## TABLE OF CONTENTS

I.      MOTION *IN LIMINE* NO. 1: PRECLUDE EVOLVED FROM OFFERING EVIDENCE REGARDING HOW EVOLVED ARRIVED AT ITS $0.25 PER-DEVICE FIGURE......1

II.     MOTION *IN LIMINE* NO. 2: PRECLUDE DR. COOKLEV AND EVOLVED FROM ARGUMENTS, EVIDENCE, AND TESTIMONY REGARDING INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS................................................................6

III.    MOTION *IN LIMINE* NO. 3: EXCLUDE ANY TESTIMONY REGARDING EVIDENCE OF, OR REFERENCE TO, THE PTAB'S DECISION NOT TO INSTITUTE IPR PROCEEDINGS AGAINST THE '373 PATENT. ..............................11

IV.     MOTION *IN LIMINE* NO. 4: EXCLUDE ANY TESTIMONY OR DECLARATIONS FROM ANY LG ELECTRONICS WITNESS.................................................................13

V.      MOTION *IN LIMINE* NO. 5: EXCLUDE IRRELEVANT EVIDENCE OF FINANCIAL RESOURCES AND SIZE, AS WELL AS UNFAIRLY PREJUDICIAL DOLLAR AMOUNTS OF SALES OF ACCUSED PRODUCTS........................................................19

VI.     MOTION *IN LIMINE* NO. 6: PRECLUDE EVOLVED FROM RELYING ON DOCUMENTS PRODUCED AND FACT TESTIMONY DISCLOSED MORE THAN A YEAR AFTER THE CLOSE OF FACT DISCOVERY. ...............................................21

i

## TABLE OF AUTHORITIES

**Cases**

*Acantha LLC v. Depuy Orthopaedics Inc.*,
   No. 15-C-1257, 2018 WL 2431852 (E.D. Wis. May 30, 2018) ......................................... 12-13

*Amgen Inc. v. Amneal Pharmaceuticals LLC*,
   C.A. No. 16-853-MSG, 2018 WL 1885664 (D. Del. Apr. 19, 2018) ......................................... 9

*Andover Healthcare, Inc. v. 3M Co.*,
   C.A. No. 13-843-LPS, 2016 WL 6404111 (D. Del. Oct. 27, 2016) ................................... 11, 12

*Art+Com Innovationpool GMBH v. Google Inc.*,
   C.A. No. 14-217-TBD, D.I. 382 (D. Del. May 16, 2016) ................................................... 11, 12

*B. Braun Melsungen AG v. Teramo Med. Corp.*,
   749 F. Supp. 2d 210 (D. Del. 2010) ..................................................................................... 23

*Baltimore Aircoil Co. v. SPX Cooling Techs. Inc.*,
   No. CCB-13-2053, 2016 WL 4426681 (D. Md. Aug. 22, 2016) ............................................. 8

*Best Med. Int'l, Inc. v. Accuray, Inc.*,
   No. 2:10-cv-1043, 2013 WL 3305478 (W.D. Pa. July 1, 2013) ......................................... 8-9

*Callaway Golf Co. v. Acushnet Co.*,
   576 F.3d 1331 (Fed. Cir. 2009) ........................................................................................... 13

*Comcast Cable Commc'ns, LLC v. OpenTV, Inc.*,
   No. C 16-6180, 2017 WL 2630088 (N.D. Cal. June 19, 2017) ............................................. 8

*CP Kelco United States, Inc. v. Pharmacia Corp.*,
   213 F.R.D. 176 (D. Del. 2003) ............................................................................................. 5

*Crawford v. George & Lynch, Inc.*,
   19 F. Supp. 3d 546 (D. Del. 2013) ....................................................................................... 5

*Dynetix Design Solutions v. Synopsys, Inc.*,
   No. C11-5973-PSG, 2013 WL 4537838 (N.D. Cal. Aug. 22, 2013) ....................................... 9

*Finch v. Hercules Inc.*,
   C.A. No. 92-251 MMS, 1995 WL 785100 (D. Del. Dec. 22, 1995) ....................................... 26

*Harris v. New Jersey*,
   259 F.R.D. 89 (D.N.J. 2007) ................................................................................................. 5

*Helios Software LLC et al v. SpectorSoft Corp.*,
   C.A. No. 12-81-LPS, D.I. 545 (D. Del. Apr. 24, 2015) ......................................................... 23

*Hologic, Inc. and Cytyc Surgical Products, LLC v. Minerva Surgical, Inc.,*
    C.A. No. 15-1031, 2018 WL 3348998 (D. Del. July 9, 2018)..................................................... 11

*Int'l Bus. Machines Corp. v. Groupon, Inc.,*
    C.A. No. 16-122-LPS, 2018 WL 3007662 (D. Del. June 15, 2018)................................... 24-25

*Integra Lifesciences Corp. v. Hyperbranch Medical Technology, Inc.,*
    C.A. No. 15-819-LPS-CJB, 2018 WL 2186677 (D. Del. May 11, 2018) ................................ 11

*Interdigital Communications Inc., et al. v. Nokia Corporation, et al.,*
    C.A. No. 13-10-RGA, 2014 WL 8104167 (D. Del. Sept. 19, 2014) ......................................... 12

*Inventio AG v. Thyssenkrupp Elevator Corp.,*
    C.A. No. 08-874-RGA, 2014 WL 554853 (D. Del. Feb. 6, 2014) ................................. 19-20, 21

*LaserDynamics, Inc. v. Quanta Comput. USA, Inc.,*
    694 F.3d 51 (Fed. Cir. 2012)..................................................................................................... 21

*Lectec Corp. v. Chattem, Inc.,*
    Case No. 5:08-cv-130-DF, 2011 WL 13086026 (E.D. Tex. Jan 4, 2011) ................................ 20

*Meyers v. Pennypack Woods Home Ownership Ass'n,*
    559 F.2d 894 (3d Cir. 1977)...................................................................................................... 23

*MIICS & Partners America Inc. v. Toshiba Corp.,*
    C.A. No. 14-803-RGA, D.I. 557 (D. Del. Oct. 12, 2017).................................................... 11, 12

*Praxair, Inc. v. ATMI, Inc.,*
    445 F. Supp. 2d 460 (D. Del. 2006)..................................................................................... 17, 26

*Prisua Engineering Corp. v. Samsung,*
    No. 1:16-cv-21761-KMM, D.I. 268 (D. Fla. Feb. 13, 2018)................................................... 12

*Probatter Sports, LLC v. Sports Tutor, Inc.,*
    No. 3:05-cv-01975-VLB, 2015 U.S. Dist. LEXIS 92107 (S.D. Cal. July 15, 2015)................ 10

*QBE Ins. Corp. v. Jorda Enters.,*
    277 F.R.D. 676 (S.D. Fla. 2012)................................................................................................. 5

Sonos, Inc. v. D&M Holdings Inc.
    C.A. No. 14-1330-WCB, 2017 WL 5633204 (D. Del. Nov. 21, 2017)...................................... 7

*St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.,*
    C.A. No. 04-1436-LPS, 2012 WL 1015993 (D. Del. Mar. 26, 2012) ........................................ 8

*Stambler v. RSA Sec., Inc.,*
    212 F.R.D. 470 (D. Del. 2003)............................................................................................21, 23

*Sycamore IP Holdings LLC v. AT&T Corp.*,
   No. 2:16-cv-588, 2017 WL 4517953 (E.D. Tex. Oct. 10, 2017)............................................. 8, 9

*SynQor, Inc. v. Artesyn Techs., Inc.*,
   709 F.3d 1365 (Fed. Cir. 2013)........................................................................... 13

*Teashot LLC v. Green Mountain Coffee Roasters, Inc.*,
   595 F. App'x. 983 (Fed. Cir. 2015) ..................................................................... 8

*Tracinda Corp. v. Daimlerchrysler AG*,
   C.A. No. 00-993-JJF, 2005 WL 927187 (D. Del. Apr. 20, 2005) ............................................. 25

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011)........................................................................... 21

*Vehicle IP, LLC v. AT&T Mobility LLC*,
   227 F. Supp. 3d 319 (D. Del. 2016)...................................................................... 21

*ViaTech Tech. Inc. v. Microsoft Corp.*,
   C.A. No. 14-1226-RGA, 2017 WL 2538570 (D. Del. June 12, 2017) ....................................... 8

*ViaTech Techs. Inc. v. Microsoft Corp.*,
   No. 2017-2276, 2018 WL 2338136 (Fed. Cir. May 23, 2018)................................................. 8

*Virnetx, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014)........................................................................... 13

*Xpertuniverse, Inc. v. Cisco Systems, Inc.*,
   C.A. No. 9-157-RGA, D.I. 608 (D. Del. Feb 28, 2013) .......................................................... 8

*XY, LLC v. Trans Ova Genetics*,
   No. 13-cv-0876-WJM-NYW, 2016 WL 97691 (D. Colo. Jan. 7, 2016) ................................. 12

**Rules**

Fed. R. Civ. P. 26......................................................................................... *passim*

Fed. R. Civ. P. 37(c) ....................................................................... 14, 17, 19, 23

Fed. R. Evid. 401 ............................................................................... 11, 19, 20

Fed. R. Evid. 402 ........................................................................... 11, 13, 19, 20

Fed. R. Evid. 403 ......................................................................................... *passim*

## I.  MOTION *IN LIMINE* NO. 1: PRECLUDE EVOLVED FROM OFFERING EVIDENCE REGARDING HOW EVOLVED ARRIVED AT ITS $0.25 PER-DEVICE FIGURE

As part of the pre-suit licensing negotiations between Evolved and Defendants, Evolved claimed it was offering a license with "a royalty rate for all FRAND-obligated patents" ███ ███████████████████████ (Jay Decl.[1], Ex. A.)  Defendants diligently pursued discovery on how Evolved had derived that ████████ which is relevant, at the very least, to Defendants' affirmative defenses and counterclaims that Evolved breached its obligation to offer a license to the patents-in-suit on terms that are fair, reasonable, and non-discriminatory ("FRAND").  Despite Defendants' best efforts through discovery and motion practice, Evolved thwarted Defendants' attempts to learn how Evolved derived ██████████.  Thus, Defendants seek to preclude Evolved from offering at trial any evidence about how it arrived at ██████ ████.

In March 2017, Defendants deposed Abha Divine, one of Evolved's two managing directors, in both her individual capacity and as Evolved's designee on numerous 30(b)(6) deposition topics that Defendants had served.  Those topics included, among others, how Evolved derived ████████████ in its letters.  Over the course of three days, Ms. Divine steadfastly refused and/or maintained her inability to answer dozens of questions that Defendants asked about how Evolved had formulated ████████  For the bulk of these questions, Ms. Divine refused to answer on the basis of privilege and work-product objections from Evolved's counsel.  (*E.g.*, Jay Decl., Ex. B at 189:6-24, 213:6-12, 215:6-22, 267:15-268:9; Jay Decl., Ex. C

---

[1] "Jay Decl." refers to the Declaration of Michael D. Jay in Support of Defendants Apple Inc.'s, Samsung Electronics Co., Ltd.'s and Samsung Electronics America, Inc.'s Joint Motions *In Limine*.

at 433:2-434:12, 482:17-483:24, 572:15-574:11.)  For the few questions about ███████████ that counsel permitted her to answer, Ms. Divine was essentially unable to provide any information at all.  (*E.g.*, Jay Decl. B at 188:11-16, 267:15-23, 288:25-289:10; Jay Decl., Ex. C at 477:17-479:1, 543:5-11, 563:14-564:1; Jay Decl., Ex. D at 595:24-596:24, 599:4-10, 601:8-603:2.)  And the few times that Ms. Divine did respond to Defendant's questions, her responses were limited to telling Defendants that the answers to their questions were contained in some general category of documents that Evolved had purportedly produced.  (*E.g.*, Jay Decl., Ex. B at 74:24-75:11, 162:4-9, 172:18-174:2, 185:18-188:18, 211:4-213:4, 244:12-23; Jay Decl., Ex. C at 399:9-25, 432:4-10, 461:21-462:20, 513:7-11; Jay Decl., Ex. D at 601:8-603:2, 609:6-610:7.)

Because of Ms. Divine's inadequate testimony, Defendants moved to compel further 30(b)(6) testimony from Evolved.  (D.I. 161.[2])  Judge Fallon granted Defendants' motion, finding that "the testimony that Ms. Divine provided regarding the calculation of the royalty rate is deficient" and that "[s]upplemental 30(b)(6) testimony on ██████████████ is warranted to provide defendants with an opportunity to explore the factual underpinnings of the disclosed royalty rate." (D.I. 173 at 6.)  Consistent with the instant motion *in limine*, Judge Fallon also cautioned that with respect to Evolved's numerous privilege objections, "Evolved should be mindful that it may be precluded from affirmatively offering information at trial which was not covered during the 30(b)(6) deposition due to privilege assertions." (*Id.*)

In response to Judge Fallon's Order, rather than again designating Abha Divine,[3] Evolved designated Evolved's other Managing Director, Mark Roche, as its 30(b)(6) witness for a

_____

[2] Unless otherwise noted, docket entries (D.I.) cited herein refer to Case No. 15-cv-542.

[3] After the fact, counsel for Evolved said that it did not designate Ms. Divine for the

2

supplemental deposition. The designation of Mr. Roche for this supplemental 30(b)(6) deposition suggests that Evolved was engaging in a deliberate strategy to limit Defendants' ability to obtain information regarding the formulation of ██████████ Mr. Roche had previously testified at his individual deposition that he had very limited involvement in Evolved's day-to-day business and had virtually no personal knowledge of any information pertaining to how Evolved arrived at ████████ and he again confirmed that at the supplemental 30(b)(6) deposition. He testified repeatedly that his answers were based on information that Ms. Divine had told him during their meetings to prepare for the supplemental deposition. (Jay Decl., Ex. E at 13:7-14:3, 27:4-28:15, 76:4-79:7, 82:13-17, 89:19-24, 124:10-20, 133:20-134:8, 136:4-16.) Given that Ms. Divine was the source of Mr. Roche's knowledge on the topics in his 30(b)(6) deposition, it makes little sense that Ms. Divine was unable during her own three-day deposition to answer the questions that Mr. Roche subsequently answered at the supplemental 30(b)(6) depositions based on Ms. Divine's knowledge.

At the supplemental 30(b)(6) deposition, Mr. Roche gave a few limited answers beyond what Ms. Divine had provided, but Mr. Roche still failed to provide adequate testimony on the issue of ████████ In particular, Evolved again asserted privilege and work product instructions to selectively shield from discovery most aspects of Evolved's formulation of █

---

supplemental 30(b)(6) deposition because she was not available on the day of the deposition. That day, however, was only one of many possible dates on which Defendants said they were available to take Evolved's deposition. Had Evolved actually wanted to designate Ms. Divine, the parties could have agreed upon a date that worked for her.

3

██████████ in its letters. Mr. Roche provided some high-level testimony about a subset of the information and documents that Evolved considered in formulating ███████████ but would not answer, based on counsel's privilege instructions, how Evolved used that subset of information and documents to arrive at ██████ (*E.g.*, Jay Decl., Ex. E at 25:4-24, 29:6-16, 30:9-15, 36:19-37:5, 38:10-40:2, 43:9-44:25, 65:7-66:1.) Nor would Mr. Roche answer whether Evolved conducted any investigation into the accuracy of this subset of information. (*Id.* at 33:5-36:7.) And for the first time, Defendants learned about a "starting-point rate" analysis that Evolved allegedly performed. (*Id.* at 71:11-86:9.) Mr. Roche testified that it was likely Ms. Divine who performed that analysis (*id.* at 76:4-79:7), and yet Ms. Divine never once mentioned that analysis in response to Defendants' numerous questions to her about Evolved's ███████████ Evolved concealed the existence of this analysis from Defendants until Mr. Roche's supplemental 30(b)(6) deposition, which was long after the close of fact and expert discovery, thereby limiting Defendants ability to further investigate this analysis.

In addition to the depositions of Ms. Divine and Mr. Roche, Defendants also deposed Matt DelGiorno, counsel for Evolved who had engaged in the pre-suit negotiations with Defendants. Like the other depositions, Mr. DelGiorno refused to answer on privilege and work product grounds numerous questions regarding ███████████ to Defendants. (*E.g.*, Jay Decl. F at 61:12-22, 63:2-19, 77:20-79:4, 80:4-17, 81:6-23, 89:20-92:25, 96:12-97:5, 99:1-100:19, 101:17-102:10, 103:18-105:1.)

As a result of Evolved's witnesses' selective memories and Evolved's counsel's repeated privilege objections, Evolved effectively blocked Defendants from learning how Evolved developed its ███████████ For Evolved to now present any evidence at trial about how it derived ███████████ would both violate the spirit of Rule 30(b)(6) and allow Evolved to use

4

privilege as both a sword and a shield. As Judge Fallon stated in her Order granting Defendants' motion to compel, "[a] corporation has an affirmative duty to produce a representative who can answer questions that are within the scope of the matters described in the notice of deposition." (D.I. 173 (*citing Harris v. New Jersey*, 259 F.R.D. 89, 92 (D.N.J. 2007)).) "The duty of preparation goes beyond the designee's personal knowledge and matters in which the designee was personally involved. . . . If necessary, the deponent must use documents, past employees, or other resources to obtain responsive information." *Crawford v. George & Lynch, Inc.*, 19 F. Supp. 3d 546, 554 (D. Del. 2013). Evolved did not do that. Evolved designated its two managing directors as 30(b)(6) witnesses. One provided no meaningful information about Evolved's derivation of ███████. The other was able to provide only very limited information about the determination of a previously-undisclosed, purported "starting-point rate." And Evolved shut down completely (on privilege grounds) Defendants' attempts to learn how this "starting-point rate" turned into the eventual ████████ The end result is that Evolved was able during discovery to present those facts about ██████████ that it deemed helpful to its case, and shield the remainder.

For these reasons, Evolved should be precluded form presenting any evidence or argument at trial about how it derived ████████ Even limiting Evolved's evidence to only that information about which Ms. Divine and Mr. Roche testified at their depositions would allow Evolved to capitalize on the selective memories of its witnesses and then use privilege as both a shield and a sword. *See CP Kelco United States, Inc. v. Pharmacia Corp.*, 213 F.R.D. 176, 179 (D. Del. 2003) ("It would be manifestly unfair to allow a party to use the privilege to shield information which it had deliberately chosen to use offensively"); *QBE Ins. Corp. v. Jorda Enters.*, 277 F.R.D. 676, 681 (S.D. Fla. 2012) ("It would be patently unfair to permit QBE to

5

avoid providing a corporate deposition designee on certain topics (because its insured refuses to cooperate) yet allow it to take a position at trial on those very same issues by introducing testimony which Defendant Jorda was unable to learn about during a pre-trial 30(b)(6) deposition."). This result would be patently unfair and prejudicial to Defendants.

## II. MOTION *IN LIMINE* NO. 2: PRECLUDE DR. COOKLEV AND EVOLVED FROM ARGUMENTS, EVIDENCE, AND TESTIMONY REGARDING INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

Throughout fifteen months of fact discovery and two rounds of infringement contentions, Evolved never once articulated a theory of infringement under the Doctrine of Equivalents ("DOE") beyond a single boilerplate sentence in their final infringement contentions that

███████████████████████████████████████████████████████████

██████████ (Briggs Decl.[4], Ex. B at 2.) Then, on May 22, 2017—more than a month after the close of fact discovery and nearly three months after Defendants had served their Final Invalidity Contentions—Evolved *for the first time* asserted a DOE theory ███████████████

██████████████████████████████████ in the Infringement Report of Dr. Todor Cooklev ("Cooklev Report").[5] Evolved's failure to properly disclose its DOE theory during fact discovery is extremely prejudicial to Defendants. Numerous courts in this District and elsewhere have repeatedly precluded a plaintiff from presenting a DOE theory under similar circumstances. Accordingly, Defendants request that the Court exclude at trial any argument,

---

[4] "Briggs Decl." refers to the Declaration of Todd M. Briggs in Support of Defendants Apple Inc.'s, Samsung Electronics Co., Ltd.'s and Samsung Electronics America, Inc.'s Joint Motions *In Limine*.

[5] Specifically, the Cooklev Report ████████████████████████████████

████████████████████████████████ (*See, e.g.*, Briggs Decl., Ex. C (Cooklev Report) ¶¶ 986-990, 1056-1060, 1132-1136, 1301-1305.)

6

evidence, or testimony from Evolved and/or Dr. Cooklev regarding or related to Evolved's DOE infringement theory.

Evolved never articulated any DOE infringement theory during fact discovery. (Briggs Decl., Ex. A at 2; Ex. B at 2). The Court's Scheduling Order required Evolved to serve Initial and Final Infringement Contentions on February 12, 2016 and January 27, 2017, respectively. (D.I. 16, 109). In its 300-page Initial Infringement Contentions, Evolved's *only* discussion of any DOE theory was a single conclusory statement that Defendants infringe ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Briggs Decl., Ex. A at 2). The parties then engaged in nearly a year of fact discovery, which included Evolved reviewing source code for Defendants' accused products and deposing numerous witnesses regarding the accused functionality in these products. Evolved then served its Final Infringement Contentions. But despite the benefits of discovery, Evolved made no change whatsoever to its disclosure of its DOE theory—it included only the same single boilerplate statement in its Final Infringement Contentions that it had included in its Initial Infringement Contentions. (Briggs Decl., Ex. B at 2.) Evolved did not even bother to indicate which limitations of the asserted claims it believed that Defendants infringed under its DOE theory.

Evolved's solitary boilerplate reference to an unspecified DOE theory is insufficient as a matter of law and does not preserve a DOE theory for assertion at trial. Another court in this District ruled late last year in *Sonos, Inc. v. D&M Holdings Inc.* that the plaintiff would "not be permitted to present a doctrine of equivalents theory of infringement at trial, as it did not include such allegations in its final infringement contentions, except in the form of a boilerplate reservation of right to assert the doctrine of equivalents at some later point." C.A. No. 14-1330-WCB, 2017 WL 5633204, at *1 (D. Del. Nov. 21, 2017) (Bryson, J.) (collecting cases). Many

other courts in this District and others, and as affirmed by the Federal Circuit, have similarly precluded a party from offering a DOE theory where it did not sufficiently disclose the DOE theory during fact discovery. *See, e.g.*, *ViaTech Tech. Inc. v. Microsoft Corp.*, C.A. No. 14-cv-1226-RGA, 2017 WL 2538570, at *6-7 (D. Del. June 12, 2017), *affirmed*, *ViaTech Techs. Inc. v. Microsoft Corp.*, No. 2017-2276, 2018 WL 2338136, at *8 (Fed. Cir. May 23, 2018) (affirming waiver due to "silen[ce] on the matter in [] infringement contentions, save for a catch-all statement"); *Teashot LLC v. Green Mountain Coffee Roasters, Inc.*, 595 F. App'x. 983, 987 (Fed. Cir. 2015) (affirming district court's finding that party waived doctrine of equivalents theory by failing to disclose it in infringement contentions); *St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.*, C.A. No. 04-1436-LPS, 2012 WL 1015993, at *5-8 (D. Del. Mar. 26, 2012), *aff'd*, 522 F. App'x 915 (Fed. Cir. 2013) (denying motion to supplement infringement expert report with new theories where they could have been presented before the deadline for submitting infringement contentions); *Xpertuniverse, Inc. v. Cisco Systems, Inc.*, C.A. No. 9-157-RGA, D.I. 608, slip op. at 4-5 (D. Del. Feb 28, 2013) (Andrews, J.) (excluding doctrine of equivalents theory asserted only in "cursory recitation" and "passing references") (attached as Briggs Decl., Ex. M); *see also* ; *Sycamore IP Holdings LLC v. AT&T Corp.*, No. 2:16-cv-588, 2017 WL 4517953, at *3 (E.D. Tex. Oct. 10, 2017) (doctrine of equivalents theory not disclosed in infringement contentions beyond boilerplate excluded as prejudicial); *Comcast Cable Commc'ns, LLC v. OpenTV, Inc.*, No. C 16-6180, 2017 WL 2630088, at *5 (N.D. Cal. June 19, 2017) (same); *Baltimore Aircoil Co. v. SPX Cooling Techs. Inc.*, No. CCB-13-2053, 2016 WL 4426681, at *15 (D. Md. Aug. 22, 2016) ("[P]lace-holder boilerplate language will not suffice" to preserve a doctrine of equivalents theory of infringement.); *Best Med. Int'l, Inc. v. Accuray,*

8

*Inc.*, No. 2:10-cv-1043, 2013 WL 3305478, at *2-3 (W.D. Pa. July 1, 2013) (contentions regarding the doctrine of equivalents cannot be "reserved" until the close of discovery).

Evolved's failure to disclose its DOE infringement theory in its Initial and Final Infringement Contentions significantly prejudiced Defendants by preventing them from exploring and refuting Evolved's DOE theory during fact and expert discovery. *Amgen Inc. v. Amneal Pharmaceuticals LLC*, C.A. No. 16-853-MSG, 2018 WL 1885664, at *7 (D. Del. Apr. 19, 2018) (excluding DOE theory not raised in infringement contentions; recognizing "multiple ways [a defendant] could have taken a different approach to litigation had [plaintiff] timely asserted [DOE]"); *see also Sycamore*, 2017 WL 4517953, at *5 ("party's loss of an opportunity to use discovery to explore the opposing party's theories and the loss of time to develop responses to those theories" constitutes prejudice); *Dynetix Design Solutions v. Synopsys, Inc.*, No. C11-5973-PSG, 2013 WL 4537838, at *1 (N.D. Cal. Aug. 22, 2013) (failure to disclose in infringement contentions "severely prejudiced [defendant's] ability to refute any DOE theories"). For instance, Defendants did not have the benefit of Evolved's DOE theory when deposing Qualcomm's technical witnesses, which limited Defendants' ability to prepare their non-infringement case. With respect to invalidity, Defendants' experts were unable to consider Evolved's DOE theory when forming their invalidity opinions. Dr. Apostolos K. Kakaes (who submitted expert opinions on behalf of all Defendants other than Apple), for example, explained

█████████████████████████████████████████████████████████████████████

████████████████████████████████████ (Briggs Decl., Ex. D ¶ 176.)

Evolved's failure to disclose its DOE theory has already—and continues to—prejudice Defendants.

Evolved has previously argued to the Court in summary judgment briefing that its failure to include a DOE theory in its Final Infringement Contentions should be forgiven because a new dispute with respect to the meaning of the "dedicated preamble" limitation arose during summary judgment that did not exist during fact discovery. That argument should be rejected because it is factually incorrect. The dispute over the meaning of the "dedicated preamble" limitation *was not* presented to Evolved for the first time during summary judgment. For example, one of Apple's 30(b)(6) witnesses, Sami Almalfouh, provided detailed testimony at his deposition ████████████████████████████████████████ ███████████████████████████████ (Jay Decl., Ex. G at 183:10-184:11, 188:11-189:14.) It is disingenuous for Evolved to claim that the meaning of the "dedicated preamble" limitation was a "new dispute" that arose during summary judgment.

In its earlier briefing, Evolved relied on a decision from the District of Connecticut, *Probatter Sports, LLC v. Sports Tutor, Inc.*, No. 3:05-cv-01975-VLB, 2015 U.S. Dist. LEXIS 92107 (S.D. Cal. July 15, 2015). Evolved, however, misreads *Probatter*. The *Probatter* court specifically recognized that its opinion "is distinguishable" from cases where a plaintiff "was explicitly required by the local rule of the districts in which the case was litigated to disclose its theories of infringement" because in *Probatter* there "[we]re no local rules on point." *Id.* at *34. Here, this Court's Scheduling Order and local District of Delaware precedent applies—Evolved was required to disclose its DOE theories in its Final Infringement Contentions, but failed to do so.

In sum, because of Evolved's untimely disclosure and the resulting prejudice to Defendants, the Court should preclude Evolved and its witnesses from presenting at trial any argument, evidence, or testimony regarding or related to Evolved's DOE infringement theory.

### III.   MOTION *IN LIMINE* NO. 3: EXCLUDE ANY TESTIMONY REGARDING EVIDENCE OF, OR REFERENCE TO, THE PTAB'S DECISION NOT TO INSTITUTE IPR PROCEEDINGS AGAINST THE '373 PATENT

Defendants expect Evolved to reference the Patent Trial and Appeal Board's ("PTAB") decision not to institute *inter partes* review ("IPR") proceedings against the '373 patent as evidence of validity of the '373 patent. The Court should exclude any reference to the PTAB decisions regarding the '373 patent because it is not relevant. *See* Fed. R. Evid. 401, 402. To the extent it has any relevance, the Rule 403 balance here strongly favors exclusion, as the negligible probative value of the PTAB decision is outweighed by the risk of jury confusion and unfair prejudice to Defendants.

Courts in this district have consistently held that evidence of PTAB proceedings—in particular the decision not to institute an IPR proceeding—is inadmissible under Rule 403. *See, e.g. Hologic, Inc. and Cytyc Surgical Products, LLC v. Minerva Surgical, Inc.*, C.A. No. 15-1031, 2018 WL 3348998, at *4 (D. Del. July 9, 2018) (Bataillon, J.) (excluding all references to PTAB proceeding); *Integra Lifesciences Corp. v. Hyperbranch Medical Technology, Inc.*, C.A. No. 15-819-LPS-CJB, 2018 WL 2186677, at *1 (D. Del. May 11, 2018) (same); *MIICS & Partners America Inc. v. Toshiba Corp.*, C.A. No. 14-803-RGA, D.I. 557, slip op. at 1-2 (D. Del. Oct. 12, 2017) (excluding reference to PTAB decision not to institute) (attached as Briggs Decl., Ex. K); *Andover Healthcare, Inc. v. 3M Co.*, C.A No. 13-843-LPS, 2016 WL 6404111, at *2 (D. Del. Oct. 27, 2016) (same); *Art+Com Innovationpool GMBH v. Google Inc.*, C.A. No. 14-217-TBD, D.I. 382, slip op. at 4 (D. Del. May 16, 2016) (Dyk, J.) (attached as Briggs Decl., Ex. L) (same).

Delaware courts, as well as other district courts, have based their decisions to exclude evidence of decisions not to institute IPR proceedings on a number of independent grounds. First, discussion of a decision not to institute an IPR is likely to confuse a jury and result in

11

prejudice because it is not a final decision on validity. *See Andover*, 2016 WL 6404111, at *2. Second, courts recognize that the PTAB employs different legal standards than district courts do, the commingling of which will lead to jury confusion. *See id*; *see also Prisua Engineering Corp. v. Samsung*, No. 1:16-cv-21761-KMM, D.I. 268, slip op. at 4-5 (D. Fla. Feb. 13, 2018) (risk of prejudice and confusion to jury outweighed any purported benefit because PTAB employed a different standard of review) (attached as Briggs Decl., Ex. N); *XY, LLC v. Trans Ova Genetics*, No. 13-cv-0876-WJM-NYW, 2016 WL 97691, at *2 (D. Colo. Jan. 7, 2016) (excluding IPR evidence on 403 grounds). Third, a PTAB decision not to institute is reached on a record that is "less than complete" and "without the benefit of a full adversarial proceeding," thus further diminishing its probative value. *Art+Com*, (Briggs Decl., Ex. L) at 2. As a result, evidence regarding PTAB proceedings, especially the decision not to institute, has minimal probative value yet carries an extremely high risk of prejudice to the opposing party. Further, and interwoven with the above considerations, any attempt to impart all of the distinctions between district court and IPR proceedings to a jury would be a waste of time, and the resultant confusion could not be cured via a limiting instruction. *See MIICS*, (Briggs Decl., Ex. K) at 1-2 (allowing PTAB evidence would "require a significant detour from the main issues in the case, and add another level of complexity"); *see also Interdigital Communications Inc., et al. v. Nokia Corporation, et al.*, C.A. No. 13-10-RGA, 2014 WL 8104167 (D. Del. Sept. 19, 2014) ("the probative value is greatly outweighed by the expenditure of time that would be required to give the jury the full context necessary to fairly evaluate the evidence"); *Acantha LLC v. Depuy Orthopaedics Inc.*, No. 15-C-1257, 2018 WL 2431852, at *3 (E.D. Wis. May 30, 2018) ("parsing through the differences between court and IPR proceedings could create jury confusion that cannot be cured through a jury instruction").

12

For these same reasons, the Federal Circuit has similarly affirmed district courts' exclusions of pre-AIA reexamination evidence, a proceeding similar to IPRs. *See Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1324–25 (Fed. Cir. 2014) (affirming exclusion of reexamination proceeding evidence proffered as defense to inducement); *accord SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1380 (Fed. Cir. 2013) (finding no abuse of discretion for excluding non-final reexamination evidence as being "confusing and more prejudicial than probative"); *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1342–43 (Fed. Cir. 2009) (finding the probative value of a co-pending reexamination marginal and the effect likely to be highly prejudicial). The weight of existing precedent requires the exclusion of PTAB evidence to avoid prejudice, confusion, and waste of time.

Here, Evolved's attempt to introduce evidence of the PTAB decision not to institute IPR proceedings against the '373 patent is not relevant, and would serve only to confuse the jury and waste time by unnecessarily overcomplicating the instant proceedings. Due to the evidentiary and legal distinctions between PTAB and district court proceedings, the PTAB decision holds negligible probative value, and its introduction would be unquestionably and highly prejudicial to Defendants. The Court should therefore exclude this evidence under Federal Rules of Evidence 402 and 403.

## IV.    MOTION *IN LIMINE* NO. 4: EXCLUDE ANY TESTIMONY OR DECLARATIONS FROM ANY LG ELECTRONICS WITNESS

As Defendants explain in their motion for summary judgment, █████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████ (D.I. 196.) During fact discovery, Defendants diligently pursued discovery

from Evolved, its affiliate TQ Lambda (the entity that purchased the patents-in-suit from LGE), and LGE regarding any license agreements between LGE and Qualcomm, ███████████ ██████████ For much of discovery, neither TQ Lambda nor Evolved ever disclosed the existence of ███████████ And once Defendants eventually learned about ██████████ ████████████, LGE refused to provide its consent for TQ Lambda to produce it. Defendants had to eventually get ██████████████ from Qualcomm pursuant to a subpoena. Despite having known about ██████████ since at least 2013, and knowing that Defendants were making efforts to get a copy of ████████, Evolved made no effort whatsoever to take discovery from LGE during the discovery period. Nor did Evolved ever list LGE or any LGE witness on its Rule 26 disclosures during fact discovery. Thus, pursuant to Rule 37(c), Defendants request that the Court preclude Evolved from presenting at trial evidence from any LGE witness, whether through live testimony or through declaration.[6]

Evolved, by way of its affiliate, TQ Lambda, purchased the patents-in-suit from LGE in 2014. (D.I. 1; D.I. 197-1, Ex. J at § 3.4.) During the negotiations between LGE and TQ Lambda, LGE sent to Abha Divine—at the time a Managing Director of TQ Lambda, and now also one of two Managing Directors of Evolved—in late 2013 a copy of ████████████████ ████████████ (D.I. 368-1, Ex. G.) Ms. Divine and representatives from LGE also had numerous communications about ████████████ *Id.* During her multi-day 30(b)(6) deposition, Ms. Divine never disclosed the existence of ██████████████ Defendants

---

[6] Defendants also filed a motion to strike (D.I. 367) the untimely declaration submitted by Evolved in support of its opening-answering brief in support of Evolved's motion for summary judgment regarding Defendants' affirmative defenses ████████████████████████ ████████ (D.I. 347).

eventually learned of ██████████ through a subpoena it had served on Qualcomm, which is the wireless chipset supplier for most of Defendants' Accused Products. Once Defendants learned of ███████████, it sought production from Evolved and TQ Lambda. LGE, however, prevented them from producing ████████

Despite LGE's multifaceted connections to the present case, LGE was unwilling to participate during fact discovery at all. Defendants attempted to enter into a supplemental protective order with LGE in September 2016 to seek discovery relating to Qualcomm-LGE license agreements. (D.I. 368-1, Ex. C at 1; Ex. D at 1.) Evolved, which has remained in contact with LGE throughout the case, provided the initial draft supplemental protective order on behalf of LGE. (*Id.*) After LGE and Defendants made several rounds of proposed edits to the separate LGE protective order, on November 29, 2016, Defendants sent counsel for Evolved further proposed edits to the supplemental protective order. (*Id.*, Ex. E at 2.) Counsel for Evolved purportedly sent the proposal to LGE. (*Id.* at 1.) Despite several inquiries from Defendants to Evolved's counsel, Defendants were told in January 2017 that LGE never responded regarding Defendants' proposed edits. (*Id.*, Ex. F at 1.) LGE simply would not cooperate. Similarly, at Defendants' behest, on September 2, 2016, Evolved sent a letter to LGE requesting, among other things, production of documents responsive to Defendants' document requests. (*Id.*, Ex. J at 2.) LGE did not respond, and did not produce any documents. Fact discovery closed April 10, 2017.

Unable to achieve the production of Qualcomm-LGE license agreements from TQ Lambda, Evolved or LGE, Defendants pursued this same discovery from Qualcomm instead. Defendants served a subpoena upon Qualcomm on February 2, 2017, specifically requesting ██

████████████████████████████████████████████

████████ (D.I. 200, Ex. A.) At the same time, Defendants also sought a deposition of

15

Qualcomm on the topic of Qualcomm-LGE license agreements. (*Id.*, Ex. B.) Qualcomm produced ██████████████ starting March 2017, and completed production on May 24, one month after fact discovery closed. (D.I. 200 at 2.) At that time, Defendants informed Evolved of their intent to pursue summary judgment relying on ████████████ (D.I. 201, Ex. 2.) On August 31, 2017, Defendants filed their opening brief in support of their motion for summary judgment ██████████████ (D.I. 196.) Defendants were also permitted, pursuant to an Order from Magistrate Judge Fallon, to depose Qualcomm regarding ██████████ on December 5, 2017. (D.I. 260; D.I. 307, Ex. 2.)

Despite having known of █████████████████████ during the entire duration of these cases, Evolved waited until January 2, 2018—nearly eight months after Defendants had specifically informed Evolved that it intended to rely on ██████████████—to request from Magistrate Judge Fallon leave to conduct a deposition of LGE regarding ███████████ ████████. (D.I. 307.) Additionally, on January 4, 2018—over eight months after the close of fact discovery—Evolved added to its initial disclosures the generic statement "one or more representatives of LG Electronics." (Jay Decl., Ex. H.) Prior to Magistrate Judge Fallon issuing an order regarding Evolved's request, on February 2, 2018, Evolved filed its opening-answering brief in support of its motion for summary judgment regarding Defendants' affirmative defenses ███████████████████████████████ (D.I. 346.) In support of its brief, Evolved filed the Declaration of Younghan Song, an LGE employee. (D.I. 347.) Subsequently, on February 16, 2018, Magistrate Judge Fallon issued an order denying Evolved's request for leave to seek further discovery from LGE. (D.I. 356.) Defendants thereafter filed a motion to strike the untimely Song Declaration. (D.I. 367.)

16

For the same reasons set forth in Defendants' motion to strike (*id.*), Evolved should not be permitted to belatedly offer at trial any evidence from any LGE witness, whether through live testimony or through declaration. Evolved failed to disclose or timely supplement its disclosures to include any witness from LGE or any discoverable information obtained from LGE, as Federal Rule of Civil Procedure 26 plainly requires. *See* Fed. R. Civ. P. 26. Federal Rule of Civil Procedure 37(c)(1) sets forth that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37. Evolved's failure is neither justified nor harmless.

Evolved has been aware of LGE's connections to the present cases since it filed these six actions, yet Evolved attempted to seek discovery from LGE, for the very first time, only in January 2018, eight months after the close of fact discovery. (D.I. 307.) Evolved was keenly aware of Defendants' attempts to obtain discovery—including ████████████████—from LGE as early as September 2016, yet made no discovery attempts of its own until sixteen months later. (D.I. 368-1, Ex. C at 1; Ex. D at 1; Ex. J at 2.) Even ignoring that it knew of ████████████ since 2013, Defendants specifically informed Evolved by May 2017 that they intended to rely on ████████████████████████████████ (D.I. 201, Ex. 2.) There is no justification for Evolved's failure to timely obtain discovery from LGE and supplement its Rule 26 disclosures. *Praxair, Inc. v. ATMI, Inc.*, 445 F. Supp. 2d 460, 471 (D. Del. 2006) (precluding testimony of third-party witness identified seven months after the close of fact discovery), *rev'd and remanded on other grounds*, 543 F.3d 1306 (Fed. Cir. 2008).

In its opposition to Defendants' motion to strike the untimely Song Declaration, Evolved tried to justify that its untimely disclosure of the declaration was justified because "[u]p until December 5, 2017—the date of the Qualcomm deposition—the materiality and importance of the testimony in the Song Declaration was not apparent." (D.I. 371 at 11.) But Evolved's claimed ignorance is unsupported by the history of the case. Defendants diligently pursued production of ███████████████████████ for nearly a year, including from TQ Lambda and LGE, before finally obtaining ███████ from Qualcomm. (D.I. 367 at 7-9.) And Evolved knew about ████████████████ before filing suit. (D.I. 371 at 13.) Furthermore, if Evolved claims that its untimely disclosure was justified because of representations from LGE that ██████████████████████████████████████████ (D.I. 371 at 2-3, 11, 13-14), this justification is nonetheless belied by the fact that Evolved knew as early as May 2017 that Defendants intended to rely on ████████ in support of a motion for summary judgment. (D.I. 201, Ex. 2.) It was unjustified and harmful to Defendants for Evolved to wait and see how the motion practice would unfurl before belatedly seeking discovery from LGE.

Furthermore, Evolved's failure to timely disclose or supplement is not harmless. Evolved has previously suggested that this harm can be cured, for example, by a deposition of an LGE witness on the eve of trial. But this ignores that Defendants were not given the opportunity to meaningfully engage in full discovery from LGE during fact discovery. Despite Defendants' attempts in late 2016, Defendants had no opportunity to seek discovery from LGE regarding documents or communications relating to ██████████████ Likewise, Defendants have not had the opportunity to depose other LGE witnesses—witnesses not cherry-picked by Evolved—with knowledge of ██████████████ Allowing Evolved to submit

18

declarations or have a witness testify at trial would amount to one-sided belated discovery that is highly prejudicial to Defendants.

Finally, LGE's unwillingness to engage with Defendants and participate during fact discovery is in stark contrast to LGE's willingness to offer a witness and respond to Evolved's requests for a declaration over a year later. The interests of fairness dictate that LGE, a third-party previously unwilling to participate in discovery, should not be permitted to pick and choose when and how it is willing to produce selected, discoverable information long after the fact discovery cutoff. For these reasons, pursuant to Federal Rule of Civil Procedure 37(c)(1), Defendants request that the Court preclude Evolved from presenting at trial evidence from any LGE witness, whether through live testimony or through declaration.

## V.    MOTION *IN LIMINE* NO. 5: EXCLUDE IRRELEVANT EVIDENCE OF FINANCIAL RESOURCES AND SIZE, AS WELL AS UNFAIRLY PREJUDICIAL DOLLAR AMOUNTS OF SALES OF ACCUSED PRODUCTS

Pursuant to Federal Rules of Evidence 401, 402 and 403, Defendants request that the Court preclude Evolved from offering any evidence, testimony, argument or reference to a Defendant's size or company-wide financial information—financial resources, valuations, and profitability, including but not limited to each Defendant's net worth, revenues, market capitalization, balance sheets, cash on hand, and profits and similar finances—or to the total revenues or profits from the sale of Defendants' accused products. This information is irrelevant to the issues in these cases. Fed. R. Evid. 401, 402. Furthermore, any probative value of this information is greatly outweighed by the prejudice to each Defendant. Fed. R. Evid. 403.

A Defendant's size and company-wide financial information has no bearing whatsoever on these cases, which concern specific LTE functionality of baseband chipsets (most of which Defendants purchase from Qualcomm) used in Defendants' accused products. *Inventio AG v. Thyssenkrupp Elevator Corp.*, C.A. No. 08-874-RGA, 2014 WL 554853, at *3 (D. Del. Feb. 6,

19

2014) (excluding from trial all discussion of the defendant's size and overall revenue information on the grounds that it is irrelevant and that the prejudice to the defendant substantially outweighs its probative value); *Lectec Corp. v. Chattem, Inc.*, Case No. 5:08-cv-130-DF, 2011 WL 13086026, at *4-5 (E.D. Tex. Jan 4, 2011) (excluding evidence of the defendant's financial size, reasoning that "any probative value of Defendants' financial size is substantially outweighed by the danger that the jury might set damages based on Defendants' ability to pay rather than on proper evidence of damages"). This is particularly true given that Evolved's damages expert, Dr. Jonathan Putnam, has not relied on any Defendant's company-wide financial information in forming his damages opinions. *See Inventio AG*, 2014 WL 554853, at *3 ("[T]he Court finds that the overall revenues are irrelevant to the expert's conclusion and is therefore inadmissible for the purposes of this trial."). ██████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████ *E.g.*, Jay Decl., Ex. I at 99:4-100:7. Information regarding the total revenues or profits from the sale of Defendants' accused products is equally irrelevant. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████ Accordingly, this sales information, along with a Defendant's size and company-wide financial information, should be excluded as irrelevant under Federal Rules of Evidence 401 and 402.

This information should also be excluded because the prejudice to Defendants outweighs its probative value. Fed. R. Evid. 403. The Federal Circuit has emphasized that introducing total revenue figures for accused products, which have no demonstrated correlation to the value of the patented feature alone, serves to "artificially inflate the jury's damages calculation beyond that

which is 'adequate to compensate for the infringement.'" *LaserDynamics, Inc. v. Quanta Comput. USA, Inc.,* 694 F.3d 51, 68 (Fed. Cir. 2012); *see also Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292, 1320 (Fed. Cir. 2011) ("The disclosure that a company has made $19 billion dollars in revenue from an infringing product cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue."). Another court in this District has excluded the introduction of information about a defendant's size and company-wide financial information due to this same prejudice. *Inventio AG,* 2014 WL 554853, at *3 ("Alternatively, and consistent with Federal Circuit decisions in various cases, the evidence [of size and overall revenues] would be excluded under Rule 403 as the prejudice to ThyssenKrupp substantially outweighs its probative value."); *see also Vehicle IP, LLC v. AT&T Mobility LLC,* 227 F. Supp. 3d 319, 327 (D. Del. 2016) ("disclosure of total revenue 'cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue'") (quoting *Uniloc,* 632 F.3d at 1320)). To the extent there is any probative value to this information (there is not), any such probative value is far outweighed by the prejudice to Defendants. Thus, evidence of each Defendant's size, company-wide financial information, or revenue or profits from any accused products should be excluded under Federal Rule of Evidence 403.

VI.    **MOTION *IN LIMINE* NO. 6: PRECLUDE EVOLVED FROM RELYING ON DOCUMENTS PRODUCED AND FACT TESTIMONY DISCLOSED MORE THAN A YEAR AFTER THE CLOSE OF FACT DISCOVERY**

"In every trial there comes a time when discovery must be closed for issues to be resolved through summary judgment and/or trial." *Stambler v. RSA Sec., Inc.,* 212 F.R.D. 470, 471 (D. Del. 2003). With fourteen months having elapsed since the close of fact discovery,

21

Evolved recently produced more than 800 documents[7] spanning more than 17,000 pages. Then, just two days ago, Evolved identified for the first time "[o]ne or more representatives of Verizon Wireless" in its August 28, 2018 Second Supplemental and Amended Disclosures. (Briggs Decl., Ex. H at 6.) Evolved has not offered any reasonable explanation as to why it waited until now, just shortly before trial in the Apple matter, to produce all of these documents and for the first time identify Verizon Wireless as a witness. Accordingly, Defendants seek to preclude Evolved from relying at trial on: (a) publicly available documents not cited in any expert reports that Evolved produced after the close of fact discovery;[8] (b) documents Evolved produced in support of Dr. Jonathan Putnam's untimely June 25, 2018 Supplemental Expert Report;[9] and (c) testimony from third-party Verizon Wireless.[10]

Rule 26 requires the parties to provide all documents they "may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii). Further, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a)

---

[7] Specifically, Evolved produced 651 documents on June 29, 2018, 196 documents on August 16, 2018, and 4 documents on August 24, 2018. (Briggs Decl., Exs. E, F, and G.)

[8] Such documents include at least those bearing production numbers EVOLVED-0644135–4157, EVOLVED-0644256–4299, EVOLVED-0660154–0157, EVOLVED-0660158–0486, EVOLVED-0661369–1372, EVOLVED-0661401–1542, EVOLVED-0661573–1581, and EVOLVED-0661582–1592. (Briggs Decl., Ex. E at 2, Ex. F at 1, and Ex. G at 1.)

[9] Such documents include at least those bearing production numbers EVOLVED-0660487–1368. (Briggs Decl., Ex. F at 2.) Defendants have also separately moved to strike the untimely supplemental Putnam report. (D.I. 396).

[10] Defendants are not seeking to exclude all documents from Evolved's recent production. In particular, by this motion Defendants are not seeking to exclude those documents in Evolved's recent productions that had previously been produced to Defendants or that were cited in certain of Evolved's expert reports that were properly served during the expert discovery period (Briggs Decl., Ex. E at 2, and Ex. I at 2-4). Nevertheless, Defendants reserve the right to object to one or more of these documents on different grounds in the future, and in particular at trial.

or (e), the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). When considering whether a failure to disclose is harmless, the Court considers "(1) the importance of the information withheld; (2) the prejudice or surprise to the party against whom the evidence is offered; (3) the likelihood of disruption of the trial; (4) the possibility of curing the prejudice; (5) the explanation for the failure to disclose; and (6) the presence of bad faith or willfulness in not disclosing the evidence." *B. Braun Melsungen AG v. Teramo Med. Corp.*, 749 F. Supp. 2d 210, 221 (D. Del. 2010) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977)); *see also Stambler* , 212 F.R.D. 470, 471 (precluding three witnesses from testifying); *Helios Software LLC et al v. SpectorSoft Corp.*, C.A. No. 12-81-LPS, D.I. 545 (D. Del. Apr. 24, 2015) (applying the *Pennypack* factors and striking documents produced more than a year after fact discovery) (attached as Briggs Decl., Ex. O). Each of the *Pennypack* factors weighs in favor of excluding Evolved's untimely produced documents and untimely identified witness(es).[11]

*Factors 1 and 2*: Evolved has not explained why publicly available documents not cited in its expert reports are important, much less relevant, to its case. Presumably, if any of these documents were critical to its claims or defenses, Evolved would have included them with the thousands of other pages of public documents that it produced during fact discovery—or, at the very least, cited them in one of its many motions for summary judgment.

---

[11] Defendants address the *Pennypack* factors with respect to Dr. Putnam's supplemental expert report in their brief in support of their motion to strike said report. (D.I. 397). The same arguments apply to Evolved's production of documents in support of said report. Accordingly, Defendants do not repeat those arguments here.

Yet, for reasons unknown to Defendants, Evolved surprised Defendants with these new documents and fact witness(es) while the parties were in the midst of preparing their pretrial disclosures and exchanges. Indeed, Evolved identified the Verizon Wireless witness(es) only two days ago. Given that many of these documents were produced in just the last two weeks, the prejudice to Defendants is self-evident: Defendants have not had a meaningful opportunity to analyze, much less review, them all. Defendants are also unable to depose the Verizon Wireless witness(es) or any of Evolved's expert or fact witnesses regarding these documents. And Defendants' expert witnesses have been deprived of the opportunity to address these materials in their own expert reports. If Evolved intended to affirmatively rely on this evidence in support of its claims and defenses, it should have produced it long ago. Fed. R. Civ. P. 26(a)(1)(A)(ii).

*Factors 3 and 4*: Factors 3 and 4 also weigh in favor of excluding Evolved's untimely document productions and witness disclosure. The scheduling order required that discovery of paper and electronic documents be completed by July 15, 2016. (D.I. 16, 109). Fact discovery ended in April 2017, and expert discovery ended in August 2017. (D.I. 142). Fact witness disclosures were due on September 22, 2017. The parties have long since completed their summary judgment and *Daubert*-related motions and briefing. Moreover, pretrial preparations are well underway, with the trial against Apple currently scheduled for November 13, 2018. Even assuming Evolved's experts were permitted to testify to these documents—and given that they are not cited in any expert reports, such a prospect seems unlikely—Defendants are unlikely to be able to depose them or the Verizon Wireless witness(es) before trial. Apple is already preparing its exhibit lists and deposition designations in advance of the pretrial conference scheduled for October 25, 2018. There is simply insufficient time left in the schedule to cure the prejudice to Defendants without disrupting the current trial schedule. *Int'l Bus. Machines Corp.*

24

*v. Groupon, Inc.*, C.A. No. 16-122-LPS, 2018 WL 3007662, at *2-3 (D. Del. June 15, 2018) (striking documents produced after exhibit list deadline and holding that "neither party may introduce into evidence at trial any document that was not produced during discovery, absent a showing of good cause and approval of the Court"); *Tracinda Corp. v. Daimlerchrysler AG*, C.A. No. 00-993-JJF, 2005 WL 927187, at *2–3 (D. Del. Apr. 20, 2005), *aff'd,* 502 F.3d 212 (3d Cir. 2007) (excluding documents produced eleven months after the discovery deadline, awarding sanctions, and finding prejudice to opposing party despite finding of no bad faith).

**Factors 5 and 6**: Evolved has offered no explanation for its failure to produce these documents during fact discovery, much less at some point in the last year since fact discovery closed. This is especially troubling given that Evolved admits that all of these documents are publicly available. (Briggs Decl., Ex. I at 3.) Moreover, Evolved failed to give Defendants any advance notice of their intention to produce hundreds of additional documents. Evolved claims that it "collected and produced these documents as soon as [it] became aware of them" (*id.*), but this hardly explains the delay. Indeed, as Evolved acknowledged in its production letters and emails, it included numerous other publicly available documents in its expert reports filed more than a year ago. (*Id.*; Briggs Decl. Ex. E at 2.) Evolved has not explained how these new documents are different.

Evolved's explanation regarding the Verizon Wireless witness(es) is even more dubious. Evolved claims to need a Verizon Wireless witness to authenticate and establish as business records certain Verizon-related documents purportedly because Defendants would not agree to a blanket stipulation on authenticity. (Briggs Decl., Ex. I at 3.) Evolved also admits, however, that these Verizon documents are *"newly produced."* (*Id.*) (emphasis added). Defendants can hardly be expected to stipulate to the authenticity or admissibility of documents they had not yet

25

received.  Moreover, Evolved fails to account for the fact that it has known about, and presumably considered relevant, Verizon-related documents since at least early 2017.  Indeed, Evolved's counsel marked such a document as an exhibit during the deposition of a Samsung 30(b)(6) designee on February 10, 2017.  (Briggs Decl., Ex. J.)  This was months before the close of fact discovery on April 10, 2017.  Yet Evolved never sought to subpoena Verizon Wireless and failed even to identify Verizon Wireless in its initial disclosures until August 28, 2018.  There is no justification for this delay.  *Praxair, Inc. v. ATMI, Inc.*, 445 F. Supp. 2d 460, 471 (D. Del. 2006) (precluding testimony of third-party witness identified seven months after the close of fact discovery), *rev'd and remanded on other grounds*, 543 F.3d 1306 (Fed. Cir. 2008); *Finch v. Hercules Inc.*, C.A. No. 92-251 MMS, 1995 WL 785100 (D. Del. Dec. 22, 1995) (excluding five witnesses not disclosed according to discovery deadlines though opposing party's interrogatories required their disclosure, noting that "fidelity to the constraints of Scheduling Orders and deadlines is critical to the Court's case management responsibilities.").

Accordingly, Defendants respectfully move the Court for an order *in limine* prohibiting Evolved from relying on (a) publicly available documents not cited in any expert reports that Evolved produced after the close of fact discovery; (b) documents Evolved produced in support of Dr. Jonathan Putnam's untimely June 25, 2018 Supplemental Expert Report; and (c) testimony from third-party Verizon Wireless.

OF COUNSEL:

Michael D. Jay
Bill Ward, Ph.D.
Nandan R. Padmanabhan
Micol Small
Martin Ellison
BOIES, SCHILLER & FLEXNER LLP
401 Wilshire Blvd., Suite 850
Santa Monica, CA 90401
Tel: (310) 752-2400

Steven Holtzman
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Tel: (510) 874 1000

William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Tel: (202) 237-2727

OF COUNSEL:

Kevin P.B. Johnson
Victoria F. Maroulis
Todd M. Briggs
Charles M. Stiernberg
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Tel: (650) 801-5100

Dated: August 30, 2018
Public Version Dated: September 6, 2018
5910863 / 42622

Respectfully Submitted,

POTTER ANDERSON & CORROON LLP

By:    /s/ David E. Moore
       David E. Moore (#3983)
       Bindu A. Palapura (#5370)
       Stephanie E. O'Byrne (#4446)
       Hercules Plaza, 6th Floor
       1313 N. Market Street
       Wilmington, DE 19801
       Tel: (302) 984-6000
       dmoore@potteranderson.com
       bpalapura@potteranderson.com
       sobyrne@potteranderson.com

*Attorneys for Defendant Apple, Inc.*

SHAW KELLER LLP

By: /s/ Nathan R. Hoeschen
       John W. Shaw (#3362)
       Karen E. Keller (#4489)
       Andrew E. Russell (#5382)
       David M. Fry (#5486)
       Nathan R. Hoeschen (#6232)
       I.M. Pei Building
       1105 N. Market Street, 12th Floor
       Wilmington, DE 19801
       Tel: (302) 298-0700
       jshaw@shawkeller.com
       kkeller@shawkeller.com
       arussell@shawkeller.com
       dfry@shawkeller.com
       nhoeschen@shawkeller.com

*Counsel for Defendants Samsung Electronics
Co., Ltd. and Samsung Electronics America,
Inc.*

27