IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EVOLVED WIRELESS, LLC,          )
          )
          Plaintiff,      )
          )
      V.       )      Civil Action No. 15-542-JFB-SRF
          )
APPLE INC.,       )
          )
          Defendant.   )
_____

EVOLVED WIRELESS, LLC,          )
          )
          Plaintiff,      )
          )
      V.       )      Civil Action No. 15-543-JFB-SRF
          )
HTC CORPORATION and       )
HTC AMERJCA, INC.,       )
          )
          Defendants.  )
_____

EVOLVED WIRELESS, LLC,          )
          )
          Plaintiff,      )
          )
      V.       )      Civil Action No. 15-544-JFB-SRF
          )
LENOVO GROUP LTD., LENOVO   )
(UNITED STATES) INC., and    )
MOTOROLA MOBILITY,     )
          )
          Defendants.  )
_____

EVOLVED WIRELESS, LLC, )
)
        Plaintiff, )
)
    V. )          Civil Action No. 15-545-JFB-SRF
)
SAMSUNG ELECTRONICS CO., LTD. )
and SAMSUNG ELECTRONICS )
AMERICA, INC. )
)
        Defendants. )
_____ )

EVOLVED WIRELESS, LLC, )
)
        Plaintiff, )
)
    V. )          Civil Action No. 15-546-JFB-SRF
)
ZTE (USA) INC., )
)
        Defendant. )
_____ )

EVOLVED WIRELESS, LLC, )
)
        Plaintiff, )
)
    V. )          Civil Action No. 15-547-JFB-SRF
)
MICROSOFT CORPORATION, )
MICROSOFT MOBILE OY and )
NOKIA INC., )
)
        Defendants. )

## MEMORANDUM AND ORDER

This matter is before the Court on the following motions: defendant Apple Inc.'s

("Apple") motion (D.I. 275)[1] and the joint motion by defendants in the above captioned

---

[1] A corresponding motion in a related case is D.I. 270 in in *Evolved Wireless, LLC v. Microsoft Corp.*
("Microsoft"), 1:15cv547.

related cases ("the defendants")(D.I. 278)[2] to preclude testimony of Dr. Jonathan D. Putnam pursuant to Federal Rule of Evidence 702; the defendants' motion to preclude the testimony of Dr. Todor Cooklev under Federal Rules of Evidence 702 and 403 (D.I. 280);[3] and plaintiff Evolved Wireless LLC's ("Evolved") motion to preclude the defendants' experts Ms. Shirley Webster, Dr. Michael Walker, Dr. Vernon Palmer, and Dr. Harry Bims) (D.I. 283).

I.    LAW

In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court explained that Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" in order to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." In general, the Federal Circuit applies the law of the otherwise applicable regional circuit to issues not unique to patent law, including the admissibility of expert testimony. *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1294 (Fed. Cir. 2015) ("Whether proffered evidence is admissible at trial is a procedural issue not unique to patent law, and we therefore review the district court's decision to admit expert testimony under the law of the regional circuit").

The rule requires that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Expert testimony is admissible only if "the testimony is based on sufficient facts or data," "the testimony is the

---

[2] Corresponding motions in the related cases are:  D.I. 285 in *Evolved Wireless LLC ("Evolved") v. HTC Corp. and HTC Am., Inc.* ("*HTC*"), 1:15cv543; D.I. 254 in *Evolved v. Motorola Mobility, LLC and Lenovo Corp.* ("*Motorola*"), 1:15cv544; D.I. 290 in *Evolved v. Samsung Elecs. Co., Samsung Elecs. Am. Inc.,* ("*Samsung*"), 1:15cv545; D.I. 256 in *Evolved v. ZTE (USA) Corp.* ("*ZTE*"), 1:15cv546; and D.I. 264 in *Evolved v. Microsoft*, 1:15cv547.  For ease of reference, the court will cite to filings in the *Apple* case.

[3] Corresponding motions are D.I. 287 in *Evolved v. HTC,* 1:15cv543; D.I. 256 in *Evolved v. Motorola*, 1:15cv544; D.I. 292 in *Evolved v. Samsung,* 1:15cv545; D.I. 258 in *Evolved v. ZTE*, 1:15cv546; and D.I. 266 in *Evolved v. Microsoft,* 1:15cv547.

product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)–(d). The Third Circuit explains: "Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). Qualification refers to the requirement that the witness possess specialized expertise and the Third Circuit "interpret[s] this requirement liberally, holding that 'a broad range of knowledge, skills, and training qualify an expert.'" *Schneider*, 320 F.3d at 404 (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3rd Cir. 1994)). "Secondly, the testimony must be reliable; it 'must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation" and "the expert must have 'good grounds' for his or her belief." *Id.* (quoting *In re Paoli*, 35 F.3d at 742. Finally, Rule 702 requires that the expert testimony must fit the issues in the case. *Id.* "In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Id.* (noting that Rule 702's "helpfulness" standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility).

An expert's opinion on a legal conclusion "is neither necessary nor controlling." *See High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1313 (Fed. Cir. 2013) (quoting *Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1564 (Fed.Cir.1988), abrogated on other grounds by *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (en banc). That said, an expert's opinion may be relevant to the factual aspects of the analysis leading to that legal conclusion. *Id.* When an expert's methodology is sound, and the evidence relied upon is sufficiently related to the case at hand, disputes

about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010)*, aff'd,* 564 U.S. 91 (2011).

An expert should not be excluded "simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) (allowing an engineer to testify about the inadequacy of a service manual warning for an automobile liftgate, even though the expert had not designed automobile liftgates or drafted service manuals). The question of whether the expert is credible, or the opinion is correct, is generally a question for the fact finder, not the court. *Summit 6, LLC*, 802 F.3d at 1296; *see Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1314 (Fed. Cir. 2014), *overruled en banc in part not relevant here, Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015). "Indeed, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Summit 6, LLC*, 802 F.3d at 1296 (quoting *Daubert*, 509 U.S. at 596).

The Federal Circuit Court of Appeals recognizes that estimating a reasonable royalty is not an exact science. *Id.* The record may support a range of reasonable royalties, rather than a single value. *Id.* Likewise, there may be more than one reliable method for estimating a reasonable royalty." *Id.* (quoting Apple, 757 F.3d at 1315). An expert's proposed reasonable royalty rate must be tied to the facts of the case. *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1349 (Fed.

Cir. 2018). "Questions about what facts are most relevant or reliable to calculating a reasonable royalty are for the jury." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011).

When the accused infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by such features. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). Also, when dealing with SEPs, not only must the patented feature be apportioned from all the unpatented features reflected in the standard, but the royalty must be premised on the value of the patented feature, not any value added by the standard's adoption of the patented technology. *Id.* at 1232. The question of whether license agreements are sufficiently comparable generally goes to the weight of the evidence, not its admissibility. *Id.* at 1227-28.

As with other testimony, even expert testimony that is relevant and reliable may be challenged under Federal Rules of Evidence 403, which permits the exclusion of evidence on grounds of prejudice, confusion or waste of time. *See* Fed. R. Evid. 403; Banks v. United States, 93 Fed. Cl. 41, 47 (2010) ("And, as with other testimony, even expert testimony which is relevant and reliable may be challenged under FRE 403, which permits the exclusion of evidence on grounds of prejudice, confusion or waste of time"). Under Rule 403, "the probative value of the evidence must be 'substantially outweighed by the danger of unfair prejudice . . . ' before it may be excluded." *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1581 (Fed. Cir. 1993) (emphasis in original). "Unfair prejudice" within its context means an undue tendency to suggest decision on an improper basis,

commonly, though not necessarily, an emotional one.   *Id.*; *see* Rule 403 Advisory Committee Note.

II.     DISCUSSION

      A.     Defendants' Motions

            1.     Dr. Jonathan D. Putnam

                 a.     Apple's Motion (D.I. 275)

Dr. Putnam is Evolved's damages expert.  Apple challenges Dr. Putnam's "top-down" approach to calculate per patent royalty rates.  It also challenges Dr. Putman's calculation of damages using a lump-sum payment structure, in recognition of Apple's strong preference, and common practice, of structuring license agreements as a lump sum, and LGE's preference for lump sum compensation in negotiations for a license agreement with Apple.

Apple asserts that Dr. Putnam's lump-sum damages calculation includes damages for future Apple products that Evolved has not accused in this case.  It contends Dr. Putnam's lump-sum methodology is flawed in that seeking damages for these products violates the basic principle that a plaintiff in a patent suit may only be awarded damages for an infringer's use of the patented invention in infringing products, arguing that if a product is not accused in the case, it cannot be an infringing product.[4]

---

[4] Dr. Putnam calculates the lump sum payment assuming that the parties would have identified Apple's past sales of accused products and forecast Apple's future sales.  Apple contends that if Dr. Putnam's forecast is to be based only on the products accused in this case, he would have had to assume that the accused products will be sold through 2026 and there is no evidence to support that assumption.  Apple states the evidence shows that it historically sells a particular iPhone or iPad model in the United States for only a few years and with the advent of each new iPhone or iPad model, sales of older models are typically phased out.

In opposition, Evolved contends that a lump sum royalty determination may consider sales of future products. It points to the difference between a lump-sum and a running royalty and argues that Dr. Putnam was justified in looking to forecasts of Apple's future LTE sales to support his lump sum calculation. Evolved asserts that the credibility of any forecast is an issue of weight that should be left for the jury.

The Court finds Apple's motion should be denied. Any alleged flaws in the expert's damages theory concern the weight to be afforded the testimony, not its admissibility. Effective cross-examination and the presentation of contrary evidence should be adequate to prevent the jury from being misled. Challenges to the testimony may require a cautionary instruction, but the Court cannot determine the ambit of such an instruction at this time.

b. Defendants' Joint Motion (D.I. 278)

Defendants challenge Dr. Putnam's unreliable "citation analysis," arguing it should be excluded as unreliable.[5] They argue Dr. Putnam's "top-down" damages approach violates the basic tenets of calculating a reasonable royalty in that he does not apportion the features of the '236 and '373 Patents from the unpatented features of defendants' accused devices. Further, they contend that, though Dr. Putnam admits that the entire market value rule does not apply to his "top-down" approach, he nonetheless applies the entire market rule in refusing to reduce his proposed damages base to the smallest component that purportedly embodies the asserted patented technology—here, the baseband chipset.

In response, Evolved argues that Dr. Putnam's detailed analysis and opinions are supported by the evidence and by his experience, specialized training, and professional

_____

[5] Forward citation analysis is a method of estimating the value of particular patent based on the number of times the patent is cited by later patents.

judgment. They argue Dr. Putnam's methodology and qualifications are more than enough to satisfy *Daubert* and his testimony will assist the jury in determining the outcome of a hypothetical negotiation for a FRAND license to the patents-in-suit. Further, Evolved argues that the defendants' criticism of Dr. Putnam's position goes the weight of Dr. Putnam's testimony rather than to its admissibility.

The Court again finds that the defendants' arguments relate to the weight and not the admissibility of Dr. Putnam's testimony. The defendants' additional arguments are unavailing. The citation analysis method has generally been regarded as reliable. *Comcast Cable Commc'ns, LLC v. Sprint Commc'ns Co., LP*, 218 F. Supp. 3d 375, 383 & n.8 (E.D. Pa. 2016). The defendants' critique of his application of the method is a matter for cross-examination. Objections to opinions involving apportionment and the entire market value rule can similarly be addressed in cross-examination.

### 2. Todor Cooklev (D.I. 280)

Todor Cooklev is Evolved's infringement and validity expert. Apple and the other defendants move to preclude Dr. Todor Cooklev's infringement opinions under Federal Rules of Evidence 702 and 403 (D.I. 280). They contend that Dr. Cooklev's infringement opinions are heavily based on two types of TechPats testing that are unreliable, speculative, inapplicable to the asserted patents, and/or incomplete. They argue that opinions based on the field testing must be excluded. Further, they argue that the probative value of Dr. Cooklev's conclusions relying on the TechPats test reports are outweighed by the danger of misleading the jury.

In response, Evolved contends that the underlying emulation and field testing are the products of reliable principles and methods. They submit that field testing, like that

9

performed by TechPats, is commonly used in the industry. Indeed, Evolved argues that the defendants themselves conduct similar conformance tests on their own devices. Evolved contends that the defendants' challenge to Dr. Cooklev's reliance on the TechPats emulation testing goes to the weight of his testimony rather than to its admissibility. Evolved also asserts that Dr. Cooklev's opinions do not present a risk of misleading the jury under Rule 403.

The Court agrees that the defendants' criticisms go more to weight than admissibility. Dr. Cooklev's reliance on the tests can be challenged in cross-examination. The Court further finds the probative value of the evidence does not appear to be substantially outweighed by the danger of prejudice or confusion, but it is difficult to make that determination in the context of a pretrial motion. Any danger of confusing or misleading the jury may be obviated by an appropriate cautionary or limiting instruction during trial or by appropriate jury instructions at the end of trial. The Court will overrule the defendants' motion at this time, without prejudice to a timely objection at trial.

        3.     Evolved's Motion (D.I. 283)

        a.     Ms. Shirley Webster

Ms. Shirley Webster is an Apple damages expert. Evolved moves to exclude Ms. Webster's opinion on comparable licenses, contending her methodology is flawed and is based on insufficient facts or data. It also contends that Ms. Webster does not have the technical background to state an opinion as to the "Apple FRAND framework" and asserts her opinions on royalties "suggested" by the "Apple FRAND framework" are not tied the

facts of the case and are based on speculation.[6]  Further, it contends that Ms. Webster's

opinion based on the purchase price of the patents-in-suit is not supported by the

evidence and is unreliable and further contends Ms. Webster is not qualified to opine on

the forward citation analysis performed by Dr. Putnam.[7]  Further, they argue that Ms.

Webster's contradictory *ex ante* opinion will confuse the jury.[8]

In response, defendants argue that Evolved's basis for seeking to exclude the Ms.

Webster's opinions amount only to disagreement with her conclusions and its criticisms

go to the weight of her testimony, not its admissibility.  They argue that Ms. Webster's

"Apple FRAND analysis," consideration of purchase price, and *ex ante* analysis are

proper under the facts and the law.

The Court finds the record shows that Webster relies on agreements that appear

technologically comparable to the patents-in-suit in that they involve a specific aspect of

mobile devices—declared-essential cellular technology.  Evolved's arguments on

comparability generally go to the weight, not the admissibility of the comparison evidence.

As to Ms. Webster's testimony on the Apple FRAND framework analysis, as long as

evidence supports that licensing approach, the analysis appears reliable.  Again, subject

to a showing of proper foundation, Evolved's criticisms go to the weight of the evidence

and are properly the subject of cross-examination and competing evidence.

---

[6]  This relates to the methodology Apple uses to develop a compensation reference point for license
agreements for cellular SEPs.  Apple contends it would have applied the methodology in a hypothetical
negotiation for the patents in-suit.

[7]  The forward citation method has generally been regarded as reliable.  *Comcast Cable Commc'ns, LLC
v. Sprint Commc'ns Co.*, LP, 218 F. Supp. 3d 375, 383 & n.8 (E.D. Pa. 2016).

[8]  This critique is directed to Ms. Webster's testimony on the applicable date for a hypothetical negotiation
and her conclusion that the compensation for a FRAND-encumbered patent must be considered *ex ante*
to avoid capturing the value of the standard itself in the royalty resulting from the hypothetical negotiation.

Ms. Webster's reliance on purchase price as a factor in her damage's analysis must also be supported by evidence but Evolved has not shown that a use of a purchase price for the patents-in-suit is categorically unreliable or subject to exclusion under *Daubert*. Any failure of Ms. Webster's analysis to account for actual terms of the agreement, or to consider risks in monetizing the patents, is a matter for cross-examination.

The Court also finds Webster is qualified to offer an opinion on Dr. Putnam's citation analysis method. She is a managing director of a firm providing financial products and services related to intellectual property and has provided financial and economic consulting services for over thirty years. She has conducted valuation, licensing negotiations, and strategic management studies involving intellectual property and has determined reasonable royalty and lost profits damages for patent infringement and analyzed damages in other types of intellectual property disputes. The method is generally regarded as reliable and Evolved can address any shortcomings and challenge the probative value of such evidence in cross-examination. There is no requirement that an expert must perform an analysis in order to analyze another expert's performance.

The Court also finds Webster's *ex ante* analysis appears to conform to the law as it relates to establishing royalties for SEPs. *See, e.g., In re Innovatio IP Ventures, LLC Patent Litig.*, MDL Docket No. 2303, No. 11 C 9308, 2013 WL 559 3609, *8, *40 (N.D. Ill. Oct. 3, 2013) (noting parties' agreement that the appropriate date for the hypothetical negotiation was the time of adoption of the standards); *see also Microsoft Corp. v. Motorola, Inc.*, No. C10-1823JLR, 2013 WL 2111217, *18 (W.D. Wash. Dec. 3, 2013). Evolved has not shown that Ms. Webster's *ex ante* considerations as part of the

hypothetical negotiation should be excluded.  The evidence appears no more likely to confuse the jury than other technical evidence in this case.  Evolved's criticisms can be addressed in cross-examination or via timely objections at trial.  Evolved's motion to exclude Ms. Webster's opinions will be denied at this time without prejudice to reassertion via timely objections at trial.

b. Mr. Michael Walker

Mr. Walker is an expert on the standards-setting process at European Telecommunications Standard Institute ("ETSI") and the Third Generation Partnership Project ("3GPP"), including the obligations that ETSI and 3GPP impose on their members to disclose intellectual property rights during the standard-setting process and the ongoing obligations that these members have to grant a license to these declared intellectual property rights on fair, reasonable, and nondiscriminatory ("FRAND") terms and conditions.  Walker will offer an opinion relating to Apple's conduct with respect to seeking injunctive relief without offering a license for each of the Asserted Patents on FRAND terms.

Evolved contends Walker's opinion, that it was obligated to offer Qualcomm a license, should be excluded under Rule 702(b) as there is no such requirement under the ETSI IPR Policy.  It also objects to Walker's opinions on disclosure obligations, contending that Apple is not asserting a defense of untimely disclosure and contends that Walker's opinions regarding ETSI's disclosure obligations are not tied to the facts of this case.

The defendants, on the other hand, contend Walker's testimony regarding ETSI disclosure obligations are merely background that provide context for his opinions.  They

argue Evolved provides no explanation as to why this background is not relevant to Mr. Walker's opinions or how it would allegedly "confuse the jury."

The Court has determined that the breach of FRAND obligations issue is a matter for determination by the Court. Accordingly, the motion will be granted to the extent that the evidence relates to the issues that are to be tried to the Court. It may be appropriate for some evidence to be presented outside the presence of the jury, but the Court cannot determine that at this time.

c.      Dr. Vernon Palmer

Dr. Vernon Palmer provides opinions that ETSI's FRAND commitment provides a binding contractual commitment between ETSI and LGE (the original assignee of the patents-in-suit), that as a successor-in-interest to the patents-in-suit, Evolved is bound by this same contractual commitment, and that this contractual commitment is for the benefit of, and is enforceable by, third parties, such as Apple. This testimony also relates to the breach of FRAND obligations and licensing issues that will be tried to the court. Accordingly, the motion is sustained with respect to testimony that is not relevant to the infringement and validity issues that will be decided by the jury.

d.      Dr. Harry Bims

Dr. Harry Bims is Apple's expert on invalidity. Evolved contends that Dr. Harry Bims's opinion on non-infringing alternatives should be excluded because they were purportedly not "available" when infringement purportedly began. Also, they contend that Dr. Bims's obviousness opinion for the '373 patent is unreliable because he does not articulate a motivation to combine the specific references. Further, Evolved argues that

Dr. Bims's opinions on anticipation of the '373 patent should be excluded because he does not apply this Court's claim construction.

The defendants argue that Bims's testimony on non-infringing alternatives amount to internal implementation details that would allow the accused Apple products to remain interoperable with existing LTE networks without any modification to the LTE standard.

Whether the noninfringing alternatives were available is a matter that can be addressed in cross-examination. There is no requirement that a noninfringing alternative is commercially available, but there must be evidence that it can be implemented. Also, there appears to be support for Dr. Bims's testimony on motivation to combine and Evolved can pursue whatever shortcomings there may be on cross-examination. Further, it appears that Evolved's arguments with respect to claim construction are merely a disagreement with Dr. Bims's analysis. The Court cannot determine Dr. Bims's adherence to the Court's claim construction in the context of this motion. Evolved can raise any objections at trial.

The Court finds Evolved's criticisms go to the weight not the admissibility of Dr. Bims's testimony or are properly the subject of a timely objection at trial. Evolved's motion to exclude Dr. Bims's testimony will be denied at this time without prejudice to reassertion at trial.

IT IS ORDERED:

1.     Defendant Apple Inc.'s motion to preclude testimony of Dr. Jonathan D. Putnam (D.I. 275) is denied;

3.     Defendants' joint motion to preclude testimony of Dr. Jonathan D. Putnam (D.I. 278) is denied.

4.      Defendant Apple Inc.'s motion to preclude the testimony of Dr. Todor

        Cooklev (D.I. 280) is denied.

5.      Plaintiff Evolved Wireless LLC's motion to preclude the defendants' experts

        (D.I. 283) is granted in part and denied in part as set forth in this order.

DATED this 12th day of March, 2019.

                                        BY THE COURT:

                                        s/ Joseph F. Bataillon
                                        Senior United States District Judge