# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EVOLVED WIRELESS, LLC, | ) |
| | )   C.A. No. 15-542-JFB-SRF |
| Plaintiff, | ) |
| | )   **JURY TRIAL DEMANDED** |
| v. | ) |
| | )   **PUBLIC VERSION** |
| APPLE INC., | ) |
| | ) |
| Defendant. | ) |

## APPLE INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OF NONINFRINGEMENT AND INVALIDITY AT THE CLOSE OF PLAINTIFF'S CASE PURSUANT TO FED. R. CIV. P. 50(A)

OF COUNSEL:

Michael D. Jay
Nandan R. Padmanabhan
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067-4704
Tel: (310) 595-3000

Mark D. Fowler
DLA PIPER LLP (US)
2000 University Ave.
East Palo Alto, CA 94303
Tel: (650) 833-2000

Susan N. Acquista
Jacob Anderson
Kathryn Riley Grasso
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101
Tel: (619) 699-2700

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant Apple Inc.*

Dated: April 3, 2019
Public Version Dated: April 10, 2019
6132070 / 42622

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................... iii

II.      NATURE AND STAGE OF THE PROCEEDINGS ......................................... 1

III.      LEGAL STANDARD FOR JMOL .......................................................... 1

IV.      EVOLVED FAILED TO PROVE INFRINGEMENT OF THE '373 PATENT. ............ 2

       A.      Overview Of The '373 Patent ........................................................ 2

       B.      Evolved Failed To Prove Literal Infringement Of The Asserted Claims. ............... 2

                1.      A preamble and a preamble index are very different values. ..................... 4

                2.      There is no one-to-one correspondence between the preamble index and the preamble. ......................................................... 6

                3.      The "access information" received by the accused products from the source base station is not "configured to permit the terminal to access the target base station." ............................................... 7

                4.      The preamble is determined by the accused products, not the target base station. ............................................................. 8

       C.      Evolved Failed To Prove Infringement Under The Doctrine Of Equivalents. .......................................................................... 9

       D.      Evolved Failed To Prove Infringement Under A Legally Proper Claim Construction. ....................................................................... 12

V.      APPLE HAS PROVEN INVALIDITY OF THE '373 PATENT. ..................... 13

       A.      Overview Of The Hu Patent ........................................................ 13

       B.      The Hu Patent Anticipates Claim 24 Of The '373 Patent. ...................... 13

                1.      The Hu patent discloses "a mobile terminal for establishing a radio connection to a target base station in a mobile communications system, the mobile terminal comprising" of claim 24. ..................... 13

                2.      The Hu patent discloses "a radio protocol adapted to receive access information from a source base station after a handover request is accepted by the target base station" of claim 24. ..................... 13

                3.      The Hu patent discloses "perform a random access procedure with the target base station using the received access information, such that the access information is configured to permit the terminal to access the target base station" of claim 24. ............................... 15

                4.      The Hu patent discloses "wherein the access information includes preamble information for a random access procedure" of claim 24. ......... 15

                5.      The Hu patent discloses "wherein the preamble information is a dedicated preamble used only for a specific terminal" of claim 24. ........... 16

                6.      The Hu patent discloses "wherein the dedicated preamble is determined by the target base station" of claim 24. ..................... 16

    C.      Claim 25 Of The '373 Patent Is Anticipated By The Hu Patent............................17

VI.    EVOLVED FAILED TO PROVE INFRINGEMENT OF THE '236 PATENT. .............17

    A.      Overview Of The '236 Patent ..............................................................................17

    B.      Evolved Failed To Prove Literal Infringement Of The Asserted Claim................18

          1.      Evolved has not and cannot show that Apple's iPhones and iPads determine whether there is data in the message 3 buffer when the reception module receives the uplink grant signal.....................................18

          2.      Apple has shown that its iPhones and iPads transmit message 3 data on uplink grants received in messages other than the random access response message.........................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. F. Hoffman–LA Roche, Ltd.*,
   580 F.3d 1340 (Fed. Cir. 2009) ............................................................................3

*Central Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.*,
   482 F.3d 1347 (Fed. Cir. 2007) ............................................................................4

*Comark Commc'ns, Inc. v. Harris Corp.*,
   156 F.3d 1182 (Fed. Cir. 1998) ..........................................................................10

*Eshelman v. Agere Sys., Inc.*,
   554 F.3d 426 (3d Cir. 2009) ..................................................................................2

*In re Garrido*,
   646 F. App'x 942 (Fed. Cir. 2016) ......................................................................13

*Lightning Lube, Inc. v. Witco Corp.*,
   4 F.3d 1153 (3d Cir. 1993) ....................................................................................1

*London v. Carson Pirie Scott & Co.*,
   946 F.2d 1534 (Fed. Cir. 1991). (*See also* Trial Tr. 741:11-13 (Dr. Cooklev
   agreeing that if claim 24 is not infringed then that "automatically means that
   claim 25 is not infringed.").) ................................................................................3

*nCUBE Corp. v. SeaChange Int'l, Inc.*,
   313 F. Supp. 2d 361 (D. Del. 2004) ......................................................................9

*SightSound Techs., LLC v. Apple Inc.*,
   809 F.3d 1307 (Fed. Cir. 2015) ..........................................................................12

*Southwall Techs., Inc. v. Cardinal IG Co.*,
   54 F.3d 1570 (Fed. Cir. 1995) ..........................................................................2-3

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*,
   90 F.3d 1558 (Fed. Cir. 1996) ..................................................................9, 10, 11

**Other Authorities**

Fed. R. Civ. P. 50(a) ................................................................................................1

U.S. Patent No. 7,809,373 ................................................................................ *passim*

U.S. Patent No. 7,881,236 ..............................................................................1, 17, 18, 20

U.S. Patent No. 8,219,097......................................................................................................12

## I.    INTRODUCTION

Pursuant to Fed. R. Civ. P. 50(a) Apple Inc. moves for judgment as a matter of law ("JMOL") on the following grounds: (1) Evolved Wireless LLC ("Evolved") failed to present legally sufficient evidence to allow the jury to conclude that Apple infringes the asserted claims of U.S. Patent No. 7,809,373 ("the '373 patent"), either literally or under the doctrine of equivalents; (2) Evolved failed to present legally sufficient evidence to allow the jury to conclude that Apple infringes the asserted claims of U.S. Patent No. 7,881,236 ("the '236 patent"), literally; and (3) the asserted claims of the '373 patent are invalid as anticipated by Chinese Patent No. CN1596020A to Hao Hu ("Hu patent").

## II.    NATURE AND STAGE OF THE PROCEEDINGS

In May 2015, Evolved filed a patent infringement lawsuit accusing various Apple iPhone and iPad products that are compatible with LTE networks of infringing five patents.  Evolved later dismissed its infringement claims related to three of the asserted patents.  Prior to trial, Evolved narrowed its asserted claims to claims 24 and 25 of the '373 patent and claim 7 of the '236 patent.  Currently, the Court is presiding over the trial of Evolved's infringement claims.

## III.    LEGAL STANDARD FOR JMOL

Fed. R. Civ. P. 50(a) provides for the grant of JMOL at the close of a plaintiff's case if a "reasonable jury would not have a legally sufficient evidentiary basis to find" for the plaintiff.  In the Third Circuit, when determining whether to grant a JMOL motion "[t]he question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) (citations and internal quotation marks omitted). "Although judgment as a matter of law should be granted sparingly," it is mandated "where the record is critically deficient of the minimum quantum of evidence"

necessary to support a jury verdict.  *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 433 (3d Cir. 2009) (internal quotation marks omitted).

## IV.     EVOLVED FAILED TO PROVE INFRINGEMENT OF THE '373 PATENT.

### A.     <u>Overview Of The '373 Patent</u>

The asserted claims of the '373 patent relate to an apparatus for transferring a radio connection from a source base station (commonly referred to as a "cell tower") to a target base station (another cell tower) in a mobile communications system.  This operation is commonly referred to as a "handover."  The Court construed the term "handover" to mean: "[t]ransfer of a terminal's connection with a source base station to a target base station."  (D.I. 110 at 7.)  For the mobile terminal to establish a connection to the target base station, it must transmit an initial message—called a "preamble"—on the "(Physical) Random Access Channel" (commonly abbreviated as (P)RACH)).  (JTX0001 at 2:48-49, 2:64-66, 4:66-5:1.)  This process is called a "random access procedure."  Among other things, a preamble consists of a signature—*i.e.,* a sequence of numbers—that differentiates it from other preambles transmitted by other terminals. (JTX0001 at 3:31-33.)  If two terminals transmit the same preamble at the same time, a RACH "collision" can occur, leading to handover processing delays.  (JTX0001 at 5:4-7, 5:51-57.)  This is referred to as a "contention-based" random access procedure.  The '373 patent purports to solve the problem of RACH collisions by pre-allocating a preamble for the terminal to use during a handover—thereby resulting in a "contention-free" random access procedure. (JTX0001 at 5:11-17, 7:31-32.)

### B.     <u>Evolved Failed To Prove Literal Infringement Of The Asserted Claims.</u>

There is no evidence upon which the jury could properly find a verdict for Evolved as to literal infringement of claims 24 and 25 of the '373 patent.  To establish literal infringement, "every limitation set forth in a claim must be found in an accused product, exactly."  *Southwall*

*Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995).  Thus, "[i]f any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Amgen Inc. v. F. Hoffman–LA Roche, Ltd.*, 580 F.3d 1340, 1374 (Fed. Cir. 2009).  A product that does not infringe an independent claim cannot literally infringe a claim that is dependent on that independent claim.  *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed. Cir. 1991). (*See also* Trial Tr. 741:11-13 (Dr. Cooklev agreeing that if claim 24 is not infringed then that "automatically means that claim 25 is not infringed.").)

Claim 24 requires that:  (a) a target base station determine a dedicated preamble used only for a specific terminal; (b) the target base station transmit the dedicated preamble to a source base station; and (c) the source base station transmit the dedicated preamble to a terminal. (JTX0001 at claim 24.)  As shown below, the undisputed evidence demonstrates that during a contention-free random access procedure, the accused Apple mobile devices—which are terminals—themselves generate the preamble rather than receiving it from the source base station via the target base station.  The claim also requires that the access information that the phone receives be used to perform the random access procedure.  There is no evidence that what the accused products actually receive, the preamble index, is used to perform the random access procedure.  Instead, the preamble created by the phone is used.

Faced with clear evidence of non-infringement, Evolved conflates the concept of a "preamble"—which is what the plain language of claim 24 requires—with the concept of a "preamble index"—a term that does not appear in any of the asserted claims.  Thus, Evolved presented evidence that for the accused Apple products: (1) during a contention-free random access procedure for a handover, the target base station selects a preamble index and transmits it to the source base station; (2) the source base station transmits the preamble index to Apple's

devices; and (3) Apple's devices use the received preamble index, along with many other necessary parameters, to generate a preamble using a highly complex mathematical algorithm. Apple's devices then transmit that preamble to the target base station to initiate the random access procedure. This evidence is insufficient as a matter of law to prove literal infringement of the asserted claims of the '373 patent because the claims recite a "preamble" not a "preamble index," and the "[c]laims mean precisely what they say." *Central Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1355 (Fed. Cir. 2007).

### 1.    A preamble and a preamble index are very different values.

A preamble index is a single, integer number, having a value from 1 to 64. By contrast, a preamble is a long sequence of 839 complex numbers including two parts: a "cyclic prefix" and a "Zadoff-Chu sequence." Both the LTE standard and the source code for the accused Apple products directly show the fundamental differences between a preamble index and preamble. Dr. Cooklev, Evolved's expert, acknowledged these differences.

In the LTE Standard, a preamble index (denoted "ra-PreambleIndex") is defined as a single, integer number, having a value from 1 to 64. (JTX0104-0125: 3GPP TS 36.331, Section 6.3.2.) At trial, Dr. Cooklev confirmed that the preamble index in the LTE Standard is an integer between 1 and 64. (Trial Tr. 693:15-18, 694:9-14.) Dr. Cooklev also admitted that the preamble index sent from a source base station to an LTE-enabled device, such as the accused iPhones and iPads, is a single integer between 1 and 64 (e.g., 45). (Trial Tr. 680:20-25.) ███████

██████████████████████████████████████████████████████

█████████████████████████████████████████████

A preamble is far more complex and is the result of sophisticated mathematical algorithms. In the LTE Standard, "[t]he physical layer random access preamble, illustrated in Figure 5.7.1-1, consists of a cyclic prefix of length $T_{CP}$ and a sequence part of length $T_{SEQ}$."

(DTX4109-0033: 3GPP TS 36.211, Version 8.9.0, Section 5.7.1.)  Dr. Cooklev explained that

Figure 5.7.1-1 of the LTE Standard, reproduced above, is "the format of the preamble."  (Trial

Tr. at 776:17-21; *see also id.* at 697:11-14 (agreeing that Figure 5.7.1-1 "tells you in LTE what

the preamble format will be").)  He also confirmed that "CP" shown on the left side of the Figure

refers to the cyclic prefix, and "Sequence" shown on the right side may be referred to as a

"preamble sequence."  (Trial Tr. 697:18-24; 705:25-706:17.)  Dr. Cooklev further agreed that the

sequence portion of the preamble consists of 839 complex numbers. (Trial Tr. 700:10-12;

705:25-707:17; *see also* 691:3-5 (confirming that the sequence is "hundreds of complex

numbers"). ███████████████████████████████

████████████████████████████████████

████████████████████  Dr. Cooklev repeatedly acknowledged that the

preamble shown in Figure 5.7.1-1 of the LTE Standard "goes from the phone to the target base

station" after it is "created on the phone."  (Trial Tr. 705:25-706:7; 778:7-11.)

The fact that a preamble index and a preamble are very different values is

uncontroverted.  In an effort to resuscitate their infringement claim, Evolved attempts to

obfuscate and confuse the jury by interchangeably referring to the preamble index as a preamble,

trying to satisfy the express requirement of claim 24.  In support of this questionable assertion,

Evolved points to only one type of evidence: a small handful of statements in the LTE standard

referring to the preamble index as the "explicitly signaled random access preamble."  (*See, e.g.,*

Trial Tr. 616:6-24 (discussing JTX0104-0125: 3GPP TS 36.331 § 6.3.2); 616:25-617:13

(discussing JTX0103-0013: 3GPP TS 36.321 § 5.1.2).)  But, as Apple's expert, Dr. Bims,

explained, the preamble index "explicitly signals" to the mobile device that it must *generate* a

preamble—i.e., the structure defined by the LTE standard in 3GPP TS 36.211 § 5.7.1

(DTX4109-0033) containing a cyclic prefix and Zadoff-Chu sequence.  (Trial Tr. 1156:23-1157:20 (discussing JTX0104-0125: 3GPP TS 36.331 § 6.3.2).)  Evolved relies only on the proximity of the word "preamble index" to "preamble" to bolster its unsupported assertion.

> **2.     There is no one-to-one correspondence between the preamble index and the preamble.**

Unable to prop up their assertion that a preamble index is in fact a preamble, Evolved and Dr. Cooklev next resort to arguing that the preamble index has a "one-to-one correlation" with the preamble.  But Dr. Cooklev reinforces that there is no one-to-one correlation between a preamble index and a preamble, since multiple parameters, including the preamble index, are used together in conjunction, by Apple's accused devices, to generate one preamble.  (Trial Tr. 681:17-23; 713:20-714:3; 716:7-16.)  Dr. Cooklev also confirms that using a preamble index alone, it is impossible for Apple's iPhones and iPads to connect to the target base station; a true one-to-one correlation would permit access to the target base station with just the preamble index, which is not the case.  (Trial Tr. 699:15-700:5.)

Dr. Almalfouh, a senior engineer at Apple, and Apple's expert, Dr. Bims, both confirm that there is no one-to-one correlation between a preamble index and a preamble.  (Trial Tr. 1043:7-1044:8, 1094:9-15, 1110:12-1111:9, 1112:4-23, 1145:9-25, 1146:1-5, 1146:16-1147:7, 1169:4-13.)  Likewise, Dr. Almalfouh and Dr. Bims both testified that using a preamble index alone, Apple's iPhones and iPads could not connect to the target base station using a preamble index alone.   (Trial Tr.1045:11-1046:1; 1145:1-8.)  Furthermore, Apple's iPhones and iPads are not capable of generating a preamble if the only information received is a preamble index.  (Trial Tr. 1033:21-1034:20; 1043:16-19; 1145:9-21.)  There is no evidence that a one-to-one correspondence exists between the preamble index and preambles.

> 3. **The "access information" received by the accused products from the source base station is not "configured to permit the terminal to access the target base station."**

Further evidence set forth at trial also supports that the received access information, including the preamble index, are not configured to permit the mobile terminal to access the target base station by performing a random access procedure.  The first limitation in claim 24 requires that the mobile terminal "perform a random access procedure with the target base station using the received access information" sent from the source base station to the terminal, and that the access information is "configured to permit the terminal to access the target base station." (JTX0001 at claim 24.)  Further limitations in claim 24 specify that this "access information" include "preamble information" that is a "dedicated preamble," discussed above. Notwithstanding that Apple's iPhones and iPads do not receive the claimed preamble, as discussed above, Evolved has also failed to put forth evidence that the accused products practice the asserted claims because the "access information" that the accused iPhones and iPads receive from the source base station is not "configured to permit the terminal to access the target base station" by "perform[ing] a random access procedure."  (*Id.*)

Dr. Cooklev agreed that, in addition to the preamble index, the accused iPhones and iPads receive several other parameters from the source base station.  (Trial Tr. 694:21-695:9.) Although these parameters comprise "access information," Dr. Cooklev recognized that it is the preamble generated on the device, using complex mathematics, that actually permits the device to perform a random access procedure and access the target base station.  Dr. Cooklev admitted that the preamble index does not and cannot permit the device to perform the random access procedure.  (Trial Tr. 683:21-684:5.) Indeed, Dr. Cooklev agreed that it is "impossible" for the phone to connect to the target base station using only the preamble index. (Trial Tr. 700:1-3.)

7

Dr. Almalfouh and Dr. Bims both confirmed that the access information that Apple's accused devices receive from the source base station is used only as input into a complex mathematical algorithm to generate the preamble that is subsequently used to perform the random access procedure with the target base station.  (Trial Tr. 1036:8-13, 1150:17-1151:12.) Dr. Almalfouh and Dr. Bims also testified that the preamble—and only the preamble—is configured to permit the mobile terminal to perform random access with the target base station, as the preamble's Zadoff-Chu sequence has specific properties that are required to perform the random access procedure with the target base station.  (Trial Tr. 1041:22-1042:14, 1152:4-1153:4.)  The undisputed evidence shows that the access information that Apple's accused devices receive, by itself, is in no way "configured to permit the terminal to access the target base station" by "perform[ing] a random access procedure" as claim 24 requires.

### 4.     The preamble is determined by the accused products, not the target base station.

Evolved has also failed to establish that the "dedicated preamble is determined by the target base station," as the last limitation of claim 24 requires.  The undisputed evidence shows that in the accused iPhones and iPads, preambles are generated, *i.e.,* determined, by the mobile terminals.  The target base station never generates the preamble as claim 24 of the '373 patent requires.  Dr. Cooklev testified consistently with this understanding, stating that an LTE-enabled phone internally produces a preamble consisting of 839 complex numbers plus a cyclic prefix. (Trial Tr. 691:18-22.)  He also agreed that the cyclic prefix and the 839 complex numbers together "form a preamble," and that these steps occur inside the phone.  (Trial Tr. 706:14-17.) Dr. Cooklev was clear that the preamble, including a cyclic prefix and Zadoff-Chu sequence, is "not sent from the source base station to the phone[,]" but rather, is something that the phone itself generates.  (Trial Tr. 700:14-19.)

Dr. Cooklev also reviewed conformance testing and emulation testing of accused products and confirmed that these tests show merely that the terminal received a preamble index, not a preamble, from the target base station (via the source base station). For example, Dr. Cooklev testified that the conformance test designated as PTX0444 and the emulation test designated as PTX0678 merely show that the accused products received an ra-PreambleIndex value from the source base station. (Trial Tr. 731:14-24; 733:11-15.) He admitted that neither test shows that the accused product received the preamble identified in the LTE Standard at Figure 5.7.1-1, discussed *supra*. (Tr. 734:15-23.)

As discussed above, Dr. Almalfouh and Dr. Bims also testified that the preamble is always determined on the mobile device, and is never determined by the target base station. (Trial Tr. 1035:6-20, 1041:22-1042:14, 1044:20-25; 1152:25-1153:4.)

## C.   Evolved Failed To Prove Infringement Under The Doctrine Of Equivalents.

There is also no evidence upon which the jury in this case could properly find a verdict for Evolved as to infringement of claims 24 and 25 of the '373 patent under the Doctrine of Equivalents. To prove infringement under the doctrine of equivalents, Evolved must provide "particularized testimony and linking arguments as to the insubstantiality of the differences between the claimed invention and the accused device or process … on a limitation by limitation basis." *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996). "Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice." *Texas Instruments*, 90 F.3d at 1567. Furthermore, "the mere showing that an accused device is equivalent overall to the claimed invention is insufficient to establish infringement under the doctrine of equivalents." *nCUBE Corp. v. SeaChange Int'l, Inc.*, 313 F. Supp. 2d 361, 376 (D. Del. 2004).

The Federal Circuit has explained that the purpose of the linking requirement "is to ensure that a jury is provided with the proper evidentiary foundation from which it may permissibly conclude that a claim limitation has been met by an equivalent." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1188 (Fed. Cir. 1998). Under this rule, the patent holder must provide sufficient evidence as to how and why the differences between the element in the accused device and the particular claim limitation asserted to be met by the alleged equivalent are insubstantial or that the function, way, and results are the same. *Texas Instruments*, 90 F.3d at 1568.

Dr. Cooklev's testimony falls short of the particularized testimony and linking argument required to support a verdict of infringement under the doctrine of equivalents. Dr. Cooklev provided nothing more than generalized testimony regarding infringement under the doctrine of equivalents as it relates to the "dedicated preamble" limitation. (Trial Tr. 622:25-624:15.)

Regarding the "dedicated preamble" limitation, Dr. Cooklev testified that the "function of the dedicated preamble . . . is to enable the mobile device to identify itself with the target cell." (Trial Tr. 13-17.) He then said that the preamble index and preamble sequence "both enable the mobile device to identify itself and synchronize with the target base station." (Trial Tr. 20-22.) He further testified that "they perform it in substantially the same way because both are determined at the target base station by the target base station." (Trial Tr. 624:2-4.) Lastly, Dr. Cooklev asserted that "both of them achieve substantially the same result because the result is a contention-free handover. The result is to eliminate the possibility of a collision due to handover." (Trial Tr. at 624:7-10.) This generalized testimony comprises the full extent of Evolved's evidence of infringement under the doctrine of equivalents. Because Dr. Cooklev failed to provide any particularized testimony explaining how or why the function, way, and

results of the preamble index and preamble sequence are allegedly the same, Evolved's evidence falls short of the evidentiary standard required to allow the jury to consider infringement under the doctrine of equivalents. *Texas Instruments*, 90 F.3d at 1568.

Furthermore, Dr. Cooklev's conclusory assertions regarding infringement by equivalents are undermined by his own, more detailed testimony about how the accused products actually operate. As discussed above, Dr. Cooklev acknowledged that there are substantial differences between the preamble index that a source base station transmits to the accused product and the preamble that the accused product generates and uses to perform a random access procedure with the target base station. For example, Dr. Cooklev admitted that the preamble comprises a long sequence of complex numbers, whereas, the preamble index is simply an integer between 1 and 64. Dr. Cooklev also admitted that "it is impossible for the target base station to [connect] to the iPhone using only the preamble index." (Trial Tr. 700:1-5.) Thus, Dr. Cooklev conceded that the preamble index does not perform the same function as the preamble.

Implicit in Dr. Cooklev's testimony is also the fact that the preamble index is used in a different way, to achieve a different result than the preamble. Dr. Cooklev repeatedly acknowledges that the preamble index is used, together in conjunction with other parameters, to generate the preamble. (Trial Tr. 691:18-22; 694:21-695:9.) In contrast, Dr. Cooklev testified that the preamble—and only the preamble—is capable of permitting the mobile device to perform random access with the target base station. (Trial Tr. 700:1-3; 14-19.) Dr. Cooklev's broader testimony establishes that the way the preamble index is used—as one input in a mathematical algorithm—results in the generation of the preamble, while the way that the preamble is used—in a transmission to the target base station—results in initiating a random

access connection.  There is no dispute that the preamble index and preamble are not equivalents under the doctrine of equivalents.

Dr. Almalfouh, and Dr. Bims provided testimony that establishes that the function, way and result of the preamble index are not substantially similar to the function, way and result of the preamble.  (Trial Tr. 1033:24-1035:5.)  Dr. Bims set forth a analysis of the doctrine of equivalents during his testimony, explaining in detail how the function, way and result of the preamble index and preamble are substantially different.  (DD002-50; 1167:23-1170:25.)

Accordingly, Evolved failed to present legally sufficient evidence upon which a reasonably jury could find infringement of the "dedicated preamble" limitation under the doctrine of equivalents.

### D.   Evolved Failed To Prove Infringement Under A Legally Proper Claim Construction.

Evolved's infringement theory is premised on construing the term "dedicated preamble" to include a preamble index.  As explained in Apple's Motion for Summary Judgment, Evolved's construction is legally improper because the term "dedicated preamble" must be construed consistent with its use in the related '097 patent.  (D.I. 223 at 6-7, 25-27.)  The '097 patent includes the claim limitation: "wherein the preamble information is either a dedicated preamble or an index of the dedicated preamble."  (U.S. Patent No. 8,219,097 at claim 1.)  Thus, the '097 patent expressly distinguishes preamble from an index.  The term "dedicated preamble" in the '373 patent must be construed consistent with the '097 patent because they are part of the same patent family and share a common specification.  *See SightSound Techs., LLC v. Apple Inc.*, 809 F.3d 1307, 1316 (Fed. Cir. 2015) ("Where multiple patents 'derive from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents.") (quoting *NTP, Inc. v. Research In Motion, Ltd.,* 418 F.3d 1282, 1293 (Fed.

Cir. 2005)); *see also In re Garrido*, 646 F. App'x 942, 945-46 (Fed. Cir. 2016) (adopting claim construction for identical claim term from child patent for use in parent patent).

## V.   APPLE HAS PROVEN INVALIDITY OF THE '373 PATENT.

Apple has provided clear and convincing evidence that the '373 patent is invalid as anticipated by Chinese Patent No. CN1596020A to Hao Hu ("Hu patent"). (DTX3030.) Evolved has failed to show that any claim element of the '373 patent is not anticipated by the disclosures of the Hu patent, and thus there is no evidence upon which the jury in this case could properly find a verdict for Evolved as to invalidity of claims 24 and 25 of the '373 patent.

### A.   Overview Of The Hu Patent

The Hu patent describes a method used by a mobile terminal to perform a handover between two base stations. (Trial Tr. 1203:20-23.) The Hu patent was filed on September 11, 2003, by Hao Hu, and issued on March 16, 2005. (Trial Tr. 1201:24-25.) Because the issue date for the Hu patent predates the earliest priority date for the '373 patent—October 31, 2005—the Hu patent is prior art to the '373 patent. (Trial Tr. 1202:1-13.)

### B.   The Hu Patent Anticipates Claim 24 Of The '373 Patent.

**1.   The Hu patent discloses "a mobile terminal for establishing a radio connection to a target base station in a mobile communications system, the mobile terminal comprising" of claim 24.**

Dr. Bims testified that the abstract of the Hu patent describes that the mobile terminal accesses the target base station using access resources designated by the target base station. (Trial Tr. 1204:14-1205:2.) This is received access information. (*Id.*) Figure 4 of the Hu patent also discloses that step 406 sends information to the mobile terminal. (Trial Tr. 1205:3-8.)

**2.   The Hu patent discloses "a radio protocol adapted to receive access information from a source base station after a handover request is accepted by the target base station" of claim 24.**

Dr. Bims testified that the Hu patent discloses this limitation on page 9 in step 403. (DTX3030 at 9; Trial Tr. 1205:9-25.)  In step 403, the mobile device sends a measurement report to the Radio Network Controller ("RNC"), and the RNC determines if the mobile terminal should commence with the handover.  (*Id.*)  Step 103 also discloses that an RNC determines the target base station.  (*Id.*)  Dr. Bims testified that a person of skill in the art would understand that the RNC selects the target base station, and that the RNC is located within the source base station—in other words, the source base station selects the target base station.  (Trial Tr. 1206:1-15.)  That the RNC in Hu is included within the source base station is not an inherency argument, as Evolved asserts a person of skill in the art reading the Hu patent would understand that the term RNC simply describes some functionality that is performed within the source base station. (*Id.*)  Dr. Bims further testified that the '373 patent also supports this understanding, as the background art section (i.e., the section describing the understanding of one of skill in the art at the time of the invention) indicates that the RNC functionality can be implemented within the base station.  (JTX0001 at 2:34-36; 3:65-67; Trial Tr. 1206:16-1207:1.)  The '373 patent describes at column 2, line 34: "[i]f the above steps are successfully completed, the terminal establishes the RRC connection with the RNC."  (*Id.*)  Later, in column 3, at line 65, the '373 patent says "[t]he functions of the RRC layer may be distributed among and performed within the Node B…"  (*Id.*)  Dr. Bims testified that a person of skill in the art would understand from the '373 patent that the RNC's functionality, which includes the RRC, is performed within the source base station (Node B).  (*Id.*)

Dr. Bims also testified that the Hu patent discloses that the mobile device receives access information from a source base station after a handover request is accepted by a target base station.  (Trial Tr. 1207:2-1208:5.)  He testified that in the abstract of the Hu patent, it states "in

this method, a mobile terminal switching between the source base station and the target base station accesses the target base station by using the access resource designated by the target base station." (*Id.*)  The access resource designated by the target base station is the access information.  (*Id.*)  On page 6 of the Hu patent it also discloses in step B1 that the source base station sends the information about the mobile terminal's capability and service information to the target base station; in step B2 the target base station designates the random access resource for the mobile terminal; and in step B3 the target base station forwards the designated access resource and its power and timing information to the mobile device through the source base station.  (*Id.*)  Step 406 of figure 4 of the Hu patent also discloses that the source base station forwards received access information to the mobile terminal.  (*Id.*)  These disclosures show that the mobile device receives the access information from the source base station after the handover request is accepted by a target base station.  (*Id.*)

3.   **The Hu patent discloses "perform a random access procedure with the target base station using the received access information, such that the access information is configured to permit the terminal to access the target base station" of claim 24.**

Dr. Bims testified that Figure 4 of the Hu patent discloses this limitation.  (Trial Tr. 1208:6-1209:8.)  In step 404, the target base station determines if it has access resources, and in step 405, it assigns an access resource to the mobile device.  (*Id.*)  In step 406, the access resources are sent to the mobile terminal via the source base station, and at step 407, the mobile terminal access the target base station.  (*Id.*)  Step B3 also discloses this limitation.  (*Id.*)

4.   **The Hu patent discloses "wherein the access information includes preamble information for a random access procedure" of claim 24.**

Dr. Bims testified that the Hu patent discloses that the access information is preamble information for a random access procedure in several instances.  (Trial Tr. 1209:9-18.)  On page 6, at A1, it states "the target base station allocating a part of its regularly allocated random access

15

resources as random access resources available to a handover user." (*Id.*)  Dr. Bims testified that

access resources for the random access procedure would necessarily include a preamble.  (*Id.*;

Trial Tr. 1210:12-16.)

### 5.     The Hu patent discloses "wherein the preamble information is a dedicated preamble used only for a specific terminal" of claim 24.

Dr. Bims testified that the Hu patent describes how access resources could be reserved

and dedicated for specific mobile terminals.  (Trial Tr. 1209:19-1210:16.)  The Hu patent, on

page 7, states "this invention allocates part of the regularly allocated random access resources for

use exclusively by handover users so as to adequately guarantee performance for handover users,

greatly enhance the handover speed and success rate and reduce the packet loss rate." (*Id.*)  This

disclosure confirms that the Hu patent reserves access resources for use by handover users.

(Trial Tr. 1209:19-1211:2.)  Furthermore, step B21 on page 6 of the Hu patent discloses "*one* of

the available random access resources is selected for said handover user as *the* access resource

for said mobile terminal…" (*Id.*; DTX3030 at 6)  This disclosure clearly states that only one

access resource is selected for a specific mobile terminal.  (DTX3030 at 6.)

### 6.     The Hu patent discloses "wherein the dedicated preamble is determined by the target base station" of claim 24.

Dr. Bims testified that there are several disclosures of this limitation in the Hu patent.

(Trial Tr. 1210:17-1211:2.)  One example is on page 6, in step B2, where the Hu patent discloses

"the target base station designating a random access resource for said mobile terminal." (*Id.*)

Step B2 also says "the target base station determines if it has random access resources available

to handover users. If so, one of the available random access resources is selected for said

handover user as the access resource for said mobile terminal and step B3 is performed." (*Id.*)

16

### C.     Claim 25 Of The '373 Patent Is Anticipated By The Hu Patent.

Dr. Bims testified that a person of ordinary skill in the art would understand that one

system discussed in the Hu patent, called TD-SCDMA, discussed on pages 4-5, is a form of E-

UMTS system.  (Trial Tr. 1211:21-1212:20.)  Dr. Bims further testified that the E-UMTS system

uses an enhanced Node B (source eNB) and a target enhanced Node B (target eNB).  (*Id.*)  He

testified that a person of skill in the art would understand that the base stations disclosed in the

Hu patent are source and target eNBs, as required by claim 25, because the system described in

the Hu patent is a form of E-UMTS system.  (*Id.*)

## VI.    EVOLVED FAILED TO PROVE INFRINGEMENT OF THE '236 PATENT.

### A.     Overview Of The '236 Patent

The asserted claims of the '236 patent relate to an apparatus for transmitting data stored

in a "message 3" memory buffer under specific conditions during a random access procedure in a

mobile communications system.  (JTX0003 at claim 7.)  The '236 patent describes that the data

in the message 3 buffer is transmitted on a specific uplink ("UL") grant.  (JTX0003 at 4:57-5:3.)

Specifically, the '236 patent describes that during a random access procedure, the base station

(i.e. cell tower) will send to the mobile device a random access response message, and within

that message, will be an uplink grant.  (*Id.*)  If the uplink grant is received on the random access

response message, and there is data in the message 3 buffer, the '236 patent discloses to send the

data in the message 3 buffer.  (*Id.*)  On the other hand, if the mobile device receives an uplink

grant on a different message—for example, the Physical Downlink Control Channel

("PDDCH")—then the '236 patent discloses that "new data" should be sent in lieu of data in the

message 3 buffer.  (*Id.* at 5:4-13.)

17

**B.**   **Evolved Failed To Prove Literal Infringement Of The Asserted Claim.**

Claim 7, the only asserted claim of the '236 patent, requires that: (a) a Hybrid Automatic

Repeat Request ("HARQ") entity adapted to determine whether there is data stored in the

message 3 buffer when the reception module receives the uplink grant signal; (b) acquiring the

data stored in the message 3 buffer if there is data stored in the message 3 buffer when the

reception module receives the uplink grant signal on the random access response message; and

(c) transmitting the data stored in the message 3 buffer to the base station only when[1] using the

uplink grant received on the random access response message.  (JTX0003 at claim 7.)  As shown

below, Evolved has failed to present sufficient evidence that Apple's accused iPhones and iPads

perform the step of "determin[ing] whether there is data stored in the message 3 buffer when the

reception module receives the uplink grant signal."  Additionally, Evolved has failed to rebut

Apple's showing that Apple's iPhones and iPads transmit message 3 data on uplink grants in

addition to those received on the random access response message.

**1.**     **Evolved has not and cannot show that Apple's iPhones and iPads**
**determine whether there is data in the message 3 buffer when the**
**reception module receives the uplink grant signal.**

Evolved has failed to present any evidence that Apple's iPhones and iPads perform the

step of "determin[ing] whether there is data stored in the Msg3 buffer when the reception module

receives the UL grant signal and the specific message is a random access response message," as

required by claim 7 of the '236 patent.  (JTX0003 at claim 7.)  Dr. Cooklev admits that the Apple

iPhones and iPads "construct" the message 3 buffer in most scenarios.  (JTX0267; Trial Tr.

650:13-651:14.)  Dr. Cooklev also admits that this "construction" of the message 3 buffer

---

[1] Though Evolved has not clearly stated its position during trial, its expert, Dr. Cooklev,
interprets claim 7 such that "data stored in the Msg3 buffer is transmitted only if there is data
stored in the Msg3 buffer and the UL grant was received in a random access response."
(Cooklev Rebuttal Report at ¶ 69.)

happens *after* the uplink grant has been received, such that there is no message 3 data, or a message 3 buffer, when the Apple accused devices receive the uplink grant. (JTX0264; Trial Tr. 649:12-650:4.) Given that the message 3 buffer and data are constructed only after the uplink grant is received, it is impossible to determine if there is data in the message 3 buffer—a buffer that does not exist until it is later "constructed"—when the uplink grant is received. Evolved has provided no evidence to the contrary.

Unable to show that the Apple iPhones and iPads perform the step of "determin[ing] whether there is data stored in the Msg3 buffer when the reception module receives the UL grant signal," Dr. Cooklev instead points to ████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████Evolved and Dr. Cooklev fail to point to a single line of source code that shows that the Apple iPhones and iPads actually perform a step of determining whether there is data in a message 3 buffer. Indeed, Evolved and Dr. Cooklev do not point to anything in the Qualcomm source code for the Apple products that even shows that the message 3 buffer exists when the device receives the uplink grant, let alone any determination at that time that any such buffer contains data.

It is uncontested that Apple's iPhones and iPads operate in this manner. Dr. Almalfouh and Dr. Bims provided testimony and analysis of the Qualcomm source code that establishes that Apple's iPhones and iPads generate the message 3 data and buffer after the uplink grant is

received.  (Trial Tr. 1051:4-1054:21; 1261:15-1263:1; 1266:25-1269:5.)  There is simply no

message 3 buffer to check when the uplink grant is received, as it has not yet been created.  (*Id.*)

**2.    Apple has shown that its iPhones and iPads transmit message 3 data on uplink grants received in messages other than the random access response message.**

Evolved has taken the position that the claims of the '236 patent require that message 3

data is transmitted "only if" or "only when" the uplink grant is received on the random access

response message.  (Trial Tr. 1270:4-7.)  Apple has provided uncontroverted evidence that its

iPhones and iPads transmit message 3 data on uplink grants received on messages other than the

random access response.

Evolved provided no evidence to the contrary, instead opting to try and perform

belated claim construction to limit the scope of claim 7 to only "initial transmission" scenarios,

to the exclusion of retransmission scenarios.  (Trial Tr. 561:5-562:6; 1341:5-1342:12.)  There is

no evidence to support Evolved's belated claim construction, as the plain language of claim 7

does not support that the claim is limited to only initial transmission scenarios.  Thus, for this

additional reason, Evolved cannot meet its burden on infringement of claim 7 of the '236 patent.

OF COUNSEL:

Michael D. Jay
Nandan R. Padmanabhan
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067-4704
Tel: (310) 595-3000

Mark D. Fowler
DLA PIPER LLP (US)
2000 University Ave.
East Palo Alto, CA 94303
Tel: (650) 833-2000

Susan N. Acquista
Jacob Anderson
Kathryn Riley Grasso
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101
Tel: (619) 699-2700

Dated: April 3, 2019
Public Version Dated: April 10, 2019
6132070 / 42622

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By:    /s/ David E. Moore
       David E. Moore (#3983)
       Bindu A. Palapura (#5370)
       Stephanie E. O'Byrne (#4446)
       Hercules Plaza, 6th Floor
       1313 N. Market Street
       Wilmington, DE 19801
       Tel: (302) 984-6000
       dmoore@potteranderson.com
       bpalapura@potteranderson.com
       sobyrne@potteranderson.com

*Attorneys for Defendant Apple, Inc.*