# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EVOLVED WIRELESS, LLC, | ) |
| | )   C.A. No. 15-542-JFB-SRF |
| Plaintiff, | ) |
| | )   **JURY TRIAL DEMANDED** |
| v. | ) |
| | )   **PUBLIC VERSION** |
| APPLE INC., | ) |
| | ) |
| Defendant. | ) |

## APPLE INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW AS TO DAMAGES ISSUES PURSUANT TO FED. R. CIV. P. 50(A)

OF COUNSEL:

Michael D. Jay
Nandan R. Padmanabhan
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067-4704
Tel: (310) 595-3000

Mark D. Fowler
DLA PIPER LLP (US)
2000 University Ave.
East Palo Alto, CA 94303
Tel: (650) 833-2000

Susan N. Acquista
Jacob Anderson
Kathryn Riley Grasso
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101
Tel: (619) 699-2700

Dated: April 3, 2019
Public Version Dated: April 10, 2019
6132071 / 42622

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant Apple Inc.*

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 1

III.  LEGAL STANDARD FOR JMOL ......................................................................... 1

IV.  EVOLVED FAILED TO PROVIDE LEGALLY SUFFICIENT EVIDENCE OF
     DAMAGES ...................................................................................................... 2

    A.  Evolved Failed To Start Its Apportionment Analysis With The Smallest
        Salable Unit........................................................................................... 3

    B.  Evolved Failed To Properly Apportion The Value Of The Patented
        Technology. .......................................................................................... 5

    C.  Dr. Putnam's "Forward Citation" Analysis Is Untethered To The Value Of
        The Claimed Inventions.......................................................................... 7

    D.  Evolved's Use Of The Nash Bargaining Solution Is An Improper "Rule of
        Thumb" That The Federal Circuit Has Rejected. ...................................... 8

    E.  Evolved Failed To Prove Its Damages Represent A Reasonable Royalty
        Because It Failed To Consider Material Negotiations Regarding the
        Asserted Patents And Comparable License Agreements................................ 10

        1.  Evolved failed to consider evidence of the ▮▮▮▮▮▮▮▮▮▮▮
            ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ................................................ 11

        2.  Evolved failed to consider Apple's Cellular Licensing Framework........ 12

        3.  Evolved failed to consider comparable Apple licenses. .......................... 12

        4.  Evolved failed to consider the price for which LG sold the patents-
            in-suit. ................................................................................... 14

        5.  Evolved ignored evidence of non-infringing alternatives....................... 15

        6.  Evolved's conclusory opinions about the claimed benefits of the
            asserted patents lack evidentiary support................................................ 16

    F.  Conclusion ............................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
   694 F.3d 1312 (Fed. Cir. 2012) .......................................................................14

*Apple Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014), *overruled on other grounds by Williamson v.
   Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) ......................................14

*Ericsson, Inc. v. D-Link Sys., Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014) ......................................................................5, 6

*Eshelman v. Agere Sys., Inc.*,
   554 F.3d 426 (3d Cir. 2009) ...............................................................................1

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   2015 WL 4272870 (N.D. Cal. 2015) ..................................................................7

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012) ...........................................................................3, 4

*Lightning Lube, Inc. v. Witco Corp.*,
   4 F.3d 1153 (3d Cir. 1993) ..................................................................................1

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) ....................................................................13, 14

*Maxwell v. J. Baker, Inc.*,
   86 F.3d 1098 (Fed. Cir. 1996) ..........................................................................14

*Metris U.S.A., Inc. v. Faro Technologies Inc.*,
   2012 WL 12012748 (D. Mass. 2012) ...............................................................13

*Nickson Indus., Inc. v. Rol Mfg. Co.*,
   847 F.2d 795 (Fed. Cir. 1988) ..........................................................................14

*Oracle Am., Inc. v. Google Inc.*,
   2012 WL 877125 (N.D. Cal. 2012) .....................................................................7

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   894 F.3d 1258 (Fed. Cir. 2018) .......................................................................3, 4

*Riles v. Shell Exploration & Prod. Co.*,
   298 F.3d 1302 (Fed. Cir. 2002) ..............................................................11, 15, 16

*Studiengesellschaft Kohle, m.b.H. v. Dart Indus., In*c.,
    862 F.2d 1564 (Fed. Cir. 1988)..............................................................................................12

*Uniloc USA, Inc. v. Microsoft Corp.,*
    632 F.3d 1292 (Fed. Cir. 2011).................................................................................4, 6, 8, 9

*VirnetX, Inc. v. Cisco Sys., Inc.,*
    767 F.3d 1308 (Fed. Cir. 2014)................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 50(a) .......................................................................................................................1

## I.      INTRODUCTION

Pursuant to Fed. R. Civ. P. 50(a), Apple Inc. moves for judgment as a matter of law ("JMOL") as to Evolved's damages claim.

## II.      NATURE AND STAGE OF THE PROCEEDINGS

In May 2015, Evolved filed a patent infringement lawsuit accusing various Apple iPhone and iPad products that are compatible with LTE networks of infringing five patents owned by Evolved.  Evolved later dismissed its infringement claims related to three of the asserted patents. Prior to trial, Evolved narrowed its asserted claims to claims 24 and 25 of the '373 patent and claim 7 of the '236 patent.  Currently, the Court is presiding over the trial of Evolved's infringement claims.

## III.      LEGAL STANDARD FOR JMOL

Fed. R. Civ. P. 50(a) provides for the grant of JMOL at the close of a plaintiff's case if a "reasonable jury would not have a legally sufficient evidentiary basis to find" for the plaintiff.  In the Third Circuit, when determining whether to grant a JMOL motion "[t]he question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) (citations and internal quotation marks omitted). "Although judgment as a matter of law should be granted sparingly," it is mandated "where the record is critically deficient of the minimum quantum of evidence" necessary to support a jury verdict. *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 433 (3d Cir. 2009) (internal quotation marks omitted).

## IV.   EVOLVED FAILED TO PROVIDE LEGALLY SUFFICIENT EVIDENCE OF DAMAGES

The Court should reject Evolved's damages claim on any one of the following grounds.

First, Evolved failed to apply well-established Federal Circuit apportionment principles, including by rejecting the smallest salable unit as the starting point for its royalty base.  Second, Evolved failed to apportion the alleged value of the claimed inventions from the value of unpatented features or the LTE standard.  Instead, Evolved mislabeled its top-down approach as apportionment, even though its calculations started with the price of an entire handset device and were subsequently based on a supposed "LTE premium."  Third, Evolved's expert, Dr. Putnam, offered an erroneous damages analysis that—in addition to the flaws identified above—inappropriately relied on a supposed 50/50 split of that "LTE premium" between the two hypothetical negotiation parties without any consideration of their bargaining positions.  Fourth, Dr. Putnam also inappropriately attempted to value the claimed inventions based on patent citation analysis that does not actually consider the claims.  Fifth, Dr. Putnam's hypothetical negotiation analysis is also insufficient as a matter of law.  Dr. Putnam outright rejects evidence that is highly relevant to a hypothetical negotiation, including: (a) ██████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████

████████; (b) Apple's actual licensing framework; (c) other comparable licenses Apple has entered into for declared cellular assets; (d) the price for which LG sold the patents-in-suit; and (e) non-infringing alternatives.  Sixth, Evolved offered nothing more than conclusory testimony purportedly quantifying the benefits of the claimed inventions.

For each of these reasons, Evolved did not present legally sufficient evidence to support its overstated damages claim.

2

### A.      Evolved Failed To Start Its Apportionment Analysis With The Smallest Salable Unit.

Evolved improperly used the value of the entire iPhone and cellular iPad as the starting point for its "top-down" analysis and rejected the Qualcomm baseband processor chipset ("baseband chip") as the smallest salable unit ("SSU").  This violates Federal Circuit precedent that "where multicomponent products are accused of infringement, the royalty base should not be larger than the smallest salable unit embodying the patented invention."  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 894 F.3d 1258, 1270 (Fed. Cir. 2018); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67-68 (Fed. Cir. 2012) ("We reaffirm that in any case involving multi-component products, patentees may not calculate damages based on sales of the entire product, as opposed to the smallest salable patent-practicing unit, without showing that the demand for the entire product is attributable to the patented feature.").

Here, the jury heard substantial evidence that the baseband chipset in the accused products is the SSU based on Evolved's infringement claims in this case, and that the royalty base should therefore be limited to the $5 profit of that chipset.  Apple's senior engineer, Dr. Almalfouh, and Apple's technical expert, Dr. Bims, explained that all of the functionality accused in this case takes place in the baseband chipset.  (Trial Tr. 1027:11-17, 1130:22-1131:2, 1131:13-17.)  In addition, Apple's Principal Counsel - IP transactions, Ms. Heather Mewes, confirmed that Apple uses the baseband chipset as the SSU "every time" it negotiates licenses in the cellular space.  (Trial Tr. 1434:8-13; *see also* 1430:25-1436:19.)  In addition, Evolved's expert, Dr. Putnam, acknowledged that the baseband chipset is capable of being sold in the marketplace and is in fact sold to Apple by Qualcomm.  (Trial Tr. 926:25-927:8.)  He also acknowledged that Apple's profit on the baseband chipset is approximately $5 and that Apple's

cellular licensing framework starts with the baseband chipset as the SSU. (Trial Tr. 927:23-928:3; 928:10-15.) The baseband processor is therefore the SSU as a matter of law.

Despite this overwhelming evidence, Dr. Putnam rejected the baseband chipset as the SSU, and started his flawed "top-down" analysis with the average $550 price of entire handset devices. (Trial Tr. 930:12-931:11; 926:15-22; 828:9-13; 892:19-22.) The resulting royalty base was $84.40, nearly 17 times the profit of the SSU. (*Id.*; *see also* Trial Tr. 928:10-929:4, 1445:13-21.) By contrast, Apple's damages expert, Ms. Shirley Webster, applied established economic principles and legal precedent in conducting her reasonable royalty analysis and started with the smallest salable patent practicing unit, the baseband chip. (Trial Tr. 1561:24-1562:14, 1564:7-20.)

Dr. Putnam's top-down analysis was not only factually unsupported, it was also contrary to the Federal Circuit's requirement that "where multicomponent products are accused of infringement, the royalty base should not be larger than the smallest salable unit embodying the patented invention." *Power Integrations*, 894 F.3d at 1270; *LaserDynamics*, 694 F.3d at 67. Moreover, Dr. Putnam's erroneous calculation "skew[ed] the damages horizon for the jury, regardless of the contribution of the patented component to this revenue." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011). This resulted in making Evolved's "proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation beyond that which is adequate to compensate for infringement." *LaserDynamics*, 694 F.3d at 67. (*See* 928:10-929:4, 1445:13-21.)

Dr. Putnam failed to apply longstanding Federal Circuit law requiring apportionment based on the SSU, and, at least on this basis, the jury should not be allowed to consider such testimony. *See Power Integrations, Inc.*, 894 F.3d at 1270.

**B.   Evolved Failed To Properly Apportion The Value Of The Patented Technology.**

In *Ericsson,* the Federal Circuit identified two special apportionment issues that arise in the context of declared cellular assets. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1232 (Fed. Cir. 2014). Despite contending that the patents-in-suit are essential—which Apple denies—Evolved's damages analysis ignores in its entirety the *Ericsson* framework and instead uses apportionment principles divorced from the value of the patented technology. But the law is clear:

1. The patented feature must be apportioned from all of the unpatented features reflected in the standard.

2. The patentee's royalty must be premised on the value of the patented feature, not any value added by the standard's adoption of the patented technology.

*Id.* The Federal Circuit explained that these two additional apportionment steps are "necessary to ensure that the royalty award is based on the incremental value that the patented *invention* adds to the product, not any value added by the standardization of that technology." *Id.* (emphasis in original). The Federal Circuit also held that "the royalty for SEPs should reflect the approximate value of that technological contribution, not the value of its widespread adoption due to standardization." *Id.* Accordingly, "damages awards for SEPs must be premised on methodologies that attempt to capture the asserted patent's value resulting not from the value added by the standard's widespread adoption, but only from the technology's superiority." *Id.* "Without this rule, patentees would receive all of the benefit created by standardization—benefit that would otherwise flow to consumers and businesses practicing the standard." *CSIRO,* 809 F.3d at 1305.

5

Here, Dr. Putnam violated these apportionment rules by ignoring these fundamental principles of apportionment, instead basing his calculations on a supposed "LTE premium" over 3G devices. (Trial Tr. 838:2-8, 839:15-23, 842:1-3.) By contrast, Ms. Webster carefully considered guidance from the courts and applied the *Ericsson* apportionment principles in her analysis. (*E.g.,* Trial Tr. 1558:4-19.)

Dr. Putnam analyzed a group of patent families that had been declared to the LTE Standard (even though they may not actually be essential or ever become essential) and then reduced that amount by about 53.4% to account for over-declaration to standards. (Trial Tr. 853:10-14.) In that group, he then ranked patents based on the number of times they had been cited by other patents and assigned them a value, which equates to his royalty "rate." (Trial Tr. 863:21-25, 868:10-18.) Dr. Putnam then applied his rate to his base to come up with his opinion that a "reasonable royalty" is 26.1 cents per device for the '373 patent and 1.45 cents per device for the '236 patent. (Trial Tr. 868:19-869:18.) Although Dr. Putnam's analysis claims to "apportion," it is not the type of fact-specific apportioning that the *Ericsson* framework requires. For example, as discussed above, Dr. Putnam's citation analysis does not actually provide any reliable information about the value of the claimed invention. Similarly, nothing in Dr. Putnam's analysis separates the value of the patented technologies from the inherent value the '373 and '236 patents obtain from their status as declared cellular assets as required under *Ericsson*. Moreover, courts have held that experts must carefully tie proof of damages to the claimed invention's footprint in the market place. *Uniloc*, 632 F.3d at 1317. Accordingly, his opinions cannot support Evolved's damages claim as a matter of law.

C.     **Dr. Putnam's "Forward Citation" Analysis Is Untethered To The Value Of The Claimed Inventions.**

Dr. Putnam attempted to apportion the value of the inventions claimed in the '373 and '236 patents by performing a "forward citation analysis." He asserted that "the value of a patent is correlated with the number of forward citations that it receives," but provided no evidence to support his assertion. (Trial Tr. 857:19-20.) Courts have recognized that this type of citation analysis does not identify the value of the invention because the invention is set forth in the claims of a patent, but "[p]atents are not cited for their claim language." *Oracle Am., Inc. v. Google Inc.*, 2012 WL 877125, *2 (N.D. Cal. 2012); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 2015 WL 4272870, *7-*8 (N.D. Cal. 2015) (striking damages expert's opinions based on forward citation analysis because they were not tied to the facts of the case). "[I]nstead, patents are cited if they disclose important ideas material to a later application's patentability. That is why the citations are to the entire patent, which is largely composed of specifications and drawings, not claims." *Oracle Am.*, 2012 WL 877125, *2 (striking portion of accused infringer's damages expert's report that, in attempting to apportion the value between a license for a whole portfolio and the asserted patents within that portfolio, sought to use a "forward citation" analysis).

All Dr. Putnam's citation analysis proves, if anything, is that the '373 patent specification has been cited more frequently than other patents. That has no bearing on the value of the patented technology set forth in the claims of the '373 patent, which is what a proper apportionment analysis is supposed to do. There is no testimony that the asserted claims are as broad as the specification. Indeed, Ms. Mewes testified that the patent citation analysis is never used in real world license negotiations because it is "highly manipulative" and "not a measure of the claim value." (Trial Tr. 1444:2-20.) Ms. Webster also explained that there are a number of problems with Dr. Putnam's citation analysis which render an unreliable indicator of an

invention's value.  (Trial Tr. 1625:2-1626:19.)  Dr. Putnam's general apportionment is

untethered to the specific patented technology, is fundamentally flawed, and cannot support a

legally proper damages award.

**D.**     **Evolved's Use Of The Nash Bargaining Solution Is An Improper "Rule of Thumb" That The Federal Circuit Has Rejected.**

The Federal Circuit has consistently rejected "rules of thumb" for calculating a baseline

royalty rate, including the Nash Bargaining solution employed by Dr. Putnam in his damages

analysis. *VirnetX, Inc. v. Cisco Sys., Inc.,* 767 F.3d 1308, 1331-34 (Fed. Cir. 2014) (expert's use

of the Nash Bargaining solution was improper where the expert failed to provide any economic

justification for why the analysis would begin with a 50/50 split of the incremental profits); *see*

*also Uniloc*, 632 F.3d at 1315 (finding the 25% rule of thumb for a baseline royalty rate

"fundamentally flawed" and inadmissible).  In the patent context, the Nash theorem provides that

where two parties are bargaining, under a certain set of premises, the Nash Bargaining Solution

is a 50/50 split of the incremental profits earned by the infringer from the use of the asserted

patents. *VirnetX,* 767 F.3d at 1325, 1333-34.  The Federal Circuit has instructed that "[a]nyone

seeking to invoke the theorem as applicable to a particular situation must establish [a real world

fit to that set of premises], because the 50/50 profit-split result is proven by the theorem only on

those premises." *Id.* at 1332.

Dr. Putnam employed the Nash "rule of thumb" to conclude that patent owners are

entitled to 50% of what he termed the "LTE premium." (Trial Tr. 843:1-13, 845:4-10.)  His

analysis is flawed because he failed to demonstrate that such a 50/50 split would occur in the real

world. (Trial Tr. 1624:4-21.)  Dr. Putnam acknowledged that the Nash theorem has nothing to

do with determining patent damages and is not used during any real-world licensing negotiations.

(Trial Tr. 933:1-935:16.)  For example, Dr. Putnam admitted that his entire premise of using an

economic theorem is divorced from how parties actually negotiate license agreements because, in his words, "people don't grab theories off the shelf and just say, Let me apply it to my negotiations with LG." (Trial Tr. 935:1-8.) The only evidence Dr. Putnam cited to support his use of the Nash "rule of thumb" was ETSI's IPR policy, which states generally that the commitment to license standard essential patents on FRAND terms is intended to "balance" the interests of innovators and implementers. (Trial Tr. 843:1-6.) But Dr. Putnam's assumption that "balancing" the interests requires a 50/50 split is based on nothing more than speculation and misses the point of ETSI's IPR policy, which is intended to allow for standardization without unfairly prejudicing the implementers who must use standard-essential technology or giving a windfall to innovators who hold patents on standard-essential technology. Nothing about this policy is premised on a 50/50 split of profits between the innovators and implementers. Moreover, this IPR is hardly a "real world fit" that the Federal Circuit requires.

Other courts in this District have rejected damages calculations premised on the Nash "rule of thumb" where it was not shown that the parties to the hypothetical negotiation would have agreed to a 50/50 split. For example, the court in *Bayer HealthCare LLC v. Baxalta Inc.,* recently excluded the patentee's damages expert's opinion that considered a range of royalties and then applied a 50/50 split of an incremental profit range as part of Nash bargaining solution, and then modified that split to 45/55 to account for the patentee having a weaker bargaining position. 2019 WL 330149, *6-*8 (D. Del. 2019). Similarly, the court in *Robocast, Inc. v. Microsoft Corp.* excluded a damages analysis that relied on the Nash bargaining solution because the expert failed to provide facts regarding the parties' respective bargaining power and therefore failed to justify his use of a 50/50 split of the anticipated benefit of the expected transaction. 2014 WL 350062, *1-*3 (D. Del. 2014).

Accordingly, Dr. Putnam's analysis employing the Nash theorem is legally improper and should not be considered by the jury.

**E.      Evolved Failed To Prove Its Damages Represent A Reasonable Royalty Because It Failed To Consider Material Negotiations Regarding the Asserted Patents And Comparable License Agreements.**

The jury has been instructed to consider a hypothetical negotiation in determining the amount of a reasonable royalty in this case. (Instruction No. 29.) They have been told to "focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement . . . and had they acted reasonably in their negotiations." (*Id.*) Under the Court's instruction, evidence of actual licensing practices, negotiations, and executed agreements involving one or both of the parties to the hypothetical negotiation are highly relevant and should not be ignored. Dr. Putnam's reasonably royalty analysis is deeply flawed because he did precisely that. He ignored or expressly rejected evidence regarding:

1. ████████████████████████████████████████████████████████████
   ████████████████████████████████████████████████████████████
   ████████████████████;

2. Apple's licensing framework for declared cellular assets, like the patents-in-suit;

3. Comparable licenses Apple has entered into for declared cellular assets; and

4. LG's sale of the patents-in-suit to TQ Lambda at around the same time the hypothetical negotiation would have occurred;

5. The existence of non-infringing alternatives which would have made it relatively easy and inexpensive for Apple to have designed around the patents-in-suit.

Not only did Dr. Putnam disregard this highly relevant evidence, he also relied on the unsupported opinions of Dr. Cooklev regarding the claimed benefits of the patented technology. (Trial Tr. 875:23-876:19.) Furthermore, Dr. Putnam candidly admitted that no party in actual

license negotiations would use the "top-down" methodology that he used to calculate the reasonably royalty in this case.  (Trial Tr. 917:16-20, 918:1-3.)  Because Dr. Putnam failed to use critical real world evidence in forming his damages opinion, and instead focused on abstract economic principles admittedly not used in reality, his opinion is not based on "sound economic and factual predicates."  *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002) (citing *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Shockley v. Arcan, Inc.*, 248 F.3d 1349 (Fed. Cir. 2001)).  Accordingly, Dr. Putnam's hypothetical negotiation analysis is insufficient as a matter of law to support Evolved's $31 million damages claim.

       1.     <u>Evolved failed to consider evidence of the</u> ███████████████
███████████████████████.

     The Federal Circuit has found that where there is evidence of an actual licensing negotiations between the parties to the hypothetical negotiation, that is close in time to the hypothetical negotiation, it is legal error to reject this evidence in a damages analysis.  *CSIRO*, 809 F.3d at 1301.  Here, Dr. Putnam testified that the hypothetical negotiation would have occurred sometime between December 2008 and September 2012, and that the negotiation would have been between Apple and LG Electronics.  (Trial Tr. 873:14-21, 912:3-15; *see also id.* 156:6-24 (Ms. Webster agreeing with Dr. Putnam on these points).)  The undisputed evidence of record establishes that around the time of the hypothetical negotiation, ███████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████ Even though Dr. Putnam admitted that the

jury should take into account the expectations of Apple and LG in a hypothetical negotiation

(Trial Tr. 914:13-22), he rejected entirely ███████████████████████. (Trial Tr. 913:5-

14, 914:2-8.)

2.    Evolved failed to consider Apple's Cellular Licensing Framework.

Dr. Putnam's hypothetical negotiation analysis is also flawed because he rejected

evidence of Apple's cellular licensing framework, which Apple would have used at the

hypothetical negotiation.  Apple's Principal Counsel – IP Transactions, Ms. Heather Mewes,

testified that Apple's cellular licensing framework is what Apple actually uses in negotiating

licenses to declared cellular assets.  (Trial Tr. 1430:3-1432:10.)  She further testified that Apple's

cellular licensing framework is not an anomaly; other companies like Intel and Cisco use similar

frameworks.  (Trial Tr. 1432:11-15.)  Ms. Webster used Apple's licensing framework in her

reasonable royalty analysis because she understood that the actual licensing practices of the

parties to the hypothetical negotiation is an important consideration.  (Trial Tr. 1601:10-1603:8.)

Dr. Putnam's rejection of this evidence was erroneous because the Federal Circuit has long

recognized that a party's "usual licensing approach should be considered in assessing a

reasonable royalty." *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1568

(Fed. Cir. 1988).

3.    Evolved failed to consider comparable Apple licenses.

On direct examination, Evolved's attorney asked Dr. Putnam: "Did you find Apple's

licenses relevant to determining a rate in this case?"  His unequivocal response was: "No."

(Trial Tr. 879:23-25.)  Dr. Putnam's purported reasoning was that the comparable Apple licenses

are not actually comparable because: (1) Apple paid the royalty in a lump sum, whereas he had

calculated a running royalty rate; (2) some of the licenses were cross-licenses; (3) some of the

licenses granted rights to large portfolios of patents; (4) most of the licenses were for the life of the licensed patents; and (5) one license agreement did not contain detailed information about the quality of the licensed patents. (Trial Tr. 880:2-881:18.) None of the reasons, however, that Dr. Putnam gave make a license *per se* non-comparable, such that an expert can outright disregard them in a proper damages analysis.

In addition, Dr. Putnam rejected comparable Apple licenses because the licensed patents had not been found valid and infringed. (Trial Tr. 923:3-6; 956:9-10.) He did so based on his representation that "the hypothetical negotiation is a bargain over patents that have been found valid and infringed." (Trial Tr. 919:6-7.) Dr. Putnam's view is untenable. It is well settled that the hypothetical negotiation takes place at a time prior to when infringement first began, but the negotiating parties *assume* that "the asserted claims are valid and infringed." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009). The law does not require that the parties to the hypothetical negotiation assume that there has been a finding or other final determination as to validity and infringement. That is a very different assumption and would skew the bargaining power in favor of the hypothetical licensor. *Cf. Metris U.S.A., Inc. v. Faro Technologies Inc.,* 2012 WL 12012748, *1 (D. Mass. 2012) (granting motion in limine to preclude damages expert from opining that doubts about the validity of the patent would have pushed the royalty rate downwards). Rather, all the law requires is that the hypothetical negotiators assume "the asserted claims are valid and infringed" such that a license is required. *Lucent*, 580 F.3d at 1325. This is no different than any other real world Apple license, where Apple took a license because it believed it needed a license. Thus, Dr. Putnam's incorrect understanding of the law governing the hypothetical negotiation caused him to reject highly relevant evidence and infected the opinions he gave to the jury.

Ms. Webster, on the other hand, provided the jury with her detailed analysis of comparable Apple license agreements and how they provide important data points in calculating a reasonable royalty based upon a hypothetical negotiation. ███████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████

Dr. Putnam's rejection of the Apple licenses is contrary to Federal Circuit case law, which has repeatedly held that "sufficiently comparable licenses is a generally reliable method of estimating the value of a patent" because such licenses "inherently account[] for market conditions at the time of the hypothetical negotiation, including a number of factors that are difficult to value, such as the cost of available, non-infringing alternatives." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1325 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015). *See, e.g., ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir.2 009)*; Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1110 (Fed. Cir. 1996); *Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 798 (Fed. Cir. 1988).

    4.    <u>Evolved failed to consider the price for which LG sold the patents-in-suit</u>.

Evolved's reasonable royalty calculation is also flawed because it failed to consider LG's own valuation of the patents-in-suit. ███████████████████████

███████████████████████████████████████████████████ Ms. Webster

recognized that this sale price is a "very important" indicator of a reasonable royalty because LG

is a "sophisticated, knowledgeable patent-owning company" that knows the true value of its

patents.  (Trial Tr. 1587:5-1590:23, 1591:24-1592:5, 1593:21-1595:5.)  Dr. Putnam, however,

told the jury that amount LG sold the patents for was "irrelevant . . . for damages purposes."

(Trial Tr. 923:9-10.)

5.   <u>Evolved ignored evidence of non-infringing alternatives.</u>

The Federal Circuit has instructed that the "availability of non-infringing alternatives

present at the time infringement first began should be accounted for in a hypothetical

negotiation."  *Riles v. Shell Exploration and Production Co.*, 298 F.3d 1302, 1312 (Fed. Cir.

2002) (vacating reasonable royalty award for damage in part because patentee failed to account

for non-infringing alternatives in the hypothetical negotiation).  Dr. Bims testified that "there

were other well-known ways or non-infringing alternatives to perform handover that are different

from what's outlined in the '373 patent."  (Trial Tr. 1129:5-8.)  For example, the accused

products could have been modified using existing source code so that they never receive a

preamble index from the source base station, and thus would not infringe even under Evolved's

theory of infringement.  (Trial Tr. 1199:10-1200:10.)  Dr. Bims further testified that "for the

'236 patent as well, there were other well-known ways to perform the random access that they

were focusing on in the '236 patent."  (Trial Tr. 1123:9-11, 1304:10-1306:10.)  Despite this

evidence, Dr. Putnam completely ignored the existence of non-infringing alternatives in forming

his opinions, and as such judgement as a matter of law is appropriate.  Ms. Webster, on the other

hand, provided the jury with thorough explanation regarding the significance of available and

acceptable non-infringing alternatives in the calculation of a reasonable royalty.  (Trial Tr.

1596:23-1600:16.)

6.      Evolved's conclusory opinions about the claimed benefits of the asserted patents lack evidentiary support.

Lastly, Evolved's reliance on the unsupported opinions of Dr. Cooklev regarding the claimed benefits of the patented technology was erroneous.  For example, Dr. Putnam cited Dr. Cooklev's opinion as a factor he considered in his hypothetical negotiation analysis.  (Trial Tr. 875:23-876:19.)  Specifically, Dr. Putnam argued that Dr. Cooklev's opinions about the value of the claimed inventions "confirmed" his patent citation analysis.  (*Id.*)  However, Dr. Bims explained that Dr. Cooklev's opinions were nothing more than his naked assertions, not based on any actual evidence.  (Trial Tr. 1307:10-13.)  Dr. Bims also explained that the patented technology represents a "very, very minor piece of the overall LTE standard."  (Trial Tr. 1308:2-6.)  In sum, Evolved consistently rejected probative evidence in favor of unsupported opinions and specious economic principles not used in real-world negotiations, with the end result being a damages theory that is not based on "sound economic and factual predicates."  *Riles*, 298 F.3d at 1311.

**F.      Conclusion**

For the foregoing reasons, the record is devoid of legally sufficient evidence to support Evolved's damages opinion and judgment as a matter of law should be granted.

OF COUNSEL:

Michael D. Jay
Nandan R. Padmanabhan
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067-4704
Tel:  (310) 595-3000

Mark D. Fowler
DLA PIPER LLP (US)
2000 University Ave.
East Palo Alto, CA 94303
Tel:  (650) 833-2000

Susan N. Acquista
Jacob Anderson
Kathryn Riley Grasso
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA  92101
Tel:  (619) 699-2700

Dated:  April 3, 2019
Public Version Dated:  April 10, 2019
6132071 / 42622

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By:   */s/ David E. Moore*
     David E. Moore (#3983)
     Bindu A. Palapura (#5370)
     Stephanie E. O'Byrne (#4446)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, DE  19801
     Tel:  (302) 984-6000
     dmoore@potteranderson.com
     bpalapura@potteranderson.com
     sobyrne@potteranderson.com

*Attorneys for Defendant Apple, Inc.*