**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 15–542–JFB–SRF |
| v. | ) | |
| | ) | |
| APPLE INC., | ) | **FILED UNDER SEAL** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## EVOLVED WIRELESS'S OPENING POST-TRIAL BRIEF IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR A NEW TRIAL

Dated: May 10, 2019

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
(302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Christopher K. Larus (admitted *pro hac vice*)
Ryan M. Schultz (admitted *pro hac vice*)
John K. Harting (admitted *pro hac vice*)
Benjamen C. Linden (admitted *pro hac vice*)
Rajin S. Olson (admitted *pro hac vice*)
Austin B. Miller (admitted *pro hac vice*)
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
clarus@robinskaplan.com
rschultz@robinskaplan.com
jharting@robinskaplan.com
blinden@robinskaplan.com
rolson@robinskaplan.com

abmiller@robinskaplan.com

Annie Huang (admitted *pro hac vice*)
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
ahuang@robinskaplan.com

**Counsel For Plaintiff Evolved Wireless, LLC**

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS.................................................................................................. i

I.      Introduction........................................................................................................ 1

II.     Background and Procedural History.................................................................. 2

III.    Argument ........................................................................................................... 4

    A.      Evolved Wireless Is Entitled to Judgment as a Matter of Law of Infringement of the '373 Patent, or Alternatively, to a New Trial. ........................................... 6

        1.      The Evidence Presented at Trial Supports Only One Reasonable Conclusion: that the Accused Apple Products Infringe Each Limitation of Claims 24 and 25 of the '373 Patent.............................................................. 7

        2.      There Is Insufficient Evidence to Support Any Finding that the *ra-PreambleIndex* in the Accused Products Is Not the Claimed Preamble..... 9

        3.      There Is Insufficient Evidence to Support Any Finding that the MobilityControlInformation, Including the *ra-PreambleIndex*, Is Not Configured to Permit Access to the Base Station. ..................................... 14

    B.      Evolved Wireless Is Entitled to Judgment as a Matter of Law of Infringement of the '236 Patent, or Alternatively, to a New Trial. ............................................. 17

        1.      The Evidence Presented at Trial Supports Only One Reasonable Conclusion: that the Accused Apple Products Infringe Each Limitation of Claim 7 of the '236 Patent. .................................................................... 18

        2.      There Is Insufficient Evidence to Support Any Finding that the Accused Products Do Not Determine Whether There Is Data In the Message 3 Buffer. ......................................................................................................... 20

        3.      There Is Insufficient Evidence to Support Any Finding that the Claim Scope Extends Beyond the Transmission Scenario to Include the Retransmission Scenario. ........................................................................... 21

    C.      Evolved Wireless Is Entitled to a New Trial Due to Erroneous Evidentiary Rulings at Trial ................................................................................................. 22

        1.      Evolved Wireless Is Entitled to a New Trial Because It Was Error to Exclude Apple's Inconsistent Positions Taken by Asserting a FRAND Counterclaim........................................................................................... 23

        2.      Evolved Wireless Is Entitled to a New Trial Because It Was Error to Repeatedly Allow Apple to Argue Claim Construction to the Jury. ........ 27

3.      Evolved Wireless Is Entitled to a New Trial Because It Was Error to
        Exclude the BLU License and Related Evidence. .................................... 30

4.      Evolved Wireless Is Entitled to a New Trial Because It Was Error to
        Allow Dr. Bims to Testify Comparing LG Proposals to 3GPP with the
        LTE Standard. ........................................................................................... 36

IV.   Conclusion ....................................................................................................... 38

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*,
    501 F.3d 1307 (Fed. Cir. 2007)...........................................................................................4

*Advanced Medical, Inc. v. Arden Medical Systems, Inc.*,
    955 F.2d 188 (3d Cir. 1992)................................................................................................6

*Apple, Inc. v. Samsung Elecs. Co.*,
    67 F. Supp. 3d 1100 ...................................................................................................25, 35

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
    616 F.3d 1249 (Fed. Cir. 2010).................................................................5, 7, 9, 18, 20, 22

*Consol. Rail Corp. v. Providence & Worcester Co.*,
    540 F. Supp. 1210 (D. Del. 1982)......................................................................................25

*Cytologix Corp. v. Ventana Med. Sys.*,
    424 F.3d 1168 (Fed. Cir. 2005).........................................................................................27

*Donald M. Durkin Contr., Inc. v. City of Newark*,
    04-CV-00163, 2006 U.S. Dist. LEXIS 68221 (Dist. Del. Sept. 22, 2006).....................25, 26

*EMC Corp. v. Pure Storage, Inc.*,
    No. 13-1985-RGA, 2016 U.S. Dist. LEXIS 22970 (D. Del. Feb. 25, 2016) ...................27, 28

*Giannone v. United States Steel Corp.*,
    238 F.2d 544 (3d Cir. 1956)..............................................................................................26

*Hirst v. Inverness Hotel Corp.*,
    544 F.3d 221 (3d Cir. 2008)......................................................................6, 26, 30, 36, 38

*Jackson v. Virginia*,
    443 U.S. 307 (1979)...........................................................................................................24

*Lightning Lube, Inc. v. Witco Corp.*,
    4 F.3d 1153 (3d Cir. 1993)..................................................................................................5

*Marra v. Phila. Hous. Auth.*,
    497 F.3d 286 (3d Cir. 2007)................................................................................................5

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
    No. 11-cv-5341 YGR, 2014 U.S. Dist. LEXIS 31461 (N.D. Cal. Mar. 5, 2014)...................28

*Moon Express, Inc. v. Intuitive Machs., LLC*,
  No. 16-344-LPS, 2018 U.S. Dist. LEXIS 176571 (D. Del. Oct. 15, 2018) ............................ 6

*Parillia v. IAP Worldwide Services, VI, Inc.*,
  368 F.3d 269 (3d Cir. 2004) ..................................................................................... 25

*Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*,
  818 F.3d 1320 (Fed. Cir. 2016) ........................................................................... 35, 36

*Roebuck v. Drexel Univ.*,
  852 F.2d 715 (3d Cir. 1988) ............................................................................ 5, 7, 18

*Teva Pharm. v. Sandoz*,
  135 S. Ct. 831 (2015) ................................................................................. 27, 29, 30

*Tracinda Corp. v. DaimlerChrysler AG*,
  362 F. Supp. 2d 487 (D. Del. 2005) ....................................................................... 24

*Warner-Jenkinson v. Hilton Davis Chem. Co.*,
  520 U.S. 17 (1997) ................................................................................................... 4

*Williamson v. Consol Rail Corp.*,
  926 F.2d 1344 (3d Cir. 1991) ................................................................................... 6

**Rules**

Fed. R. Civ. P. 26(e) ................................................................................................. 31

Fed. R. Civ. P. 50(a)(1) .......................................................................................... 1, 5

Fed. R. Civ. P. 50(b) ............................................................................................... 4, 5

Fed. R. Civ. P. 50(c)(1) ............................................................................................... 5

Fed. R. Civ. P. 59(a) ............................................................................................... 4, 5

Fed. R. Civ. P. 59(a)(1)(A) ......................................................................................... 5

Fed. R. Civ. P. 60(b) ................................................................................................ 35

Fed. R. Civ. P. 61 ...................................................................................................... 6

## I.     INTRODUCTION

Evolved Wireless respectfully renews its motions for judgment as a matter of law ("JMOL"), or alternatively, for a new trial. Based on the evidence presented at trial, there is no legally sufficient evidentiary basis under which a reasonable jury could have found noninfringement for either U.S. Patent No. 7,809,373 (the "'373 Patent") or U.S. Patent No. 7,881,236 (the "'236 Patent") (collectively, the "Asserted Patents"). Fed. R. Civ. P. 50(a)(1). With respect to the '373 Patent, Apple's noninfringement arguments that the claimed preamble excludes a preamble index, and that the preamble index must be sent to access the target base station, are unsupported by the evidence of this case. With respect to the '236 Patent, Apple's noninfringement arguments that the Accused Products[1] do not meet the "determining" limitation, and that the "transmission" of the claim extends to the separate "retransmission" scenario, are unsupported by the evidence of this case. Moreover, Apple's attorney argument is not evidence to support its narrow noninfringement arguments. Thus, Evolved Wireless is entitled to judgment as a matter of law or new trial on infringement of the '373 and '236 Patents.

Alternatively, Evolved Wireless moves for a new trial on the issue of infringement based on various erroneous evidentiary rulings. First, Evolved Wireless was improperly prevented from presenting both documentary evidence and testimony of Apple's prior inconsistent acts and statements. At trial, Apple based its entire non-infringement position with respect to the '373 Patent on its claim that the '373 Patent was not essential to the LTE standard.  Prior to trial, however, Apple had taken affirmative actions and made numerous statements directly contrary to

---

[1] The specific Accused Products were stipulated by the parties and read into the record at trial. Trial Tr. at 513:21-23, 515:25-517:21. Additionally, the parties stipulated to representative products. D.I. 496.

this position. Nevertheless, Evolved Wireless was prevented at trial from introducing documents or testimony of these prior inconsistent acts or statements.

Second, Apple's expert was improperly allowed to argue claim construction to the jury. Over Evolved Wireless' objections, Apple's expert, Dr. Harry Bims, testified to what the claims of the '373 Patent required. The Court then erred in denying Evolved Wireless's motion to strike the testimony.

Third, Evolved Wireless was improperly prevented from presenting evidence that Evolved Wireless had entered into a license. Apple's counsel repeatedly implied there was no infringement because Evolved Wireless had not entered into a license with certain parties. Apple further compounded the problem by repeatedly arguing to the jury that other parties had also refused to take licenses. The Court then erred by refusing to give Evolved Wireless's proposed curative instruction confirming that at least one party had taken a license.

Finally, Apple's expert was improperly allowed to testify comparing proposals from LG Electronics ("LGE") to the 3GPP standard setting body with the LTE Standard. The Court acknowledge that the correct process for infringement is to compare the Asserted Patents with the LTE Standard, but Apple was nonetheless permitted to present irrelevant testimony suggesting that the jury should evaluate whether LG's initial proposals to 3GPP were the same as the LTE Standard.

Each of these errors significantly impacted the outcome of the trial. For each of these reasons, Evolved Wireless is entitled to a new trial.

## II.    BACKGROUND AND PROCEDURAL HISTORY

On June 25, 2015, Evolved Wireless filed this patent infringement lawsuit against Apple Inc. alleging infringement of patents relating to LTE, or 4G, wireless communication systems, including the '373 Patent and the '236 Patent. D.I. 1. At claim construction, Apple identified 20

terms for construction across the five originally asserted patents, including three terms from the '373 Patent and 11 terms from the '236 Patent. *See* D.I. 245, Ex. 1; D.I. 54-1 at 7-8. Apple did not identify the "preamble" term of the '373 Patent as a term requiring construction. *Id.* On November 14, 2016, the Court issued its claim construction order, agreeing with Evolved Wireless for 22 of the 23 disputed claim terms. *See* D.I. 110. Years later, at summary judgment, Apple sought construction of the "preamble" term to exclude a dedicated preamble index. D.I. 489 at 4-5. The Court denied that request. *Id.* at 14.

This Court conducted a seven-day jury trial from March 26, 2019 to April 3, 2019 on infringement of the Asserted Patents, validity of the '373 Patent, and damages. *See, e.g.*, D.I. 507 (Court's Initial Jury Instructions), at 16-17. During trial, Evolved Wireless presented substantial evidence of infringement. Trial Tr. at 597:6-670:4. Apple in turn argued and presented testimony that the Asserted Patents were not standard essential, directly contrary to assertions it advanced in support of its counterclaim for Breach of FRAND. Trial Tr. at 479:18-21. Repackaging its summary judgment motion, Apple argued and presented testimony that the "preamble" term of the '373 Patent should exclude a dedicated preamble index. *See, e.g.*, Trial Tr. at 1157:22-1159:2; 1165:24-1169:3; 1183:11-1184:8. Evolved Wireless objected to this testimony as improper claim construction argument to the jury. *See, e.g.*, Trial Tr. at 125:3-12; 205:4-213:6; 1171:6-13; 1183:14-17; 1197:18-1198:21; 1221:16-1229:11. Apple also argued and presented testimony that the preamble index in the Accused Products is not sent to the target base station , as Apple erroneously argued that the claims required. *See, e.g.*, Trial Tr. at 1145:1-8, 1168:14-25, 1942:12-1943:8. And Apple argued and presented testimony that LG's initial proposal to 3GPP relating to the '373 Patent differed from the LTE standard. Trial Tr. at 1196:11-13, 1197:9-11. With respect to the '236 Patent, Apple argued that the Accused Products do not

"determine" whether there is data in the Message 3 buffer, *e.g.*, Trial Tr. at 1961:16-1969:2, and that the Accused Products send Message 3 data in the "retransmission" scenario rather than solely in the "transmission" scenario. *See, e.g.*, Trial Tr. at 1056:23-1057:6; 1291:5-14; 1969:3-1970:1. Apple also argued to the jury that no parties had taken a license to the Asserted Patents—knowing full well that at least one party had. *See, e.g.*, Trial Tr. at 311:6-14, 320:9-19.

At the close of the case, Evolved Wireless moved for judgment as a matter of law of no invalidity, infringement of the '373 Patent, infringement of the '236 Patent, and no non-infringing alternatives. Trial Tr. at 1776:4-1782:13. The Court denied Evolved Wireless's motions. *Id.* at 1792:13-22. On April 4, 2019, the jury reached a verdict of noninfringement as to each patent. D.I. 520. The jury found that Evolved Wireless had not proven by a preponderance of the evidence that Apple infringed literally or under the doctrine of equivalents claims 24 or 25 of the '373 Patent. *Id.* at 2. The jury also found that Evolved Wireless had not proven by a preponderance of the evidence that Apple literally infringed claim 7 of the '236 Patent. *Id.* at 4. The verdict form did not indicate the limitation(s) for which the jury found that Evolved Wireless had not met its burden. *Id.* The jury did not reach the questions of validity or damages. *Id.* The Court entered judgment on the verdict and set a schedule for post-trial briefing on April 26, 2019. D.I. 523.

## III.   ARGUMENT

Evolved Wireless moves for JMOL under Fed. R. Civ. P. 50(b) and new trial under Fed. R. Civ. P. 59(a) on the issue of patent infringement. Infringement is a question of fact that is reviewed for substantial evidence after a jury verdict. *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1311 (Fed. Cir. 2007). To prove literal infringement, a patent owner must prove that every element of the claim is present in the accused device. *Warner-Jenkinson v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).

The law of the regional circuit—here the Third Circuit—governs the standards for deciding motions for JMOL under Fed. R. Civ. P. 50(b) and new trial under Fed. R. Civ. P. 59(a). *See Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1253 (Fed. Cir. 2010). JMOL is appropriate if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party" on an issue. Fed. R. Civ. P. 50(a)(1). Under Rule 50(b), in ruling on a renewed motion, "the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b).

Entry of JMOL is granted "if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury could reasonably find" for the nonmovant. *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (citation omitted). "The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Becton, Dickinson & Co.*, 616 F.3d at 1253 (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993)). If a court grants JMOL, "it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed." Fed. R. Civ. P. 50(c)(1).

A court may grant a motion for a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "[A] new trial may be granted even when [JMOL] is inappropriate . . . . In many instances the judge might grant a new trial on the ground that the verdict is against the weight of the evidence even though he is constrained to refuse to order JMOL." *Roebuck v. Drexel Univ.*, 852 F.2d 715, 735-

36 (3d Cir. 1988) (reversing judgment as a matter of law but affirming grant of a new trial "on

the grounds that the verdict was against the great weight of the evidence"); *see also Moon*

*Express, Inc. v. Intuitive Machs., LLC*, No. 16-344-LPS, 2018 U.S. Dist. LEXIS 176571, at *4

(D. Del. Oct. 15, 2018) (noting that "the standard for grant of a new trial is less rigorous than the

standard for grant of judgment as a matter of law").

A court may also grant a motion for a new trial where there has been a reversible error.

*See* Fed. R. Civ. P. 61. Discretionary evidentiary rulings give rise to reversible error where "a

substantial right of the party is affected." *Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 228 (3d

Cir. 2008) (granting new trial where the District Court erred in admitting certain testimony and

that error was not harmless). Whether an error was nonetheless harmless depends on "whether it

is highly probable that the error did not contribute to the judgment." *Advanced Medical, Inc. v.*

*Arden Medical Systems, Inc.*, 955 F.2d 188, 199 (3d Cir. 1992) (reversing and remanding for a

new trial).

## A. Evolved Wireless Is Entitled to Judgment as a Matter of Law of Infringement of the '373 Patent, or Alternatively, to a New Trial.

Evolved Wireless respectfully submits that no reasonable jury could have reached the

jury's noninfringement verdict as to the '373 Patent, as the jury did not have a legally sufficient

evidentiary basis to support the verdict. The evidence presented in this case only supports one

reasonable conclusion: Apple infringed the '373 Patent. Given the complex subject matter at

issue in this case, this Court should scrutinize the jury's verdict carefully. *Williamson v. Consol*

*Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991) ("Where the subject matter of the litigation is

simple and within a layman's understanding, the district court is given less freedom to scrutinize

the jury's verdict than in a case that deals with complex factual determinations."). A close look at

the evidence of this case reveals that the verdict is entirely unsupported by the evidence submitted in this case.

Evolved Wireless presented substantial evidence supporting infringement, much of which Apple did not contest at trial. Apple's noninfringement arguments that the claimed preamble excludes a preamble index, and that the preamble index must be sent to access the target base station were and are unsupported by the evidence of this case. Importantly, Apple's attorney argument is not evidence to support its noninfringement arguments. Thus, Evolved Wireless is entitled to judgment as a matter of law of infringement of the '373 Patent, or alternatively, to a new trial. *Becton, Dickinson & Co.*, 616 F.3d at 1253; *Roebuck*, 852 F.2d at 735-36.

1. **The Evidence Presented at Trial Supports Only One Reasonable Conclusion: that the Accused Apple Products Infringe Each Limitation of Claims 24 and 25 of the '373 Patent.**

The evidence presented at trial only supports the conclusion that the Accused Products infringe each limitation of claims 24 and 25 of the '373 Patent. Claim 24 states:

> Claim 24. A mobile terminal for establishing a radio connection to a target base station in a mobile communications system, the mobile terminal comprising:
>
> A radio protocol adapted to receive access information from a source base station after a handover request is accepted by the target base station and to perform a random access procedure with the target base station using the received access information, such that the access information is configured to permit the terminal to access the target base station,
>
> Wherein the access information includes preamble information for the random access procedure,
>
> Wherein the preamble information is a dedicated preamble used only for a specific terminal, and
>
> Wherein the dedicated preamble is determined by the target base station.

JTX0001 at 12:10-25.

Claim 25 states:

> The terminal of claim 24, wherein the source base station is a source
> enhanced Node B (source eNB) and the target base station is a target
> enhanced Node B (target eNB) respectively in an Evolved Universal
> Mobile Telecommunication System (E-UMTS).

*Id*. at 26-30. Evolved Wireless elicited testimony from its technical expert, Dr. Todor Cooklev,

and put forth documentary and source code-based evidence confirming that Apple infringes each

limitation of Claims 24 and 25 of the '373 Patent. Trial Tr. at 597:6-648:22, 652:7-18. Dr.

Cooklev's testimony relied on four sources of evidence: (1) the LTE standard, (2) source code

running on the Accused Products, (3) Apple's conformance testing of the Accused Products, and

(4) third party emulation testing of the Accused Products by a company called TechPats. Trial

Tr. at 597:6-648:22, 652:7-18; *see also id*. at 595:12-24.

Apple acknowledged that much of the evidence presented was not in dispute—instead

focusing its noninfringement argument on the claim term, "preamble," that it tried to limit

through summary judgment to exclude a preamble index. Trial Tr. at 1762:12-1767:5 (Apple's

counsel arguing in closing that "the evidence in many respects was not in dispute. I mean, some

of the conclusions were in dispute, but it's not in dispute that what is received from the source

base station to the mobile phone is something called an ra-PreambleIndex. And we believe the

evidence conclusively proves that that is not a preamble, period."); D.I. 513 at 2-4. Indeed,

Apple admitted that "Evolved presented evidence that for the accused Apple products: (1) during

a contention-free random access procedure for a handover, the target base station selects a

preamble index and transmits it to the source base station; (2) the source base station transmits

the preamble index to Apple's devices; and (3) Apple's devices use the received preamble index,

along with many other necessary parameters, to generate a preamble using a highly complex

mathematical algorithm." D.I. 513 at 3-4.

The parties agreed that Apple's devices generate a preamble *sequence* using the preamble *index*. But whereas Evolved Wireless presented evidence that the preamble sequence is but *one* form of the "preamble," Trial Tr. at 706:21-24, Apple's lawyers, rehashing their earlier summary judgment argument, argued to the jury that the preamble *sequence* is the *only* form of the "preamble." *See, e.g.*, Trial Tr. at 1945:9-22. By using the preamble index to generate a preamble sequence for use in the random access procedure, the Accused Products receive and use the "preamble" to permit the mobile device to access the target base station, just as required in claims 24 and 25 of the '373 Patent. The jury did not have a legally sufficient evidentiary basis to find noninfringement, especially as this evidence was not in dispute.

### 2.   There Is Insufficient Evidence to Support Any Finding that the *ra-PreambleIndex* in the Accused Products Is Not the Claimed Preamble.

Apple's noninfringement argument regarding the claimed "preamble" hinged on the same distinction it raised at summary judgment between a "preamble sequence" and a "preamble index". Although Apple's expert, Dr. Bims, along with Apple's lawyers, insisted that the claimed "preamble" can only be a preamble sequence, and not a preamble index, *see, e.g.*, Trial Tr. at 1945:9-22, Apple's representations to the jury to that effect are unsupported—and indeed, contradicted—by the real evidence in this case. *See, e.g.*, Trial Tr. at 1324:20-1332:11. To be clear, Apple's expert, Dr. Bims identified no evidence other than his bare opinion to support his conclusion that the claimed "preamble" was limited to a preamble sequence.  As such, there is no evidence upon which the jury could properly find that the claimed "preamble" is limited to a preamble sequence and excludes the preamble index. *Becton, Dickinson & Co.*, 616 F.3d at 1253 ("The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party.").

Throughout trial, Apple focused on the "preamble" term—and argued that the preamble index, or *ra-PreambleIndex* in the source code, was not a "preamble," as required by the asserted claims of the '373 Patent. Trial Tr. at 1762:12-1767:5; D.I. 513 at 2-4. As a consequence of this distinction, Apple's expert, Dr. Harry Bims, identified three limitations of claims 24 and 25 of the '373 Patent that were purportedly not present in Apple's products:

> (1) "a dedicated preamble, which has to be used to permit access to the target, that dedicated preamble has to first make its way from the target base station to the source base station,"
>
> (2) "after the handover request is accepted . . . [the] access information, which includes a dedicated preamble, [has to] be sent or downloaded into the phone," and
>
> (3) "the access information that is downloaded into the phone is then used for the random access procedure to establish, to permit access to the target base station."

Trial Tr. at 1142:4-1143:23.[2]

Upon cross-examination, Dr. Bims conceded that the term "preamble" was not so limited in its usage and meaning, admitting that the LTE standard itself refers to the *ra-PreambleIndex* as a "preamble" in no less than *six* separate instances across the TS 36.300 (JTX122), TS 36.523-1 (JTX125), and TS 36.321 (JTX103) LTE Standards documents:[3]

> Q. And the term preamble in Step 6 in JTX-122 is not referring to preamble sequence of 839 complex numbers; right?
>
> A. No, it's referring to the ra-PreambleIndex.

Trial Tr. at 1324:20-23;

---

[2] As addressed further below, Evolved Wireless properly objected to this argument before and during trial as improper claim construction argument, and Apple's claim construction arguments to the jury justify a new trial.

[3] Dr. Cooklev also testified regarding references to the *ra-PreambleIndex* as a preamble in the LTE standard. *See* Trial Tr. at 612:18-619:18.

Q. In the preamble that's being referred to here in step 7 of JTX-122 is the ra-PreambleIndex; right?

A. Correct.

Q. And it's not the preamble sequence of 839 complex numbers; right?

A. Right.

Trial Tr. at 1326:12-18;

Q. Now that term preamble in step zero, JTX-122, page 75, that is referring to the ra-PreambleIndex; right?

A. Correct.

Q. It's not referring to the preamble sequence of 839 complex numbers; right?

A. That's correct.

Trial Tr. at 1327:17-22;

Q. Now, in this step zero again of JTX-122, [page 56,] the term preamble here is referring only to the ra-PreambleIndex; right?

A. That's correct.

Q. And it's not referring to the preamble sequence of 839 complex numbers; right?

A. That's correct.

Trial Tr. at 1328:2-23;

Q: And now in JTX-103, the standards document, that preamble that's being referred to is the preamble index; right?

A: The ra-PreambleIndex, yes.

Q: It's not referring to the preamble sequence of 839 complex numbers; correct?

A: Correct.

Trial Tr. at 1330:16-22;

Q: So in that preamble that's being referred to in step 1 of JTX-125 on page 439, that's referring to the ra-PreambleIndex; right?

A. Yes.

Q. And it's not referring to the preamble sequence of 839 complex numbers; right?

A. Correct.

Trial Tr. at 1332:5-11.

Moreover, Dr. Bims—who has never attended an LTE standards-setting meeting—did not contest Dr. Cooklev's testimony that the individuals who participated in the LTE standards-setting process were technical experts in the relevant field. Trial Tr. at 530:15-17; *e.g.*, Trial Tr. at 1313:14-21. These experts, including those from companies such as Samsung, LG, ZTE, Nokia, and Ericsson, all understood the term "preamble" to include the preamble index, or the ra-PreambleIndex, and not to be limited to a preamble sequence of complex numbers. *See* Trial Tr. at 528:4-17, 1184:20-23. Again, Apple did not contest that these experts repeatedly referred to the preamble index as a "preamble" throughout the LTE Standard.

Faced with this overwhelming evidence that the LTE standard consistently refers to the ra-PreambleIndex as a preamble, Apple presented through its employee (and fact witness), Dr. Sami Almalfouh, a single instance in the LTE standard that describes a preamble sequence as a preamble—that is, Figure 5.7.1-1 shown in 3GPP TS 36.211, Version 8.9.0, Section 5.7.1. Trial Tr. at 1041:5-23 (discussing DTX-4109). Nevertheless, the lone description of a preamble sequence as a preamble does not render irrelevant the six separate descriptions of a preamble index as a preamble. Both are formats used to express the preamble. *See, e.g.*, Trial Tr. at 1711:24-1712:15. In fact, the single use demonstrates that experts in the field understood the term "preamble" to include both the preamble index and the preamble sequence. As such, Evolved Wireless did not contest—and did not need to contest—that the LTE standard also

describes a preamble sequence as a preamble because it simply was one form of the preamble. Moreover, this lone use in the LTE standard cannot serve as evidentiary basis for the jury to conclude that the preamble was limited to the preamble sequence, especially in light of the overwhelming evidence to the contrary.

Apple mistakenly told the jury in closing that *Dr. Bims* and *Dr. Cooklev* had "agreed that [the single instance in the LTE standard that describes a preamble sequence as a preamble] is a rule, and that you have to use this format for a preamble"—neither of which was true. Trial Tr. at 1945:9-22. First, Dr. Bims *did not testify* regarding TS 36.211. First, Because Dr. Bims did not cite or rely on this document in his expert report, and because Evolved Wireless did not cross-examine Dr. Bims regarding this document, the Court sustained Evolved Wireless's objection to Apple using this document with Dr. Bims. Trial Tr. at 1362:14-25. As such, Apple did not offer any expert testimony regarding this document at trial, and Apple's representation in closing as to Dr. Bims was misleading and unsupported. Second, Apple misrepresented Dr. Cooklev's testimony to the jury. Dr. Cooklev never testified or agreed that "you have to use this format for a preamble." Rather, when cross-examined regarding this figure, Dr. Cooklev explained that the preamble sequence shown in 5.7.1-1 is one format of the "preamble." Trial Tr. at 706:3-707:20. Specifically, Dr. Cooklev testified as follows:

> Q. Now, this preamble in that format of 5.7.1-1, that goes from the phone to the target base station; correct?
>
> A. That's correct.
>
> Q. And that preamble is created on the phone; correct?
>
> A. The format is created on the phone, yes.

*Id*. Dr. Cooklev went on to clarify that "there are two forms of the dedicated preamble. So from the source base station to the phone what is sent is the preamble index. And from the phone is

sent a different form of the dedicated preamble." *Id*.

Then, when testifying during Evolved Wireless's rebuttal case, Dr. Cooklev explained further that the preamble shown in Figure 5.7.1-1 is a "*physical layer* random access preamble," which is "a different form of a preamble"—not the *only* form of a preamble. Trial Tr. at 1711:24-1712:15 (emphasis added). As such, Dr. Cooklev never stated or implied that "you have to use this format for a preamble," and indeed testified directly to the contrary.[4] Indeed, the jury was presented with overwhelming, uncontested evidence that the LTE Standard regularly refers to the preamble index as one format of preamble. Trial Tr. at 1324:20-1332:11.

Thus, the evidence presented in this case only supports one reasonable conclusion: that the *ra-PreambleIndex* is the claimed "preamble," as demonstrated by the six separate instances in the LTE Standard describing the ra-PreambleIndex as a preamble. No reasonable jury could have reached a noninfringement verdict on these grounds, as the jury did not have a legally sufficient evidentiary basis to support the verdict. The Court should grant Evolved Wireless's motion for JMOL.

### 3. There Is Insufficient Evidence to Support Any Finding that the MobilityControlInformation, Including the *ra-PreambleIndex*, Is Not Configured to Permit Access to the Base Station.

Apple also argued for noninfringement based on its assertion that claim 24 requires the claimed device to "send" or "transmit" the "dedicated preamble" (which is the ra-PreambleIndex) from the mobile device to the target base station during the random access procedure. *See, e.g.*, Trial Tr. at 1145:1-8, 1168:14-25, 1942:12-1943:8. In other words, Apple

---

[4] In its earlier briefing on JMOL, Apple seized on a statement by Dr. Cooklev that Figure 5.7.1-1 "is the format of the preamble" to assert or imply that Dr. Cooklev conceded that is the *only* format of the preamble. D.I. 513 at 4-5 (citing Trial Tr. at 776:17-21 and 697:11-14). Dr. Cooklev was distinguishing the format of the preamble in the physical layer from the more limiting concept of the preamble itself. Trial Tr. at 699:9-14, 773:21-774:16; *see also* Trial Tr. at 706:3-707:20; 1711:24-1712:15.

mistakenly asserted that, if Evolved Wireless is right that the *ra-PreambleIndex* is a dedicated

preamble, then Claim 24 requires the *ra-PreambleIndex* itself be configured to access the target

base station by "sending" or "transmitting" the *ra-PreambleIndex* to the target base station. *See*

Trial Tr. at 1764:11-19 ("[T]he claim also requires that the access information be ***configured to***

***perform*** that random access procedure."), 1942:12-1943:8 ("So ***sending*** a preamble index to a

target base station wouldn't perform or do anything that makes that target base station

understand what this mobile unit or mobile device wants to do with that."), 1950:16-19 ("That's

what's required by the claim, whatever is coming into the phone has to be used as part of the

random access procedure and needs to be ***configured to access*** the target base station.")

(emphasis added).

       But that is not what claim 24 requires. Rather, claim 24 requires that "the access

information is configured ***to permit*** the terminal to access the target base station." JTX0001

(emphasis added). There was no dispute at trial that the ra-PreambleIndex is a necessary input

used to permit the device to access the target base station.  In particular, without the access

information (including the ra-PreambleIndex), the mobile device cannot access the target base

station in a contention free handover. Dr. Almalfouh testified as such:

> Q. So if the mobile device didn't receive the preamble index, it
> would not be able to perform a connection with the target base
> station in a contention free handover; right?
>
> A. If it hadn't received that preamble index and also the other
> parameters, either of them or none of them, it would not be able to
> initiate the connection.
>
> Q. If it didn't receive the ra-PreambleIndex, the mobile device
> wouldn't be able to connect with the base station, right?
>
> A. Yeah, I mean, parameters is part of the information that is needed
> to generate a preamble.

Trial Tr. at 1091:1-11. Dr. Bims testified as such:

> Q. Great. Now, we talked about contention free handover. In a contention free handover, the only way to perform it in the LTE standard is to transmit the dedicated preamble to the UE; right?
>
> A. In the LTE standard, as I described, what's downloaded into the phone is a preamble index along with other parameters that help the device create a preamble.

Trial Tr. at 1317:15-21.

Dr. Almalfouh and Dr. Bims agreed that the accused mobile devices use the "access information," including the ra-PreambleIndex, to generate the preamble sequence, and that the mobile devices then use that preamble sequence to perform the random access procedure with the target base station. Thus, the uncontroverted evidence in this case shows that the access information is configured ***to permit*** the terminal to access the target base station—indeed, without the access information, the phone ***could not access*** the target base station. Trial Tr. at 1091:1-11 ("If it hadn't received that preamble index and also the other parameters, either of them or none of them, it would not be able to initiate the connection."). Apple's misstatement of Claim 24 as requiring the device to transmit the ra-PreambleIndex is unsupported by any evidence in this case.

Moreover, Claim 24 does not equate "access information" to "preamble information" or "dedicated preamble." Rather, the claimed "access information" "***includes*** preamble information for the random access procedure." JTX0001 at 12:20-21 (emphasis added). Dr. Cooklev testified, and Apple never refuted, that such access information ("mobilitycontrolInfo" in the Accused Products) included information, such as the target cell identity, that was also used by the mobile device to access the target cell in a random access procedure. Dr. Cooklev testified as such:

> Q. What is your opinion regarding whether the LTE standard claimed access information permits the terminal to access the target base station?

A. Yes. It is my opinion, and I think it is quite clear, that the access information of the mobility control information is configured to permit the mobile device or the terminal to access the target base station.

Q. And I see one of the fields is this target cell identity. What is that?

A. This is an identifier of the target cell.

Q. So is the mobile device going to need that in order to be configured to permit the terminal to access that target base station?

A. It needs that parameter. Yes.

Trial Tr. at 609:16-610:4. There was substantial, uncontroverted evidence that Apple's Accused Products satisfy this limitation.

Thus, the evidence presented in this case only supports one reasonable conclusion: that the *ra-PreambleIndex* is configured to permit the device to access the target base station, as demonstrated by Dr. Almalfouh, Dr. Bims, and Dr. Cooklev all agreeing that the *ra-PreambleIndex* is used to generate a preamble sequence that is used to access the target base station. Moreover, it was uncontroverted that the claimed "access information," the mobilitycontrolInfo, included information that was used by the mobile device to access the target base station in a random access procedure, just as claimed in the asserted claims of the '373 Patent. No reasonable jury could have reached a noninfringement verdict on these grounds, as the jury did not have a legally sufficient evidentiary basis to support the verdict. The Court should grant Evolved Wireless's motion for JMOL.

**B. Evolved Wireless Is Entitled to Judgment as a Matter of Law of Infringement of the '236 Patent, or Alternatively, to a New Trial.**

Evolved Wireless respectfully submits that no reasonable jury could have reached the jury's noninfringement verdict as to the '236 Patent, as the jury did not have a legally sufficient

evidentiary basis to support the verdict. The evidence presented in this case only supports one reasonable conclusion: Apple infringed the '236 Patent.

Based on the evidence presented at trial, there is no evidence under which the jury could properly have found noninfringement. Evolved Wireless presented substantial evidence supporting infringement, much of which Apple did not contest at trial. Rather, Apple's noninfringement arguments as to the '236 Patent were (1) that the Accused Products do not meet the "determining" limitation, and (2) that the "transmission" in the claim language extends to a "retransmission" scenario. Apple's arguments were and are unsupported by the evidence of this case. Thus, Evolved Wireless is entitled to judgment as a matter of law of infringement of the '236 Patent, or alternatively, to a new trial. *Becton, Dickinson & Co.*, 616 F.3d at 1253 ("The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party."); *Roebuck*, 852 F.2d at 735-36.

### 1. The Evidence Presented at Trial Supports Only One Reasonable Conclusion: that the Accused Apple Products Infringe Each Limitation of Claim 7 of the '236 Patent.

The evidence presented at trial only supports the conclusion that the Accused Products infringe each limitation of claim 7 of the '236 Patent. Claim 7 states:

Claim 7. A user equipment, comprising:

a reception module adapted to receive an uplink grant (UL Grant) signal from a base station on a specific message;

a transmission module adapted to transmit data to the base station using the UL Grant signal received on the specific message;

a message 3 (Msg3) buffer adapted to store UL data to be transmitted in a random access procedure;

a Hybrid Automatic Repeat Request (HARQ) entity adapted to determine whether there is data stored in the Msg3 buffer when the

reception module receives the UL Grant signal and the specific message is a random access response message, acquiring the data stored in the Msg3 buffer if there is data stored in the Msg3 buffer when the reception module receives the UL Grant signal and the specific message is the random access response message, and controlling the transmission module to transmit the data stored in the Msg3 buffer to the base station using the UL Grant signal received by the reception module on the specific message; and

a multiplexing and assembly entity used for transmission of new data,

where in the HARQ entity acquires the new data to be transmitted from the multiplexing and assembly entity if there is no data stored in the Msg3 buffer when the reception module receives the UL Grant signal on the specific message or the received message is not the random access response message, and controls the transmission module to transmit the new data acquired from the multiplexing and assembly entity using the UL Grant signal received by the reception module on the specific message.

JTX0003 at 17:30-18:7. Evolved Wireless elicited testimony from its technical expert, Dr. Cooklev, and put forth documentary and source code-based evidence, confirming that Apple infringes each limitation of Claim 7 of the '236 Patent. Trial Tr. at 648:23-651:20, 652:19-670:4. Here, too, Dr. Cooklev's testimony relied on four sources of evidence: (1) the LTE standard, (2) source code running on the Accused Products, (3) Apple's conformance testing of the Accused Products, and (4) third party emulation testing of the Accused Products by a company called TechPats. *Id.*; *see also id.* at 595:12-24.

Both parties' experts described the '236 Patent as requiring two "checks," which are (1) whether the uplink grant is received in the random access response, and (2) whether there is data in the Message3 buffer. Trial Tr. at 649:4-11; 1262:1-7. Indeed, Apple acknowledged that much of the evidence presented was not in dispute, identifying just two non-infringement arguments as to the '236 Patent. *Id.* at 1959:10-12. First, Apple asserted that the Accused Products do not meet the limitation of "determin[ing] whether there is data stored in the Msg3 buffer when the

reception module receives the UL grant signal and the specific message is a random access response message." Trial Tr. at 1961:16-1969:2. Second, Apple asserted that Evolved Wireless had failed to disprove Apple's alleged showing that the accused products transmit stored Msg3 data when an uplink grant is received in a message other than the random access response message, relying on a retransmission scenario outside of the transmission scenario at issue in the '236 Patent. *Id.* at 1969:3-1970:5. Neither argument is supported by the evidence in this case.

> **2. There Is Insufficient Evidence to Support Any Finding that the Accused Products Do Not Determine Whether There Is Data In the Message 3 Buffer.**

Apple's primary noninfringement argument for the '236 Patent at trial hinged on a semantic narrowing of claim 7's "determin[ing]" limitation. *See, e.g.*, Trial Tr. at 1961:16-1969:2 ("You can look at that all day, and you will not find a step of determine something whether there's data stored in the Message 3 buffer when those two things happen."). To be clear, this term was not construed by the Court during claim construction. *See* D.I. 110. The "determin[ing]" limitation relates to claim 7's second check of whether there is data in the Msg3 buffer. JTX0003 at 17:30-18:7; Trial Tr. at 649:4-11; 1262:1-7. Although Dr. Bims and Apple's lawyers insisted that the Accused Products never perform a check to determine whether there is data in the Msg3 buffer, these representations to the jury regarding the claim's requirements are unsupported by the real evidence in this case. As such, there is no evidence upon which the jury could properly find that the Accused Products do not perform the "determin[ing]" step. *Becton, Dickinson & Co.*, 616 F.3d at 1253.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████



Thus, the evidence presented in this case only supports one reasonable conclusion: that the Accused Products perform the "determin[ing]" step ▬▬▬▬▬▬▬▬ to determine whether there is data in the Msg3 buffer. No reasonable jury could have reached a noninfringement verdict on these grounds as the jury did not have a legally sufficient evidentiary basis to support the verdict. The Court should grant Evolved Wireless's motion for JMOL.

### 3. There Is Insufficient Evidence to Support Any Finding that the Claim Scope Extends Beyond the Transmission Scenario to Include the Retransmission Scenario.

Apple presented a second noninfringement argument for the '236 Patent, conflating the separate scenarios of initial transmission and retransmission. Trial Tr. at 1056:23-1057:6 ("Yes,

one example would be if initial transmission of the Message 3 data didn't go through, didn't succeed, then there would be something called retransmission. And in that scenario, the Message 3 data will be retransmitted again."); 1291:5-14; 1969:3-1970:1. In particular, Apple argued that its accused devices send stored Msg3 buffer data during retransmission, and thus the accused devices do not satisfy the claim limitation that stored Msg3 data is only sent in response to an uplink grant received in the random access response message. Apple's assertion regarding the scope of claim 7 is wrong, and the evidence presented to the jury does not support Apple's argument. As such, there is no evidence upon which the jury could properly find that the Accused Products do not meet the limitations of Claim 7. *Becton, Dickinson & Co.*, 616 F.3d at 1253.

The evidence presented in this case only supports one reasonable conclusion: Msg3 buffer data is not sent during retransmission. Apple did not present any evidence or testimony showing that stored Msg3 buffer data is sent during a retransmission. *See, e.g.*, 1213:19-1219:14, 1261:15-1309:15. █████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████  As such, there is no documentary evidence to support Apple's noninfringement argument that its accused products send stored Msg3 buffer data during retransmission. No reasonable jury could have reached a noninfringement verdict on these grounds, as the jury did not have a legally sufficient evidentiary basis to support the verdict. The Court should grant Evolved Wireless's motion for JMOL.

### C.  Evolved Wireless Is Entitled to a New Trial Due to Erroneous Evidentiary Rulings at Trial

Evolved Wireless also moves for a new trial on the issue of infringement based on the following erroneous evidentiary rulings.

**1. Evolved Wireless Is Entitled to a New Trial Because It Was Error to Exclude Apple's Inconsistent Positions Taken by Asserting a FRAND Counterclaim.**

It was a significant error impacting the outcome of trial to sustain Apple's objection to introducing Apple's Answer and Counterclaims, JTX74, during the direct examination of Evolved Wireless's managing partner, Ms. Abha Divine. Trial Tr. at 216:25-218:3.[5] Starting in its Answer and Counterclaims and continuing all the way up to trial (including in its pretrial submissions), Apple advanced two inconsistent positions: (1) that Apple did not infringe the Asserted Patents because the patents were not essential to the LTE standard; and (2) that the Asserted Patents were essential to the LTE standard such that Evolved Wireless breached its commitments to be prepared to grant a license to the patents on fair, reasonable, and non-discriminatory ("FRAND") terms.[6] The Court's exclusion of Apple's Answer and testimony regarding Apple's Answer, which clearly evidenced Apple's inconsistent positions, constitutes reversible error justifying a new trial.

In its Answer, Apple pleaded, *inter alia*, an affirmative claim alleging that Evolved Wireless had breached a FRAND obligation relating to the '373 and '236 Patents. In this affirmative claim, Apple made affirmative statements of fact asserting that Evolved Wireless had and breached a contractual obligation—an obligation that arose only if the patents were standard essential. JTX74 (D.I. 9, Apple's Answer and Counterclaims) ¶¶ 62-64. To be clear, this affirmative claim is undeniably not a *defense* to patent infringement. Rather, it is a stand-alone claim for alleged breach of contract.  Thus, one's ability to plead defenses in the alternative is not relevant here.

---

[5] Notably, Apple *did not object* to this joint exhibit during the pretrial phase of the case. Trial Tr. at 218:9-15. Only at trial did Apple raise its objections. *Id*.

[6] Evolved Wireless filed an offer of proof as to the Court's evidentiary ruling in order to preserve its rights on appeal. D.I. 508.

Evolved Wireless sought to introduce Apple's inconsistent acts and assertions to rebut Apple's primary theory at trial—that the Asserted Patents are not standard essential. Apple's inconsistent assertions were indisputably relevant to key issues in this case. Under the ETSI IPR Policy, a patent is only subject to FRAND commitments if it is actually "ESSENTIAL." *See, e.g.*, JTX015 at 1, JTX134 at 7. Under ETSI's definition of "ESSENTIAL," the patents have to be infringed by products practicing the LTE standard. JTX0134-007. By asserting that Evolved Wireless breached its FRAND obligations, Apple confirmed that the Asserted Patents are infringed by the Accused Products because such products practice the LTE standard. Evolved Wireless should have been able to introduce this inconsistent position during trial.

It is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). And inconsistent statements made by a party are admissible for the purpose of weighing the credibility of witness testimony. *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 505 (D. Del. 2005) (overruling objection to evidence where the witness's inconsistent statements were relevant to his testimony). Evidence of Apple's inconsistent acts and statements throughout this litigation was directly relevant to the jury's duty to weigh the credibility of Apple and its witnesses. During opening statements, Apple's counsel repeatedly told the jury that Apple will present evidence that the Asserted Patents are not standard essential. Trial Tr. at 333:2-6. But Apple's argument that the patents are non-essential was directly undermined by Apple's own acts and statements in JTX74. The jury should have had an opportunity to weigh Apple's own acts and statements in JTX74 against the arguments Apple and its witnesses presented in Court.

Apple's noninfringement assertions as to the Asserted Patents are squarely incompatible with its admissions in JTX74. *See* Trial Tr. at 248:5-13. Apple did not actually plead its Breach of FRAND counterclaim as an "alternative" claim. This allowed Apple to avail itself of this Court's order excluding JTX74 (and maintain its counterclaim) while also arguing the patents are not standard essential thereby using the Court's ruling as both a sword and a shield. *Donald M. Durkin Contr., Inc. v. City of Newark*, 04-CV-00163, 2006 U.S. Dist. LEXIS 68221, *20-21 (Dist. Del. Sept. 22, 2006) (finding a party estopped from presenting a different theory at trial where contention at issue was "not made in the context of an alternative or hypothetical pleading"); *Apple, Inc. v. Samsung Elecs. Co.*, 67 F. Supp. 3d 1100, 1128 ("Apple has not explained why it would be fair for Apple to use the unasserted claims as both a shield and a sword by arguing at trial that Apple practices the claims in order to support its damages arguments and wipe out Samsung's non-infringing alternative arguments, but simultaneously prevent Samsung from challenging the validity of those claims."); *cf*. Trial Tr. at 471:15-17 ("What is super concerning to me is that I gave you a shield at the beginning of the trial and now you're using it as a sword. And I don't like that at all. Okay?"). The jury was entitled to hear the inconsistent positions Apple staked out throughout this case.

Apple cannot escape the consequences of its prior admissions by conflating factual and legal issues. "A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Donald M. Durkin Contr.*, 2006 U.S. Dist. LEXIS 68221 at *18. "If factual matters in issue have been judicially admitted, they are binding on the tendering party. *Id*. (citing *Parillia v. IAP Worldwide Services, VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004). "An admission in a pleading is a judicial admission, which is binding on the litigant." *Id*. (citing *Consol. Rail Corp. v. Providence & Worcester Co.*, 540 F.

Supp. 1210, 1220 n.12 (D. Del. 1982) (citing *Giannone v. United States Steel Corp.*, 238 F.2d 544, 547 (3d Cir. 1956))). In JTX74, Apple did not present an "alternative defense" or a "hypothetical claim," but assertions of fact in support of its affirmative counterclaim. Apple's assertions are judicial admissions.

Moreover, Apple did not plead in the alternative or as a hypothetical. *Id.*; *see also* Trial Tr. at 479:18-21 (the Court noting, "[b]ut the way they pled, it's not in the alternative because they pled a breach of contract based on some third-party beneficiary of the FRAND contract. So they're kind of on the horns of a dilemma."). Instead, Apple affirmatively stated that Evolved Wireless is bound by its FRAND obligations. Throughout litigation, Apple then repeatedly asserted that a FRAND obligation—which exists only if the Asserted Patents are standard-essential—encumbers the patents. *See, e.g.*, D.I. 239 (Apple Opposition Brief at SJ) at 6 ("Through these [ETSI] declarations, LGE committed to irrevocably license the Patents-in-Suit on FRAND terms and conditions. Those commitments imposed ongoing, continuing contractual obligations on the Patents-in-Suit . . . ."); D.I. 40 (Apple's Opposition Brief to Judgment on the Pleadings) at 6 ("Evolved's proposal was not an offer to license the Patents-in-Suit on FRAND terms, but was a breach of Evolved's FRAND obligations.").

It was a significant error to prevent the jury from hearing Apple's inconsistent positions in this suit. The error was not harmless, a substantial right of Evolved Wireless was affected, and a new trial is justified. *Hirst*, 544 F.3d at 228 (granting a new trial and holding that discretionary evidentiary rulings give rise to reversible error where "a substantial right of the party is affected"). Evolved Wireless respectfully requests that this Court order a new trial to cure this error.

26

### 2.   Evolved Wireless Is Entitled to a New Trial Because It Was Error to Repeatedly Allow Apple to Argue Claim Construction to the Jury.

Throughout this trial, and over Evolved Wireless's objections, Apple repeatedly argued claim construction of the "preamble" term to the jury, over Evolved Wireless's objections. *See, e.g.*, Trial Tr. at 125:3-12; 205:4-213:6; 1157:22-1165:21; 1171:6-13; 1183:14-17; 1197:18-1198:21; 1221:16-1229:11. Evolved Wireless respectfully submits that this was reversible error and justifies a new trial.

Apple developed its proposed "preamble" construction long after this Court completed its claim construction process. At claim construction, conducted two years ago, Apple identified 20 unique terms for construction. *See* D.I. 245, Ex. 1; D.I. 54-1 at 7-8. Notably, Apple did *not* identify the "preamble" term of the '373 Patent as a term requiring construction. *Id*. It was not until summary judgment, and again at pre-trial, that Apple sought construction of the "preamble" term as limited to a preamble sequence, and specifically with the construction "[a] preamble index is not a dedicated preamble." D.I. 274 at 8 (Apple's reply summary judgment brief); D.I. 482, Ex. B at 26 (Apple's proposed preliminary jury instructions); *see also* D.I. 489 at 14 (Court's Order denying belated claim construction). The Court denied Apple's request for construction of the limitation at issue. *See* D.I. 223 at 18-21, D.I. 244 at 17-27, D.I. 274 at 1-10, D.I. 448 at 29-35, D.I. 489 at 14.

In light of the Court's holding, and Apple's previously stated positions, it was improper for Apple to argue this claim construction argument to the jury. *Teva Pharm. v. Sandoz*, 135 S. Ct. 831, 838, 842 (2015); *Cytologix Corp. v. Ventana Med. Sys.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005) ("The risk of confusing the jury is high when experts opine on claim construction before the jury even when, as here, the district court makes it clear to the jury that the district court's claim constructions control."); *EMC Corp. v. Pure Storage, Inc.*, No. 13-1985-RGA, 2016 U.S.

Dist. LEXIS 22970, at *11-15 (D. Del. Feb. 25, 2016) (quoting *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341 YGR, 2014 U.S. Dist. LEXIS 31461, at *4 (N.D. Cal. Mar. 5, 2014). "Arguing claim construction to the jury is inappropriate because it risks confusion and the likelihood that a jury will render a verdict not supported by substantial evidence." *Mediatek*, 2014 U.S. Dist. LEXIS 31461, at *16.

In *Mediatek*, the court ruled that a defendant's expert was "not permitted to argue claim construction to the jury, and any testimony in this vein as to any term is and will be excluded. Likewise, any expert testimony purporting to bring in intrinsic or extrinsic evidence to explain the meaning of a claim term will also be excluded." *Id*. at *18. Relying on *Mediatek*, this District has similarly precluded experts from testifying at trial that the intrinsic record "support[s] their views regarding the plain and ordinary meaning of claim terms." *EMC Corp.*, 2016 U.S. Dist. LEXIS 22970, at *13 (precluding expert "from testifying that the specification and commercial embodiments support their views regarding the plain and ordinary meaning of claim terms").

Thus, although experts are permitted to provide their understanding of the plain and ordinary meaning of a term used in claim language, they cannot go a step farther and opine that the claim *requires* their meaning, particularly where they have already argued such construction to the court. *See EMC Corp.*, 2016 U.S. Dist. LEXIS 22970, at *11-15 ("Certainly, Pure is precluded from arguing a meaning to the jury through its expert that it already argued to the Court in the context of claim construction.").

Apple did exactly what the *Mediatek* and *EMC Corp.* courts warned against. Apple's expert, Dr. Bims testified that the *claim requires* the base station to generate a preamble sequence:

> Q. Dr. Bims, I'm not exactly sure where we were at with this when we broke, but can you tell us what would happen to the performance

28

of a network if it did the handover in the way that ***the '373 patent describes*** it?

A. The way ***the '373 patent describes*** the invention, the performance of the network would be harmed if the network were to practice the invention.

Q. And why is that?

A. For a couple of reasons. The first of which is that ***the claim requires*** that the base station generate preambles that are downloaded into the mobile device. As we said, the dedicated preamble are these long sequences of complex numbers. And that's going to take a lot of time in the base station to do that for every device in its coverage area. So that's going to slow down the base station, number one.

Trial Tr. at 1165:24-1166:13 (emphasis added); *see also* Trial Tr. at 205:4-213:6 (Evolved

Wireless objecting to Apple's demonstratives disclosed for opening as claim construction);

1157:22-1165:21 (Evolved Wireless objecting to Dr. Bims testifying about what the '373 Patent

teaches and describes); 1183:14-17 (Evolved Wireless renewing its objection during Dr. Bims's

testimony); 1197:18-1198:21 (same); 1221:16-1229:11 (same). These statements to the jury

about what the patent "describes" and what the claim "requires" go to the scope of the claim

terms, which is quintessentially the Court's role to define. *Teva Pharm.*, 135 S. Ct. at 838, 842.

Evolved Wireless timely objected to improper testimony from Apple's expert, Dr. Bims,

characterizing what the asserted claims of the '373 Patent *required*. Trial Tr. at 1157:22-1165:21,

1183:14-17, 1197:18-1198:21. At the end of the first day of Dr. Bims' testimony, Evolved

Wireless moved to strike the testimony. Trial Tr. at 1224:14 - 1225:2, 1226:3-9. The Court

cautioned Apple on arguing claim construction to the jury but did not exclude the prohibited

testimony. Trial Tr. at 1225:25-1226:2 ("I generally agree that there has been a conflation

between what the term of art means and what the claim says."). The Court instead took the

motion under advisement, 1229:8-11, and presumably denied the motion the following trial day

when it later cautioned Apple's counsel to limit Dr. Bim's further testimony only as to "his

opinion as to what the words mean." *See* Trial Tr. 1242:11-24.

Far from being harmless, the significant error in allowing Apple to argue claim

construction to the jury was extremely prejudicial to Evolved Wireless. The jury was allowed to

hear testimony regarding claim construction, and specifically an expert opinion that the

"dedicated preamble" term as used in the claim is narrower than the plain language of the claim.

As Apple argued before trial, this claim construction argument should not have been presented to

the jury. D.I. 274 at 8 (quoting *Teva Pharm.*, 135 S. Ct. at 838, 842).

Thus, it was a significant error to allow Apple to argue claim construction to the jury and

a new trial is justified. *Hirst*, 544 F.3d at 228. Evolved Wireless respectfully requests that this

Court order a new trial to cure this error.

### 3. Evolved Wireless Is Entitled to a New Trial Because It Was Error to Exclude the BLU License and Related Evidence.

Evolved Wireless is entitled to a new trial because it was a significant error impacting the

outcome of trial to exclude evidence that Evolved Wireless licensed the Asserted Patents to third

party BLU Products, Inc. ("BLU").[7] The Court sustained Apple's objection to the license to BLU

(the "BLU License"), excluding it from trial on the grounds that the license was entered into too

close to trial. Trial Tr. at 6:17-7:13; 195:3-12. Thus, Evolved Wireless was prohibited from

admitting into evidence, testifying about, or offering any evidence at all regarding the BLU

License. *Id*.

The BLU License should have been admitted because its production was timely, because

its existence was relevant to the issues before the jury, and most importantly, because Evolved

---

[7] Evolved Wireless filed an offer of proof as to the Court's evidentiary ruling in order to preserve its rights on appeal. D.I. 509.

Wireless was unfairly prejudiced by its exclusion, especially in light of arguments made to the jury and testimony elicited by Apple's counsel. Evolved Wireless respectfully submits that the Court's ruling was reversible error justifying a new trial.

Production of the license was timely. Evolved Wireless has an ongoing business focused on licensing its patent portfolio, including the two Asserted Patents. Trial Tr. at 362:17-22; 412:24-413:7. Shortly before trial, on March 20, 2019, Evolved Wireless entered into a patent license with BLU (the "BLU License," PTX2099), covering the Asserted Patents. Consistent with its obligations under Fed. R. Civ. P. 26(e), Evolved Wireless produced the BLU License to Apple on March 21, 2019, the day after its execution. Trial Tr. at 190:1-10. To correct any alleged prejudice to Apple, Evolved Wireless also proposed a process for both parties to prepare and serve short expert reports, along with conducting limited expert depositions, regarding the new license. Trial Tr. at 19:12-21. Apple declined. *Id*.

Apple's theories put the BLU License's relevant to the issue of infringement. Apple presented a noninfringement defense at trial that Apple's products did not infringe the Asserted Patents because the Asserted Patents were not essential to the LTE standard. *E.g.*, Trial Tr. at 1901:25-1902:4; 1904:7-10. In support of that defense, Apple advanced the theory that no third party had licensed the Asserted Patents. Trial Tr. at 320:9-19. As such, the Asserted Patents could not be essential to the LTE standard. *Id*. Apple's suggestion made any third party license to the Asserted Patents, like the BLU License, squarely relevant to the issue of infringement.

Importantly, the exclusion of the BLU license allowed Apple to use the Court's Order as both a sword and a shield. For example, during counsel for Apple's opening statement, he argued that none of Samsung, Microsoft, HTC, Lenovo, or ZTE took a license "because they don't need

it, either. They all do what the standard does, not those extra requirements." Trial Tr. at 311:6-

14. Counsel for Apple went on to argue:

> So what we have here, we have a situation I think the evidence will
> show that Ms. Divine and her colleague basically bought a pig in a
> poke. They bought these patents on a bet. They bought these patents
> on a bet not knowing whether they were valuable to see if they could
> license them to someone. In fact, after they bought these patents,
> ***they went out and attempted to license them to several companies,
> five of them, and none of them said yes***. And what did they do?
> They sued all of them. They sued Apple. They sued Samsung. They
> sued Microsoft. They sued HTC. They sued ZTE.

*Id*. at 320:9-19 (emphasis added).

Counsel for Apple then questioned Evolved Wireless's Managing Director, Ms. Divine,

at length regarding five separate companies Evolved Wireless approached regarding a license,

eliciting testimony in front of the jury that none of those companies has taken a license, even

after each company was sued by Evolved Wireless.

> Q. And Samsung is one of the industry leaders in selling mobile
> phones that operate on LTE networks; right?
>
> A. Yes.
>
> Q. And Evolved attempted to license its patents to Samsung; right?
>
> A. Yes.
>
> Q. And Samsung declined to take a license; correct?
>
> A. Samsung has -- yes, has refused to take a license as well.
>
> Q. And --
>
> A. Well --
>
> Q. And Evolved sued it; right?
>
> A. We ultimately ended up having to launch litigation there, too.
>
> Q. HTC is another mobile phone maker that sells phones that operate
> on an LTE network; correct?

A. Yes.

Q. And Evolved attempted to license its patents to HTC; right?

A. Yes.

Q. And HTC also declined to take a license; right?

A. Yes.

Q. And Evolved sued HTC; right?

A. Yes.

Q. And both Samsung and HTC told Evolved that it didn't use the patents; right?

A. I don't recall fully.

Q. Now, Motorola is -- unfortunately, Motorola is not a company that makes cell phones, but it's a brand of cell phones; right?

A. Yes.

Q. And it's currently owned by the -- that brand of cell phones are currently owned by a company by the name of Lenovo; right?

A. Yes.

Q. And those Motorola phones operate on LTE networks; right?

A. Yes.

Q. And Lenovo also declined your request that it take a license; right?

A. Yes.

Q. And so you sued Lenovo; right?

A. Yes.

Q. ZTE is another mobile phone company that sells phones

that operate on an LTE network; right?

A. Yes.

Q. And ZTE also declined to take a license; is that

correct?

A. Yes.

Q. And so Evolved sued ZTE as well; right?

A. Yes.

Q. And so far everything I've described has taken place

several years ago, it's not recent; correct?

A. Yes.

Q. Okay. One last one. Microsoft has purchased companies that have sold phones that operate on an LTE network; right?

A. Yes.

Q. And Evolved attempted to get Microsoft to take a license to Evolved's patents; right?

A. Yes.

Q. And Microsoft also told Evolved that it's not using these patents; correct?

A. Again, I don't remember their -- their exact response.

Q. But in any event, Microsoft said that they didn't want a license; right?

A. They refused to take a license. Yes.

Trial Tr. at 448:3-450:20.[8] This questioning by counsel for Apple alone should have been

deemed to have opened the door to allow the exhibit and related testimony into evidence. *See*

Trial Tr. at 469:23-470:4 ("[Y]ou basically opened the door to the implication that every person

that's been approached or every entity that's been approached by the plaintiff saying that they

---

[8] Apple also elicited testimony that Evolved Wireless is unaware of any revenue the prior owner of the Asserted Patents, LG Electronics, ever obtained through licensing the Asserted Patents. Trial Tr. at 438:19-439:19. Again, this is an additional example of Apple inferring no one has ever been able to license the Asserted Patents, a fact that is rebutted by the BLU License.

violate this patent has said no because they don't violate the patent, and you know full well that somebody has been approached who settled. And you did that when you were making your argument.").

Apple should not have been permitted to allude to the jury that no licenses exist—that all of the leading smartphone companies around the world refuse to license the Asserted Patents, when in reality Apple *knew for a fact* that one company did take a license. *See* Trial Tr. at 470:10-13 ("Your clear implication in doing this is everybody is standing together, that they didn't violate the patent, knowing full well that somebody has settled up. Blu did."). This misrepresentation is itself grounds for a new trial under Fed. R. Civ. P. 60(b). *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 818 F.3d 1320, 1328 (Fed. Cir. 2016) (granting motion for new trial under Fed. R. Civ. P. 60(b) where party offered false testimony, without requiring proof of the party's "nefarious intent" or "complicity"). This is especially true where Apple wielded the Court's earlier ruling on the BLU License as both a sword and a shield. *See* Trial Tr. at 471:15-18 ("What is super concerning to me is that I gave you a shield at the beginning of the trial and now you're using it as a sword. And I don't like that at all. Okay?"); *see also Apple*, 67 F. Supp. at 1128 ("Apple has not explained why it would be fair for Apple to use the unasserted claims as both a shield and a sword by arguing at trial that Apple practices the claims in order to support its damages arguments and wipe out Samsung's non-infringing alternative arguments, but simultaneously prevent Samsung from challenging the validity of those claims.").

The Court considered a curative instruction to ameliorate the harm Apple's representations to the jury caused. Trial Tr. at 1824:19-1828:3. Unfortunately, the curative instruction did not go far enough: the Court rejected Evolved's Wireless's proposed language

that would have corrected the erroneous inference Apple provided the jury. *Id*. In particular, the Court's instruction failed to address the known fact that one company had taken a license to the Asserted Patents. As such, the jury was left with the impression that Evolved Wireless had never licensed the Asserted Patents before because the Asserted Patents were not essential to the LTE standard—an impression that Apple's lawyers intentionally planted in the juries' minds.

Apple's argument to the jury and questioning of Ms. Divine created a clear implication that the '373 and '236 patents are not essential to the LTE standard, thus allegedly not infringed, which almost certainly influenced the jury's evaluation of the issue of infringement. Ms. Divine's testimony, and the BLU License itself, would have rebutted this implication. Thus, it was a significant error to (1) exclude the BLU license and (2) deny Evolved Wireless's proposed curative instruction. The error affected a substantial right of Evolved Wireless and a new trial is justified. *Hirst*, 544 F.3d at 228; *Rembrandt*, 818 F.3d at 1328. Evolved Wireless respectfully requests that this Court order a new trial to cure this error.

4. **Evolved Wireless Is Entitled to a New Trial Because It Was Error to Allow Dr. Bims to Testify Comparing LG Proposals to 3GPP with the LTE Standard.**

Evolved Wireless is entitled to a new trial because it was a significant error impacting the outcome of trial to allow Dr. Bims to testify regarding LG's proposals to 3GPP, and specifically to opine that because the proposals were not adopted into the standard verbatim that the '373 Patent is not infringed by products that practice the LTE standard.

At trial, Apple disclosed for the first time that Dr. Bims would be testifying regarding various proposals relating to the development of the 3GPP standard, and specifically exhibits DTX3913, DTX3916, and DTX3919. Trial Tr. at 998:8-1010:9. Evolved Wireless timely objected to this testimony. *Id*. Apple admitted that Dr. Bims did not cite these exhibits in his report. *Id*. at 1007:7-1010:9. Apple insisted that Dr. Bims is "not providing opinions on them"

and that he was "simply just going through the background." *Id.* The Court overruled Evolved

Wireless's objection, noting that "if they're going through the standard and they want to talk

about how the standard developed and what the standard is, I don't have a problem with that"

and that the Court doesn't "have a problem with Dr. Bims commenting on it as long as it is

consistent with his report." *Id.* Evolved Wireless respectfully submits that the Court's ruling was

reversible error justifying a new trial.

Contrary to the Court's guidance, Apple offered new opinions through Dr. Bims,

comparing various LG proposals to the adopted LTE standard. Trial Tr. at 1188:22-1197:11. For

example, Dr. Bims testified:

> Q: Okay. Now, according to this document, did 3GPP adopt LG's
> proposal for handover?
>
> A. No.

Trial Tr. at 1196:11-13. Dr. Bims went on to testify:

> Q. So at least from this, can we see, did 3GPP actually adopt LG's
> handover proposal?
>
> A. No.

Trial Tr. at 1197:9-11. This testimony went far beyond the "background" that Apple had

promised to the Court. As a result, the jury was left with the false impression that they should

compare LG's proposals to the LTE standard, rather than comparing the '373 Patent to the LTE

standard. Indeed, as the Court recognized, infringement depends on whether the patent as issued

reads onto the standard. *See, e.g.*, Trial Tr. at 1003:1-3 ("But isn't the analysis – the analysis is

whether the patent conforms to the standard; right?"). Whether either the '373 Patent or the LTE

standard is identical to the original LG proposal is irrelevant to the issue of infringement.

In addition, such testimony from Dr. Bims implied that the '373 Patent is not infringed by

products practicing the LTE standard because 3GPP allegedly did not adopt LG's proposals.

Again, this testimony went far beyond what Apple told the Court it would elicit from Dr. Bims on this subject, and is not found anywhere in his expert reports.  Thus, Evolved Wireless was highly prejudiced by this testimony because it had no opportunity to respond to such testimony during expert discovery or at trial as Dr. Cooklev had already testified regarding infringement.

Dr. Bims' testimony should also be considered against the backdrop of Apple's opening statement. In opening, Apple's counsel suggested that the prosecution history of the '373 Patent as compared to the 3GPP standards development indicated that the claims of the patent diverged from the LTE standard over time. *See* Trial Tr. at 335:14-19 ("But seeing what happened in terms of the filing of the patent application and what they were doing with ETSI helps explain for this patent how the two diverge from each other"); *see also* Trial Tr. at 335:14-341:2. Argument from Apple's counsel, that LG's invention diverged from the LTE standard as evidenced by the prosecution history, compounded the error of allowing Dr. Bims to provide testimony on the 3GPP proposals.

As such, it was error to allow Dr. Bims to testify comparing LG's proposals to 3GPP with the LTE Standard. The error was not harmless, a substantial right of Evolved Wireless was affected, and a new trial is justified. *Hirst*, 544 F.3d at 228. Evolved Wireless respectfully requests that this Court order a new trial to cure this error.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant judgment as a matter of law of infringement for Evolved Wireless, or alternatively, a new trial.

Dated: May 10, 2019

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
(302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Christopher K. Larus (admitted *pro hac vice*)
Ryan M. Schultz (admitted *pro hac vice*)
John K. Harting (admitted *pro hac vice*)
Benjamen C. Linden (admitted *pro hac vice*)
Rajin S. Olson (admitted *pro hac vice*)
Austin B. Miller (admitted *pro hac vice*)
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
clarus@robinskaplan.com
rschultz@robinskaplan.com
jharting@robinskaplan.com
blinden@robinskaplan.com
rolson@robinskaplan.com
abmiller@robinskaplan.com

Annie Huang (admitted *pro hac vice*)
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
ahuang@robinskaplan.com

**Counsel For Plaintiff Evolved Wireless, LLC**