# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EVOLVED WIRELESS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     C.A. No. 15–542–JFB–SRF |
| | ) |
| APPLE INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## EVOLVED WIRELESS'S POST-TRIAL REPLY BRIEF IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR A NEW TRIAL

Dated: June 7, 2019

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
(302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Christopher K. Larus (admitted *pro hac vice*)
Ryan M. Schultz (admitted *pro hac vice*)
John K. Harting (admitted *pro hac vice*)
Benjamen C. Linden (admitted *pro hac vice*)
Rajin S. Olson (admitted *pro hac vice*)
Austin B. Miller (admitted *pro hac vice*)
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
clarus@robinskaplan.com
rschultz@robinskaplan.com
jharting@robinskaplan.com
blinden@robinskaplan.com
rolson@robinskaplan.com

abmiller@robinskaplan.com

Annie Huang (admitted *pro hac vice*)
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
ahuang@robinskaplan.com

**Counsel For Plaintiff Evolved Wireless, LLC**

**TABLE OF CONTENTS**

**PAGE**

TABLE OF CONTENTS ........................................................................................................... i

I.    Argument ............................................................................................................................ 2

    A.    Apple Fails to Rebut Evolved Wireless's Showing that It Is Entitled to Judgment as a Matter of Law of Infringement of the '373 Patent, or Alternatively, to a New Trial. ...................................................................................................................... 2

        1.    Apple Does Not Dispute that the Accused Products Receive the Preamble Index from the Source Base Station............................................................. 3

        2.    Apple Does Not Dispute that the Accused Products Use the Received Access Information—Including the Preamble Index—to Generate the Preamble Sequence to Transmit to Access the Target Base Station........... 7

        3.    Apple Does Not Dispute that the Target Base Station Determines Which Preamble Index to Send to the Accused Products Through the Source Base Station. ................................................................................................. 12

    B.    Apple Fails to Rebut Evolved Wireless's Showing that It Is Entitled to Judgment as a Matter of Law of Infringement of the '236 Patent, or Alternatively, to a New Trial. ................................................................................................................... 12

        1.    Apple Does Not Dispute that the ███████ Function Determines Whether There Is Stored Message 3 Data................................................ 13

        2.    Apple Does Not Dispute that Stored Msg3 Data Is Not Sent During Retransmission. ..................................................................................... 15

    C.    Apple Fails to Rebut Evolved Wireless's Showings that It Is Entitled to a New Trial Due to Erroneous Evidentiary Rulings at Trial .......................................... 16

        1.    Evolved Wireless Demonstrated that It Was Error to Exclude Apple's Inconsistent Position on the Essentiality of the Asserted Patents and that Such Error Was Severely Prejudicial........................................................ 16

        2.    Evolved Wireless Demonstrated that It Was Error to Repeatedly Allow Apple to Argue Claim Construction to the Jury and that Such Error Was Severely Prejudicial. ............................................................................... 19

        3.    Evolved Wireless Demonstrated that It Was Error to Exclude the BLU License Because It Created a False Impression Evolved Wireless Had Never Licensed the Asserted Patents, and Evolved Wireless Also Demonstrated that Such Error Was Severely Prejudicial. ........................ 22

4.     Evolved Wireless Demonstrated that It Was Error to Allow Dr. Bims to Testify Comparing LG Proposals to 3GPP with the LTE Standard and that Such Error Was Severely Prejudicial........................................................ 24

II.    Conclusion .................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Medical, Inc. v. Arden Medical Systems, Inc.*,
  955 F.2d 188 (3d Cir. 1992) ................................................................................................... 16

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
  616 F.3d 1249 (Fed. Cir. 2010) .................................................................... 3, 5, 6, 7, 8, 16

*Cytologix Corp. v. Ventana Med. Sys.*,
  424 F.3d 1168 (Fed. Cir. 2005) ........................................................................................ 19, 22

*EMC Corp. v. Pure Storage, Inc.*,
  C.A. No. 13-1985-RGA, 2016 U.S. Dist. LEXIS 22970
  (D. Del. Feb. 25, 2016) .................................................................................................... 20, 21

*Hirst v. Inverness Hotel Corp.*,
  544 F.3d 221 (3d Cir. 2008) ................................................................................................... 16

*Jackson v. Virginia*,
  443 U.S. 307 (1979) ................................................................................................................ 17

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
  No. 11-cv-5341 YGR, 2014 U.S. Dist. LEXIS 31461 (N.D. Cal. Mar. 5, 2014) ................... 20

*Roebuck v. Drexel Univ.*,
  852 F.2d 715 (3d Cir. 1988) ..................................................................................................... 3

*Teva Pharm. v. Sandoz*,
  135 S. Ct. 831 (2015) .......................................................................................................... 19, 21

*Tracinda Corp. v. Daimler Chrysler AG*,
  362 F. Supp. 2d 487 (D. Del. 2005) ....................................................................................... 17

*Williamson v. Consol Rail Corp.*,
  926 F.2d 1344 (3d Cir. 1991) ............................................................................................... 2, 13

Apple's arguments in its opposition brief underscore that Evolved Wireless is entitled to judgment as a matter of law or a new trial. The evidence presented at trial supports only one reasonable conclusion: Apple's Accused Products infringe the Asserted Patents.[1] Because there is no legally sufficient evidentiary basis under which a reasonable jury could have found noninfringement, Apple's opposition brief focuses largely on undisputed evidence rather than the core disputes between the parties. For the '373 patent, there is insufficient evidence to support Apple's noninfringement argument that the claimed preamble excludes a preamble index, or that the access information, including the preamble index, must be sent to access the target base station. Likewise, for the '236 patent, there is also insufficient evidence to support Apple's noninfringement arguments that the Accused Products do not meet the "determining" limitation, or that the "transmission" of the claim extends to the separate "retransmission." Thus, the Court should grant Evolved Wireless's motion for judgment as a matter of law or a new trial on infringement of the '373 and '236 Patents.

Alternatively, Evolved Wireless is entitled to a new trial based on erroneous evidentiary rulings. Apple makes only conclusory assertions that the Court's errors were harmless and ignores the clear prejudice Evolved Wireless explained in its opening brief. Each erroneous evidentiary ruling is an independent basis for granting a new trial. First, Evolved Wireless was improperly prevented from presenting Apple's contradictory positions regarding the essentiality of the Asserted Patents. Second, Apple was improperly allowed to argue claim construction through its technical expert. Third, Evolved Wireless was improperly prevented from presenting evidence of a license to a third party after Apple repeatedly created a false impression that

---

[1] The "Asserted Patents" are collectively U.S. Patent No. 7,809,373 (the "'373 Patent") and U.S. Patent No. 7,881,236 (the "'236 Patent"). The parties stipulated to the "Accused Products" and representative products. Trial Tr. at 513:21-23; 515:25-517:21; D.I. 496.

1

Evolved Wireless never successfully licensed the Asserted Patents. Finally, Apple's technical expert was improperly allowed to compare LG's proposals to 3GPP with the LTE Standard when the proper inquiry is comparing the Asserted Patents with the LTE Standard. Each error significantly impacted the outcome of the trial and justifies granting a new a trial.

## I.   ARGUMENT

### A.   Apple Fails to Rebut Evolved Wireless's Showing that It Is Entitled to Judgment as a Matter of Law of Infringement of the '373 Patent, or Alternatively, to a New Trial.

Apple's noninfringement arguments relate to three claim limitations in the '373 Patent that it alleges the Accused Products do not meet. Rather than addressing that there was insufficient evidence to support Apple's argument that the claimed dedicated preamble excludes the preamble index, Apple relies on listing undisputed evidence in an attempt to tear down a series of strawmen Evolved Wireless never constructed. There is no dispute that this case deals with complex subject matter; thus, the Court should scrutinize the evidence supporting Apple's arguments more carefully. *Williamson v. Consol Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991).

At trial, the parties did not dispute how the Accused Products perform a contention-free handover in accordance with the LTE standard. *See, e.g.*, Trial Tr. at 1762:12-1767:5. Both parties agree that a contention-free handover is performed by:

1. The target base station sends a preamble index and other parameters to the source base station.

2. The source base station relays the preamble index and other parameters to the mobile device.

3. The mobile device uses the preamble index and other parameters to generate a preamble sequence.

4. The mobile device sends the preamble sequence to the target base station in order to access the target base station.

D.I. 531 at 6-9. Apple's opposition brief identifies the evidence both parties presented at trial describing a contention free handover. *Id*. Evolved Wireless did not dispute these steps—nor did it need to. These steps *support* Evolved Wireless's infringement claim. The parties only disputed the nomenclature—whether a preamble index is a "dedicated preamble."

Apple's arguments at trial relied on confusing the jury by framing this issue as a false binary choice: either the preamble index or the preamble sequence can be called a preamble, but not both. Accordingly, Apple first argues that because the preamble sequence is not received by the Accused Products, the Accused Products do not receive the dedicated preamble. The evidence at trial does not support Apple's distinction. *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1253 (Fed. Cir. 2010) ("The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party."). Similarly, Apple's second argument is that because the access information is not transmitted to the target base station, the access information including the preamble index is not "used" to perform a random access procedure and is not "configured to permit" the Accused Products to access the target base station. The evidence at trial does not support this distinction either. *Id*. Finally, Apple argues that because the preamble sequence is not generated by the base station, the base station does not "determine" the dedicated preamble. As with its other arguments, Apple did not present evidence supporting its narrow reading of the claim. *Id*. Thus, the Court should grant Evolved Wireless's motion for judgment as a matter of law, or alternatively, order a new trial. *Roebuck v. Drexel Univ.*, 852 F.2d 715, 735-36 (3d Cir. 1988).

## 1. Apple Does Not Dispute that the Accused Products Receive the Preamble Index from the Source Base Station.

Apple admits "the accused products receive a preamble index from the source base

station." D.I. 531 at 7. Thus, the only question the Court need consider as to this limitation is whether Apple presented a sufficient evidentiary basis for the jury to find that claim's "dedicated preamble" excludes the preamble index.[2]

Apple's assertion is unsupported by the record at trial. Indeed, Dr. Bims admitted at trial that the LTE Standard describes and defines the preamble index as a "preamble" on six separate occasions. *See* D.I. 529 at 10-12. In an attempt to support its narrow definition of "preamble," Apple relies solely on conclusory testimony from its expert, Dr. Bims, and its fact witness, Dr. Almalfouh, that "a preamble and a preamble index are two different things." D.I. 531 at 7-8. Apple ignores, however, that it did not offer Dr. Almalfouh as an expert witness. Dr. Almalfouh did not offer an opinion on infringement or any testimony regarding how one of skill in the art would understand the claim term "preamble." As such, Dr. Almalfouh's testimony purporting to distinguish a preamble and a preamble index is irrelevant to whether the claimed "dedicated preamble" excludes a preamble index.

Moreover, Dr. Bims never testified regarding the lone LTE Standard section that Apple cites for the proposition that the claimed "dedicated preamble" is limited to a "preamble sequence." The only alleged evidence Apple presented that the claimed "dedicated preamble" excludes a "preamble index" is Dr. Bims' unsupported testimony. Absent from trial—and Apple's opposition—is any evidence of record supporting Dr. Bims' assertions in the face of the LTE Standard's repeated uses of these terms interchangeably and Dr. Bims' testimony

---

[2] To be sure, Apple presented evidence that a preamble *can* be expressed as a preamble sequence. This fact is not in dispute. Apple acknowledges the parties' agreement that the Accused Products use the preamble index and other parameters together as inputs to generate a preamble sequence of complex numbers. D.I. 531 at 8. Apple asserts, however, that this preamble sequence is the *only* "preamble" format that can satisfy the claim's "dedicated preamble." The evidence presented at trial does not support this assertion.

acknowledging their uses. *See* D.I. 529 at 10-12. Dr. Bims' unsupported testimony is not sufficient evidence upon which the jury could properly find a verdict of noninfringement. "The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Becton, Dickinson & Co*, 616 F.3d at 1253.

Apple fundamentally misunderstands Evolved Wireless's position, claiming that "Evolved then essentially argues that the evidence in the LTE standard that favors Apple's position should not be given more weight than the evidence it cites." D.I. 531 at 11. There are two problems with this mischaracterization.

First, Evolved Wireless does not argue that the six instances in the LTE Standard that it cited should "outweigh" the lone LTE Standard section that Apple introduced solely through its fact witness—that would be a credibility determination properly left to the jury. Instead, Evolved Wireless argues that the six descriptions of the preamble index as a "preamble" in the LTE Standard preclude excluding the preamble index from the claimed "preamble." D.I. 529 at 12-13. Importantly, Apple never attacked the credibility of these LTE Standard sections, and indeed advocated affirmatively for the LTE Standard's reliability.[3] *See, e.g.*, D.I. 529 at 9, 11, 16

---

[3] Apple does, however, attack Dr. Cooklev's credibility by blatantly mischaracterizing Evolved Wireless's closing argument. Specifically, Apple asserts "Evolved's counsel apparently felt compelled to explain away Dr. Cooklev's demeanor during his closing argument." D.I. 531 at 9 n.2. This attorney argument does not reflect what Evolved Wireless's counsel actually stated:

> Dr. Cooklev isn't some professional witness who's worked for his client in this case as a consultant for years. He's a professor who runs a research lab. He's got a funny accent, and at times he's a little stoic on the stand. But he's the guy working in the trenches doing actual research on LTE. He's doing the work that preexisted this trial.

Trial Tr. at 1875:6-12.

(arguing that the LTE Standard is comprised of "rules" that must be followed). Assuming that the jury found Dr. Bims credible as Apple suggests, the jury should have also found Dr. Bims' admissions regarding these six LTE Standard instances to be credible. *Id*. At least as to Dr. Bims' testimony, there was nothing for the jury to outweigh.

Second, the lone LTE Standard section Apple cites, Section 5.7.1, does not support Apple's position that the claimed "preamble" is limited to *exclude* a "preamble index." DTX-4109-0033. Nor does it explain the six other LTE Standard instances that refer to the "preamble index" as a "preamble." All Section 5.7.1 shows is that the LTE Standard refers to a "preamble sequence" as a "preamble" *in addition to* repeatedly referring to a "preamble index" as a "preamble." Apple tries to present Section 5.7.1 as "competing evidence" to Dr. Bims' six admissions that the LTE Standard repeatedly defines the preamble index as a "preamble." D.I. 531 at 13. This is a bare attempt to latch on to the legal standard for judgment as a matter of law. Contrary to Apple's post-hoc framing, Section 5.7.1 is not "competing" with Dr. Bims' six admissions. Section 5.7.1 does not support excluding the "preamble index" from the claimed "preamble," and Apple's attorney argument does not change that fact. *See* D.I. 531 at 12.

Apple also wrongly implies that because Evolved Wireless's opening brief as to the '373 Patent does not cite the Qualcomm source code, the source code independently supports the jury's noninfringement verdict. D.I. 531 at 7. Apple's inference is wrong. Evolved Wireless did not need to cite the Qualcomm source code, because the parties did not dispute *how* the Qualcomm source code functions. Rather, the parties disputed whether the source code confirms that the Accused Products satisfy the claim limitations. Nothing in the Qualcomm source code supports ██████████████████████████████████████████████████████

The only evidence Apple presented at trial that the claim's "dedicated preamble" is

limited to exclude a "preamble index" was unsupported testimony from Dr. Bims—testimony

that Dr. Bims himself contradicted. *See* D.I. 531 at 7-8 (citing Trial Tr. at 1154:1-20; 1141:13-

16; 1033:8-1036:2; 1042:5-1043:2); D.I. 529 at 10-12 (quoting Trial Tr. at 1324:20-23; 1326:12-

18; 1327:17-22; 1328:2-23; 1330:16-22; 1332:5-11). Apple does not identify in its opposition

any other evidence limiting the claimed dedicated preamble to exclude a preamble index.

Because Dr. Bims testified that the LTE Standard repeatedly refers to the preamble index as a

preamble, and because Apple concedes that both Dr. Bims and the LTE Standard are credible

sources of evidence, Apple's assertion that the "preamble" excludes a "preamble index" is not

supported by substantial evidence at trial. *Becton, Dickinson & Co*, 616 F.3d at 1253.

Thus, to the extent the jury's verdict relied on Apple's argument that the Accused

Products do not receive a dedicated preamble from the source base station, the jury did not have

a legally sufficient evidentiary basis to support the verdict. The Court should grant Evolved

Wireless's motion for judgment as a matter of law.

### 2. Apple Does Not Dispute that the Accused Products Use the Received Access Information—Including the Preamble Index—to Generate the Preamble Sequence to Transmit to Access the Target Base Station.

Apple admits that the Accused Products generate the preamble sequence "based upon the

preamble index and other parameters that are received by the mobile device." D.I. 531 at 15.

Here, too, the parties' dispute turns largely on Apple's unsupported characterization of the

preamble sequence as the *only* "preamble." As explained in the preceding section, the evidence

at trial does not support Apple's narrowing definition. Beyond the flawed "preamble" distinction,

Apple's second noninfringement argument relies on two propositions: first, that the access

information is not "used" in performing the random access procedure, and second, that only the

preamble sequence is "configured to permit" the Accused Products to access the base station.

Neither proposition is supported by substantial evidence presented at trial.

As a threshold matter, Apple misrepresents Evolved Wireless's position. Apple asserts that Evolved Wireless identifies the "preamble index" as the received access information. D.I. 531 at 14-15. Evolved Wireless explained, both at trial and in its opening brief, that the MobilityControlInformation is the claimed access information, which includes the preamble index along with other parameters. *See* D.I. 529 at 14-17; Trial Tr. at 609:16-610:4; 611:1-13. Dr. Bims agreed. Trial Tr. at 1139:1-5; 1181:2-10. Thus, the MobilityControlInformation is what must be "used" in performing the random access procedure, and the MobilityControlInformation is what must be "configured to permit" the Accused Products to access the base station.

### a. Substantial Evidence Supports that the Access Information Is "Used" in Performing the Random Access Procedure.

It is undisputed that the evidence at trial showed the Accused Products use the MobilityControlInformation to generate the preamble sequence transmitted during the random access procedure. D.I. 531 at 15. Nonetheless, Apple argues that the access information is not "used" to perform the random access procedure. D.I. 531 at 14-17. Apple's argument relies on a narrow definition of "used" that is unsupported by the evidence at trial, relying instead on attorney argument. *See* D.I. 529 at 15 (quoting Trial Tr. at 1764:11-19; 1942:12-1943:8; 1950:16-19). Apple essentially asserts that the generation of the preamble sequence on the mobile device occurs prior to the claim's "random access procedure," such that using the access information to generate the preamble sequence is not "using the received access information" "to perform a random access procedure." D.I. 531 at 15. Apple did not present evidence to the jury justifying this narrow definition. In particular, Dr. Bims did not testify that a person of ordinary skill in the art would have such understanding. Because Apple's argument is based on attorney argument, rather than evidence, it is insufficient to deny Evolved Wireless's motion for judgment as a matter of law. *Becton, Dickinson & Co*, 616 F.3d at 1253.

Further, both Dr. Bims and Dr. Almalfouh confirmed that the Accused Products cannot perform a random access procedure without the preamble index. *See* D.I. 529 at 15-16 (quoting Trial Tr. at 1091:1-11 ("If it hadn't received that preamble index and also the other parameters, either of them or none of them, it would not be able to initiate the connection."); 1317:15-21). Both parties agreed that the access information, including the preamble index, is used to generate the preamble sequence transmitted to the target base station during the random access procedure. D.I. 531 at 15. Apple presented no evidence at trial that this use is not the "using" of the claim.

In an attempt to support its narrowing definition of "using," Apple again tries to force a false binary choice: either the preamble sequence *or* the preamble index must be "us[ed]" to perform the random access procedure, but not both. D.I. 531 at 16. Neither the claim language nor any evidence presented at trial supports Apple's unnecessary choice. It was undisputed at trial that both the preamble sequence and the preamble index are required to perform a random access procedure. *See* Trial Tr. at 1091:1-11; 1317:15-21.

Apple posits that it's unnecessary choice is easily resolved, arguing that the format of Section 5.7.1 "is *the* one and only preamble format defined in the LTE standard for use in a random access procedure." D.I. 531 at 12 (emphasis original). Apple's framing, once again, is misleading. The parties do not dispute that the preamble sequence described in Section 5.7.1 is what the mobile device sends to the target base station. However, both the preamble index and the preamble sequence are used to perform the random access procedure. *See* Trial Tr. at 1091:1-11; 1317:15-21.

Assembling another strawman, Apple also attempts to eliminate the preamble index as an answer to its flawed question. Apple argues that the preamble index cannot initiate a random access procedure through transmission to the target base station. D.I. 531 at 16. This is a red

herring. The claim language does not require that the access information itself be able to "initiate a random access connection." *See* JTX001 at Claim 24; D.I. 531 at 16. Claim 24 is an apparatus claim that instead requires the mobile device to be capable of performing the random access procedure "*using* the received access information, such that the access information is configured to permit the terminal to access the target base station." JTX001 at Claim 24 (emphasis added). Both parties agreed that the access information, including the preamble index, is used in generating the preamble sequence transmitted by the Accused Products during the random access procedure. *See* D.I. 531 at 16; Trial Tr. at 1091:1-11; 1317:15-21. Thus, there was insufficient evidence at trial to support Apple's assertion that using the access information to generate the preamble sequence transmitted in the random access procedure is not using the access information to perform a random access procedure.

### b. Substantial Evidence Supports that the Access Information Is "Configured to Permit" the Accused Products to Access the Base Station.

It was undisputed at trial that the MobilityControlInformation—including the preamble index, together with other parameters—is configured such that the mobile device can generate the preamble sequence used to access the target base station. D.I. 531 at 17. Regardless, Apple argues that the term "configured to permit" requires the Accused Products to transmit the access information directly to the target base station. D.I. 531 at 17-18.

Apple's narrow definition of "configured to permit" is unsupported by the evidence at trial. Apple presented no evidence that the claim term "configured to permit" requires the access information to be capable of itself accessing the target base station. Specifically, Dr. Bims did not testify that a person of ordinary skill in the art would have such understanding. Likewise, Apple presented no evidence that the preamble sequence is the only item "configured to permit the terminal to access the target base station." JTX001 at Claim 24. Instead, Apple relies solely

on conclusory attorney argument regarding what it asserts "the claim expressly requires." *See* D.I. 531 at 17. As Apple's witnesses confirmed, the access information comprises parameters— including the preamble index—*required* to permit access to the target base station. *See* Trial Tr. at 1091:1-11; 1317:15-21. Without those inputs, the mobile device would not be permitted to access the target base station. *Id*.

The parameters in the access information are configured as inputs the Accused Products use to generate the preamble sequence. *Id*. As necessary inputs, the parameters are thus configured to permit access to the target base station. For example, Dr. Bims and Dr. Almalfouh both agreed that the preamble index is one parameter required to permit access to the target base station. *Id*. As another example, contrary to Apple's opposition brief, the uncontroverted evidence at trial demonstrated that the "target cell identity" is also required to permit access to the target base station. In addition to Dr. Cooklev's testimony, Dr. Almalfouh agreed that the "target cell identity" is one of the parameters used to generate the preamble sequence. Trial Tr. at 1067:5-20. Dr. Almalfouh testified that the "target cell identity" is "a cell I.D., a cell identification number." Trial Tr. at 1067:17-24. Dr. Almalfouh also agreed that the "target cell identity" is "telling [the mobile device] here's the target cell the mobile device is going to go to." Trial Tr. at 1067:25-1068:2. Thus, without the "target cell identity," the mobile device will not know the correct target cell to which it must connect.

Because the evidence at trial only supports the conclusion that the received access information is used to perform the random access procedure, and that the access information is configured to permit the mobile device to access the target base station, the jury did not have a legally sufficient evidentiary basis to support the verdict. The Court should grant Evolved Wireless's motion for judgment as a matter of law.

### 3. Apple Does Not Dispute that the Target Base Station Determines Which Preamble Index to Send to the Accused Products Through the Source Base Station.

Apple's witnesses admit that the target base station determines and sends the preamble index to the Accused Products through the source base station. *See* Trial Tr. at 1066:3-16 ("Q. Now that target base station selects the ra-PreambleIndex; right? A. Correct. . . . Q. [W]hat you meant to say was the target base station had sent the ra-PreambleIndex which the source base station passed on; right? A. Yes."); Trial Tr. at 1140:21-25. Apple's lone paragraph addressing this limitation argues that because the preamble sequence is generated on the mobile device, it is the mobile device that "determines" the dedicated preamble. D.I. 531 at 19. Apple's failure to provide sufficient evidence to support limiting the "dedicated preamble" to just a preamble sequence, described above in Section I.A.1, is thus fatal to this argument too. To the extent the jury's verdict relied on Apple's argument that the target base station does not determine the dedicated preamble, the jury did not have a legally sufficient evidentiary basis to support the verdict. The Court should grant Evolved Wireless's motion for judgment as a matter of law.

### B. Apple Fails to Rebut Evolved Wireless's Showing that It Is Entitled to Judgment as a Matter of Law of Infringement of the '236 Patent, or Alternatively, to a New Trial.

Apple presented just two noninfringement arguments as to the '236 Patent, which Evolved Wireless identified in its opening brief. D.I. 531 at 20; D.I. 529 at 19-20. First, Apple argues that the Accused Products do not perform the claimed step of "determin[ing] whether there is data stored in the message 3 buffer when the reception module receives the UL grant signal and the specific message is a random access response message." Apple misapprehends the source code and ignores its expert's statements contradicting its position. Second, Apple argues that the Accused Products transmit message 3 data in scenarios beyond receiving the uplink grant signal on the random access response message. Apple confuses the broader concept of message 3

data with the narrower claimed stored message 3 data in the '236 Patent. Because this case deals

with complex subject matter, the Court should more carefully review each of Apple's arguments.

*Williamson v. Consol Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991).

       **1.  Apple Does Not Dispute that the** ███████ **Function Determines Whether There Is Stored Message 3 Data.**

Apple relies wholly on a semantic distinction between ███████ determining whether to

copy data into the message 3 buffer and claim 7's step of determining whether there is data in the

message 3 buffer. This distinction is without a difference and is unsupported by the evidence.

████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████

Apple's argument that the Accused Products do not determine whether to duplicate message 3 data is also based on fundamental misunderstandings of the '236 patent and the source code. First, Apple's repackaged trial theme—that the message 3 data is generated "on the fly"—does not address the claim language and focuses on the wrong claim element. JTX003 at Claim 7. Message 3 data that is created "on the fly" is the claimed "new data," which appears in a separate claim limitation from the stored message 3 data. The Accused Products sometimes generate message 3 data "on the fly" during the initial transmission, which Evolved Wireless does not dispute. Apple confused these limitations in its opposition brief and at trial. Second, Apple argues ████████████████████████████████████████ ████████████████████████████████████████████. The evidence presented at trial does not support either of Apple's misunderstandings. Rather, the evidence at trial supports only one conclusion: that the ██████████ function determines whether there is data in the message 3 buffer only during transmissions as claimed in the '236 patent.

████████████████████████████████████

██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

14

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████

To the extent the jury's verdict relied on Apple's argument that the accused products do not determine whether there is data stored in the message3 buffer, the jury did not have a legally sufficient evidentiary basis to support the verdict. The Court should grant Evolved Wireless's motion for judgment as a matter of law.

### 2. Apple Does Not Dispute that Stored Msg3 Data Is Not Sent During Retransmission.

Apple's second noninfringement argument asserts that message 3 data is transmitted during retransmission scenarios. This argument, too, is flawed for two reasons. First, again, Apple conflates message 3 data stored in the message 3 buffer, or *stored* message 3 data, with the "on-the-fly" message 3 data, or new data. Second, there was no evidence presented at trial demonstrating that *stored* message 3 buffer data is sent during any retransmission scenarios.

Claim 7 claims a specific scenario where stored message 3 data is transmitted. Apple argues incorrectly that claim 7 requires the Accused Products to transmit message 3 data only on uplink grants received on the random access response message. D.I. 531 at 26. Apple misreads claim 7. Claim 7 requires the Accused Products to transmit *stored* message 3 data only on uplink grants received on the random access response message when there is data stored in the message 3 buffer. Apple's assertion regarding the scope of claim 7 is wrong, and the evidence presented to the jury does not support Apple's argument.

To be clear, Dr. Bims and Dr. Almalfouh only testified that message 3 data is sent during retransmission. This testimony did not show that *stored* message 3 data is sent during

retransmission. D.I. 531 at 28. The question is not whether just any message 3 data is transmitted in retransmission scenarios. The question is whether *stored* message 3 data is transmitted in retransmission scenarios. None of Apple's witnesses testified that *stored* message 3 data is sent during retransmission, and there was no evidence presented at trial that the stored message 3 data is ever sent during retransmission. *See, e.g.*, 1213:19-1219:14, 1261:15-1309:15, 1263:10-1292:23. As such, there was no evidence presented at trial upon which the jury could properly find that the Accused Products send *stored* message 3 buffer data during retransmission. *Becton, Dickinson & Co.*, 616 F.3d at 1253.

To the extent the jury's verdict relied on Apple's argument that the Accused Products send stored message 3 buffer data during retransmission, the jury did not have a legally sufficient evidentiary basis to support the verdict. The Court should grant Evolved Wireless's motion for judgment as a matter of law.

### C. Apple Fails to Rebut Evolved Wireless's Showings that It Is Entitled to a New Trial Due to Erroneous Evidentiary Rulings at Trial

None of Apple's arguments in opposition to Evolved Wireless's motion for a new trial demonstrates that the four erroneous evidentiary rulings Evolved Wireless identified were harmless. Indeed, rather than being "highly probable that the error did not contribute to the judgment," each error affected "a substantial right" of Evolved Wireless. *Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 228 (3d Cir. 2008) (granting new trial where the District Court erred in admitting certain testimony and that error was not harmless); *Advanced Medical, Inc. v. Arden Medical Systems, Inc.*, 955 F.2d 188, 199 (3d Cir. 1992) (reversing and remanding for a new trial). As such, each error justifies a new trial.

### 1. Evolved Wireless Demonstrated that It Was Error to Exclude Apple's Inconsistent Position on the Essentiality of the Asserted Patents and that Such Error Was Severely Prejudicial.

Apple does not and cannot dispute that Evolved Wireless's FRAND commitment applies only to patents that are actually essential to the LTE Standard. To breach the FRAND commitment—as counterclaimed by Apple—the Asserted Patents must therefore be actually essential to the LTE Standard. In other words, the Asserted Patents are essential if the Asserted Patents are infringed by products practicing the LTE Standard. Apple also does not dispute that it did not plead its breach of contract counterclaims in the alternative. At trial, Apple openly contradicted its counterclaim and argued that the Asserted Patents were not essential to the LTE Standard, i.e., that the Accused Products did not infringe the Asserted Patents. Whether the Asserted Patents are essential to the LTE Standard is relevant to infringement, as Apple admitted that its "products are compatible with the LTE standard." *See, e.g.,* Trial Tr. at 1905:25-1906:1; 1063:15-17 ("Apple makes sure that the mobile devices are compatible with the LTE network."). The exclusion of Apple's Answer and Counterclaims (JTX74) prevented the jury from considering Apple's contradictory positions. This significant error justifies a new trial.

Additionally, Apple does not dispute that it is the jury's responsibility to resolve conflicts in testimony and weigh the credibility of witness testimony. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Tracinda Corp. v. Daimler Chrysler AG*, 362 F. Supp. 2d 487, 505 (D. Del. 2005). With Apple's contradictory position shielded from the jury, Apple was free to hammer its theory that the Asserted Patents were not essential to the LTE Standard because Evolved Wireless was barred from introducing Apple's prior inconsistent acts and statements. This prevented the jury from fully assessing infringement of the Asserted Patents with knowledge of Apple's conflicting positions. Thus, the error in excluding Apple's inconsistent position and statements was unfair and highly prejudicial to Evolved Wireless.

Permitting the jury to consider Apple's inconsistent factual statements would not have

required addressing affirmative defenses or counterclaims bifurcated by the Court as Apple argues, as Apple's breach of FRAND claim is not a defense to patent infringement. Nor would it have required expert testimony from the parties' respective ETSI and French law experts. The fact of Apple's parallel inconsistent position would have been addressed with Evolved Wireless's fact witness, Ms. Abha Divine, and Apple's witnesses, including at least Ms. Heather Mewes, who is experienced in licensing FRAND-encumbered standard essential patents. Trial Tr. at 1429:21-1430:1. Ms. Divine would not have testified about the legal significance of Apple's counterclaim, but *the fact* that Apple sued Evolved Wireless claiming that Evolved Wireless had breached a FRAND commitment that applies only to patents that are essential to the LTE Standard, i.e., infringed by products practicing the LTE Standard. Knowing that Apple was concurrently pursuing an inconsistent position on infringement of the Asserted Patents would not have confused the jury as Apple alleges. Indeed, Evolved Wireless offered to limit the scope of using JTX74 to address the factual question of whether Apple had taken a different position throughout this litigation. Trial Tr. at 223:16-224:2. Juries are regularly asked to resolve conflicts in testimony and assess a party's credibility. The jury should have been allowed to do so here.

Constraining Evolved Wireless from raising Apple's inconsistent acts with Ms. Divine or any of Apple's witnesses severely harmed Evolved Wireless. Shielded by the Court's exclusion of Apple's inconsistent position and statements about the essentiality of the Asserted Patents, Apple was allowed to mislead the jury. This error enabled Apple to create a false narrative that Apple had only one position about infringement of the Asserted Patents rather than two contradictory positions. Evolved Wireless should have been allowed to introduce Apple's contradictory position at trial for the jury to weigh. Evolved Wireless respectfully requests that

the Court order a new trial to correct this reversible error.

> **2. Evolved Wireless Demonstrated that It Was Error to Repeatedly Allow Apple to Argue Claim Construction to the Jury and that Such Error Was Severely Prejudicial.**

Dr. Bims' testimony regarding the "dedicated preamble" claim term far exceeded opining on its "plain and ordinary meaning." The Court's decision to allow this claim construction testimony was improper, severely prejudicial to Evolved Wireless, and justifies a new trial.

The Court recognized at trial that "there has been a conflation between what the term of art means and what the claim says." Trial Tr. at 1225:25-1226:2. Dr. Bims' testimony as to the "preamble" term did not solely describe what the term of art means; it also sought to define the scope of claim terms, or "what the claim says." Apple's opposition insists that Dr. Bims merely applied his understanding of "preamble" to the claim terms. D.I. 531 at 35-36. But Apple is forced to acknowledge that Dr. Bims also testified to a specific definition of what the '373 Patent describes. *Id*. at 36-37. This testimony regarding a narrower scope of the claims is improper claim construction testimony. *Teva Pharm. v. Sandoz*, 135 S. Ct. 831, 838, 842 (2015); *Cytologix Corp. v. Ventana Med. Sys.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005).

Apple asserts that Dr. Bims' testimony that "the claim requires that the base station generate preambles that are downloaded into the mobile device" is merely paraphrasing claim 24. D.I. 531 at 37. To support its assertion, Apple notes that Dr. Bims went on to testify that "[a]s we said, the dedicated preamble are these long sequences of complex numbers." *Id*. This language elucidates the problem with Dr. Bims' first statement: Dr. Bims testified to the jury that the patent requires ***generating*** sequences of complex numbers at the base station. Nowhere in the patent does this requirement appear—instead, the patent dictates that the target base station merely ***determines*** the dedicated preamble. Apple professes ignorance as to how this sleight-of-hand constitutes claim construction. Again, as the Court noted, it is one thing to explain "what

the term of art means," and quite another to tell the jury "what the claim says." Trial Tr. at

1225:25-1226:2.

Apple also attempts to minimize the additional testimony Evolved Wireless cited because

Evolved Wireless did not go through each cited question, answer, or argument in detail. *See* D.I.

529 at 29 (citing Trial Tr. at 205:4-213:6 (Evolved Wireless objecting to Apple's demonstratives

disclosed for opening as claim construction); 1157:22-1165:21 (Evolved Wireless objecting to

Dr. Bims testifying about what the '373 Patent teaches and describes); 1183:14-17 (Evolved

Wireless renewing its objection during Dr. Bims's testimony); 1197:18-1198:21 (same);

1221:16-1229:11 (same)). Despite Apple's insinuations to the contrary, Evolved Wireless

properly preserved its objections to this testimony on the record, and Evolved Wireless's

assertions are not conclusory.

Apple seeks to distinguish Evolved Wireless's reliance on *Mediatek* and *EMC Corp.* by

focusing solely on holdings in those cases prohibiting experts from presenting claim construction

testimony through intrinsic and extrinsic evidence. Apple ignores *Mediatek's* ruling that an

expert was "not permitted to argue claim construction to the jury, and ***any testimony in this vein***

as to any term is and will be excluded." *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-

cv-5341 YGR, 2014 U.S. Dist. LEXIS 31461, at *8 (N.D. Cal. Mar. 5, 2014) (emphasis added).

*Mediatek's* holding prohibiting the use of intrinsic or extrinsic evidence to explain the meaning

of a claim term was a parallel holding, not the only one. Whether Dr. Bims relied on intrinsic or

extrinsic evidence at trial to explain the claim term's meaning is not the only determining factor

as to whether Dr. Bims engaged in claim construction. Similarly, Apple ignores that *EMC Corp.*

specifically prohibited a party "from arguing a meaning to the jury through its expert," without

indicating that its holding was limited to experts relying on intrinsic or extrinsic evidence. *EMC*

*Corp. v. Pure Storage, Inc.*, C.A. No. 13-1985-RGA, 2016 U.S. Dist. LEXIS 22970, at *11-15

(D. Del. Feb. 25, 2016). As indicated by *Mediatek* and *EMC*, it was error to permit Dr. Bims to

argue claim construction to the jury.

Contrary to Apple's assertions, the erroneous admission of claim construction testimony

was not harmless. As a result of Dr. Bims' claim construction testimony, the jury was permitted

to hear an expert opinion that the "dedicated preamble" term as used in the claim is narrower

than the plain language of the claim. The jury was then left to construe the term "dedicated

preamble." This was prejudicial and legally improper because (1) the jury is never to conduct

claim construction, *Teva Pharm.*, 135 S. Ct. at 838, 842, (2) the jury did not have the benefit of

applying any legal principles of claim construction, let alone the correct ones, and (3) the jury

did not have the benefit of all of the evidence in the case relevant to claim construction. Dr.

Bims' claim construction testimony is especially prejudicial in this case because the

documentary evidence presented at trial plainly contradicts Dr. Bims' alleged understanding of

the "preamble" term as limited to just a "preamble sequence." For example, the drafters of the

LTE Standard—persons of at least ordinary skill in the art—referred to the "preamble index" as

a "preamble." Trial Tr. at 528:4-17; 1184:20-23. Indeed, Dr. Bims did not explain or even

address whether the LTE Standard's six uses of "preamble" to refer to a "preamble index" had

any impact on his understanding of the "plain and ordinary meaning" of "preamble."

Apple argues that, due to the Court's instruction that the jury should apply the ordinary

meaning of a claim term, "it is not reasonably probable that the jury was improperly influenced"

by Dr. Bims' claim construction testimony. D.I. 531 at 39. On the contrary, the Federal Circuit

has held that "[t]he risk of confusing the jury is high when experts opine on claim construction

before the jury even when, as here, the district court makes it clear to the jury that the district

court's claim constructions control." *Cytologix Corp.*, 424 F.3d at 1172. Indeed, because Dr.

Bims' claim construction arguments were not identified as such, the jury was effectively

instructed to consider Dr. Bims' claim construction arguments as the meaning of the term.

Apple also argues, without citation or support, that Evolved's prejudice is mitigated

because "Dr. Cooklev[] provided testimony of the same type as Dr. Bims." D.I. 531 at 40. Dr.

Cooklev did not offer testimony like Dr. Bims. Dr. Cooklev properly grounded his testimony on

what one of skill in the art would understand the plain and ordinary meaning of the term

"preamble" to be. Similarly, Apple cites no case law to support its mitigation argument. Evolved

Wireless was severely prejudiced by the erroneous admission of Dr. Bims' claim construction

testimony. Thus, Evolved Wireless respectfully requests a new trial to cure this error.

> **3. Evolved Wireless Demonstrated that It Was Error to Exclude the BLU
> License Because It Created a False Impression Evolved Wireless Had
> Never Licensed the Asserted Patents, and Evolved Wireless Also
> Demonstrated that Such Error Was Severely Prejudicial**.

Apple claims that its arguments and witness questioning about Evolved Wireless's third-

party licensing efforts were "truthful." They were half-truths at best. Apple used the shield of the

Court's exclusion of the BLU License (PTX2099) as a sword to create a false impression with

the jury that the Asserted Patents are not licensed, not essential to the LTE Standard and, therefore,

not infringed. Once Apple opened the door to Evolved Wireless's third-party licensing efforts

through its counsel's opening statement and lengthy questioning of Ms. Divine, Evolved Wireless

should have been permitted to introduce its BLU License to correct the record. The arguments

and questioning by Apple's counsel were so prejudicial that the Court's curative instruction was

inadequate to correct the fallacy created by Apple. Thus, the exclusion of the BLU License and

the inadequate curative instruction are reversible errors that warrant a new trial.

Apple's argument that introducing the BLU License at trial would be unfairly prejudicial

conveniently ignores Apple's own stance on licensing negotiations and the Court's prior rulings. Throughout the litigation, Apple maintained that license negotiations were "irrelevant" and described such discovery as "inadmissible" and "a classic fishing expedition." D.I. 53 at 3. Apple also argued that the four corners of licenses themselves, rather than the negotiations, were sufficient and "good indicators" of the positions of the parties to a license. D.I. 506, Ex. 2 at 63:23-64:9. Judge Fallon denied Evolved Wireless's motion to compel discovery of licensing negotiations because of Apple's objections. *Id.* at 72:17-19. Then, because Apple refused to produce any discovery related to negotiations of its license agreements, Evolved Wireless moved to exclude Apple from relying on evidence of negotiations at trial and the Court granted Evolved Wireless's motion. D.I. 490 at 15. Thus, the introduction of the BLU License would have been limited to the face of the license, just as Apple's licenses had been limited at trial. Given Apple's past conduct and the Court's prior rulings, Apple would not have been unfairly prejudiced and Evolved Wireless should have been allowed to introduce the BLU License.

When the Court originally excluded the BLU License before the start of trial, Apple had yet to raise Evolved Wireless's third-party licensing efforts. During his opening statement and questioning of Ms. Divine, Apple's counsel left the clear impression that Evolved Wireless approached many companies, offered them a license, and that all the companies rejected Evolved Wireless. Trial Tr. at 311:6-14; 320:9-19. This left the false impression that no company selling LTE-compliant devices would need a license from Evolved Wireless and that the Asserted Patents were not essential to the LTE Standard. Once Apple placed Evolved Wireless's third-party licensing activities at issue, the Court erred by doubling down on an earlier ruling excluding the BLU License rather than permitting Evolved Wireless to set the record straight.

Although the Court permitted the parties to propose a curative instruction, Apple sought a

neutral instruction that preserved the status quo and eliminated any possibility of a cure. At the final charge conference, Evolved Wireless objected to the neutral instruction and argued that the Apple's proposed instruction "would be incorrect, because we know that the responses were not always no" to Evolved Wireless's license offers. Trial Tr. at 1826:10-11. The Court did not adopt Evolved Wireless's proposed curative instruction because it could "get into evidence that we don't have" given the Court's earlier exclusion of the BLU License. *Id.* at 1827:22-23. The lack of clarity in the final curative instruction rendered it inadequate. The jury was still left with the false impression that Evolved Wireless had not entered into any licenses. Deliberating shielding the truth from the jury damaged any chance of a fair trial and severely prejudiced Evolved Wireless. A new trial should be ordered to permit the introduction of the BLU License.

> **4.    Evolved Wireless Demonstrated that It Was Error to Allow Dr. Bims to Testify Comparing LG Proposals to 3GPP with the LTE Standard and that Such Error Was Severely Prejudicial.**

Apple argues that Evolved Wireless did not object to Dr. Bims' testimony, but Apple ignores that Evolved Wireless timely raised this issue with the Court in relation to the slides Dr. Bims relied on for this issue. In response, Apple promised the Court that Dr. Bims would not be "providing opinions on them. He's simply going through the background or the factual lead-up which Dr. Cooklev had correctly put in his report." Trial Tr. at 1008:1-4. The Court took Apple's promises to heart, allowing Dr. Bims to use the slides and stating that "if Dr. Cooklev utilized it in his report, then I don't have a problem with Dr. Bims commenting on it *as long as it is consistent with his report*." Trial Tr. at 1009:22-24 (emphasis added). Apple flouted the Court's guidance: Dr. Bims' opinion testimony far exceeded the bounds of Dr. Bims' report and Apple's promises to the Court, and it was inconsistent with Dr. Cooklev's report. For example, Dr. Bims testified as follows:

Q. So at least from this, can we see, did 3GPP actually adopt LG's

handover proposal?

A. No.

Trial Tr. at 1197:9-11; *see also* Trial Tr. at 1196:11-13. This testimony was not in Dr. Bims' report, and it contravened Apple's representation to the Court. Evolved Wireless's earlier objection to the slides formed the basis of Dr. Bims' improper opinion testimony comparing the LG Proposals to 3GPP with the LTE Standard. As such, Evolved's objection to the use of the slides was sufficient to preserve its objection to Dr. Bims' testimony.

Apple also argues that Dr. Bims' testimony was necessary to respond to Evolved Wireless's arguments. But the majority of the testimony Apple cites is Dr. Cooklev's testimony that the asserted claims of the '373 Patent are essential to the LTE Standard. D.I. 531 at 47. As the Court noted, this testimony is entirely proper, and indeed the correct inquiry. Trial Tr. at 1003:1-3 ("But isn't the analysis – the analysis is whether the patent conforms to the standard; right?"). Dr. Bims' testimony, however, was not the correct inquiry.

The erroneous admission of Apple's slides—and Dr. Bims' opinion testimony regarding those slides—substantially prejudiced Evolved Wireless, as it left the jury confused as to whether they should compare LG's proposals to the LTE standard or compare the '373 Patent to the LTE standard. *See* D.I. 529 at 37-38. Moreover, Apple argued in its opening statement that the prosecution history evidences that LG's invention diverged from the LTE standard, which compounded the substantial prejudice to Evolved Wireless of allowing Dr. Bims to provide testimony on the 3GPP proposals. *See* Trial Tr. at 335:14-19; 335:14-341:2. Thus, Evolved Wireless respectfully requests a new trial to cure this error.

## II.     CONCLUSION

For the foregoing reasons, the Court should grant judgment as a matter of law of infringement for Evolved Wireless, or alternatively, a new trial.

Dated: June 7, 2019

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
(302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Christopher K. Larus (admitted *pro hac vice*)
Ryan M. Schultz (admitted *pro hac vice*)
John K. Harting (admitted *pro hac vice*)
Benjamen C. Linden (admitted *pro hac vice*)
Rajin S. Olson (admitted *pro hac vice*)
Austin B. Miller (admitted *pro hac vice*)
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
clarus@robinskaplan.com
rschultz@robinskaplan.com
jharting@robinskaplan.com
blinden@robinskaplan.com
rolson@robinskaplan.com
abmiller@robinskaplan.com

Annie Huang (admitted *pro hac vice*)
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
ahuang@robinskaplan.com

**Counsel For Plaintiff Evolved Wireless, LLC**