## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | C.A. No. 15-542-JFB-SRF |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | |
| APPLE, INC., | ) | **PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |

### APPLE INC.'S BRIEF IN OPPOSITION TO EVOLVED WIRELESS, LLC'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL

OF COUNSEL:

Michael D. Jay
Nandan R. Padmanabhan
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067-4704
Tel: (310) 595-3000

Mark D. Fowler
DLA PIPER LLP (US)
2000 University Ave.
East Palo Alto, CA 94303
Tel: (650) 833-2000

Susan N. Acquista
Jacob Anderson
Kathryn Riley Grasso
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101
Tel: (619) 699-2700

Dated: May 24, 2019
6224721 / 42622

Public Version Dated: July 25, 2019

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant Apple, Inc.*

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   EVOLVED'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR A
      NEW TRIAL FALLS FAR SHORT OF THE HIGH STANDARD FOR DISTURBING
      THE JURY'S VERDICT ........................................................................................3

      A.    Legal Standard ...........................................................................................3

      B.    Substantial Evidence Supports The Jury's Verdict Of No Infringement Of
            The '373 Patent ...........................................................................................4

            1.    Substantial evidence establishes the accused products do not
                  receive a dedicated preamble from the source base station. .........................5

            2.    Substantial evidence establishes that the accused products do not
                  perform a random access procedure with the target base station
                  using the received access information, such that the access
                  information is configured to permit the terminal to access the target
                  base station. ........................................................................................14

            3.    Substantial evidence establishes that the dedicated preamble is not
                  determined by the target base station. ......................................................19

      C.    Substantial Evidence Supports The Jury's Verdict Of No Infringement Of
            The '236 Patent ...........................................................................................19

            1.    Substantial evidence establishes that the accused products do not
                  determine whether there is data stored in a msg3 buffer when the
                  reception module receives the UL grant signal ............................................20

            2.    Substantial evidence establishes that the accused products do not
                  transmit msg3 data only when the uplink grant is received on the
                  random access response message ..............................................................26

III.  THE COURT'S EVIDENTIARY RULINGS WERE CORRECT AND DO NOT
      WARRANT A NEW TRIAL ..................................................................................28

      A.    The Court's Exclusion Of Evidence Regarding Apple's FRAND
            Counterclaim Under Federal Rule Of Evidence 403 Was Correct And Also
            Does Not Warrant a New Trial ......................................................................29

            1.    Evolved's arguments regarding whether the FRAND counterclaim
                  should have been admitted are incorrect and its admission would
                  have confused the jury and unfairly prejudiced Apple. .................................29

            2.    Any error in excluding Apple's Answer and Counterclaim was
                  harmless because it is not directly relevant to infringement, and
                  Evolved has offered nothing but a conclusory assertion to the
                  contrary. .............................................................................................32

      B.    Apple Did Not Argue Claim Construction To The Jury, And Thus There Is
            No Basis On Which To Grant A New Trial .......................................................33

1.     Dr. Bims did nothing more than provide opinions based on his view of the plain and ordinary meaning of "preamble" to a person of ordinary skill in the art..................................................................34

2.     Evolved has not shown it suffered prejudice as a result of the Court's ruling on Dr. Bims' testimony. .......................................................39

C.    The Court Correctly Excluded The BLU Agreement And Any Alleged Error Arising From Counsel's Reference To Other Defendants Who Have Not Licensed The Patents-in-Suit Was Harmless...............................................40

1.     The BLU agreement was properly excluded from trial under Federal Rule of Evidence 403 because it was unfairly prejudicial............40

2.     Apple did not open the door to the BLU agreement; its arguments and witness questioning were truthful and do not warrant a new trial. ...........................................................................................43

3.     The Court's jury instructions cured any alleged misconception................45

D.    Allowing Dr. Bims To Testify About LG's Proposals To 3GPP Was Not Error And Does Not Warrant A New Trial.........................................................46

1.     Evolved never objected to Dr. Bims' testimony.........................................46

2.     Dr. Bims' testimony was relevant to respond to Evolved's arguments to the jury. ...............................................................................47

3.     Evolved has not suffered any prejudice or harm as a result of Dr. Bims' testimony. ...........................................................................................49

IV.    CONCLUSION............................................................................................................50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Samsung Elecs. Co.,*
   67 F. Supp. 3d 1100 (N.D. Cal. 2014) .................................................................30

*Betterbox Commc'ns Ltd. v. BB Techs, Inc.,*
   300 F.3d 325 (3d Cir. 2002)...............................................................................42

*Bhaya v. Westinghouse Elec. Corp.,*
   922 F.2d 184 (3d Cir. 1990)................................................................................41

*Blancha v. Raymark Indus.,*
   972 F.2d 507 (3d Cir. 1992)................................................................................42

*Brown v. Penn. Railroad Co.,*
   282 F.2d 522 (3d Cir. 1960).................................................................................43

*C.R. Bard v. Medtronic, Inc.,*
   C.A. No. 96-589-SLR, 1999 WL 458305 (D. Del. June 15, 1999) .........................45

*City of Los Angeles v. Heller,*
   475 U.S. 796 (1986).............................................................................................45

*EMC Corp. v. Pure Storage, Inc.,*
   C.A. No. 13-1985-RGA, 2016 U.S. Dist. LEXIS 22970 (D. Del. Feb. 25, 2016)...................38

*Evolved Wireless, LLC v. BLU Products, Inc.,*
   Case 1:18-cv-25116-DPG (S.D. Florida).............................................................42

*Fineman v. Armstrong World Indus.,*
   980 F.2d 171 (3d Cir. 1992)..........................................................................*passim*

*Finjan, Inc. v. Symantec Corp.,*
   C.A. No. 10-593-GMS, 2013 WL 5302560 (D. Del. Sept. 19, 2013) ................3, 19

*General Motors Corp. v. New A.C. Chevrolet, Inc.,*
   263 F.3d 296 (3d Cir. 2001)...........................................................................29, 40

*Ghee v. Marten Transp., Ltd.,*
   570 F. App'x 228 (3d Cir. 2014) ........................................................................47

*Inter Med. Supplies, Ltd. v. Ebi Med. Sys.,*
   181 F.3d 446 (3d Cir. 1999)................................................................................46

*InterDigital Commc'ns, Inc. v. ZTE Corp.,*
   C.A. No. 13-009-RGA, 2016 WL 1073229 (D. Del. Mar. 18, 2016)......................45

*Lightning Lube, Inc. v. Witco Corp.*,
    4 F.3d 1153 (3d Cir. 1993) ............................................................................ *passim*

*Lucent Techs., Inc. v. Newbridge Networks Corp.*,
    168 F. Supp. 2d 181 (D. Del. 2001) ........................................................................... 45

*McDonough Power Equipment., Inc. v. Greenwood*,
    464 U.S. 548 (1984) ........................................................................................ 4, 28, 29

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
    No. 11-cv-5341-YGR, 2014 U.S. Dist. LEXIS 31461 (N.D. Cal. Mar. 5, 2014) ............ 38, 39

*Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*,
    818 F.3d 1320 (Fed. Cir. 2016) ............................................................................ 43, 44

*Roche Diagnostics Operations, Inc. v. Abbott Diabetes Care*,
    756 F. Supp. 2d 598 (D. Del. 2010) ........................................................................... 33

*Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*,
    758 F.2d 613 (Fed. Cir. 1985) ................................................................................... 32

*Shinseki v. Sanders*,
    556 U.S. 396 (2009) ........................................................................................... 33, 39

*Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*,
    895 F.3d 1304 (Fed. Cir. 2018) ....................................................................... 33, 39, 49

*Thaubalt v. Chait*,
    541 F.3d 512 (3d Cir. 2008) ...................................................................................... 45

*Waldorf v. Shuta*,
    142 F.3d 601 (3d Cir.1998) ....................................................................................... 47

*Williamson v. Consol. Rail Corp.*,
    926 F.2d 1344 (3d Cir. 1991) ......................................................................... *passim*

**Rules**

Fed. R. Civ. P. 37(c)(1) ................................................................................................ 40

Fed. R. Civ. P. 51 ........................................................................................................ 46

Fed. R. Civ. P. 60(b)(3) ............................................................................................... 43

Fed. R. Civ. P. 61 .............................................................................................. 4, 28, 42

Fed. R. Evid. 403 ................................................................................................ *passim*

## I.    INTRODUCTION

The jury's non-infringement verdict reflects the overwhelming evidence presented at trial that Apple does not infringe the patent-in-suits.  Indeed, in arguing for judgment as a matter of law, or for a new trial, Evolved's motion either ignores or completely discounts the overwhelming evidence that Apple presented at trial establishing non-infringement—the relevant source code, the trial testimony given by Apple's expert and by an Apple engineer, the admissions that Evolved's expert made on cross-examination, and the teachings of the LTE standards documents themselves.  Evolved's motion also fails to take into account that the jury was entitled to weigh the evidence presented by Apple and Evolved, including the credibility of the parties' respective witnesses.  Evolved's motion also repeatedly mischaracterizes Apple's non-infringement arguments at trial—attacking arguments that Apple did not make and either ignoring or giving short shrift to the arguments that Apple did make.  Furthermore, in seeking to overturn the jury's verdict, Evolved challenges neither the Court's claim constructions nor the Court's jury instructions regarding infringement, both of which Apple relied upon in presenting its case to the jury, and both of which support the jury's verdict.  As a result, the jury's verdict was correct and Evolved's motion to the contrary falls far short of meeting the very high standard for disturbing the verdict.  Evolved's request that the Court now second-guess the jury's verdict should therefore be rejected.

Apple presented substantial evidence that Apple's accused iPhones and iPads do not practice the asserted claims of U.S. Patent No. 7,809,373 (the "'373 patent"), either literally or under the doctrine of equivalents.  The jury's non-infringement verdict reflects that the jury evaluated and weighed the substantial evidence, assessed the credibility of the witnesses, applied this Court's jury instructions (including its claim construction instruction), and rendered a verdict of non-infringement of the '373 patent.  While Evolved's motion asserts that "[t]he evidence in

this case only supports one reasonable conclusion: Apple infringed the '373 Patent" (D.I. 529 at 6), that assertion is demonstrably incorrect in light of the evidence at trial. Indeed, the only way to reach Evolved's conclusion is to discount all of the evidence that Apple presented and to instead credit Evolved's flawed infringement arguments, all of which is contrary to the legal standards governing Evolved's motion. At most, Evolved motion shows that competing evidence was presented to the jury—evidence that the jury, as the sole trier of fact, was charged with evaluating and weighing in reaching its verdict. Accordingly, because there is no basis whatsoever to conclude that no substantial evidence supports the jury's verdict, or that the verdict is against the weight of the evidence, the jury's non-infringement verdict on the '373 patent must stand.

The same holds true for the jury's verdict on U.S. Patent No. 7,881,236 (the "'236 patent"). Overwhelming evidence was presented at trial that supports the jury's non-infringement verdict. Evolved failed at trial to establish infringement of the '236 patent, and Evolved's motion fails to show that no substantial evidence supports the jury's non-infringement verdict. At most, as with the '373 patent, Evolved has shown that it presented competing evidence. But the jury's verdict may not be disturbed simply because there was competing evidence—the jury was the trier of fact and was entitled to weigh all the evidence in concluding there was no infringement. The Court should thus also deny Evolved's motion as to the '236 patent.

Evolved's argument that it is entitled to a new trial based upon the Court's evidentiary rulings is without merit for two basic reasons. First, Evolved fails to show any error in the Court's evidentiary rulings. Second, even if there were any error in any of the Court's evidentiary rulings (which there was not), Evolved's motion still should be denied because

Evolved has not met its burden of showing any resulting prejudice.  Indeed, other than making conclusory statements that it was prejudiced, Evolved has not made any showing as to how the Court's alleged errors actually prejudiced it at trial.  Evolved is thus not entitled to a new trial.

## II.   EVOLVED'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL FALLS FAR SHORT OF THE HIGH STANDARD FOR DISTURBING THE JURY'S VERDICT

### A.   Legal Standard

"[T]he Third Circuit has clarified that if, at the very least, the 'record contains the minimum quantum of evidence' from which a jury could reasonably find a verdict, a JMOL motion should be denied." *Finjan, Inc. v. Symantec Corp.*, C.A. No. 10-593 (GMS), 2013 WL 5302560, at *24 (D. Del. Sept. 19, 2013) (quoting *Keith v. Truck Stops Corp. of Am.*, 909 F.2d 743, 745 (3d Cir. 1990)).  "In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993).  In addition, the Court must give the non-moving party, "as [the] verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor and, in general, view the record in the light most favorable to him." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991).

A court should grant a new trial in a jury case only if "the verdict was against the weight of the evidence . . . [and] a miscarriage of justice would result if the verdict were to stand." *Williamson*, 926 F.2d at 1352.  In other words, a court should not disturb a jury verdict unless the verdict, "on the record, cries out to be overturned or shocks [the court's] conscience." *Id.* at 1353 (citing *EEOC v. Delaware Dep't of Health & Social Serv.*, 865 F.2d 1408, 1413 (3d Cir. 1989)).  This stringent standard is necessary to ensure that the trial court does not substitute its "'judgment of the facts and the credibility of the witnesses for that of the jury.'" *Fineman v.*

*Armstrong World Indus.*, 980 F.2d 171, 211 (3d Cir. 1992) (quoting *Lind v. Schenley Indus.*, 278

F.2d 79, 90 (3d Cir. 1960) (*en banc*)).

A new trial may not be granted based upon any alleged "error in admitting or excluding

evidence" "[u]nless justice requires otherwise" because "the court must disregard all errors and

defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61. Thus, the court

should "ignore errors that do not affect the essential fairness of the trial." *McDonough Power*

*Equipment., Inc. v. Greenwood*, 464 U.S. 548, 553 (1984).

### B. Substantial Evidence Supports The Jury's Verdict Of No Infringement Of The '373 Patent

The evidence at trial far surpassed the required "minimum quantum of evidence" from

which a jury could reasonably find that Apple does not literally infringe the '373 patent.[1]

Specifically, Apple presented overwhelming evidence at trial that the Apple accused products do

not meet the following three claim limitations of independent claim 24 of the '373 patent (listed

in the order they are recited in the claim):

- "to perform a random access procedure with the target base station using the received access information, such that the access information is configured to permit the terminal to access the target base station";

- "wherein the preamble information is a dedicated preamble used only for a specific terminal"; and

- "wherein the dedicated preamble is determined by the target base station."

(JTX-001 at claim 24.) The evidence that Apple presented consisted of (1) the Qualcomm

source code for the baseband chips used in the Apple accused products, (2) the trial testimony of

Apple's expert, Dr. Harry Bims, (3) the trial testimony of an Apple engineer, Dr. Sami

Almalfouh, who has a Ph.D. in electrical engineering and was for many years responsible for

---

[1] Evolved does <u>not</u> seek judgment as a matter of law, or a new trial, on the basis that Apple infringes the '373 patent under the doctrine of equivalents. (*See* D.I. 529, *generally*.)

integrating the Qualcomm baseband chips (on which the LTE functionality takes place) into Apple's accused products, (4) the LTE standards documents and (5) admissions from Evolved's own expert, Dr. Todor Cooklev.  (Trial Tr. 1016:8-1046:9; 1104:22-1106:4; 1108:21-1111:9; 1117:19-1119:17; 1120:23-1159:2; 1165:24-1190:6; 1293:8-1295:21; 1296:13-1303:8; 1358:6-1368:6; 672:15-700:19; 704:19-718:8; 725:9-741:13; 768:4-781:6; 795:8-22.)

The jury properly weighed this evidence, assessed the credibility of the witnesses, and rendered a verdict of non-infringement of the '373 patent.  Evolved nonetheless now asks this Court to reweigh the evidence, make its own credibility determinations, and substitute Evolved's version of the facts for the jury's conclusion.  This is directly contrary to the standard for granting judgment as a matter of law or a new trial.  *See Lightning Lube*, 4 F.3d at 1166; *Williamson*, 926 F.2d at 1352; *Fineman*, 980 F.2d at 211.

### 1. Substantial evidence establishes the accused products do not receive a dedicated preamble from the source base station.

Claim 24 requires that the mobile terminal "receive access information from a source base station," "wherein the access information includes preamble information for the random access procedure." (JTX-001 at claim 24.)  Claim 24 further requires that "the preamble information is a dedicated preamble . . ." (*Id.*)  Apple presented overwhelming evidence at trial that the accused mobile devices do not in fact receive a dedicated <u>preamble</u> from a source base station, but instead receive <u>something different</u>, a <u>preamble index</u>, which the mobile device uses, along with other parameters, to generate a preamble on the mobile device.

In denying Defendants' pre-trial motion for summary judgment of non-infringement, the Court, having reviewed the testimony of the parties' respective experts about whether the preamble index that is received by the Defendants' accused products is the claimed "dedicated preamble" (D.I. 489 at 8-10), concluded: "The record shows that there are genuine issues of

material fact on whether the accused products infringe the asserted claims of the patents at issue. There is competing expert testimony with respect to the dedicated preamble issue." (*Id.* at 14.) The Court further concluded that "there are numerous issues that will require assessments of credibility," and that "[t]he parties each present competing expert testimony on infringement. The Court is unable to resolve these conflicts in the testimony in this context. Infringement is a matter for the jury to decide." (*Id.* at 14-15.)  Thus, the Court determined that the <u>factual issue</u> of whether the preamble index that the accused products receive is the claimed "dedicated preamble" would be decided by the jury at trial, and the parties subsequently tried that factual issue before the jury. During trial, the Court again recognized that the parties' respective experts—Dr. Bims and Dr. Cooklev—were providing testimony on this issue. (Trial Tr. 1221:12-1229:11.) Indeed, in response to the Court's question, "[s]o the only way we can know what a dedicated preamble is is through expert testimony; correct," Evolved's counsel answered "yes," "[t]hat is a factual dispute." (*Id.* at 1225:8-13.)

As this factual issue was tried to the jury, and as the Court must give Apple the benefit of all logical inferences and resolve all conflicts in the evidence in Apple's favor, the Court must assume that the jury resolved this factual issue in Apple's favor. *Williamson*, 926 F.2d at 1348.

> **a.   Overwhelming evidence was presented at trial that the accused products do not receive a dedicated preamble from the source base station as the claims require.**

The Qualcomm source code for the baseband chipsets in Apple's accused products is irrefutable evidence that the accused products do not receive a "dedicated preamble" from the source base station. It was undisputed at trial that the Qualcomm source code admitted into evidence at trial dictates how any process is executed on the Qualcomm baseband chip in the accused products. (Trial Tr. at 641:17-19; 1027:11-1028:25; 1147:8-22.) ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



This Qualcomm source code alone is substantial evidence that fully supports the jury's verdict of non-infringement. Tellingly, Evolved's motion for judgment as a matter of law with respect to the '373 patent ignores the source code entirely—Evolved does not cite even a single line of the Qualcomm source code.

The testimony of Apple's expert, Dr. Bims, also provides substantial support for the jury's verdict. Dr. Bims testified that a "preamble" and a "preamble index" are two different things: a preamble index is a single integer and a preamble is a long sequence of 839 complex numbers (a Zadoff-Chu sequence) that is designed to gain access to a target base station. (Trial Tr. 1154:1-20; 1141:13-16.) Dr. Bims also testified that a mobile device cannot use a preamble index to initiate a random access procedure with a target base station. (*Id*. at 1145:1-8.)

Dr. Bims further testified that the accused products never receive a preamble from the source base station as claim 24 expressly requires. Instead, the accused products receive a preamble index from the source base station, and the products then use the preamble index, along

with other parameters, to themselves generate a preamble—a cyclic prefix followed by a sequence of 839 complex numbers. (*Id.* at 1142:18-1143:23; 1156:9-13.) As Dr. Bims explained, because the calculation of the preamble involves numerous other parameters in addition to the preamble index, for any given preamble index value, the accused products can generate potentially tens-of-thousands of preambles. (*Id.* at 1145:9-1147:7.) Dr. Bims concluded from this, as well as other cited evidence, that the accused products do not receive a dedicated preamble from a source base station as claim 24 requires. (*Id.* at 1153:5-25.)

The jury also heard from Dr. Almalfouh, an Apple engineer who worked on the accused LTE functionality in the accused products. (Trial Tr. 1018:5-1019:6.) Dr. Almalfouh's extensive testimony further supports the jury's verdict. Dr. Almalfouh testified that a preamble and a preamble index are two different things: a preamble is a long sequence of 839 complex numbers, preceded by a cyclic prefix, that is generated on and is used by the mobile device to process a handover to the target base station, whereas a preamble index is a single number between 0 and 63 that is sent by the source base station to the mobile device and is then used by the mobile device, along with another set of other parameters, to generate a preamble. (*Id.* at 1033:8-1036:2; 1042:5-1043:2.) Consistent with Dr. Bims' testimony, Dr. Almalfouh testified that a preamble is used to initiate a random access connection with a target base station, whereas a preamble index is not and cannot be used to initiate a random access connection. (*Id.* at 1034:21-1035:2; 1044:9-1046:1.) Dr. Almalfouh further confirmed that the mobile device never receives a preamble from the source base station. (*Id.* at 1044:20-25.) Dr. Almalfouh's testimony thus further confirms that the accused products do not receive a dedicated preamble from the source base station as is expressly required by claim 24.

The testimony of Dr. Bims and Dr. Almalfouh is consistent with the LTE standard upon which Evolved relied. Specifically, the LTE standard also identifies a preamble index as a single integer value. (JTX-104-0125 (3GPP TS 36.331 § 6.3.2); Trial Tr. 1155:6-1156:8.) The LTE standard further very clearly identifies the "random access preamble format" as consisting of a cyclic prefix followed by a sequence of complex numbers. (DTX-4109-0033 (§ 5.7.1, Fig. 5.7.1-1); Trial Tr. 1041:1-1043:2.) In addition, the LTE standard expressly states that "[t]he random access preambles are generated from Zadoff-Chu sequences . . . ," which confirms that a preamble consists of a long sequence of complex numbers. (DTX-4109-039 § 5.7.2.)

In addition to all of this evidence, Evolved's own expert, Dr. Cooklev, admitted much at trial, including that: (1) the source base station sends a preamble index to an LTE-enabled device and that this preamble index is a single integer between 1 and 64 (Trial Tr. 680:20-681:7; 693:15-18, 694:9-14; 711:25-712:4 (discussing JTX-224 at line 2158)); (2) the single-integer preamble index is not sent to the target base station (Trial Tr. 681:8-13); (3) the preamble index is used by the mobile phone, together with other parameters, to create a preamble on the mobile phone that consists of the cyclic prefix and the 839 complex numbers (*id.* at 713:20-714:3, 706:14-17); and (4) LTE standard section 5.7.1 is a "rule" that must be followed and that Figure 5.7.1-1 in that section identifies the preamble format, which includes the 839 complex numbers (*id.* at 696:24-697:3, 697:11-14, 705:25-706:11). Each of these admissions is consistent with the Dr. Bims' and Dr. Almalfouh's testimony, and provides further support for the jury's verdict.[2]

---

[2] Although Dr. Cooklev gave other testimony that Evolved cites in its motion, he was not a credible witness, as evidenced in part by the fact that Evolved's counsel apparently felt compelled to attempt to explain away Dr. Cooklev's demeanor during his closing argument. (Trial Tr. 1875:6-10.) The jury certainly was entitled to conclude that his opinions lacked credibility and to instead accept the opinions of Dr. Bims. *Lightning Lube*, 4 F.3d at 1166.

Finally, the conformance tests upon which Evolved relies offer further support for the jury's verdict. Specifically, these tests confirm that the accused products receive a preamble index consisting of a single integer from the source base station, not a preamble, and that it is the products themselves that generate a preamble consisting of a long sequence of complex numbers. (JTX-125 at 439-440; Trial Tr. 1175:12-1176:24.)

All of the foregoing evidence that Apple presented provides clear and substantial support for the jury's verdict of no infringement of the '373 patent. At the very least, there is no credible argument that Apple did not provide a "minimum quantum of evidence" from which a jury could have reasonably reached its verdict, or that the verdict "was against the weight of the evidence." The jury's verdict must therefore stand.

        **b.**       **Evolved's arguments regarding the "dedicated preamble" limitation do not provide a basis to overturn the jury's verdict.**

Evolved's motion recognizes that both Apple and Evolved presented evidence to the jury on the factual issue of whether the preamble index that is received by the accused products constitutes the claimed "dedicated preamble." (D.I. 529 at 9-10.) The jury resolved this factual issue in Apple's favor. Evolved's motion tries to meet the high legal standard required to overturn a jury's verdict by asserting that "[t]he jury did not have a legally sufficient evidentiary basis to find non-infringement," and that only Evolved submitted "real evidence" to the jury. (*Id.* at 9.) As shown above, however, Apple submitted overwhelming evidence of non-infringement—including Qualcomm source code, the testimony of Dr. Bims and Dr. Almalfouh, LTE standards documents and admissions by Dr. Cooklev—that far exceeds the required "minimum quantum of evidence" from which a jury could have reasonably reached its verdict. (*See* § II.B.1.a, *supra*.)

Evolved's motion cites some evidence—certain trial testimony and certain references in the LTE standards documents—that it contends support its view that the preamble index that the accused products receive does in fact constitute the claimed "dedicated preamble." (D.I. 529 at 10-12.) It was the jury's role to consider and weigh this evidence, together with the evidence Apple offered, make credibility determinations about the witnesses, and determine the factual issue of whether the preamble index that accused products receive is the claimed "dedicated preamble." That factual determination cannot now be second-guessed in light of the substantial evidence supporting the verdict. *See Lightning Lube*, 4 F.3d at 1166; *Williamson*, 926 F.2d at 1352; *Fineman*, 980 F.2d at 211.

Evolved's motion demonstrates that it is impermissibly attempting to overturn the jury's verdict by re-arguing the facts. Specifically, after citing portions of the LTE standards documents that it contends supports its position (D.I. 529 at 10-12), Evolved then points to section 5.7.1 and Figure 5.7.1-1 in the LTE standards documents, along with some of Dr. Almalfouh's associated testimony, and acknowledges that they "describe" a preamble as consisting of the long string of complex numbers. (D.I. 529 at 12 (citing DTX-4109 and partially citing Dr. Almalfouh's related testimony at Trial Tr. 1041:5-1043:2).) Evolved then essentially argues that the evidence in the LTE standard that favors Apple's position should not be given more weight than the evidence it cites. (D.I. 529 at 12-13.) But that was a decision that was reserved for the jury to make as the decider-of-fact.

Moreover, Evolved's argument ignores that Dr. Almalfouh was not the only witness who gave testimony regarding the LTE standards documents that supported Apple's position, as Dr. Cooklev admitted on cross-examination that LTE standard section 5.7.1 is a "rule" that must be followed, and that Figure 5.7.1-1 in that section identifies the preamble format, which includes

11

the 839 complex numbers. (Trial Tr. 696:24-697:3, 697:11-14, 705:25-706:11.) Dr. Cooklev also admitted that the preamble index does not, and cannot, permit the device to perform the random access procedure, and agreed that it is "impossible" for the phone to connect to the target base station using only the preamble index. (Trial Tr. 683:21-684:5, 700:1-3.) Evolved's motion also simply ignores other portions of the LTE standards documents that provide additional detail regarding the required format and structure of the preamble, including the mathematical formulas used to calculate the preamble, which show that a preamble consists of a long string of complex numbers. (*See* DTX-4109-039 § 5.7.2.)

Furthermore, Evolved is incorrect in characterizing section 5.7.1 (including Figure 5.7.1-1) as just one example of a preamble. Section 5.7.1 is, in fact, *the definition* of a preamble in a random access procedure. (DTX-4109-0033 § 5.7.1, Fig. 5.7.1-1.) In this regard, the evidence presented at trial conclusively showed that the preamble defined in section 5.7.1 that includes a complex number sequence—and only the preamble defined in section 5.7.1—permits a mobile device to perform a random access procedure. (*See* DTX-4109-0033; Trial Tr. 683:21-684:5; 697:11-14; 700:1-3; 705:25-706:7; 776:17-21; 778:7-11; 1034:21-1035:2; 1044:9-19; 1045:11-1046:1; 1141:13-16; 1143:24-1144:8; 1145:1-8; 1154:16-20.) In other words, it is *the* one and only preamble format defined in the LTE standard for use in a random access procedure.

Evolved also is incorrect in relying on the other passages of the LTE standards documents. First, Evolved points to where the LTE standard refers to the preamble index as the "explicitly signaled random access preamble." (*See, e.g.,* Trial Tr. 616:6-24 (discussing JTX-104-0125: 3GPP TS 36.331 § 6.3.2); 616:25-617:13 (discussing JTX-103-0013: 3GPP TS 36.321 § 5.1.2).) But, as Dr. Bims explained at trial, the reference to "explicitly signaled" means that the mobile device must *generate* a preamble, not that the preamble index is a preamble.

(Trial Tr. 1156:23-1157:20 (discussing JTX-104-0125: 3GPP TS 36.331 § 6.3.2).)  Second,

Evolved points to instances in which the LTE standard—a multi-thousand-page set of

documents—purportedly refers to a preamble index as a preamble.  While the intent of these

particular passages is unclear, they certainly cannot negate the standard's clear definition of the

structure of a preamble in 3GPP TS 36.211 section 5.7.1 and Figure 5.7.1-1.[3]  (DTX-4109-0033.)

Moreover, even if the passages Evolved cites were at odds with section 5.7.1 and Figure 5.7.1-1,

that would at most amount to competing evidence that the jury was free to weigh along with all

of the other evidence.  *See Lightning Lube,* 4 F.3d at 1166.  In deciding Evolved's motion, the

Court must give Apple, "as [the] verdict winner, the benefit of all logical inferences that could be

drawn from the evidence presented, resolve all conflicts in the evidence in [Apple's] favor and,

in general, view the record in the light most favorable" to Apple.  *Williamson,* 926 F.2d at 1348.

The jury's verdict must therefore stand.

Evolved's final argument on this issue is premised upon a position that it first conjured

during Dr. Cooklev's rebuttal testimony at the end of trial, namely that section 5.7.1 of the LTE

standard describes the "physical layer random access preamble" and this is just one form of

preamble.  (D.I. 529 at 14. (citing Trial Tr. 1711:24-1712:15).)  This testimony, however, does

not challenge that it is this so-called physical layer random access preamble that actually is used

in the accused products to perform the random access procedure between the mobile device and

the target base station.  Nor is there anything in this testimony that supports a conclusion that

anything else is the claimed dedicated preamble.  Moreover, the jury was free to weigh this

wholly conclusory testimony, along with credibility of the witness who gave it, in deciding the

---

[3] Evolved asserts that "Samsung, LG, ZTE, Nokia, and Ericsson, all understood the term 'preamble' to include a preamble index . . ." (D.I. 529 at 12.)  No evidence, however, was presented at trial regarding the understanding of any of these companies, and Evolved cites none.

factual issue of whether the preamble index received by the accused products is the claimed

"dedicated preamble." *See Lightning Lube*, 4 F.3d at 1166; *Williamson*, 926 F.2d at 1348.

> **2.      Substantial evidence establishes that the accused products do not perform a random access procedure with the target base station using the received access information, such that the access information is configured to permit the terminal to access the target base station.**

The evidence at trial also amply supports the jury's non-infringement verdict on the

additional, independent ground that the accused products do not, as claim 24 expressly requires,

"perform a random access procedure with the target base station using the received access

information, such that the access information is configured to permit the terminal to access the

target base station." (JTX-001 at claim 24.)  Uncontroverted evidence establishes that the

accused products do not *use* the received access information to perform a random access

procedure with the target base station.  Nor is the received access information *configured to*

*permit* the terminal to access the target base station.

As established above and as is discussed below, the preamble that the accused products

use to perform a random access procedure with the target base station consists of the long string

of 839 complex numbers that is generated on the accused product.  That one and only preamble

cannot possibly meet this claim limitation because it is not "received access information" as the

claim expressly requires (*i.e.*, it is not received by the mobile device from the source base station,

but rather is generated on the mobile device itself).  (*See, e.g.*, Trial Tr. 705:25-706:7; 706:18-

707:6; 778:7-11; 1044:20-25; 1156:14-22; 1169:1-3.)

Because the actual preamble is not "received access information," Evolved resorts to

identifying the preamble index (specifically, the ra-PreambleIndex) as the received access

information.  (D.I. 529 at 15-16.)  In doing so, Evolved focuses on the last half of this claim

limitation that recites that the access information must be "configured to permit" the mobile

14

device to access the target base station, and then points to the fact that the mobile device generates the preamble based upon the preamble index and the other parameters that are received by the mobile device. (*Id.*) This argument is fatally flawed—and the jury was entitled to reject it in weighing the evidence—for at least two fundamental reasons.

First, entirely absent from Evolved's argument is any showing that the alleged received access information it identifies (the preamble index) is <u>used</u> to perform a random access procedure with the target base station as this claim limitation expressly requires. In this regard, the plain language of claim 24 makes clear that the random access procedure occurs between the claimed mobile terminal and the claimed target base station. (JTX-001 at claim 24.) Dr. Cooklev agreed with this at trial. (*See, e.g.*, Trial Tr. 687:21-23 ("The mobile device is required to perform a random access procedure with the target base station using the received access information."); 769:5-10 ("Q. And the random access procedure is something that's occurring between the phone and the target base station? A. Random access procedure is occurring. Q. Those are the two, the phone and the target base station? A. That's correct.").)

The fact that the random access procedure is a process that occurs between the mobile device and the target base station is fatal to Evolved's argument because undisputed evidence at trial established that the preamble index is not <u>used</u> in the random access procedure process between the accused products and the target base station, as the claim expressly requires. Dr. Bims, Dr. Almalfouh, and Dr. Cooklev all gave consistent testimony that the preamble index that the accused products receive from the source base station is used only as an input into a complex mathematical algorithm that generates the preamble on the mobile device that is then used to perform the random access procedure with the target base station. (Trial Tr. 681:8-13; 705:25-706:7; 713:20-714:3; 716:7-17; 778:7-11; 1033:8-1036:2; 1036:8-13; 1044:9-19; 1141:13-16;

1143:2-23; 1150:17-1153:4; 1154:1-20; 1156:9-13.)  Indeed, the preamble index cannot be used

by the mobile device to initiate a random access procedure with the target base station.  (Trial Tr.

683:21-684:5; 699:15-20; 700:1-3; 1034:21-1035:2; 1041:22-1042:14; 1044:9-1046:1; 1143:24-

1144:8; 1145:1-8; 1152:4-1153:4; 1168:20-22.)  Rather, as Dr. Bims, Dr. Almalfouh, and Dr.

Cooklev all testified, only the actual preamble consisting of the string of 839 complex numbers

can initiate a random access connection with the target base station.  (Trial Tr. 683:21-684:5;

699:15-20; 700:1-3; 1034:21-1035:2; 1044:9-19; 1151:4-1153:4; 1170:7-19.)

    The Qualcomm source code is entirely consistent with the trial testimony. ▮



    The LTE standard also provides substantial evidence that it is the preamble generated on

the mobile device, consisting of the sequence of complex numbers, that is in fact used to perform

a random access procedure.  Specifically, as set forth in 3GPP TS 36.211 § 5.7.1, and as Dr.

Almalfouh and Dr. Cooklev confirmed, the LTE standard describes the format of the preamble

that the mobile device uses to perform a random access procedure, namely the format shown in

Figure 5.7.1-1 consisting of a cyclic prefix and a string of 839 complex numbers.  (DTX-4109-

033; Trial Tr. 697:11-699:20; 774:18-775:3; 776:17-21; 1041:1-23; 1042:2-1043:2.)  Indeed, Dr.

Cooklev confirmed that § 5.7.1 is a "rule" that must be followed.  (Trial Tr. 695:10-697:3.)

This trial testimony and source code evidence—which the jury was permitted to credit in full—provide an independent basis for the jury's non-infringement verdict.

Second, the evidence presented at trial further established that the received access information (identified by Evolved as the preamble index) is not "configured to permit" the terminal to access the target base station, as the claim expressly requires.  Rather, as established above, only the preamble generated on the mobile device that includes the complex number sequence is "configured to permit" a terminal to access a target base station.  (*See, e.g.*, DTX-4109-033; Trial Tr. 697:11-699:20; 700:1-3; 774:18-775:3; 776:17-21; 1034:21-1035:2; 1041:1-23; 1042:2-1043:2; 1044:9-19; 1151:4-1153:4; 1170:7-19.)  This is another basis supporting the jury's non-infringement verdict, and the jury was free to fully credit the evidence supporting this conclusion.

Evolved, unable to overcome the overwhelming evidence establishing that the accused products do not practice this claim limitation, repeatedly miscasts the core of Apple's non-infringement argument.  Specifically, setting up a strawman argument that Evolved then attempts to knock down, Evolved incorrectly argues that Apple's position is premised upon an assertion that Apple does not make, namely that claim 24 requires that the mobile device "send" or "transmit" the dedicated preamble received from the source base station to the target base station.  (D.I. 529 at 1, 14-15.)  As shown above, this is not Apple's argument.  Rather, as the claim dictates, what must occur is that the received access information be used during the received access procedure between the mobile device and the target base station, such that the random access information is configured to permit the mobile device to access the target base station.  (JTX-001 at claim 24.)  Apple's counsel made precisely this point to the jury during Apple's closing argument, referring repeatedly to both the actual claim language and the Court's

claim construction of that language.  (Trial Tr. 1917:12-1919:2; 1920:2-1921:7; 1922:9-18; 1924:4-23; 1931:17-1932:1; 1941:10-21.)  None of the statements of Apple's counsel that Evolved cites in its motion (D.I. 529 at 15) is inconsistent with Apple's argument, nor do they detract from the more fundamental point that substantial evidence was presented at trial regarding this non-infringement defense that supports the jury's non-infringement verdict.

Evolved also cites a "target cell identity" parameter within "mobilitycontrolInfo," and argues that the parameter meets this claim limitation.  (D.I. 529 at 16-17.)   But that parameter is not, as the claim requires, "configured to permit the terminal to access the target base station." (JTX-001 at claim 24.)  Indeed, Evolved offers no explanation, much less evidence, of how this parameter is "configured" or how it is used "to permit the terminal to access" the target base station.  This is because, as established above, it is the preamble consisting of the 839 complex numbers that is configured to permit access to the target base station.  The only evidence that Evolved's motion cites on this issue are three very short answers that Dr. Cooklev gave at trial concerning a "target cell identity" parameter.  (Trial Tr. 609:16-610:4.)  These answers are at best conclusory, and certainly do not explain how the "target cell identity" parameter is configured at all, much less how it is configured "to permit the terminal to access" the target base station.  The jury, as the trier of fact, was free to weigh this conclusory and incomplete testimony, as well as the credibility of the witness who gave it, in favor of Apple's showing that it is only the preamble consisting of the 839 complex numbers that is used to perform the random access procedure with the target base station, and that it is the preamble that is configured to permit the terminal to access the target base station.  *See Lightning Lube*, 4 F.3d at 1166; *Williamson*, 926 F.2d at 1348.  The jury's non-infringement verdict must therefore stand.

3.     **Substantial evidence establishes that the dedicated preamble is not determined by the target base station.**

As discussed above, a third limitation of claim 24 that is not practiced by the accused products recites "wherein the dedicated preamble is determined by the target base station." (JTX-001 at claim 24.) The same substantial evidence cited above with respect to the "dedicated preamble" supports this conclusion. (*See* § II.B.1, *supra*) In short, this evidence establishes that the preamble that the accused products use—the cyclic prefix and the series of 839 complex numbers—is generated on the accused products themselves, not by the target base station. (*See, e.g.*, Trial Tr. 705:25-706:7; 716:7-17; 778:7-11; 1034:21-1035:2; 1035:6-1036:2; 1036:8-13; 1044:9-19; 1141:13-16; 1143:2-23; 1150:17-1151:12; 1154:16-20; 1156:9-13.) Thus, substantial evidence would support the jury's conclusion—as an independent ground of non-infringement—that the claimed dedicated preamble is "determined" by the mobile device and not by the target base station as the claim requires. *Finjan, Inc.*, 2013 WL 5302560, at *24. The Court should therefore decline to overturn the jury's non-infringement verdict.

C.     **Substantial Evidence Supports The Jury's Verdict Of No Infringement Of The '236 Patent**

Evolved failed at trial to establish literal infringement of each limitation of claim 7 of the '236 patent, and Evolved's motion fails to show that the record is deficient of the "minimum quantum of evidence" upon which the jury could have reasonably based its non-infringement verdict. *Finjan, Inc.*, 2013 WL 5302560 at *24. Indeed, as with the '373 patent, Apple presented overwhelming evidence at trial supporting the jury's verdict of non-infringement of the '236 patent. (Trial Tr. 1046:10-1059:25; 1119:18-1120:9; 1213:19-1219:14; 1261:15-1292:23; 1295:22-1296:12; 718:16-724:18 741:14-751:19; 781:6-784:24.) The Court should therefore deny Evolved's motion.

Apple does not infringe claim 7 of the '236 patent, the only asserted claim of that patent, for two reasons.  The '236 patent requires: (a) a Hybrid Automatic Repeat Request ("HARQ") entity adapted to determine whether there is data stored in the message 3 buffer when the reception module receives the uplink grant signal; (b) acquiring the data stored in the message 3 buffer if there is data stored in the message 3 buffer when the reception module receives the uplink grant signal on the random access response message; and (c) transmitting the data stored in the message 3 buffer to the base station only when using the uplink grant received on the random access response message.  (JTX-003 at claim 7.)  Substantial evidence supports the conclusion that the accused products do not perform the claimed step of "determin[ing] whether there is data stored in the message 3 buffer when the reception module receives the uplink grant signal" (*id.*), and thus do not infringe claim 7.  Substantial evidence also supports the conclusion that the accused products transmit message 3 data on more than one type of uplink grant, such that data stored in the message 3 buffer is not sent to the base station *only* when using the uplink grant received on the random access response message, and thus the accused products do not infringe for that second reason as well.

> **1.    Substantial evidence establishes that the accused products do not determine whether there is data stored in a msg3 buffer when the reception module receives the UL grant signal.**

Apple presented Qualcomm source code evidence, extensive testimony from Dr. Bims and Dr. Almalfouh, and documentary evidence establishing that the Qualcomm baseband processors used in the accused products never perform the claimed step of "determin[ing] whether there is data stored in the message 3 buffer when the reception module receives the uplink grant signal," as claim 7 of the '236 patent requires.

The '236 patent pertains to the random access procedure.  Dr. Bims and Dr. Almalfouh testified that the first step of the random access procedure is transmission of a preamble (also

called message 1) from the mobile device to the base station. (Trial Tr. 1048:1-15; 1213:19-1214:14.) The next step is for the base station to send back a random access response message containing an uplink grant. (Trial Tr. 1048:16-1049:10; 1214:15-25.) The third step is transmission of the message 3 data. (Trial Tr. 1049:11-25; 1215:1-1217:1.) Dr. Bims and Dr. Almalfouh testified that the '236 patent is focused on the transmission of message 3 (or "msg3") data that is sent as part of the random access procedure, from the mobile device to the base station. (Trial Tr. 1046:24-1047:5; 1215:1-1217:1.)

Dr. Bims explained that the '236 patent provides that when message 3 data exists in the message 3 buffer, and the uplink grant is received on the random access response message, then the message 3 data is transmitted to the base station. (Trial Tr. 1216:13-19.) Otherwise, if there is no message 3 data in the message 3 buffer, or if the uplink grant is received on a message other than the random access response message, the '236 patent requires that "new data" is transmitted—not the message 3 data. (Trial Tr. 1216:20-24.)

Dr. Bims and Dr. Almalfouh both testified regarding the operation of the Qualcomm source code in the Qualcomm baseband processors used in the accused products. ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████████

██████████████████████████████████████

███████████████████

Based on the Qualcomm source code, Dr. Bims and Dr. Almalfouh both confirmed that the Qualcomm baseband processor could not perform the step of "determin[ing] whether there is data stored in the message 3 buffer when the reception module receives the uplink grant signal." (Trial Tr. 1056:2-8; 1261:15-1263:1; 1269:10-20.) ████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████ Both of these conclusions, supported by substantial evidence, fully support the jury's verdict of non-infringement of the '236 patent.

In addition, Dr. Cooklev admitted many of the same facts to which Dr. Bims and Dr. Almalfouh testified. ████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

In contrast to the overwhelming evidence presented at trial that supports the jury's non-infringement verdict, Evolved points to only one portion of Qualcomm source code that it alleges proves that the accused products perform the "determining" step of claim 7:





In addition, Evolved's reliance on ▮▮▮▮▮▮ is at odds with its repeated assertion that the claims of the '236 patent are directed only to initial transmissions, and *not* retransmissions. (*See, e.g.,* D.I. 529 at 21 ("Apple presented a second noninfringement argument for the '236 Patent, conflating the separate scenarios of initial transmission and retransmission."), 22 ("Apple's assertion regarding the scope of claim 7 is wrong…"); Trial Tr. 1341:5-1342:12 ("…adaptive retransmission is not part of this figure that Dr. Cooklev talked about where the '236 invention is being described; right?").) Yet, despite vehemently arguing that claim 7 only applies to initial transmission scenarios, and not retransmission scenarios, Evolved bases its entire infringement argument for the "determining" step on *retransmission* source code where ▮▮▮▮▮▮▮. (*See, e.g.,* D.I. 529 at 20-21.) Specifically, Evolved has not identified any Qualcomm source code that allegedly performs the "determining" step during an initial transmission. (*See* D.I. 529 at 20-21.) Thus, if Evolved were correct (which it is not)

that claim 7 only applies to initial transmissions, Evolved cites no evidence that the accused products perform the "determining" step of claim 7.

In any event, regardless of the lack of factual merit to Evolved's arguments with respect to the determining limitation and the ███████ source code, there is no basis to grant Evolved judgment as a matter of law or a new trial. At most, Evolved has cited competing evidence concerning this claim limitation. But the presence of competing evidence falls woefully short of meeting the high standard required for the relief that Evolved seeks. *See Lightning Lube*, 4 F.3d at 1166; *Williamson*, 926 F.2d at 1352; *Fineman*, 980 F.2d at 211.

### 2. Substantial evidence establishes that the accused products do not transmit msg3 data only when the uplink grant is received on the random access response message.

Apple also presented Qualcomm source code evidence, testimony from Dr. Bims and Dr. Almalfouh, and documentary evidence to establish that the Qualcomm baseband processors used in the accused products transmit message 3 data on more than one type of uplink grant, and not just on uplink grants received on the random access response message, as claim 7 of the '236 patent requires. Thus, substantial evidence supports this independent ground on which the jury could have reached its non-infringement verdict.

Dr. Bims and Dr. Almalfouh testified regarding situations in which the message 3 data is transmitted on uplink grants other than those received on the random access response message. (Trial Tr. 1056:23-1057:13; 1287:9-1289:4.) Specifically, in certain scenarios, the message 3 data is transmitted on an uplink grant received on the Physical Downlink Control Channel ("PDDCH") instead of using the uplink grant received on the random access response message. (Trial Tr. 1057:14-1058:9; 1290:10-15.) ███████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████ Dr. Bims also testified that the

LTE standard is consistent with the operation of the Qualcomm source code in this regard, as the

LTE standard also permits transmission of the message 3 data during adaptive retransmissions in

which an uplink grant is not received on the random access response message, as set forth in

3GPP TS 36.321 § 5.4.2.2.  (JTX-103-0022 to 23; Trial Tr. 1301:14-1302:16.)

Evolved's primary argument is that Apple "conflat[ed] the separate scenarios of initial

transmission and retransmission," that "Apple's assertion regarding the scope of claim 7 is

wrong," and that claim 7 is only directed to initial transmission scenarios.  (D.I. 529 at 21-22;

Trial Tr. 1341:5-1342:12.)  As Dr. Bims correctly testified, nothing in the language of the claim

limits the scope of claim 7 to only initial transmissions.  (Trial Tr. 1291:5-19.)  The Court did not

construe the term "transmission" during claim construction.  (D.I. 110.)  In an effort to explain

away the evidence Apple presented regarding transmissions of message 3 data during adaptive

retransmission scenarios described above, Evolved belatedly and improperly attempts to

narrowly construe the term "transmission" to exclude "retransmission," which is simply one type

of transmission.  The Court should reject Evolved's belated and narrow construction of

"transmission."

Moreover, as discussed in section II.C.1 above, Evolved relies on a retransmission to

support its assertion that the accused products meet the "determining" claim limitation.  Evolved

cannot have it both ways: it cannot be permitted to arbitrarily decide that retransmission evidence

supports its infringement case for one limitation (D.I. 529 at 20-21), but that retransmission

evidence cannot be used to show non-infringement for another limitation (D.I. 529 at 21-22).

Evolved also argues that "Apple did not present any evidence or testimony showing that

stored Msg3 buffer data is sent during a retransmission."  (D.I. 529 at 22.)  This is plainly

incorrect. 

█████████████████ Evolved did not present any evidence to the contrary.

The Qualcomm source code, together with Dr. Bims' and Dr. Almalfouh's testimony, amply supports the jury's non-infringement verdict on the independent ground that the accused products do not infringe claim 7 of the '236 patent because they transmit message 3 data on uplink grants received on messages other than the random access response message. Evolved's motion should therefore be denied. *See Lightning Lube*, 4 F.3d at 1166; *Williamson*, 926 F.2d at 1352; *Fineman*, 980 F.2d at 211.

## III.   THE COURT'S EVIDENTIARY RULINGS WERE CORRECT AND DO NOT WARRANT A NEW TRIAL

Evolved's arguments that it is entitled to a new trial based on the allegedly improper admission and exclusion of evidence seek to undo this Court's proper exercises of its discretion in making evidentiary rulings. Evolved's arguments are also subject to the harmless error standard of Federal Rule of Civil Procedure 61. Rule 61 states:

> Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

The policy embodied in Rule 61 is that courts should "ignore errors that do not affect the essential fairness of the trial" and "should exercise judgment in preference to the automatic reversal for 'error.'" *McDonough Power Equipment*, 464 U.S. at 553 (citations omitted). As the Supreme Court recognized: "Trials are costly, not only for the parties, but also for the jurors performing their civic duty and for society which pays the judges and support personnel who

manage the trials.  It seems doubtful that our judicial system would have the resources to provide litigants with perfect trials, were they possible, and still keep abreast of its constantly increasing case load."  *Id.*  Accordingly, the Third Circuit has stated that a court "need not disprove every reasonable possibility of prejudice" to find that an error was harmless.  *General Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 329 (3d Cir. 2001) (citations omitted).

Evolved fails to show any error in the Court's evidentiary rulings at trial.  And even if there were any error (there was not), a new trial still would not be warranted because Evolved has not met its burden of showing prejudice.

A.   **The Court's Exclusion Of Evidence Regarding Apple's FRAND Counterclaim Under Federal Rule Of Evidence 403 Was Correct And Also Does Not Warrant a New Trial**

The Court correctly sustained Apple's objection to the admission of Apple's Answer and Counterclaims (JTX-074) as unfairly prejudicial under Fed. R. Evid. 403.  Moreover, even if there had been error, it was harmless.

1.   **Evolved's arguments regarding whether the FRAND counterclaim should have been admitted are incorrect and its admission would have confused the jury and unfairly prejudiced Apple.**

Evolved sought to introduce Apple's Answer and Counterclaims to show that the allegations in Apple's Eleventh Cause of Action for Breach of Contract (the "FRAND Counterclaim") are inconsistent with Apple's position that the patents-in-suit are not essential to the LTE standard.  (D.I. 529 at 23-24.)  Apple's allegations in the FRAND Counterclaim, however, are not inconsistent with its position at trial that the patents-in-suit were <u>declared</u> by LG to be essential, but never were established to actually be essential.  In this regard, the FRAND Counterclaim alleges that LG (Evolved's predecessor-in-interest) "commit[ed] to license its <u>*declared-essential*</u> patents on FRAND terms to all parties supporting the LTE standard," and that Evolved breached this contractual commitment when Evolved asserted its

claim that the patents-in-suit were essential.  (JTX-074-31 (emphasis added); *see also* Trial Tr. 224:21-24.)  Nowhere in the pleading does Apple assert that the patents-in-suit are in fact essential.  Thus, the pleading itself does not support Evolved's contention that Apple advanced an inconsistent theory at trial.

Evolved relies primarily on two cases—*Donald. M. Durkin Constr., Inc. c. City of Newark*, 04-CV-00163-GMS, 2006 U.S. Dist. LEXIS 68221 (D. Del. Sept. 22, 2006) and *Apple Inc. v. Samsung Elecs. Co.*, 67 F. Supp. 3d 1100 (N.D. Cal. 2014)—to support its argument that Apple's Answer and Counterclaims should have been admitted.  (D.I. 529 at 25-26.)  Neither case, however, has any bearing on this issue.  In *Donald D. Durkin Constr.*, the issue that the court considered was whether the defendant could for the first time at trial present a defense that it had never previously raised and that contradicted admissions that it had made in numerous pleadings throughout the course of the case.  2006 U.S. Dist. LEXIS 68221, at *18-22.  Here, Evolved does not claim, nor could it, that Apple's presented for the first time at trial its position that the patents-in-suit are not essential to the LTE standard.  Apple has consistently taken that position from the very beginning of the case.  (*See, e.g.*, JTX-074-003 (¶ 15); JTX-074-0012 (¶ 92); JTX-074-0013 (¶ 103).)  Moreover, as discussed in the preceding paragraph, Apple's allegations in the FRAND Counterclaim are not inconsistent with this position.  (JTX-074-31; *see also* Trial Tr. 224:21-24.)  *Apple Inc. v. Samsung Elecs. Co.* is even less irrelevant.  The issue there was whether Apple could argue at trial, for purposes of damages, that it practiced three claims that it was not asserting against Samsung without Samsung being able to challenge the validity of those claims.  67 F. Supp. 3d at 1127-28.  That has nothing whatsoever to do with the issue before this Court—whether Apple's Answer and Counterclaims (JTX-074) was properly excluded under Fed. R. Evid. 403.

Beyond the fact that the FRAND Counterclaim is not in fact inconsistent with Apple's position at trial that the patents-in-suit are not essential to the LTE standard, it was proper to exclude Apple's Answer and Counterclaims (JTX-074) because there was no witness at trial who could have testified about any such purported inconsistency.  Evolved's motion itself reveals that the FRAND Counterclaim must be interpreted in the context of ETSI's IPR Policy (JTX-134) and LG's IPR Information Statement and Licensing Declaration (JTX-015)—both of which Evolved cites and discusses in its motion in attempting to explain why the FRAND Counterclaim allegedly is probative—for Evolved to attempt to argue at trial that Apple's allegations in the FRAND Counterclaim somehow amounted to an assertion that the patents-in-suit are in fact standard-essential.  (D.I. 529 at 24.)  But Evolved's proffered witness for the FRAND Counterclaim—Abha Divine—was not competent to explain the legal significance of these documents to Apple's Counterclaim.  (*See* Trial Tr. 224:25-225:8.)  Indeed, the parties retained experts specifically to interpret ETSI policies and opine on the scope and implications of the FRAND contractual commitment.  (D.I. 468 at 12-14.)  Those witnesses, however, did not (and were not scheduled) to testify at this jury trial, as they instead were designated to testify at the later bench trial.  Therefore, because it would have been improper to allow Ms. Divine—a lay witness—to present what would have been expert testimony on the FRAND Counterclaim, it was proper to exclude Apple's Answer and Counterclaims (JTX-074).  (*See* Trial Tr. 222:21-23 (". . . [Ms. Divine] really can't comment on the details of the pleading.  And that is why I have a hard time with the pleading . . .").)

In addition, it would have been confusing and unduly prejudicial to permit Evolved to introduce the FRAND Counterclaim into evidence when the Court had bifurcated the Counterclaim and several of Apple's affirmative defenses into a separate bench trial following

the jury trial. (D.I. 468 at 16-17.) In this regard, in sustaining Apple's objection, the Court

recognized that if it allowed Evolved to use the FRAND Counterclaim, "then it opens the door

for [Apple] to talk about the breach of FRAND claim to rehabilitate their credibility." (Trial Tr.

220:15-20.) Apple would have been forced to call its experts on the FRAND counterclaim to

explain Evolved's positions, ETSI's IPR Policy, and LG's IPR Information Statement and

Licensing Declaration. Admitting Apple's Answer and Counterclaim also would have drawn

into the trial a host of other claims and defenses in Apple's Answer and Counterclaim that were

not supposed to be part of the jury trial, including Apple's ten other counterclaims—six of which

involved patents that Evolved previously dropped from the case. (*See* JTX-074 at 26-30.) The

parties also would have had to spend significant trial time to put the FRAND counterclaim into

context—all for claims and defenses that the jury was not being asked to decide. Thus, it would

have been highly prejudicial, wasteful, and confusing to the jury to allow Apple's Answer and

Counterclaims (JTX-074) into evidence. The Court thus correctly excluded its admission.

> **2.      Any error in excluding Apple's Answer and Counterclaim was harmless because it is not directly relevant to infringement, and Evolved has offered nothing but a conclusory assertion to the contrary.**

Not only was the Court's ruling correct, but the alleged error was harmless in any event.

Error may not be predicated on a ruling which excludes evidence unless a substantial right of the

party is affected. *See Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 627

(Fed. Cir. 1985). Here, Evolved fails to meet this standard because the FRAND Counterclaim is

not relevant to infringement, which was the issue the jury decided. Specifically, the FRAND

Counterclaim does not in any way provide any evidence that any claim limitation of the either of

the patents-in-suit is or is not practiced by the accused products. Moreover, in its Offer of Proof

(D.I. 508), Evolved also argued that the FRAND Counterclaim "is highly relevant and probative

to a reasonable royalty in this case." The jury, however, did not need to reach the reasonable royalty issue given its non-infringement finding. (*See* D.I. 508 at 5-6.) And while Evolved further argues that the FRAND Counterclaim is probative to undermine Apple's credibility, as discussed above, there was nothing inconsistent about Apple's position at trial and its FRAND Counterclaim. Thus, none of these arguments has a direct bearing on the jury's verdict of non-infringement that Evolved now seeks to overturn. In this regard, courts have recognized that even where evidence has "some tangential relevance" (which is not even the case here), but its admission would be unduly prejudicial, its exclusion under Rule 403 is not grounds for a new trial. *See Roche Diagnostics Operations, Inc. v. Abbott Diabetes Care*, 756 F. Supp. 2d 598, 605 (D. Del. 2010). The FRAND Counterclaim was thus properly excluded from evidence.

Evolved has offered only the very conclusory assertion that it was harmed. But the Supreme Court has explained that "the party seeking reversal normally must explain why the erroneous ruling caused harm." *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009). Accordingly, because the evidence at trial overwhelming established that Apple did not infringe the patents-in-suit, and because Evolved has failed to meet its burden of showing that any error in the Court's ruling was not harmless, its motion should be denied. *See, e.g., Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.,* 895 F.3d 1304, 1316-17 (Fed. Cir. 2018) (affirming denial of motion for new trial because movant did not explain why the alleged error was harmful in light of other evidence supporting verdict).

### B. Apple Did Not Argue Claim Construction To The Jury, And Thus There Is No Basis On Which To Grant A New Trial

The Court properly overruled Evolved's objections that Apple was arguing claim construction to the jury and that Dr. Bims somehow engaged in improper claim construction. As the Court correctly recognized at trial, Dr. Bims was properly testifying regarding the claim term

"preamble," a term the Court did not construe, based upon Dr. Bims' understanding of the plain

and ordinary meaning of the term.  This is no different than what any expert does in any patent

infringement case when testifying about claim language that has not been construed by the

Court.  In any such case, the expert by necessity must apply the claim language to the accused

product or prior art reference at issue based upon the expert's understanding of what the plain

and ordinary meaning of that claim term is, and that is precisely what both Dr. Bims (and Dr.

Cooklev) did here.  The Court recognized this when addressing this issue during trial.  (Trial Tr.

1221:16-1222:17, 1227:14-16.)  In any event, even if the Court's rulings were error (they were

not), any such error was not prejudicial.

> **1.    Dr. Bims did nothing more than provide opinions based on his view of the plain and ordinary meaning of "preamble" to a person of ordinary skill in the art.**

As Evolved concedes, experts are "permitted to provide their understanding of the plain

and ordinary meaning of a term used in claim language." (D.I. 529 at 28.)  That is precisely

what Dr. Bims did in providing his opinions that Apple does not infringe the '373 patent.  In

forming those opinions, Dr. Bims used the plain and ordinary meaning of the word "preamble"

to a person of ordinary skill in the art.[4]  It was Dr. Bims' opinion that the plain and ordinary

meaning of the word "preamble" in a random access procedure includes a cyclic prefix followed

by a sequence of 839 complex numbers, and does not include a preamble index.  Based on this

understanding of the plain and ordinary meaning of "preamble," Dr. Bims explained how the

handover procedure of claim 24 operates, and then explained how the handover procedure in the

accused products operates differently.  Dr. Bims then tied these differences to the specific

limitations in the claims to reach his ultimate opinion that Apple does not infringe the claims.

---

[4] There was no dispute at trial that Dr. Bims is, and was at the time of the invention of the '373 patent, a person of ordinary skill in the art with respect to the '373 patent.

There is nothing remarkable about the process Dr. Bims used to reach his conclusions—this is the same process that any expert in any patent infringement suit uses to determine whether an accused product does or does not infringe a patent claim when a claim term has not been construed by the court. Indeed, as the Court recognized, this is the same process in which Evolved's expert, Dr. Cooklev, engaged. (Trial Tr. at 1228:22-1229:4.) The only difference in the approach that two experts took to this issue is their respective opinions, with Dr. Cooklev testifying that the plain and ordinary meaning of "preamble" encompasses a preamble index whereas Dr. Bims said it did not.

Both before and throughout trial, the Court recognized that because the term "preamble" had not been construed, it was necessary for Apple's and Evolved's experts to testify to the jury as to their understanding of the plain and ordinary meaning of "preamble" to a person of ordinary skill in the art. In its motion for summary judgment of non-infringement (D.I. 223, 244, 270), and again in the [Proposed] Joint Pretrial Order (D.I. 448), Apple asked the Court to construe "preamble." Evolved repeatedly argued the Court should not construe "preamble" given that Apple had not sought construction of the term when Judge Robinson had considered claim construction years before. The Court ultimately declined to construe "preamble," stating in its order denying Apple's motion for summary judgment that "[t]here is competing expert testimony with respect to the dedicated preamble issue." (D.I. 489 at 14.) And then when Evolved objected to Dr. Bims' testimony, the Court made clear that it was proper for Dr. Bims to provide an opinion on the plain and ordinary meaning of the term "preamble" given that the Court had not construed the term. (Trial Tr. at 1221:16-1222:25; 1225:8-1227:3 ("Here is my problem, If the language in the claim requires an expert to interpret what the language is, and that expert is deciding whether there is an infringement, then doesn't that expert necessarily have to testify

what the claim requires in order to be infringed?") ("[Dr. Bims] has testified as to what his understanding of a preamble is. Okay? And he's conflated the preamble information, or the preamble index with the preamble sequence, but that's his—he's the expert, he gets to decide what he thinks is the definition and what is not the definition.").) The Court then went on to point out that Dr. Cooklev likewise had provided his understanding of the meaning of preamble in opining on infringement. (Trial Tr. at 1228:22-1229:4.)

Evolved makes the blanket assertion that Apple, through Dr. Bims' testimony, engaged in arguing claim construction to the jury. (D.I. 529 at 27-29.) To support its claim, Evolved cites various portions of Dr. Bims' testimony to which it objected at trial, but does little to explain how any of this testimony allegedly is improper claim construction, as opposed to Dr. Bims testifying on the issues of non-infringement and invalidity based upon his understanding of the plain and ordinary meaning of the claim language to one of ordinary skill in the art. (*Id.*) In this regard, Evolved's motion specifically addresses only one very short portion (two questions and two answers) of Dr. Bims' testimony. (D.I. 529 at 28-29 (citing Trial Tr. 1165:24-1166:13).) In the cited testimony, Dr. Bims provides an opinion as to the differences in the performance of a network using the handover procedure of the asserted claims of the '373 patent as opposed to how that handover procedure operates in the accused products. (Trial Tr. 1165:24-1166:13.) In providing these opinions, Dr. Bims did not engage in claim construction—he simply applied his understanding of the plain and ordinary meaning of "preamble" to a person of ordinary skill in the art. Through its italicization and bolding of certain words in the cited testimony, it appears that Evolved is concerned that Dr. Bims discussed the handover procedure as the '373 patent "describes" it. (D.I. 529 at 28-29.) But Dr. Bims providing a description of the claimed handover procedure—no different than what happens in any patent case—is not by any means

claim construction.  Indeed, Evolved does not actually explain how this constitutes claim

construction—Evolved merely asserts that it is.  (*Id.*)

Evolved also points to Dr. Bims' testimony in the same exchange that "the claim requires

that the base station generate preambles that are downloaded into the mobile device."  Evolved's

motion takes issue with Dr. Bims' use of the word "requires" in this statement.  (D.I. 529 at 29.)

But far from constituting claim construction, Dr. Bims simply was paraphrasing what the words

of claim 24 plainly state.  Claim 24 requires "a radio protocol adapted to receive access

information from a source base station," "wherein the access information includes preamble

information for the random access procedure," "wherein the preamble information is a dedicated

preamble used only for a specific terminal," and "wherein the dedicated preamble is determined

by the target base station."  (JTX-001 at claim 24.)  There was no dispute at trial that claim 24

requires that the mobile device, through a radio protocol, receive from the source base station

access information that includes a dedicated preamble.  Dr. Bims' testimony about what claim 24

requires is nothing more than that and reflects a point that was not disputed at trial.  Indeed, it is

telling that Evolved's primary focus in its motion is on testimony regarding a "requirement" of

the claim language that was not in dispute.  Dr. Bims then went on to testify, consistent with his

prior testimony about preambles that was premised upon the plain and ordinary meaning of

"preamble," that: "As we said, the dedicated preamble are these long sequences of complex

numbers."  (Trial Tr. 1157:22-1166:13.)

Other than as to this one short portion of Dr. Bims' testimony covering two questions and

two answers, Evolved provides absolutely no discussion, or explanation, as to how any of Dr.

Bims' testimony is purportedly improper claim construction.

In addition, none of the case law on which Evolved relies supports a conclusion that Dr. Bims was engaging in improper claim construction or that any of his testimony should be excluded. For instance, Evolved relies on *EMC Corp. v. Pure Storage, Inc.*, C.A. No. 13-1985–RGA, 2016 U.S. Dist. LEXIS 22970 (D. Del. Feb. 25, 2016). (D.I. 529 at 27-28.) In *EMC Corp.*, the issue was whether the defendant's experts could use the asserted patents' specifications (intrinsic evidence) and commercial embodiments (extrinsic evidence) to support their views about the plain and ordinary meaning of various claim terms that had not been construed. 2016 U.S. Dist. LEXIS 22970, at *11-15. Judge Andrews ruled that relying on this intrinsic and extrinsic evidence to support the plain and ordinary meaning of claim terms would be claim construction, and thus precluded the defendant's experts from doing so. *Id.* That ruling, however, is entirely inapposite to Dr. Bims' testimony. Dr. Bims did not use any intrinsic or extrinsic evidence to support his opinion that the plain and ordinary meaning to a person of skill in the art of a preamble in a random access procedure does not include an integer preamble index.[5] Evolved does not claim otherwise. And as Judge Andrews made clear in *EMC Corp.*, an expert is permitted to opine on the plain and ordinary meaning of terms that the court did not construe. 2016 U.S. Dist. LEXIS 22970, at *11-15.

Evolved's reliance on *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341-YGR, 2014 U.S. Dist. LEXIS 31461 (N.D. Cal. Mar. 5, 2014), is equally unavailing. Similar to *EMC Corp.*, the court in *MediaTek* precluded the defendant's expert from providing testimony about intrinsic and extrinsic evidence to explain the plain and ordinary meaning of a claim term.

---

[5] Indeed, it was Dr. Cooklev, not Dr. Bims, who used extrinsic evidence to support his view of the meaning of preamble. Throughout his testimony, Dr. Cooklev repeatedly pointed to the LTE standard to argue, albeit incorrectly, that a preamble includes an integer preamble index. (Trial Tr. 613:12-620:4.)

2014 U.S. Dist. LEXIS 31461, at *18.  As discussed in the preceding paragraph, Dr. Bims did

not use any intrinsic or extrinsic evidence to support his opinion about the plain and ordinary

meaning of preamble, and Evolved has not made any claim to the contrary.

        **2.**     **Evolved has not shown it suffered prejudice as a result of the Court's ruling on Dr. Bims' testimony.**

Other than a single conclusory statement that Dr. Bims' testimony "was extremely

prejudicial," Evolved provides no explanation whatsoever as to what prejudice it suffered as a

result of the Court overruling its objections.  (D.I. 529 at 27-30.)  As mentioned above, "the party

seeking reversal normally must explain why the erroneous ruling caused harm."  *Shinseki*, 556

U.S. at 410.  Given that Evolved has not even attempted to explain why the Court's ruling on Dr.

Bims' testimony was not harmless, its motion should be denied for this reason alone.  *See, e.g.,*

*Texas Advanced Optoelectronic Sols., Inc.,* 895 F.3d at 1316-17.

In addition, even if the Court erred in allowing the portion of Dr. Bims' testimony about

which Evolved complains (which it did not), the Court's jury instructions eliminated any

potential prejudice that Evolved suffered.  The Court's instructions to the jury set forth the terms

that the Court had construed (Trial Tr. 261:24-264:19), and clearly indicated that the jury was to

apply the ordinary meaning for any term for which the Court had not provided a definition:

> Instruction 23. While the claims define the invention, sometimes the words or phrases of the claim need to be further defined or interpreted. It is the Court's duty under the law to define what the patent claims mean and to instruct you about that meaning. You must accept the meanings, sometimes called constructions, that I give you and use the meanings of each claim when you decide whether any claim of the patent has been infringed or whether any claim is invalid. <u>For a claim term for which I have not provided you with a definition, you should apply the ordinary meaning</u>.

(Trial Tr. 261:13-23 (emphasis added).)  In light of this instruction, it is not reasonably probable

that the jury was improperly influenced to the extent that Dr. Bims' testimony involved argument

as to claim construction.

Moreover, any purported harm to Evolved was mitigated by the fact that Evolved's expert, Dr. Cooklev, provided testimony of the same type as Dr. Bims. Thus, to the extent Evolved suffered any prejudice (it did not), Apple suffered the same prejudice. Furthermore, Dr. Cooklev had a full and complete opportunity to, and indeed did, provide extensive testimony on his opinions as to the meaning of "preamble."

For these reasons, even if the Court erred in allowing Dr. Bims' testimony (it did not), a new trial is not warranted. *General Motors Corp.*, 263 F.3d at 329.

### C. The Court Correctly Excluded The BLU Agreement And Any Alleged Error Arising From Counsel's Reference To Other Defendants Who Have Not Licensed The Patents-in-Suit Was Harmless

The Court properly excluded the litigation settlement Evolved entered into the week before trial with third-party BLU Products (the "BLU Agreement"). This evidentiary ruling does not warrant a new trial.

#### 1. The BLU agreement was properly excluded from trial under Federal Rule of Evidence 403 because it was unfairly prejudicial.

Evolved produced the BLU Agreement and related documents to Apple the evening of March 20, 2019—just five calendar days before the start of trial. Then, on March 23, 2019, the Saturday before trial, Evolved served a supplemental report from its damages expert, Dr. Putnam, in which Dr. Putnam used the BLU Agreement to form entirely new opinions related to his reasonable royalty analysis. On March 25, 2019, Apple filed a Letter Brief (D.I. 505) requesting that the Court exclude the BLU Agreement (PTX-2099), including any testimony regarding the agreement, from evidence under Fed. R. Evid. 403, and that Dr. Putnam's supplemental report be excluded under Fed. R. Civ. P. 37(c)(1).

In considering Apple's request, the Court recognized that allowing new evidence and expert opinions less than a week before trial was problematic:

> That's just nonsense. We used to – I'm allowing lawyers to do all kinds of things,
> I understand the exigent circumstances, but you know you got thirty days, that's
> one thing, you got a week, maybe, but the week before trial you want to put an
> exhibit in and change your expert's testimony, I don't think so. . . .

(Trial Tr. 4:10-15.)  After hearing argument from both parties, the Court granted Apple's request

and noted that its decision was "consistent with generally the way these cases are litigated at

least in this district."  (*Id*. at 195:3-10.)

Evolved now argues that the Court's ruling constitutes "reversible error justifying a new

trial."  (D.I. 529 at 31.)  But a trial judge's decision to admit or exclude evidence under Rule 403

may not be reversed unless it is "arbitrary and irrational."  *Bhaya v. Westinghouse Elec. Corp.*,

922 F.2d 184, 187 (3d Cir. 1990).  Here, the Court's decision was not only reasoned and rational,

it was correct.  Admission of the very late-breaking BLU Agreement would have been extremely

prejudicial to Apple because Apple had no opportunity to conduct discovery related to the

agreement, in particular with respect to BLU.[6]  (*See* D.I. 505.)  Such discovery was particularly

necessary because the limited information Apple had regarding the BLU Agreement raised more

questions than answers.  For example, the sparse e-mail communications between BLU and

Evolved that Evolved produced just days before trial (even though these communications began

back in late 2018) indicate that nearly all post-lawsuit negotiations leading to the BLU

Agreement were conducted over the telephone.  It would have thus been critical that Apple

depose representatives of both BLU and Evolved to determine what motivated BLU to enter into

the agreement.  Moreover, the relevance of the BLU Agreement was highly questionable given

that it was executed to settle an infringement action that Evolved brought against BLU on eight

patents, none of which are the '373 and '236 patents at issue in this case against Apple.  (*See*

---

[6] Evolved's suggestion that Apple could take Dr. Putnam's deposition during trial misses the
mark and ignores that Apple was unable to take discovery of BLU about the BLU Agreement.

*Evolved Wireless, LLC v. BLU Products, Inc.*, Case 1:18-cv-25116-DPG (S.D. Florida), ECF No. 1.) Thus, the Court did not err in excluding the BLU Agreement under Rule 403 and did not commit a reversible error justifying a new trial.

In addition to the correctness of the Court's evidentiary ruling, the alleged error was harmless and thus does not warrant a new trial on infringement. Fed. R. Civ. P. 61. "[A]n error is harmless if it is highly probable that it did not affect the complaining party's substantial rights." *Betterbox Commc'ns Ltd. v. BB Techs, Inc.*, 300 F.3d 325, 329 (3d Cir. 2002). At no point during trial did Evolved argue that the BLU Agreement had any relevance to the issue of infringement—rather, Evolved asserted only that it was relevant to damages and, specifically, the calculation of a reasonable royalty. (*See* D.I. 506 at 1-2; D.I. 509 at 3-5; Trial Tr. 188:25-189:25). Not until its post-trial brief did Evolved argue that the BLU Agreement is relevant to infringement because it somehow bears on the question of whether the patents-in-suit are essential to the LTE standard. (*See* D.I. 529 at 31.) In reality, however, BLU's taking a license to the patents-in-suit, which Evolved did not assert against BLU in its infringement action, has no bearing on whether the accused products practice the asserted claims of the patents-in-suit. None of the technical witnesses in the case provided any testimony whatsoever about which companies had or had not taken a license to the '373 or '236 patents. Accordingly, under these circumstances, it is highly probable that exclusion of the BLU Agreement did not affect the jury's verdict on infringement, and any error in the Court's ruling was therefore harmless and cannot justify overturning the jury's verdict. Fed. R. Civ. P. 61; *see also Blancha v. Raymark Indus.*, 972 F.2d 507, 517 (3d Cir. 1992) (trial court abused discretion in granting new trial because evidentiary ruling did not impact verdict).

2.      **Apple did not open the door to the BLU agreement; its arguments and witness questioning were truthful and do not warrant a new trial.**

Evolved's contention that Apple's arguments and questions at trial should have prompted the Court to reverse its evidentiary ruling also lacks merit.  First, Apple did not misrepresent anything to the jury.  It is undisputed that Evolved approached Samsung, Microsoft, HTC, Lenovo, and ZTE at around the same time Evolved approached Apple; all were sued by Evolved at the same time Evolved sued Apple, and none has licensed the patents-in-suit.  This is what Apple's counsel said during his opening statement and what Evolved's witness, Ms. Divine, testified on cross-examination.  (Trial Tr. 320:9-19, 448:3-450:20.)  At no point did Apple's counsel mention BLU or say directly or indirectly that no one else has taken a license to the patents-in-suit.  (*See* Trial Tr. 320:9-19, 448:3-450:20.)  Indeed, the Court acknowledged that "what [Apple's counsel] has said is true for everything that he has said and that is that all of the companies that he named are defending this case."  (Trial Tr. 472:11-14.)

"In order to sustain the burden of proving fraud and misrepresentation under Rule 60(b)(3), the evidence must be clear and convincing."  *Brown v. Penn. Railroad Co.*, 282 F.2d 522, 527 (3d Cir. 1960).  Under the circumstances presented here, Evolved cannot meet this evidentiary burden.  Nor has Evolved cited any legal authority that supports its position.  The only case Evolved cites, *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 818 F.3d 1320, 1328 (Fed. Cir. 2016), bears no similarities to the facts of this case.  In *Rembrandt,* the Federal Circuit reversed a trial court's denial of a motion for relief from judgment under Rule 60(b)(3) where it was undisputed that the prevailing party's expert witness on infringement issues had given false testimony at trial regarding testing he claimed to have performed on the accused product.  *See* 818 F.3d at 1323.  The court held that the motion should have been granted even though there was no proof that the attorneys who examined the expert

knew that his testimony was untruthful.  *Id.* at 1328.  Here, by contrast, everything Apple's counsel said was true, and Evolved's own witness confirmed it.

Second, the Court properly denied Evolved's requests to reconsider its ruling excluding the BLU Agreement.  The Court carefully considered Evolved's objections and took appropriate actions to address Evolved's concerns.  The Court correctly observed that the litigation involving Apple and the other five defendants Apple referenced is not comparable to the BLU Agreement because Evolved did not assert the '373 and '236 patents against BLU.  (Trial Tr. 351:12-17.) When Evolved raised the issue a second time, the Court stated that, even though Apple's statements were accurate, they may have created a misimpression in the minds of the jury that no one has licensed the patents-in-suit.  (Trial Tr. 472:11-16.)  Even so, the Court concluded that admitting the BLU Agreement was not the appropriate way to address the potential misimpression because it would be unfairly prejudicial.  As the Court noted, because the BLU Agreement was entered into on the eve of trial, there was no opportunity to take discovery, and allowing the agreement to come into evidence under these circumstances would extend significantly the length of trial:

> But the question now is what were the terms and conditions of the settlement and what were the circumstances of the settlement, and that takes some discovery and that takes a lot of litigation – not a lot of litigation, but takes some trial time on issues that haven't been discovered.  And you did not disclose this, I mean not improperly, I'm not casting any aspersions on you because it just settled.  But it's too close to the trial and too close, way, way, past the discovery deadline.

(Trial Tr. 472:17-25; *see also id.* at 473:7-9 (". . . I'm standing firm on my decision with respect to the Blu settlement because it comes too close to the eve of trial.").)

The Court nonetheless took a number of other actions to ameliorate any potential prejudice to Evolved.  For example, the Court ordered Apple's counsel not to raise the issue again during trial, and Apple's counsel of course complied.  (Trial Tr. 471:19-22.)  In addition,

the Court gave several jury instructions that addressed Evolved's concerns.  The Court's

handling of the matter was well within its discretion.

### 3.  The Court's jury instructions cured any alleged misconception.

The Court's jury instructions eliminated any potential prejudice that Evolved allegedly

suffered.  The Court repeatedly instructed the jury—both at the initial charge and final charge—

that counsel's statements and questions are not evidence.  (Trial Tr. 235:11-14, 245:9-12,

1858:11-12, 2023:23-25.)  Moreover, the Court gave a curative instruction with the final charge

on the very issue about which Evolved now complains.  The curative instruction was

substantially the same as the curative instruction Evolved requested.  The instruction read:

> Instruction 56.  You have heard arguments and testimony that Evolved Wireless asked
> various companies to take a license to the '373 and '236 Patents and that those companies
> have not taken a license to those patents.  You should not infer from this argument that
> those companies have not taken a license to those patents.  <u>You should not infer from this
> argument or testimony that Evolved Wireless did not ask other companies to take a
> license to the '373 and the '236 Patents, or what the responses may have been.</u>  The
> defendant companies referred to by Apple which were sued by Evolved Wireless are
> defendants in other cases that were consolidated with this case in this Court.  Apple is the
> first of these cases to be tried by this case.

(Trial Tr. 2029:20-2030:6) (emphasis added.)  In light of these instructions, it is not reasonably

probable that the jury was improperly influenced or misled by counsel's statements or questions

to Ms. Divine.  *See Lucent Techs., Inc. v. Newbridge Networks Corp.*, 168 F. Supp. 2d 181, 260-

61 (D. Del. 2001) (denying new trial and holding that even if counsel's remarks were prejudicial

they were cured by the court's instruction); *C.R. Bard v. Medtronic, Inc.*, C.A. No. 96-589-SLR,

1999 WL 458305, at *12 (D. Del. June 15, 1999) (same).  Where the trial court gives repeated

instructions, as it did here, it is presumed that the jury followed the instructions.  *City of Los

Angeles v. Heller*, 475 U.S. 796, 798 (1986); *see, e.g., Thaubalt v. Chait*, 541 F.3d 512, 530-31

(3d Cir. 2008) (upholding the decision not to bifurcate the trial in part because the court's jury

instructions prevented prejudice against the defendant); *InterDigital Commc'ns, Inc. v. ZTE*

*Corp.,* C.A. No. 13-009-RGA, 2016 WL 1073229, at *5 (D. Del. Mar. 18, 2016) (denying new trial based on allegedly improper attorney argument because "jury was instructed that it was the sole judge of credibility and that arguments made by attorneys are not evidence.").

Evolved belatedly complains that the curative instruction "did not go far enough" because the Court rejected some of Evolved's proposed language (D.I. 529 at 35-36), but Evolved did not object to the instruction at the final charge conference. (*See* Trial Tr. 1827:9-1828:3.) Having failed to preserve an objection to the curative instruction before it was given to the jury, Evolved cannot argue post-trial that the instruction is erroneous and warrants a new trial. Fed. R. Civ. P. 51; *Inter Med. Supplies, Ltd. v. Ebi Med. Sys.,* 181 F.3d 446, 463 (3d Cir.1999) (affirming denial of post-trial motions, as a party who fails to object to interrogatories prior to presentment to jury waives the right to challenge). And, in any event, as explained above, the curative instruction was more than sufficient even if there otherwise was any prejudice.

In sum, the BLU Agreement was correctly excluded from trial and none of Evolved's complaints about it justify a new trial.

### D. Allowing Dr. Bims To Testify About LG's Proposals To 3GPP Was Not Error And Does Not Warrant A New Trial.

Dr. Bims testified that 3GPP did not adopt into the LTE standard LG's proposal for the handover procedure. Evolved's belated argument that this testimony somehow warrants a new trial is entirely meritless.

#### 1. Evolved never objected to Dr. Bims' testimony.

Evolved never objected to any of the testimony that it now contends necessitates a new trial. On the morning of Dr. Bims' testimony, Evolved objected to Apple using certain exhibits with Dr. Bims relating to the handover proposals made to 3GPP. The Court ultimately overruled Evolved's objections to Apple using those exhibits. (Trial Tr. at 1009:15-1010:9.) When Dr.

Bims testified about the handover proposals made to 3GPP, however, Evolved never once objected. Evolved's motion points to Dr. Bims testimony at 1188:22-1197:11 as forming the basis for its motion for a new trial. (D.I. 529 at 37.) But Evolved did not once object to a single question in this range of testimony. (Trial Tr. 1188:22-1197:11.) Evolved's objections earlier in the day to Apple using certain exhibits with Dr. Bims does not constitute an objection to Dr. Bims' actual testimony. Having chosen not to object to Dr. Bims' testimony, Evolved waived any argument that it was improper for the Court to allow Dr. Bims to testify about whether 3GPP adopted into the LTE standard LG's handover proposal. *Ghee v. Marten Transp., Ltd.*, 570 F. App'x 228, 231 (3d Cir. 2014) ("Further, as noted by the District Court, the request for a new trial could not have rested on an objection that the defendants wholly failed to lodge."); *Waldorf v. Shuta*, 142 F.3d 601, 629 (3d Cir.1998) ("a party who fails to object to errors at trial waives the right to complain about them following trial").

### 2.   Dr. Bims' testimony was relevant to respond to Evolved's arguments to the jury.

Even had Evolved objected to Dr. Bims' testimony that 3GPP had not adopted into the LTE standard LG's handover proposal, it would have been correct to allow Dr. Bims' testimony on this subject. Evolved claims that Dr. Bims' testimony was irrelevant to the issue of infringement. But Evolved conveniently ignores that it was Evolved, not Apple, that put at issue the development of the LTE standard. In his opening statement, Evolved's counsel expressly stated that the '373 patent is essential to the LTE standard and that the "technical experts" of 3GPP included LG's invention in the standard. (Trial Tr. 291:4-292:1.) Likewise, Dr. Cooklev testified at length that 3GPP adopted LG's handover proposal into the LTE standard (*id.* at 581:15-582:15, 584:25-589:11) and that the asserted claims of the '373 patent are essential to the LTE standard. (*Id.* at 597:1-628:21.)

Evolved made Dr. Bims' testimony that 3GPP did not adopt LG's handover proposal into the LTE standard relevant for the purpose of rebutting Evolved's incorrect claims to the contrary. The testimony that Dr. Bims' provided was consistent with his opinions in his expert report that the '373 patent diverged from the LTE standard.  (Jay Decl., Ex. A (Bims Rebuttal Report at ¶ 240-42).)

Moreover, Evolved mischaracterizes Dr. Bims' testimony.  Evolved states that Dr. Bims "opined that because the proposals were not adopted into the standard verbatim that the '373 Patent is not infringed by products that practice the LTE standard." (D.I. 529 at 36, 37.)  But Dr. Bims never opined that Apple does not infringe the '373 patent because LG's proposals were not adopted into the LTE standard.  Instead, he opined that 3GPP had not adopted LG's handover proposals to rebut Evolved's incorrect assertion on that subject.  Likewise, Dr. Bims never testified about whether LG's handover proposals were adopted into the standard "verbatim" as Evolved claims.  (Trial Tr. 1188:22-1197:11.)  Dr. Bims did not use the word "verbatim," nor any equivalent word.

Notably, even when Evolved objected on the morning of Dr. Bims' testimony to Apple using certain exhibits with Dr. Bims relating to the handover proposals made to 3GPP, Evolved never once argued that these handover proposals were irrelevant.  In its motion, Evolved also complains that Dr. Bims' testimony "went far beyond" the scope of the testimony that Apple had represented to the Court that Dr. Bims would provide on this topic.  (D.I. 529 at 37.)  That is simply incorrect.  And had Evolved believed that Dr. Bims' testimony exceeded the scope of what Apple's counsel had represented to the Court, Evolved was free to object to Dr. Bims' testimony.  Evolved did not object even a single time.  (Trial Tr. 1188:2-1197:11.)

**3.    Evolved has not suffered any prejudice or harm as a result of Dr. Bims' testimony.**

Evolved's sole articulation of the prejudice it supposedly suffered as a result of Dr. Bims' testimony is a single sentence in which it claims that "it had no opportunity to respond to this testimony during expert discovery or trial because Dr. Cooklev had already testified regarding infringement." (D.I. 529 at 38.)   That conclusory assertion cannot justify a new trial.

First, Evolved never objected to Dr. Bims' testimony.   Even ignoring the waiver issue, if Dr. Bims' testimony was as prejudicial as Evolved claims, it should have objected.   It did not. Thus, any harm Evolved has allegedly suffered is a result of its own failure to act.   Second, the opinions that Dr. Bims offered were not new.   As discussed above, Dr. Bims had opined in his expert report that the '373 patent diverged from the LTE standard.   (Jay Decl., Ex. A (Bims Rebuttal Report at ¶ 240-42.)   Third, Dr. Cooklev testified at length (nearly forty pages of testimony) about his view that 3GPP adopted LG's handover proposal into the LTE standard. (Trial Tr. 581:15-582:15, 584:25-589:11, 597:1-628:21.)   For Evolved to now suggest that Dr. Cooklev did not have a chance to address these issues is simply wrong.   And had Evolved actually believed that Dr. Cooklev needed an opportunity to respond to Dr. Bims' testimony, it could have asked the Court to allow Dr. Cooklev to speak to that issue when he again testified as part of Evolved's rebuttal case.   Evolved never asked.

Finally, Evolved has offered only a conclusory assertion of harm, and has provided no explanation as to how it was harmed given the substantial evidence supporting the jury's verdict of non-infringement discussed above.   Because Evolved has failed to meet its burden of showing that any error in the Court's ruling was not harmless, its motion should be denied.   *See, e.g., Texas Advanced Optoelectronic Sols., Inc.,* 895 F.3d at 1316-17.

## IV.    CONCLUSION

For all of the foregoing reasons, Apple respectfully requests that Evolved's motion for

judgment as a matter of law and for a new trial should be denied in its entirety.

Respectfully submitted,

OF COUNSEL:                                    POTTER ANDERSON & CORROON LLP

Michael D. Jay                          By:    _/s/ David E. Moore_
Nandan R. Padmanabhan                          David E. Moore (#3983)
DLA PIPER LLP (US)                             Bindu A. Palapura (#5370)
2000 Avenue of the Stars                       Stephanie E. O'Byrne (#4446)
Suite 400 North Tower                          Hercules Plaza, 6th Floor
Los Angeles, CA 90067-4704                     1313 N. Market Street
Tel: (310) 595-3000                            Wilmington, DE 19801
                                               Tel: (302) 984-6000
Mark D. Fowler                                 dmoore@potteranderson.com
DLA PIPER LLP (US)                             bpalapura@potteranderson.com
2000 University Ave.                           sobyrne@potteranderson.com
East Palo Alto, CA 94303
Tel: (650) 833-2000                            *Attorneys for Defendant Apple, Inc.*

Susan N. Acquista
Jacob Anderson
Kathryn Riley Grasso
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101
Tel: (619) 699-2700

Dated: May 24, 2019
6224721 / 42622
Public Version Dated: July 25, 2019